## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF LOUISIANA

**VOICE OF THE EXPERIENCED**, a
membership organization on behalf of itself
and its members; and **MYRON SMITH,
DAMARIS JACKSON, NATE WALKER,
DARRIUS WILLIAMS, KEVIAS HICKS,
JOSEPH GUILLORY, KENDRICK
STEVENSON,** and **ALVIN WILLIAMS,**
on behalf of themselves and all others
similarly situated,

       *Plaintiffs,*

      v.

**JAMES LEBLANC**, in his official capacity
as Secretary of the Louisiana Department of
Public Safety and Corrections; **TIMOTHY
HOOPER**, in his official capacity as
Warden of Louisiana State Penitentiary;
**MISTY STAGG**, in her official capacity as
Director of Prison Enterprises, Inc.; the
**LOUISIANA DEPARTMENT OF
PUBLIC SAFETY & CORRECTIONS**;
and **PRISON ENTERPRISES, INC.**

      *Defendants.*

Civil Action No.: 3:23-cv-1304-BAJ-
EWD

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' PARTIAL MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.      THE AMENDED COMPLAINT STATES A CLAIM UNDER THE
THIRTEENTH AMENDMENT ............................................................................... 6

II.     THE NUJ PLAINTIFFS ARE NOT BARRED FROM BRINGING THEIR
THIRTEENTH AMENDMENT CLAIMS ................................................................ 9

        A.     *Heck* v. *Humphrey* Does Not Bar the NUJ Plaintiffs' Section 1983 Claims ........ 10

        B.     The NUJ Plaintiffs Are Not Seeking Collateral Review of Their
Conviction or Seeking to Apply *Ramos* v. *Louisiana* Retroactively .................... 13

CONCLUSION .................................................................................................................... 15

**Cases**

*United States* v. *Bibbs*,
  564 F.2d 1165 (5th Cir. 1977) ..................................................................6

*Bourne* v. *Gunnels*,
  921 F.3d 484 (5th Cir. 2019) ...................................................................12

*Bush* v. *Strain*,
  513 F.3d 492 (5th Cir. 2008) ...................................................................12

*Butler* v. *Perry*,
  240 U.S. 328 (1916)....................................................................................7

*Clarke* v. *Stalder*,
  154 F.3d 186 (5th Cir. 1998) ...................................................................11

*Crittindon* v. *LeBlanc*,
  37 F.4th 177 (5th Cir. 2022) *cert. denied*, 144 S. Ct. 90 (2023)............12

*Dubroc* v. *Bristol-Myers Squibb Co.*,
  No. CV 18-833-SDD-RLB, 2020 WL 2309257 (M.D. La. May 8, 2020) ..............5

*Edwards* v. *Vannoy*,
  141 S. Ct. 1547 (2021)..................................................................13, 14, 15

*Heck* v. *Humphrey*,
  512 U.S. 477 (1994)........................................................................... *passim*

*Hicks* v. *LeBlanc*,
  81 F.4th 497 (5th Cir. 2023) ...................................................................10

*Kaiser Aluminum & Chem. Sales, Inc.* v. *Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir. 1982) ...................................................................5

*United States* v. *Kozminski*,
  487 U.S. 931 (1988)....................................................................................6

*Magoon* v. *Texas Dep't of Crim. Just.*,
  247 F.3d 240 (5th Cir. 2001) .....................................................................6

*McGarry* v. *Pallito*,
  687 F.3d 505 (2d Cir. 2012)........................................................................6

*Muhammad* v. *Close*,
540 U.S. 749 (2004) .................................................................................12

*O'Neal* v. *Cazes*,
No. 04-207-D-M1, 2005 WL 8157679 (M.D. La. Mar. 8, 2005) ..............................5

*Olivier* v. *City of Brandon, Mississippi*,
No. 22-60566, 2023 WL 5500223 (5th Cir. Aug. 25, 2023) .................................11

*Ortiz-Lopez* v. *Fed. Bureau of Prisons, Dir.*,
830 F. App'x 127 (5th Cir. 2020) ..................................................................11

*Preiser* v. *Rodriguez*,
411 U.S. 475 (1973) .............................................................................10, 12

*Ramos* v. *Louisiana*,
140 S. Ct. 1390 (2020) ....................................................................... *passim*

*State* v. *Reddick*,
351 So. 3d 273 (2022) ......................................................................... *passim*

*Skinner* v. *Switzer*,
562 U.S. 521 (2011) ...................................................................................11

*Smith* v. *Hood*,
900 F.3d 180 (5th Cir. 2018) ..................................................................10, 11

*Stokes* v. *Gann*,
498 F.3d 483 (5th Cir. 2007) ........................................................................5

*Watson* v. *Graves*,
909 F.2d 1549 (5th Cir. 1990) .......................................................................8

*Wendt* v. *Lynaugh*,
841 F.2d 619 (5th Cir. 1988) ........................................................................8

*Wilkinson* v. *Dotson*,
544 U.S. 74 (2005) ..............................................................................10, 12

**Statutes**

42 U.S.C. § 1983 ............................................................................. *passim*

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ...............................1, 4, 5

Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. .........................................1, 4, 5

**Other Authorities**

U.S. Const. Amend. VI ..................................................................................2, 7, 9

U.S. Const. Amend. VIII ...............................................................................1, 4, 5

U.S. Const. Amend. XIII ............................................................................... *passim*

U.S. Const. Amend. XIV ................................................................................4, 5, 9

ARK. CONST. of 1864, art. V...............................................................................8

Christopher R. Green, *Duly Convicted: The Thirteenth Amendment As Procedural Due Process* Geo. J.L. & Pub. Pol'y 73 (2017).........................................8

Federal Rule of Civil Procedure 12(b)(6) .............................................................5

*Governor Marvin in Florida: A Sound and Wise Speech*, Balt. Daily Commercial, Oct. 5, 1865.............................................................................................8

7 *Works of Abraham Lincoln* (Roy P. Basler ed., 1953)........................................8

Plaintiffs Voice of the Experienced ("VOTE"), Myron Smith, Damaris Jackson, Nate Walker, Darrius Williams, Kevias Hicks, Joseph Guillory, Kendrick Stevenson, and Alvin Williams respectfully submit this memorandum of law in opposition to the partial motion to dismiss filed by Defendants James LeBlanc, Timothy Hooper, Misty Stagg, Louisiana Department of Public Safety & Corrections, and Prison Enterprises, Inc.

## PRELIMINARY STATEMENT

Built on the grounds of former slave plantations, the Louisiana State Penitentiary in Tunica, Louisiana ("Angola") today remains home to a punitive, dangerous, and grossly inhumane form of discipline akin to nineteenth-century slavery. On Angola's so-called "Farm Line," incarcerated men are forced to labor arduously, tending plantation crops in life-threatening conditions without protective equipment or access to modern technology. The men have no choice in the matter: Defendants compel their labor through threats and application of severe disciplinary measures. The Farm Line serves no legitimate penological purpose; it is meant only to "break" the men under Defendants' care and custody into subservience.

Plaintiffs' Amended Complaint (Dkt. No. 21) seeks to enjoin Defendants' continued use of the Farm Line. Pursuant to 42 U.S.C. § 1983 ("Section 1983"), Plaintiffs assert violations of the Eighth and Thirteenth Amendments, and of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

Plaintiffs' claims under the Thirteenth Amendment—the only cause of action addressed in Defendants' motion—are asserted by Plaintiffs Darrius Williams, Kendrick Stevenson, Alvin Williams, and VOTE (collectively, the "Nonunanimous Jury Plaintiffs" or "NUJ Plaintiffs"). These NUJ Plaintiffs, and all members of the putative subclass they seek to represent (the "NUJ subclass"), are serving sentences at Angola after being convicted by nonunanimous juries.

1

The sole exception to the Constitution's ban on involuntary servitude is as punishment for a crime where the involuntary laborer has been "duly convicted." Both the United States Supreme Court and the Louisiana Supreme Court have held that convictions obtained by nonunanimous juries violate the Sixth Amendment. *See Ramos* v. *Louisiana*, 140 S. Ct. 1390 (2020); *State* v. *Reddick*, 351 So. 3d 273 (2022). Thus, the NUJ Plaintiffs and members of the NUJ subclass, having been convicted by nonunanimous juries, have not been "duly convicted" within the meaning of the Thirteenth Amendment and cannot be forced to labor on the Farm Line. On that basis alone, Defendants' motion should be denied.

Defendants do not dispute the "duly convicted" exception to the Thirteenth Amendment's prohibition on involuntary servitude; nor do they dispute that the NUJ Plaintiffs were convicted by nonunanimous juries. Instead, Defendants argue that the Thirteenth Amendment claims are barred under a doctrine announced in *Heck* v. *Humphrey*, where the U.S. Supreme Court declared that federal habeas corpus is the exclusive remedy for an incarcerated person who challenges the validity of a conviction or seeks "immediate or speedier release." 512 U.S. 477, 481-82 (1994). Defendants miss the mark, because *Heck* does not apply to Section 1983 claims (such as the ones here) seeking to enjoin unconstitutional conditions of confinement that, if successful, would have no effect on the duration of the plaintiffs' sentence, would not negate any element of the underlying criminal offense, and would not create any implication about the invalidity of the plaintiffs' convictions or the length of their sentences.

Defendants also argue that the NUJ Plaintiffs' Thirteenth Amendment claims should be dismissed because those claims are premised on the purportedly retroactive application of the rule announced in *Ramos*. That argument, however, completely misapprehends the nature of the NUJ Plaintiffs' claims. The NUJ Plaintiffs acknowledge that *Ramos* does not apply retroactively in the

context of a collateral attack on their convictions, but they are not seeking such collateral review. In fact, they have expressly disclaimed that intention, and there is no way to reasonably construe their claims as requests for post-conviction relief. Accordingly, *Ramos*' nonretroactivity has no bearing on the claims here. Moreover, the administration of justice concerns that underlie the decisions of the United States Supreme Court and the Louisiana Supreme Court to not apply *Ramos* retroactively are not implicated here.

In sum, Plaintiffs have stated cognizable claims under the Thirteenth Amendment. *Heck* does not bar this claim, and Plaintiffs do not seek the retroactive application of *Ramos*. Defendants' motion should be denied.

## FACTUAL BACKGROUND

Overseen by armed guards, incarcerated men at Angola prison—most of whom are Black—must walk or ride into the fields, sometimes carrying hoes and shovels, to dig ditches and pick plantation crops on the so-called "Farm Line." Am. Compl. ¶ 2. Plaintiffs and putative class members are forced to pick plantation crops by hand or using outdated tools, without training or protective gear. *Id.* ¶ 45, 59. Often, Farm Line laborers go without access to clean drinking water, shade, or sanitary toilet facilities. *Id.* ¶ 45. Although Defendants possess the safety gear and modern equipment that would ameliorate the worst of the suffering, officials refuse to provide Farm Line laborers with these basic tools. *Id.* ¶ 2. The work serves no legitimate penological, institutional, or commercial purpose. *Id.* ¶ 2, 60. It is purely punitive, designed to "break" incarcerated men and ensure their submission. *Id.* ¶¶ 2, 59.

Even in the most hazardous weather, incarcerated men are forced to labor on the Farm Line, where they are exposed to the extremes of Louisiana's brutal climate. *Id.* Dangers reach their peak during summer months, when the heat index in the Angola fields regularly climbs into "danger" and "extreme danger" zones. *Id.* ¶ 3, 63. Due to their prolonged heat exposure, putative

3

class members risk life-threatening, heat-related injuries and disorders, and many suffer devastating health consequences. *Id.* ¶ 4. This cruel labor inflicts profound injury to its victims—to their bodies, to their psyches, and to their fundamental human dignity.

The men assigned to the Farm Line have no choice in the matter. If they refuse to work, they are subjected to physical or legal coercion. Failure or refusal to perform compulsory work can lead to weeks of solitary confinement in a dormitory or cell or an extended lockdown unit, disciplinary detention, forfeiture of good time credits, and inability to earn incentive wages for up to three months. *See id.* ¶¶ 51-58.

Count I of the Amended Complaint asserts claims under the Eighth and Fourteenth Amendments on behalf of all Plaintiffs and putative class members. *See id.* ¶¶ 170-78. Count II asserts claims under the ADA and Section 504 on behalf of persons whose health conditions place them at particular risk of harm from working on the Farm Line. *See id.* ¶¶ 179-94.

Count III, asserted by Plaintiffs Darrius Williams, Kendrick Stevenson, Alvin Williams, and VOTE, alleges claims for violations of the Thirteenth Amendment rights of the NUJ Plaintiffs and NUJ subclass members. *See id.* ¶¶ 195-205. Darrius Williams has been incarcerated at Angola since 2011 after being convicted by a nonunanimous jury. Defendants have nevertheless forced him to work on the Farm Line, against his will and in unsafe conditions. When he protested the dangerous and unsafe conditions of forced labor on the Farm Line, Defendants subjected him to lockdown, or disciplinary confinement. *Id.* ¶¶ 18, 102-03, 107. Kendrick Stevenson has been incarcerated at Angola since 1999. Although he was convicted by a nonunanimous jury, Defendants have forced Mr. Stevenson to work on Farm Line. *Id.* ¶ 21, 135-36. Alvin Williams has been incarcerated at Angola since 2009 after being convicted by a nonunanimous jury. *Id.* ¶ 22, 145-46. Mr. A. Williams is a member of VOTE. *Id.* ¶ 147. Against his will and in unsafe

conditions, Defendants have forced him to work on the Farm Line, which he does only to avoid serious harm and punishment. *Id.* ¶ 22, 153.

Count III seeks equitable relief to affirm and secure the NUJ Plaintiffs' and NUJ subclass members' constitutional right to be free from involuntary servitude because their convictions were the result of unconstitutional nonunanimous juries. *Id.* ¶ 205. The NUJ Plaintiffs are not seeking collateral review of their or any NUJ subclass member's conviction. *Id.* ¶ 204.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc.* v. *Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff." *Stokes* v. *Gann*, 498 F.3d 483, 484 (5th Cir. 2007). To survive a Rule 12(b)(6) motion, plaintiffs need only plead facts sufficient to state a claim for relief that is plausible on its face. *Dubroc* v. *Bristol-Myers Squibb Co.*, No. CV 18-833-SDD-RLB, 2020 WL 2309257, at *1 (M.D. La. May 8, 2020). A Rule 12(b)(6) motion to dismiss should be denied "unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *See O'Neal* v. *Cazes*, No. 04-207-D-M1, 2005 WL 8157679, at *1 (M.D. La. Mar. 8, 2005).

## ARGUMENT

Defendants do not dispute that Counts I and II of the Amended Complaint state claims under the Eighth and Fourteenth Amendments and under the ADA and Section 504 respectively. They have moved to dismiss only Count III, the Thirteenth Amendment claim. *See* Defs. Br. at 2. That motion should be denied.

# I.  THE AMENDED COMPLAINT STATES A CLAIM UNDER THE THIRTEENTH AMENDMENT

The Thirteenth Amendment provides:  "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. CONST. amend. XIII, § 1.  To state a claim under the Thirteenth Amendment, a plaintiff therefore must allege that they (i) were subjected to slavery or involuntary servitude, and (ii) do not fall under the punishment exception for persons who have been "*duly* convicted."  *Id.* (emphasis added).  The Amended Complaint meets both of these requirements.

*First*, Defendants do not dispute that the Amended Complaint adequately alleges that the NUJ Plaintiffs and NUJ subclass members are subjected to "involuntary servitude."  Am. Compl. ¶¶ 5, 195-205.  Nor could they.  Involuntary servitude is present when a person is forced to work under actual or threatened use of physical, legal, or other punishment.  *See United States* v. *Kozminski*, 487 U.S. 931, 944 (1988) (The Thirteenth Amendment prohibits "involuntary servitude enforced by the use or threatened use of physical or legal coercion."); *Magoon* v. *Texas Dep't of Crim. Just.*, 247 F.3d 240, 240 (5th Cir. 2001) (explaining that "assuming arguendo that both [plaintiffs] have been placed in punitive segregation for their refusal to work, the compulsion requirement [of their 13th Amendment claims] has been met"); *United States* v. *Bibbs*, 564 F.2d 1165, 1167-68 (5th Cir. 1977) ("In a prosecution for involuntary servitude, the law takes no account of the means of coercion.  Various combinations of physical violence and of threats of physical violence for escape attempts are sufficient.")*; see also McGarry* v. *Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (Plaintiff stated a Thirteenth Amendment claim by alleging he was forced to work by "use and threatened use of physical and legal coercion" because the defendants threatened him with 23-hour-a-day confinement and disciplinary action for refusal to work).

Defendants use threats of violence and confinement—reinforced by disciplinary actions, including solitary confinement in a dormitory or extended lockdown unit, disciplinary detention, revocation of visitation, canteen, and phone privileges, inability to earn incentive wages, and forfeiture of good time credits—to forcibly compel the NUJ Plaintiffs and NUJ subclass members to perform labor on the Farm Line. Am. Compl. ¶¶ 51-58. These tactics echo the very plantation slavery that the Thirteenth Amendment was designed to abolish. *See Butler* v. *Perry*, 240 U.S. 328, 332 (1916) (Under the Thirteenth Amendment "the term 'involuntary servitude' was intended to cover those forms of compulsory labor akin to African slavery which, in practical operation, would tend to produce like undesirable results.").

*Second*, Defendants do not dispute that the NUJ Plaintiffs and putative NUJ subclass members were convicted by nonunanimous juries. *See, e.g.*, Am. Compl. ¶ 202. This fact is sufficient to allege that the NUJ Plaintiffs were not "duly convicted" because the Sixth Amendment requires that guilty verdicts be unanimous. *See Ramos*, 140 S. Ct. at 1397; *Reddick*, 351 So. 3d at 279. Accordingly, having alleged these two indisputable facts, the Amended Complaint states a claim under the Thirteenth Amendment.

Defendants' contention that the Fifth Circuit has "continuously" interpreted the Thirteenth Amendment to permit forced labor of "incarcerated prisoners" is beside the point. Defs. Br. at 4. The question before this Court is whether persons convicted by nonunanimous juries have been "duly convicted" within the meaning of the Thirteenth Amendment, and *no* court (much less the Fifth Circuit) has answered this question post-*Ramos*. *See infra* Sec. II.B. Thus, Defendants recitation of pre-*Ramos* precedent is of no moment.

The exception to the Thirteenth Amendment's absolute prohibition on slavery and involuntary servitude is limited to those incarcerated persons who were "*duly* convicted." U.S.

Const. Amend. XIII, § 1 (emphasis added). The Fifth Circuit agrees that persons subject to the modern-day slavery prison regime must have been duly convicted. *See Ali* v. *Johnson*, 259 F.3d 317, 318 (5th Cir. 2001) ("'When a person is duly tried, convicted and sentenced in accordance with the law, no issue of peonage or involuntary servitude arises.'") (quoting *Draper* v. *Rhay*, 315 F.2d 193, 197 (9th Cir. 1963)); *Wendt* v. *Lynaugh*, 841 F.2d 619, 620 (5th Cir. 1988) (same). Indeed, the Fifth Circuit has affirmed that people do not forfeit their Thirteenth Amendment rights even after they enter their period of incarceration, *see Watson* v. *Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990),[1] meaning that an individual who is in prison retains rights under the Thirteenth Amendment. Without being "duly convicted" under the meaning of the Thirteenth Amendment, the NUJ Plaintiffs cannot be forced to work on the Farm Line.

Since the parties agree that the Thirteenth Amendment prohibits involuntary servitude except where a person has been duly convicted of crime, the question remaining for this Court is what it means to be "duly convicted." Historical sources and case law "consistently treat[] the phrases [due process and duly convicted] as synonymous."[2] Christopher R. Green, *Duly Convicted: The Thirteenth Amendment As Procedural Due Process*, 15 GEO. J.L. & PUB. POL'Y 73, 90 (2017); *see also* AKHIL REED AMAR, AMERICA'S CONSTITUTION: A BIOGRAPHY 359 (2005)

---

[1] In *Watson*, the plaintiffs failed to withstand summary judgment only because they had not offered "proof" of the compulsion element necessary to sustain their Thirteenth Amendment claim. *Id.* at 1552. On a motion to dismiss, however, such proof is not necessary. Here, Plaintiffs have plainly pleaded facts that, taken as true, support a finding of compulsion. *See* Am. Compl. ¶¶ 18, 21, 22.

[2] For example, when Arkansas prohibited slavery, it amended its constitution to read: "Neither slavery nor involuntary servitude shall hereafter exist in this State, otherwise than for the punishment of crime, whereof the party shall have been convicted *by due process of law* . . . ." ARK. CONST. of 1864, art. V (emphasis added). In a letter to Major General Frederick Steele describing Arkansas's new enactment, the President confirmed that Arkansas's "constitution is so modified" as to bar involuntary servitude "except in the punishment of crime whereof the party shall have been *duly convicted*," showing and understanding that the phrases "due process of law" and "duly convicted" had the same meaning. *See* Letter from Abraham Lincoln to Frederick Steele, in 7 *Works of Abraham Lincoln* 141 (Roy P. Basler ed., 1953); *see also Governor Marvin in Florida: A Sound and Wise Speech*, Balt. Daily Commercial, Oct. 5, 1865, at 1 (quoting then-Florida governor's argument for ratification of the Thirteenth Amendment in which he equates the phrases "duly convicted" and "due process of law").

(constitutional historians describe the Thirteenth Amendment exception as "subject to due process"). Duly convicted, therefore, means convicted according to due process of law.

In *Ramos*, the United States Supreme Court held that, under the Sixth and Fourteenth Amendments, a state jury must be unanimous to convict a defendant of a serious offense. *Ramos*, 140 S. Ct. at 1397. In other words, "any defendant convicted and sentenced based on a nonunanimous verdict has suffered a violation of a fundamental constitutional right." *Reddick*, 351 So. 3d at 279. Accordingly, persons convicted by nonunanimous juries are not "duly convicted" because their convictions were obtained without due process and, therefore, they are not included in the narrow exception to the Thirteenth Amendment's broad prohibition on forced labor. Thus, the NUJ Plaintiffs have adequately stated claims for violations of the Thirteenth Amendment.

## II.  THE NUJ PLAINTIFFS ARE NOT BARRED FROM BRINGING THEIR THIRTEENTH AMENDMENT CLAIMS

Having no basis to challenge Plaintiffs' interpretation of the Thirteenth Amendment and the import of the Supreme Court's ruling in *Ramos*, Defendants instead argue without basis that Plaintiffs seek to undo their convictions. Not so. As set forth in the Amended Complaint, this lawsuit does not "seek to challenge any individual's conviction on federal or state collateral review." Am. Compl. ¶ 204. Nor does this lawsuit seek "the retroactive application of the *Ramos* rule to any individual's conviction or term of years." *Id.* Rather, the NUJ Plaintiffs seek declaratory relief and a prospective injunction barring Defendants from forcing the NUJ Plaintiffs and members of the NUJ subclass to work on the Farm Line. This is a conditions-of-confinement-based claim that is cognizable under Section 1983.

## A. *Heck* v. *Humphrey* Does Not Bar the NUJ Plaintiffs' Section 1983 Claims

Defendants argue that the Thirteenth Amendment claims "necessarily imply the invalidity of [the NUJ Plaintiffs'] convictions" and, therefore, are barred under the *Heck* v. *Humphrey* doctrine. Defs. Br. at 6. But *Heck* is inapplicable where, as here, a plaintiff seeks prospective injunctive relief from the conditions of his confinement and where such relief does not call into question the validity of his criminal conviction or the duration of his sentence. *See Wilkinson* v. *Dotson*, 544 U.S. 74, 82 (2005).

In *Heck*, the Supreme Court held that a person in state custody is barred from pursuing a damages action under Section 1983 where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," "unless . . . the conviction or sentence has already been invalidated." 512 U.S. at 481-82, 487. Decades of subsequent Supreme Court and Fifth Circuit precedent hold that *Heck* provides a bar only to those civil rights claims that would necessarily imply the invalidity of "any confinement or to particulars affecting its duration" on the grounds that such challenges "fall within the core of habeas corpus." *Hicks* v. *LeBlanc*, 81 F.4th 497, 508-09 (5th Cir. 2023) (consolidating cases); *see Wilkinson*, 544 U.S. at 79-82.

"*Heck* uses the word 'sentence' to refer not to prison procedures, but to substantive determinations as to *the length of confinement*." *Wilkinson*, 544 U.S. at 83 (emphasis added). Thus, where a civil rights claim for injunctive relief does not "necessarily spell speedier release," it does not "lie[] at the core of habeas corpus,'" and is not barred by *Heck*. *Id.* at 82 (quoting *Preiser* v. *Rodriguez*, 411 U.S. 475, 498-99 (1973)). Just last year, the Fifth Circuit emphasized this point, holding that "constitutional claims that merely challenge the conditions of [a] prisoner's confinement . . . fall outside of [the habeas corpus] core and may be brought pursuant to § 1983." *Hicks*, 81 F.4th at 509 (quoting *Nelson* v. *Campbell*, 541 U.S. 637, 643 (2004)); *see also Preiser*, 411 U.S. at 499 ("[A] § 1983 action is a proper remedy for a [plaintiff] who is making a

constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."); *Smith* v. *Hood*, 900 F.3d 180, 185 (5th Cir. 2018) ("[C]laims that challenge conditions of confinement, but not the fact or length of the sentence, are not barred by *Heck*.").

Applying this well-established precedent, the Fifth Circuit has expressly found that where an incarcerated person "argues that he is forced to work in prison without adequate pay, this claim is *not* barred by *Heck* because it 'challenge[s] conditions of confinement, but not the fact or length of the sentence.'" *Ortiz-Lopez* v. *Fed. Bureau of Prisons, Dir.*, 830 F. App'x 127, 133 (5th Cir. 2020) (emphasis added) (quoting *Smith*, 900 F.3d at 185). That, of course, is precisely the claim the NUJ Plaintiffs assert here. *Ortiz* squarely undercuts Defendants' argument that *Heck* bars the NUJ Plaintiffs' Thirteenth Amendment claims.

In addition, an analysis of the factors used by courts to delineate between claims that are barred under *Heck* from those that merely challenge conditions of confinement and therefore are cognizable under Section 1983, confirms that *Heck* poses no bar here. *First*, the NUJ Plaintiffs' claims seek only prospective injunctive relief to remedy unconstitutional conditions, relief that if obtained will have no implication for the duration of their sentences. The Fifth Circuit has recognized that *Heck* acts "as a bar to injunctive relief in only the *narrowest of circumstances*." *Olivier* v. *City of Brandon, Mississippi*, No. 22-60566, 2023 WL 5500223, at *5 (5th Cir. Aug. 25, 2023) (emphasis added) (citing *Nelson* 541 U.S. at 647 ("We were careful in *Heck* to stress the importance of the term necessarily.")). Only where obtaining the injunctive relief sought would render the invalidity of a conviction inevitable does *Heck* act as a bar to a plaintiff's civil rights claim. *See Skinner* v. *Switzer*, 562 U.S. 521, 534 (2011); *see Clarke* v. *Stalder*, 154 F.3d 186, 190 (5th Cir. 1998) (*Heck* acts as a bar where the resolution of the plaintiff's claim "would *automatically* entitle a claimant to immediate release") (emphasis added) (citing *Serio* v. *Members*

*of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir.1987)). Accordingly, where a plaintiff is not seeking "an injunction ordering his immediate or speedier release into the community," the claims "are cognizable under § 1983." *Wilkinson*, 544 U.S. at 82; *see Preiser*, 411 U.S. at 498-99. Here, far from inevitably and automatically entitling the NUJ Plaintiffs to immediate or speedier release, success on their Thirteenth Amendment claims will have no effect whatsoever on the fact of their confinement or, critically, on the length of their sentences.

*Second*, the NUJ Plaintiffs' success on their Thirteenth Amendment claims would not "require[] negation of an element of the[ir] criminal offense[s] or proof of a fact that is inherently inconsistent with one underlying the[ir] criminal conviction[s]." *Bush* v. *Strain*, 513 F.3d 492, 497 (5th Cir. 2008); *see Bourne* v. *Gunnels*, 921 F.3d 484, 490-91 (5th Cir. 2019). None of the allegations in the Amended Complaint references, much less negates, any element of the NUJ Plaintiffs' underlying criminal convictions. In fact, none of the proof that the NUJ Plaintiffs would need to adduce in order to prevail on their Thirteenth Amendment claims relates in any way to the elements of the crimes for which they were charged or the proof offered by the State to obtain their convictions.

*Third*, contrary to Defendants' argument, the NUJ Plaintiffs' Thirteenth Amendment claims do not create any implication about the invalidity of their convictions. The Amended Complaint focuses squarely on the implications that the NUJ Plaintiffs' nonunanimous jury convictions have in the context of the Thirteenth Amendment; it does nothing to otherwise impact the validity of the NUJ Plaintiffs' criminal convictions. *See Crittindon* v. *LeBlanc*, 37 F.4th 177, 190 (5th Cir. 2022) *cert. denied*, 144 S. Ct. 90 (2023) (*Heck* does not bar a claim where there is no dispute about the plaintiffs' conviction or the proper duration of the plaintiffs' sentence). To the contrary, the Amended Complaint expressly disclaims any intention of collaterally attacking the

NUJ Plaintiffs' convictions. Am. Compl. ¶ 204; *see also Muhammad* v. *Close*, 540 U.S. 749, 754 (2004) (holding that the appellate court erred in applying *Heck* based on the assumption that plaintiff sought to expunge a charge from his record where the amended complaint sought no such relief). Under *Edwards* v. *Vannoy*, 141 S. Ct. 1547 (2021), and *Reddick*, the NUJ Plaintiffs are foreclosed from collaterally attacking the fact of their convictions and the length of their sentences, and they do not seek to do so here. *See Edwards*, 141 S. Ct. at 1552; *Reddick*, 351 So. 3d at 283.

In sum, the NUJ Plaintiffs' Thirteenth Amendment claims seek to remedy an unconstitutional condition—forced labor on the Farm Line—and do not raise any claim within the core of habeas relief. Accordingly, *Heck* does not bar the claim.

### B. The NUJ Plaintiffs Are Not Seeking Collateral Review of Their Conviction or Seeking to Apply *Ramos* v. *Louisiana* Retroactively

Defendants next argue that Plaintiffs' Thirteenth Amendment claims are barred because they supposedly seek retroactive application of the rule of criminal procedure announced by the U.S. Supreme Court in *Ramos*. Defs. Br. at 6-7. This argument fails for similar reasons and again serves only to distract. Not only do the NUJ Plaintiffs expressly disclaim that they are seeking retroactive application of *Ramos*, Am. Compl. ¶ 204, their Thirteenth Amendment claims neither seek post-conviction relief nor implicate the rationale underlying the determinations by the U.S. Supreme Court and Louisiana Supreme Court that the *Ramos* rule should not apply retroactively in the context of collateral challenges.

As described above, the U.S. Supreme Court and Louisiana Supreme Court have recognized that due process requires a unanimous jury verdict to convict a defendant of a serious offense. *Ramos*, 140 S. Ct. at 1397; *Reddick*, 351 So. 3d at 279. Thus, persons convicted by nonunanimous juries are not "duly convicted," and they are not exempt from the Thirteenth Amendment's broad prohibition on forced labor.

It is settled law that the rule in *Ramos* does not apply retroactively on federal and state collateral review. *See Edwards*, 141 S. Ct. at 1552; *Reddick*, 351 So. 3d at 283. The key factor animating these decisions was the "enormous administration of justice concerns" that retroactive application of the *Ramos* rule would entail, including the high cost to the state, the practical difficulties associated with retrying defendants many years after crimes occurred, the harm to the public if people who committed violent crimes were released, and the special harm crime victims would endure if forced to relive their experiences as part of new trials. *Reddick*, 351 So. 3d at 283; *see Edwards*, 141 S. Ct. at 1554-55. None of this forecloses the NUJ Plaintiffs' Thirteenth Amendment claims.

The question of whether a new criminal procedure rule such as the one announced in *Ramos* should apply retroactively is relevant only where incarcerated persons is seeking post-conviction relief. *See Ramos*, 140 S. Ct. at 1407; *Edwards*, 141 S. Ct. at 1551. Defendants' argument fails for the simple reason that the NUJ Plaintiffs do not—and cannot—seek collateral review of their convictions. Not only have the NUJ Plaintiffs disclaimed that they are seeking such relief, Am. Compl. ¶ 204, such relief would be foreclosed under *Edwards* and *Reddick*, and, as shown above, the NUJ Plaintiffs' claims cannot reasonably be construed to fall within the core of habeas corpus, *supra* Sec. II.A. Furthermore, none of the administration of justice concerns underlying the decisions not to apply *Ramos* retroactively are implicated by the NUJ Plaintiffs' claims. No significant expenditures would be required from the state, none of the logistical challenges with retrying old cases would arise, and there is no threat to the general public or to individual crime victims caused by enjoining Defendants from forcing the NUJ Plaintiffs and NUJ subclass to work the Farm Line.

Defendants have cited no precedent (because there is none) standing for the proposition that Plaintiffs are foreclosed from raising the implications that *Ramos* has in the very different context of a Thirteenth Amendment violation—implications that mandate relief for the NUJ Plaintiffs and putative NUJ subclass members who were convicted by nonunanimous juries and yet are forced to work on the Farm Line. In other words, the NUJ Plaintiffs are not seeking to retroactively apply *Ramos* in violation of *Edwards* and *Reddick*. They are simply drawing inferences from *Ramos* in a context that *Edwards* and *Reddick* do not address. That is entirely proper and provides no basis for the dismissal of the NUJ Plaintiffs' claims under the Thirteenth Amendment.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated: January 18, 2024

/s/ Lydia Wright
Lydia Wright, La. Bar No. 37926
Samantha Bosalavage, La. Bar No. 39808
Claude-Michael Comeau, La. Bar No. 35454
Kenyatta Barthelemy, La. Bar No. 40664
**THE PROMISE OF JUSTICE INITIATIVE**
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
lwright@defendla.org
sbosalavage@defendla.org
ccomeau@defendla.org
kbarthelemy@defendla.org

/s/ Oren Nimni
**RIGHTS BEHIND BARS**
Oren Nimni (PHV) MA Bar No. 691821
Amaris Montes (PHV) MD Bar No. 2112150205
416 Florida Avenue NW, Ste. 26152
Washington, D.C. 20001

Tel: (202) 455-4399
oren@rightsbehindbars.org
amaris@rightsbehindbars.org

*/s/ Joshua Hill Jr.*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Arielle B. McTootle (PHV) NY Bar No. 5993217
Leah R. Weiser (PHV) NY Bar No. 6027601
1285 Avenue of the Americas,
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
amctootle@paulweiss.com
lweiser@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*