IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **VOICE OF THE EXPERIENCED**, a membership organization on behalf of itself and its members; and **MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY, KENDRICK STEVENSON,** and **ALVIN WILLIAMS**, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **JAMES LEBLANC**, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; **TIMOTHY HOOPER**, in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**; and **PRISON ENTERPRISES, INC.** <br><br> *Defendants*. | Civil Action No.: 3:23-cv-1304-BAJ-EWD |

**PLAINTIFFS' RESPONSE TO RULING AND ORDER ON MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AND IN OPPOSITION TO DEFENDANTS' PROPOSED REMEDIES**

Plaintiffs, on behalf of themselves and those similarly situated, respectfully submit this memorandum in response to this Court's Ruling and Order on Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction, ECF No. 70 ("Order"), and in opposition to Defendants' proposed remedies, ECF No. 86.

## BACKGROUND

On May 13, 2024, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction (the "TRO Motion") on behalf of themselves and those similarly situated at the Louisiana State Penitentiary ("LSP" or "Angola"), seeking to enjoin Defendants from operating the Farm Line whenever the heat index is at or above 88 degrees ("High Heat"). In support of their TRO Motion, ECF No. 37, Plaintiffs submitted compelling evidence that Defendants' operation of the Farm Line during periods of High Heat violates the Eighth Amendment. After receiving the parties' briefing and hearing oral argument from both parties, this Court agreed with Plaintiffs. Order at 71.

Specifically, this Court held that Plaintiffs were likely to succeed on the merits of their Eighth Amendment claim, finding that (i) exposing Plaintiffs and similarly situated men at Angola to High Heat on the Farm Line posed a substantial risk of serious, life-threatening, heat-related harm and (ii) Defendants were aware of the "obvious" risk of heat-related injury and also aware of the "serious systemic deficiencies" in their heat pathology policies and had "failed to correct them." *See* Order at 60–71. The Court ordered a five-part injunction, requiring Defendants to (1) "[c]orrect the deficiencies" in their heat pathology policy, LSP Directive No. 13.067, "including the lack of shade and adequate rest provided to incarcerated persons laboring on the Farm Line"; (2) "[c]orrect the problems with Defendants' equipment policies . . . including the failure to provide sunscreen and other necessary protective clothing and equipment"; (3) "[s]ubmit a revised and

expanded Heat Pathology Medications list; (4) "[c]reate a procedure to ensure that all incarcerated persons suffering from health conditions that significantly inhibit thermoregulation are assessed by medical personnel and are granted heat precaution duty status"; and (5) develop additional heat-related policies for incarcerated men "laboring outdoors when the heat index values reach or exceed 113 degrees Fahrenheit." *Id.* at 77.  The Court further ordered Defendants to submit a memorandum containing their proposed remedies within seven days of the Ruling and Order and granted Plaintiffs the opportunity to respond to any such proposals. *Id.*

Defendants filed a motion in the Fifth Circuit to stay the injunction pending appeal.  On July 12, 2024, the Fifth Circuit denied Defendants' motion to stay parts (1) and (2) of the injunction but granted the motion to stay parts (3), (4), and (5) pending the parties' full appeal on the merits.[1] Although the Court of Appeals found that Plaintiffs were more likely than not to prove their claims under the Eighth Amendment, the panel granted the stay as to parts (3) through (5) because the provisions of this Court's order were deemed not narrowly tailored as required under the PLRA and "appeared to reach beyond LSP to cover the entire Louisiana Department of Public Safety and Corrections, rather than just those working on LSP's Farm Line." *VOTE* v. *LeBlanc*, No. 24-30420, ECF No. 41-1, at 5 (5th Cir. 2024).

Accordingly, Defendants filed their memorandum containing proposed remedies to purporting to "correct the deficiencies" of LSP Directive No. 13.067, including the lack of shade and adequate rest, and "correct the problems with Defendants' equipment policies," including "the failure to provide sunscreen and other necessary protective clothing and equipment." *See* ECF No. 86.

---

[1] Plaintiffs reserve all rights and arguments concerning the original order in the pending appeal on the merits before the Fifth Circuit.

In response to the Court's order to "correct the deficiencies" of LSP Directive No. 13.067 by addressing the lack of shade and adequate rest breaks, Defendants now claim that as of June 24, 2024, LSP has ordered 10x10 foot pop-up canopy tents to provide a shaded break area for people assigned to the Farm Line. ECF No. 86 at 2. Defendants report that this practice is now "documented in the Daily Line Counts" and that "LSP will continue to provide the shade tents to the Farm Line." *Id.* With respect to rest breaks, Defendants offer no remedies but instead claim that LSP has complied, and continues to comply, with Directive No. 13.067 by providing five-minute breaks every thirty minutes when a heat alert is issued. *Id.* Defendants claim that LSP "now documents these breaks on its Daily Line Counts." *Id.*

In response to the Court's order to "correct the problems with Defendants' equipment policies . . . including the failure to provide sunscreen and other necessary protective clothing and equipment," Defendants claim that as of June 21, 2024, officers offer sunscreen to the men assigned to the Farm Line, which Defendants will now document in the Daily Line Counts. *Id.* at 3. With respect to protective clothing and equipment, Defendants state only that they "will continue to provide lace up boots." *Id.*

Deposition testimony taken in this matter reveals that the aforementioned purported remedial measures to the Farm Line's administration have not been memorialized by Defendants. Thomas Gulino, LSP Farm Supervisor, testified that LSP does not have formal or written policies regarding providing shade tents, sunscreen, or hats to men laboring on the Farm Line. Ex. A, 178:1–179:11.[2] Major Huey Pidgeon, Corrections Major at LSP, similarly testified that although shade tents have been provided for the past three weeks, there is no written policy governing their use. Ex. B, 150:5–151:21.

---

[2] References to "Ex." refer to exhibits attached to the Declaration of Jeremy A. Benjamin, filed herewith.

3

On July 22, 2024, Plaintiffs' counsel, a VOTE representative, and Plaintiffs' experts Dr. Susi Vassallo, Marguerite Green, and Dr. Joshua Sbicca attended a site inspection at Angola pursuant to Federal Rule of Civil Procedure 34(a)(2) in order to observe and document the conditions on the Farm Line. Benjamin Decl. ¶ 2. Plaintiffs' counsel observed approximately 25–30 men assigned to Lines 24 and 25, some of whom were elderly, laboring outdoors, including after a heat advisory was issued. *Id.* ¶ 3. A single pop-up tent casting very little shade, *Id.* ¶ 4; Exs. C, D, and single porta-John that did not have toilet paper or soap, Benjamin Decl. ¶ 4, were visible. Coolers with ice and liquid were placed on crates and directly on the muddy ground. *Id.* ¶ 5; Ex. E. Plaintiffs' counsel were present when a formal five-minute break was called, during which time most men sat on crates in the field under direct sun. Benjamin Decl. ¶ 6. Many men were wearing some form of a hat, although these hats did not have flaps or wide brims to provide sufficient protection from the sun. Benjamin Decl. ¶ 7. New gloves and plastic drinking cups were distributed while Plaintiffs' representatives were present. Multiple men expressed that the distribution of these items was extremely unusual. *Id.* ¶ 8.

## ARGUMENT

In response to this Court's findings that Plaintiffs are likely to succeed on their claim that conditions on the Farm Line violate the Eighth Amendment and the Court's request that Defendants propose remedial measures to address the risks of life-threatening harm faced by men on the Farm Line, Defendants offer no meaningful proposals. In essence, they ask the Court to accept that providing a pop up tent, some sunscreen, and better documentation of what they claim—against the evidence—has been business as usual, is all that should be asked of them. In fact, Defendants' proposed remedies merely demonstrate that Defendants are unable or unwilling to make material changes to the operation of the Farm Line in order to mitigate the risk of heat-

4

related harm. Accordingly, this Court should order Defendants to permanently cease operation of the Farm Line. In the alternative, Defendants should be ordered to cease operation of the Farm Line unless and until they develop and implement written policies governing assignments to and the administration of the Farm Line that would actually address the deficiencies identified by this Court. Those Farm Line policies would need to include, at a minimum, the remedial measures proposed by Plaintiffs in Section II.

I. **DEFENDANTS' PROPOSALS DEMONSTRATE DEFENDANTS' INABILITY AND/OR UNWILLINGNESS TO AMELIORATE RISKS ON THE FARM LINE AND THAT DEFENDANTS SHOULD BE ENJOINED FROM OPERATING THE FARM LINE DURING PERIODS OF HIGH HEAT**

In its Order on the TRO Motion, this Court rightly found that Plaintiffs were likely to succeed on their heat-related Eighth Amendment claims based on the numerous ways in which conditions on the Farm Line pose a substantial risk of serious harm and Defendants' deliberate indifference to that risk.

In response to the Court's Order, as modified by the Fifth Circuit, Defendants claim that they have started providing shade tents and sunscreen to men on the Farm Line and that they already comply, and will continue to comply, with LSP Directive No. 13.067's required rest breaks, and that these practices are now documented on the Daily Line Counts. ECF No. 86 at 2–3. Defendants also assert that they provide adequate protective equipment because they have provided and will continue to provide lace-up work boots. *Id.* at 3. These nominal "remedies" are wholly inadequate to ameliorate the risks identified by this Court and, indeed, actually cement the Court's finding of deliberate indifference. *See Lewis* v. *Cain*, No. CV 15-318-SDD-RLB, 2023 WL 7299130, at *47 (M.D. La. Nov. 6, 2023) ("Efforts to correct systemic deficiencies that simply do not go far enough when weighed against the risk of harm" cannot be considered "reasonable measures to abate" and remediate against "the identified substantial risk of serious harm.").

5

### A. Defendants Have Shown Themselves Unwilling to Provide Adequate Shade

Defendants fail to propose any viable remedies to address the risks caused by the lack of shade or other cooling centers on the Farm Line.

Only one expert has opined about thermoregulation and the effects of heat stress on the body—Dr. Susi Vassallo. Order at 45 (noting that Defendants failed to proffer any witness with expertise in the field of thermoregulation). It is her undisputed opinion that access to cooling centers, including shaded areas, is one of the "only way[s] to avoid or effectively mitigate the detrimental impacts of extreme heat." Order at 44 (quoting Vassallo's report) (cleaned up). Likewise, as this Court pointed out in the TRO Order, the Louisiana Department of Health has advised that people laboring outdoors should be provided "adequate cool water, rest breaks, and *shade in a cool rest area*." Order at 46 (emphasis in original). Thus, the Court ordered Defendants to correct the lack of shade for persons on the Farm Line.

Defendants claim to have done so, pointing to the purchase of pop-up tents, and they now ask the Court to accept that as an appropriate remedial action. That request borders on bad faith. Evidence from the site inspection demonstrates that Defendants set up a single pop-up tent in an unshaded field where approximately 20 men on Lines 24 and 25 were working. Ex. C. That single tent provides only the most minimal shade over a few square feet, nowhere near the coverage that would be required to provide a cooling function for even a quarter of the men laboring that day. Ex. D. In fact, even if it were possible to squeeze 20 men (or even half that) under the small patch of shade from the single tent, packing their bodies into such a small area would increase rather than reduce the risks of heat-related injury. In short, Defendants' proposal and conduct fails to address the risks caused by the lack of shade on the Farm Line.

B.     **Defendants Have Shown Themselves Unwilling to Provide Adequate Rest Breaks**

The undisputed testimony of Dr. Vassallo, as well as guidance from the Louisiana Department of Health and others, emphasizes the importance of rest breaks, particularly in cool areas, for persons working outdoors in High Heat.  Thus, the Court ordered Defendants to remedy the lack of adequate rest breaks on the Farm Line.  In response, Defendants propose to follow their own rest break policies, which call for five-minute breaks every 30 minutes once a heat alert is issued, and to document those breaks.  Those policies, however, are plainly inadequate.  *See Lewis v. Cain*, No. CV 15-318-SDD-RLB, 2023 WL 7299130, at *47 (M.D. La. Nov. 6, 2023) (holding that "[i]nsisting upon a course of action that has already proven futile is not an objectively reasonable response under the deliberate-indifference standard and would support a finding of liability under the Eighth Amendment.").

Defendants' proposal to give a five-minute break in the full sun does not achieve the purpose of taking a break.  And, if someone were to attempt to get out of the sun and squeeze into the limited shade offered by the pop-up tent or to get a cool drink during the break time, a significant percentage of that five-minute break would be spent walking (not resting) to get to the tent and cooler.  Defendants' proposals, therefore, do not provide adequate breaks as required by the Order.

C.     **Failure to Institute Policies to Provide Appropriate Protective Equipment**

Defendants state that they are now providing sunscreen, that hats are available, and that lace-up boots are provided.  To the extent these practices are in effect, they are not documented policies and are not widely known to men on the Farm Line.  Defendants' failure to propose any written policies memorializing these purported remedies—as well as policies governing the use of pop-up tents—is another deficiency.  Without a written policy, it is not clear that LSP has made

7

any lasting changes to correct the deficiencies in its policies that created the Eighth Amendment harms that Plaintiffs allege. Defendants offer no assurance that they will "not revert to their obduracy upon cessation of the litigation." *Farmer* v. *Brennan*, 511 U.S. 825, 846 n.9 (1994) (prison officials must show that they will not "revert to their obduracy upon cessation of the litigation" in order to "prove . . . that they are no longer" violating the Eighth Amendment); *see also VOTE* v. *LeBlanc*, No. 24-30420, ECF No. 41-1, at 5 (5th Cir. 2024) (denying Defendants' motion to stay parts (1) and (2) of this Court's TRO Ruling because it was not "absolutely clear" that the State would not continue the practice of sending named Plaintiffs to work on the Farm Line in the future).

In sum, Defendants' proposed remedies demonstrate that they are unable and/or unwilling to adequately remediate against the substantial risk of harm by correcting the deficiencies and problems with their heat-related policies identified by this Court. Accordingly, Defendants should be enjoined from operating the Farm Line during periods of High Heat.

## II. ABESENT A COMPLETE INJUNCTION, DEFENDANTS MUST TAKE MEANINGFUL STEPS TO AMELIORATE THE SUBSTANTIAL RISK OF FURTHER HEAT-RELATED HARM

Absent a complete injunction during periods of High Heat, at a minimum, Defendants should be ordered to cease operation of the Farm Line unless and until they take effective remedial actions that would mitigate the risks identified by this Court. Those remedial measures would need to include, at a minimum, the following:

1) <u>Defendants should provide substantially more access to shade</u>. Significantly greater access to shade must be provided. Plaintiffs propose that Defendants set up at least one shade tent for every three men working on the Farm Line, positioned in different locations in the field.

8

2) <u>Defendants should provide longer rest breaks</u>.  Plaintiffs propose that Defendants increase the length of rest breaks to give men laboring on the Farm Line sufficient time to reduce the effects of heat-related stress on their bodies.  A five-minute break taken in full sun does not suffice.  The pop-up tent and coolers are located far from where men are working.  Thus, men would spend a significant portion of their five-minute break walking (not resting) in order to access what limited shade there is, and to hydrate and cool with water and ice.  Plaintiffs therefore propose that at a minimum, Defendants provide people on the Farm Line with a 15-minute break every hour, under shade, with ice, water, and sports/electrolyte drinks.

3) <u>Defendants should improve access to water.</u>  Coolers are placed far from where men are working and often on the ground.  Ex. E.  Plaintiffs propose that coolers with ice, water, and sports/electrolyte drinks be placed throughout the field on crates or other elevated surfaces in order to avoid any potential contamination and so that men can more readily and easily hydrate.

4) <u>Defendants should provide cups to men laboring on the Farm Line</u>.  Per LSP policies, incarcerated men allegedly are assigned a single plastic cup every six months.  Ex. F.  Plaintiffs propose that Defendants provide a clean cup to every person laboring on the Farm Line upon request and notify all people incarcerated at Angola of the availability of additional cups.

5) <u>Defendants should provide appropriate protective gear</u>.  In response to the Court's directive to "correct the problems with Defendants' equipment policies," including "the failure to provide sunscreen and other necessary protective clothing and equipment," Defendants purport to provide sunscreen and lace-up boots.  Although Defendants have stated in sworn testimony that most men choose not to wear hats, during the site visit, a significant percentage, and perhaps a majority, of men on the Farm Line were wearing hats.  Many of these hats, however, provided inadequate shade.  Plaintiffs propose that Defendants provide hats with brims and neck flaps to

9

persons assigned to the Farm Line and provide notice to all people assigned to the Farm Line about the process for requesting such headwear. Defendants should likewise provide other necessary personal protective equipment including work pants, protective long-sleeve shirts, socks, lace-up work boots, proper gloves, as described in the Declaration of Marguerite Green, *see* ECF. No. 37-7 at 9.

6) <u>Defendants should provide access to additional toilets</u>. The one porta-John Defendants provide for approximately 25–30 men and that does not have adequate toilet paper or soap for handwashing is plainly inadequate. Plaintiffs propose that Defendants set up additional porta-Johns with toilet paper and soap.

7) <u>Defendants should implement age limits for men laboring on the Farm Line</u>. According to Dr. Vassallo, men over the age of 65 are at even higher risk of injury due to heat. ECF No. 37-3 at 15 n.3. To ameliorate the risk of harm to that vulnerable population, Plaintiffs propose that Defendants be ordered to exempt anyone over the age of 65 years old from being assigned to the Farm Line during periods of High Heat.

8) <u>Defendants should implement improved policies at LSP to screen people in custody for heat precaution duty status.</u> Dr. Vassallo has identified specific categories of medications that make persons at risk of heat-related illness. Defendants have offered no evidence to the contrary. Plaintiffs proposed that Defendants be ordered to conduct a review of the medications identified by Dr. Vassallo and either exempt persons taking those medications from assignment to the Farm Line, or provide a sound medical basis for not providing such an exemption.

9) <u>Defendants should provide free medical care to men laboring on the Farm Line</u>. Dr. Vassallo has concluded, without contradiction, that access to adequate medical care is a crucial measure to remediate against the risks of heat-related injury. ECF No. 37-3 at 23, 30. Plaintiffs

10

have produced evidence over the course of discovery demonstrating that men continue to suffer from heat-related illness while laboring on the Farm Line during periods of High Heat.

When people on the Farm Line experience heat-related symptoms and seek medical care, they are charged co-payments in the amount of $1.00 for non-emergency and $2.00 for emergency care, even though they make only two cents per hour. Ex. G; Ex. B, 61:16 – 24. So as not to disincentivize and curtail access to crucial medical care, *see* ECF No. 37-3 at 23, Plaintiffs propose that Defendants be ordered to eliminate any requirement that people assigned to the Farm Line pay for medical care—meaning, no copays shall be charged for routine or emergency sick calls to people assigned the Line, whether such calls are placed during their shifts or after—and notify all people incarcerated at Angola of this change, and provide evidence of that notification.

10) <u>Defendants should memorialize in writing and conspicuously post Plaintiffs' proposed remedies and any other remedies approved by this Court</u>. As explained *supra*, Defendants have presented no evidence that any of their proposed policies have been formalized or memorialized in any way. Such evidence is necessary to ensure that Defendants do not "revert" to their old practices in violation of the Eighth Amendment. *Farmer*, 511 U.S. at 846 n.9. Plaintiffs propose that Defendants be required to develop formal, written policies governing LSP's administration of the Farm Line that include the remedial measures proposed by Plaintiffs and approved by this Court. To ensure compliance and notice, Defendants should be required to conspicuously post all such remedies throughout Angola, including on bulletin boards in staff breakrooms, visiting sheds, classrooms, cafeterias, and staff office.

11) <u>Defendants should provide evidence of compliance with all remedial measures approved by the Court.</u> To enhance the safety of people assigned to the Farm Line, Plaintiffs propose that Defendants be ordered during the pendency of the preliminary injunction to

11

(i) document compliance with the remedies ordered by the Court and (ii) provide to Plaintiffs' counsel and the Court on a weekly basis any instance of (a) non-compliance with any such ordered remedy; (b) sick calls placed by any persons assigned to the Farm Line whether or not such call was placed during or after such person's shift; and (c) SDE forms and medical records associated with such persons.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court order Defendants to permanently cease operations of the Farm Line in light of Defendants' demonstrated deliberate indifference to the risk of heat-related harm faced by people assigned to the Farm Line. In the alternative, Plaintiffs respectfully request that this Court order Defendants to cease operations of the Farm Line unless and until Defendants adopt the measures set forth in Section II above.

Respectfully submitted,
Dated: July 26, 2024

**THE PROMISE OF JUSTICE INITIATIVE**

*/s/ Lydia Wright*
Lydia Wright, La. Bar No. 37926
Samantha Bosalavage, La. Bar No. 39808
Claude-Michael Comeau, La. Bar No. 35454
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
lwright@defendla.org
sbosalavage@defendla.org
ccomeau@defendla.org

**RIGHTS BEHIND BARS**

*/s/ Oren Nimni*
Oren Nimni (PHV) MA Bar No. 691821
Amaris Montes (PHV) MD Bar No. 2112150205
416 Florida Avenue NW, Ste. 26152
Washington, D.C. 20001
Tel: (202) 455-4399
oren@rightsbehindbars.org
amaris@rightsbehindbars.org

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Joshua Hill Jr.*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo Sabater (PHV) NY Bar No. 5933379
Leah R. Weiser (PHV) NY Bar No. 6027601
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
lweiser@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*