UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VOICE OF THE EXPERIENCED, A  CIVIL ACTION
MEMBERSHIP ORGANIZATION ON
BEHALF OF ITSELF AND ITS
MEMBERS, ET AL.

VERSUS

JAMES LEBLANC, ET AL.  NO. 23-01304-BAJ-EWD

## RULING AND ORDER

On July 2, 2024, the Court issued its Ruling and Order granting in part Plaintiffs' Application For A Preliminary Injunction And Temporary Restraining Order. (Doc. 70). Therein, the Court ordered Defendants to submit a memorandum containing proposed remedies to alleviate the deficiencies noted in 1) Directive No. 13.067, as relating to lack of shade and adequate rest, 2) Defendants' equipment policies, including the failure to provide sunscreen, 3) the Heat Pathology Medications list, 4) Defendants' assessment of incarcerated persons laboring on the Farm Line for the issuance of heat precaution duty statuses, and 5) Defendants' policies when heat index values reach or exceed 113 degrees Fahrenheit. (Doc. 70 at p. 77).

Defendants immediately appealed the Court's Ruling and Order, and the U.S. Court of Appeals for the Fifth Circuit administratively stayed its effect on July 5, 2024. *Voice of the Experienced v. Leblanc*, No. 24-30420, ECF No. 26 (5th Cir. 2024). The Fifth Circuit then granted in part Defendants' motion to stay the Court's Ruling. *Voice of the Experienced v. Leblanc*, No. 24-30420, ECF No. 41 (5th Cir. 2024).

Specifically, the Fifth Circuit declined to stay the Court's ruling as pertaining to the deficiencies noted in Defendants' policies relating to shade, rest, and provision of adequate protective gear. *Id.* at 10.

On July 19, 2024, Defendants provided the Court with their proposed remedies. (Doc. 86). The four-page memorandum reports that Defendants have purchased "10x10 foot pop-up canopy ten[t]s to provide a shaded break area for offenders assigned to the Farm Line." (*Id.* at p. 2). Regarding the need for additional rest breaks, Defendants state that "when a heat alert is issued five-minute organized breaks are provided every thirty minutes. LSP has followed this practice and continues to follow this practice. LSP now documents these breaks on its Daily Line Counts." (*Id.*). Finally, with respect to the issue of protective equipment, Defendants assert that sunscreen is now offered to all inmates by supervising field officers, and that lace-up work boots have been and will continue to be provided. (*Id.* at p. 3).

Plaintiffs responded to Defendants' proposals on July 26, 2024. (Doc. 95). In their view, Defendants' proposals are inadequate and "border[] on bad faith." (*Id.* at p. 7). Based on the materials made available thus far, the Court concurs.

"No one truly knows a nation until one has been inside its jails. A nation should not be judged by how it treats its highest citizens but its lowest ones." NELSON MANDELA, A LONG WALK TO FREEDOM 174-175 (1994). Taken at face value, Plaintiffs' allegations in this matter have portrayed the State of Louisiana in a harsh and unflattering light. Defendants contribute to this depiction with their apparent obstinance towards proposing meaningful changes to conditions on the Farm Line.

2

Plaintiffs have provided the Court with various photographs which purport to capture the current conditions on the Farm Line. (Docs. 105, 105-1, 105-2). These photographs depict a singular pop-up tent in an expansive field, lacking any nearby trees or buildings to provide cover, haphazardly propped up in a dirt road adjacent to several rows of low-growing crops. (Doc. 105-1). What appear to be two water coolers are visible within the tent, one sat directly on the loose dirt and another on a plastic crate approximately one foot off the ground. (Doc. 105-2). There are no places to sit within the tented area, save for upon the dusty, rock-strewn ground. Even so, the tent is obviously not large enough to accommodate the approximately twenty men meant to use the structure. (*See* Docs. 95 at p. 7, 105). Compounding these inadequacies, based on the position of the sun and the configuration of the tent, the actual shade provided is a mere fraction of the tent's formal dimensions. (*Id.*). Defendants have contested neither the adequacy nor accuracy of the materials provided by Plaintiffs that capture Farm Line conditions.

From July 2 to August 5, the records provided by Defendants reflect that there have been approximately fifty sick calls from the Farm Line which either explicitly or potentially relate to heat-related conditions. (Docs. 74-2, 82-2, 90-2, 98-2, 107-2). The Court notes that during these dates, heat alerts were or should have been issued during operation of the Farm Line on thirteen occasions. (Docs. 74, 82, 90, 98, 107). The Court further notes that for the week of July 29 alone, heat index values reached or exceeded one hundred degrees Fahrenheit at or before noon on each and every day. (Doc. 107-1). Of the sick calls referenced above, seven have resulted in the afflicted

men requiring emergency medical treatment at the Acute Treatment Unit. (Docs. 74-2, 82-2, 90-2, 98-2, 107-2). In addition to these seven incidents, on eleven occasions, responding medical personnel have either excused their patients from their daily Farm Line labor or have modified the requirements thereof. (*Id.*). On three occasions, medical personnel have responded to complaints of heat-related conditions by instructing the afflicted men to simply drink more water. (Doc. 82-2). Perhaps most troubling, in one instance in which an inmate reported a medical emergency, medical personnel were alerted, and *no one showed up*. (Doc. 90-2 at p. 8).

The Court further acknowledges that the records provided by Defendants only notate those sick calls that were placed within the hours the Farm Line is operational. In other words, these records include only those sick calls that were placed between roughly 7:30 A.M. and 12:30 P.M. (*See, e.g.*, Docs. 98-2, 107-2). As noted by Dr. Susi Vassallo, heat-related conditions do not necessarily abate as soon as one stops outdoor labor. (Doc. 37-3 at pp. 10-12).

Based on the above, Plaintiffs press for a **complete** injunction of Farm Line operations, or, alternatively, for the Court to order Defendants to:

1) Provide at least one tent for every three men working on the Farm Line, and for these tents to be positioned throughout the field;

2) Provide those on the Farm Line with one fifteen-minute break every hour;

3) Place additional coolers throughout the field on elevated surfaces so that inmates may more readily access water and ice;

4) Offer additional cups to persons laboring on the Farm Line;

4

5) Provide additional protective equipment be issued to inmates;

6) Make toilets more readily available;

7) Impose age limits for men laboring on the Farm Line;

8) Implement additional measures to screen persons currently taking thermoregulation-inhibiting medications from working on the Farm Line;

9) Provide free medical care to Farm Line workers;

10) Memorialize and post the remedies adopted around the Louisiana State Penitentiary; and

11) Provide the Court with evidence of their continued compliance.

(Doc. 95 at pp. 9-13).

Nonetheless, for the reasons provided in the Court's Ruling on Plaintiffs' request for injunctive relief, the Court will not enjoin Defendants from operating the Farm Line entirely. (Doc. 70 at p. 75). As to Plaintiffs' alternative requests, items six, seven, and eight will not be adopted because they concern issues that are either on appeal to the Fifth Circuit or were not addressed in the Court's Ruling on Plaintiff's motion for injunctive relief.

However, the Court agrees that the shaded area presently provided to those laboring on the Farm Line is grossly insufficient and reflects a callous disregard for human health and safety. Defendants are therefore ordered to erect additional pop-up tents, such that each incarcerated person on the Farm Line may rest in shade during breaks without touching or encroaching on the personal space of their fellow inmates. Plaintiffs have informed the Court that if those laboring on the Farm Line

5

were to make use of the tent presently provided, much of their break would be spent walking to and from said tent. (Doc. 95 at p. 8). The additional tents provided by Defendants shall therefore be located close to or throughout the space in which prisoners are laboring, such that inmates do not have to travel a long distance to take their breaks and/or to access water and ice. Additionally, Defendants shall provide some form of chair or surface for Farm Line laborers to rest upon during said breaks, so that they need not sit in loose dirt, and shall make water and ice available within each of these tents. Finally, in the event Plaintiffs or persons laboring on the Farm Line are not provided with or lack drinking cups during their Farm Line shift, for sanitary reasons, Defendants shall provide such person(s) with a clean cup.

The Court likewise agrees that the break schedule presently implemented by Defendants continues to be deficient and may not be made adequate merely by Defendants' improved notetaking. Plaintiffs' recommendation of one fifteen-minute break for every forty-five minutes of work for persons laboring on the Farm Line during heat alerts shall be adopted moving forward.[1] The Court notes that this should not substantially disrupt Farm Line operations.

Defendants have reported that incarcerated persons laboring on the Farm Line are provided with lace-up boots, sun hats, sunscreen, protective long-sleeve shirts, and gloves. (Docs. 49-1, 86). These items shall continue to be made available.

---

[1] This work/break schedule is closer to, yet still does not reach, the labor recommendations for private employers put forth by certain federal agencies. *See, e.g., Heat Stress: Work/Rest Schedules*, NIOSH, available at https://www.cdc.gov/niosh/topics/heatstress/recommendations.html.

If socks are not already provided to prisoners on the Farm Line in some manner, they shall be provided immediately.

Defendants informed the Court at the Oral Argument on June 18, 2024, that persons laboring on the Farm Line are not charged for requesting medical relief while on the Farm Line. The Court concludes that Defendants based this assertion on Louisiana Department of Public Safety and Corrections' Health Care Policy No. 14, which provides that inmates shall not be charged for work-related injuries or illnesses. (Doc. 95-8 at pp. 5-6). Defendants shall continue to make free medical care available to all men laboring on the Farm Line.

The Court is satisfied that the information currently recorded in the "Daily Line Counts" provided weekly to the Court is sufficient evidence of compliance with the ordered remedial measures. As Defendants are no doubt aware, should such materials contain misleading or materially incomplete information, which would likely be revealed in testimony at trial, failure to comply with the remedial measures ordered by the Court will almost certainly factor into the Court's decision on Plaintiffs' Eighth Amendment claims, and could subject Defendants to contempt proceedings.

Accordingly,

**IT IS ORDERED** that Defendants shall, within ten days of the entry of this Ruling and Order, formalize and adopt remedial measures that incorporate the directives noted herein. These formalized remedial measures shall be provided to the Court, and copies shall be made available to the employees supervising Farm Line

labor and to the incarcerated persons laboring thereon. Defendants shall also orally inform and educate prisoners and employees on the Farm Line of the content of the remedial measures.

Baton Rouge, Louisiana, this 15th day of August, 2024

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

8