

Keogh, Cox & Wilson, Ltd.
701 Main Street, Baton Rouge, LA 70802
P.O. Box 1151, Baton Rouge, LA 70821
P 225 383 3796  F 225 343 9612

keoghcox.com

ANDREW BLANCHFIELD, Partner
ablanchfield@keoghcox.com

October 18, 2024

Honorable Brian A. Jackson
United States District Judge
Middle District of Louisiana
Russell B. Long Federal Courthouse
777 Florida Street, Suite 139
Baton Rouge LA  70801

> RE:    Voice of the Experienced (VOTE), et al v. LeBlanc, et al
>        Civil Action No. 3:23-cv-1304-BAJ-EWD
>        Our File No: 10.2332195

Dear Judge Jackson:

At the June 18, 2024 hearing on Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order, the Court directed undersigned counsel that in the event any changes are made at Louisiana State Penitentiary ("LSP"), the Court was to be notified of all such changes.[1] In accordance with this Court's directive, I take this opportunity to outline the changes that have occurred at LSP since June 18, 2024.

### 1. *Providing of Additional Shade*

LSP has constructed two prototype movable shade wagons which are placed adjacent to the fields during the hot months.[2] These shade wagons provide adequate shade during breaks and, as the Court can see, have seating areas, water, ice and electrolyte stations on the benches. The water and electrolyte drinks are placed on the wagon and elevated. Field workers continue to have Porta Potties, handwashing stations, cups and appropriate PPE available to them, as can be seen from the attached photographs. In addition to the 15-minute breaks every 45 minutes, every LSP employee working in the field testified that offenders can work at their own pace and take breaks as needed.

---

[1] See Transcript of Hearing on Motion for Preliminary Injunction and Temporary Restraining Order of June 18, 2024, at pp. 17-18.

[2] See Exhibit A1-A4.  These photographs were taken at an inspection with Plaintiffs' counsel on October 4, 2024. Exhibit A3 and A 4  contain images of offenders, which both parties have designated as confidential pursuant to the protective order in place. R.Doc. 92. These have been filed under seal.

Honorable Brian A. Jackson
October 18, 2024
Page 2

### 2. *HCP8 Modifications[3]*

Based on recommendations from Defendants' experts, Dr. Carl Keldie and Dr. Deleca Barnes, Defendants have implemented changes to HPC8. These changes include codifying current practices, such as rest breaks, as well as changes to the Heat Pathology Medication List and creating a Medical Condition Exclusion List. The modifications to HCP8 are effective October 20, 2024.  We outline these changes below:

- HCP8 has been modified to dictate that a rest break of at least fifteen minutes shall be given every forty-five minutes. Your Honor has been receiving weekly reports from the field that these breaks are being conducted. Further, although the policy indicates these breaks will be scheduled once a heat alert issued, a review of the farm line documentation shows that fifteen-minute breaks are given every forty-five minutes beginning as early as 8:00 a.m., regardless of the heat index. A decision was made that rather than waiting for a heat alert to be called, it might be easier to provide the fifteen-minute breaks starting at the beginning of each morning.
- HPC8 also implements current practices of providing shaded areas for breaks.
- Prior to June 18, 2024, sunscreen was made available to inmates by way of the commissary. Beginning June 21, 2024, unlimited sunscreen is made available in the field for use. This change is now codified in HPC8. The sunscreen carries a SPF of 50.
- HCP8 has also been modified to read that if the heat index exceeds 113 degrees Fahrenheit, all work shall cease.
- Heat Pathology Medication List
  - Dr. Deleca Barnes, a clinical pharmacist with over 30 years' experience, worked with Dr. Keldie to provide an updated Heat Pathology medication list. This list was constructed based on the anticholinergic properties of medications. The medication list now contains 15 drug classes, includes the anticholinergic risk score, and lists the mechanisms of heat pathology. The DOC adopted the list created by the experts, which is now Attachment A to HPC8.
- Medical Exclusion List
  - The prior version of HPC8 listed four groupings of chronic illnesses that may make offender more susceptible to heat. Dr. Keldie created a list (Attachment B) of 33 chronic illness that would require a physician to evaluate an offender for a Heat Precaution Duty Status, as well as a

---

[3] See Exhibit B, B1 and B2,  HPC8, Attachment A and Attachment B.

Honorable Brian A. Jackson
October 18, 2024
Page 3

- clinical decision support tool to help clinicians understand the seriousness of the medical conditions on the list.
- Both of Defendants' experts stressed the importance of taking into account the clinical condition of the patient. No medication can be looked at in a vacuum, and the Heat Pathology Medication and Medical Exclusions lists are not meant to substitute judgment of a physician. As such, modifications were made to HPC8 which require any offender on any medication on the Attachment A or any medical condition on Attachment B, be evaluated by a physician to determine whether a Heat Precaution Duty Status should be issued. "Should the healthcare practitioner/provider in exceptional cases determine a heat precaution duty status is not necessary, the rationale for this decision and additional inmate education regarding heat pathology risks shall be documented in the inmate's medical record."
- Heat Index
    - The Nation Weather Service sets forth that when the heat index ranges from 80-90 degrees, fatigue is possible with prolonged exposure and/or physical activity. When the heat index reaches 90-103, heat stroke, heat cramps or heat exhaustion is possible with prolonged exposure. https://www.weather.gov/ama/heatindex. CDC and OSHA recommend that when the heat index is below 91 degrees, protective measures should include basic health and safety planning. When the heat index ranges from 91 to 103, precautions should be implemented along with heightened awareness. https://www.cdc.gov/niosh/docs/2016-106/pdfs/2016-106.pdf?id=10.26616/NIOSHPUB2016106 (p. 91). Using this guidance, HPC8 now states that when the heat index reaches 91 degrees, a heat alert is call and the heat pathology precautions shall be implemented.

Implementation of HPC 8 will be done on a facility basis. LSP is currently in the process of pulling all offenders who are prescribed a medication on Attachment A or diagnosed with a medical condition on Attachment B. Each of these offenders will be seen by a health care provider and evaluated for a Heat Precautions Duty Status before May 1, 2025.

In light of these substantial changes outlined above, we believe that most of the claims asserted in the present litigation are rendered moot. We stand ready to reply to any questions the Court may have with respect to these modifications.

Honorable Brian A. Jackson
October 18, 2024
Page 4

Respectfully,

**LIZ MURRILL**
**Attorney General**

By: _____

    Andrew Blanchfield (#16812)
    Special Assistant Attorney General

AB:pd
Enclosures