PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

DIRECT DIAL: (212) 373-3502
EMAIL: JBENJAMIN@PAULWEISS.COM

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
SAN FRANCISCO
TOKYO
TORONTO
WASHINGTON, DC
WILMINGTON

October 24, 2024

Hon. Brian A. Jackson
Russell B. Long Federal Building and United States Courthouse
777 Florida Street, Suite 139
Baton Rouge, LA 70801

    Re:    *Voice of the Experienced, et al.* v. *LeBlanc, et al.*, No. 3:23-cv-1304-BAJ-EWD

Dear Judge Jackson,

    We represent Plaintiffs in the above-captioned matter and write in response to Defendants' letter of October 18, 2024, ECF No. 132 ("Defendants' Letter"). Defendants purport that, in recent weeks and days, they have allegedly implemented remedial measures to address the significant heat-related risks faced by men forced to labor on the Farm Line[1] at Louisiana State Penitentiary ("LSP"), supposedly rendering moot some of Plaintiffs' claims in the above-captioned lawsuit. *Id.* As described below, Plaintiffs contest each point of Defendants' Letter.

    As an initial matter, Plaintiffs' claims in this action include, but also are far broader than, the deliberate indifference Defendants have shown in subjecting people assigned to the Farm Line to serious heat-related risks. Through the Farm Line, Defendants revisit conditions akin to chattel slavery on incarcerated men, a cruel and unusual method of punishment and degradation that creates a substantial risk of dignitary and psychological harm in violation of the Eighth Amendment. Defendants' operation of the Farm Line additionally subjects men to numerous physical safety hazards that are not heat-related and discriminates against people on the basis of their disabilities. Plaintiffs will prove these claims—none of which are addressed in Defendants' Letter—at trial.

    With respect to the significant heat-related harms to which Defendants regularly expose men working the Farm Line, Defendants' Letter effectively concedes Defendants' liability and at the same time, consistent with Defendants' strategy throughout this litigation, asks the Court to assume (on Defendants' say-so) that all necessary precautions have been put in place. As the Court is aware, Defendants have made such claims previously, and each time, the Court has properly found those claims insufficient. On May 13, 2024, in support of their motion for preliminary injunctive relief, Plaintiffs submitted evidence establishing that men forced to work on the Farm Line are exposed to a substantial risk of serious harm under high heat indices,

---

[1]     The Farm Line consists of Lines 15, 15b, 24, and 25.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Brian A. Jackson										2

because, among other reasons, Defendants fail to provide them with basic supplies and protective equipment and because Defendants' heat-related policies are both facially deficient and not followed in practice. *See* ECF No. 37-1. At that time, Defendants argued that their then-existing policies and practices were perfectly adequate. *See* ECF No. 49. The evidence showed otherwise, and the Court correctly concluded that Plaintiffs had shown a substantial likelihood of success in proving that conditions on the Farm Line were unconstitutional. *See* ECF No. 70 (the "Order"). Specifically, the Court concluded that "[t]he wealth of evidence" showed that Defendants failed to provide adequate remedial measures on the Farm Line, including insufficient shade, water, and protective gear; observed that Defendants heat-related policies were not followed consistently; and credited the testimony of Plaintiffs' experts to conclude that Defendants' policies did not provide sufficient mitigation from heat-related risks. *Id.* at 62–66.

Meanwhile, Defendants began informing Plaintiffs and the Court that LSP was changing its practices on the Farm Line. On June 21, 2024, Defendants represented that it was now providing free sunscreen (which previously cost $12.31 a bottle, or approximately 615 hours' worth of work on the Farm Line, *see* ECF No. 120-28) and had purchased shade tents for the Farm Lines. *See* ECF No. 64. Then, in July, Defendants informed the Court that to address the deficiencies identified in the Order, LSP (i) had "ordered 10x10 foot pop-up canopy tents" to use for shade on the Farm Line, (ii) would provide rest breaks on the Farm Line and begin documenting these breaks (as had always been required by their own policies), and (iii) had begun offering sunscreen and lace-up boots to men working on the Farm Line. *See* ECF No. 86. Presented with photographic evidence of what was actually occurring on the Farm Line, *see, e.g.*, ECF Nos. 95-4, 95-5, the Court saw these proposed remedies for what they were: meager changes that were wholly inadequate to address the dangers on the Farm Line and that reflected Defendants' apparent "bad faith" and "obstinance towards proposing meaningful changes to conditions on the Farm Line." ECF No. 109 (the "Remedial Measures Order") at 2. On August 15, 2024, the Court ordered additional precautions to be implemented. *See id.*

The representations made in Defendants' Letter are more of the same—assertions that LSP has fixed deficient conditions on the Farm Line when, in reality, they are proposing measures that, even if followed, would be inadequate to address known heat-related risks of the Farm Line.

First, Defendants' Letter discusses "movable shade wagons" that LSP purportedly has placed in the fields near all Farm Lines to provide shade, seating, clean water, and ice, as required by the Remedial Measures Order. *See* ECF No. 109 at 5-6. During an October 3, 2024 site inspection at LSP, Plaintiffs' counsel and agricultural expert did observe two shade wagons placed near Lines 24 and 25 while the men on those lines picked pecans by hand. (During the visit, men working the Farm Line and Defendants' representatives informed Plaintiffs' counsel that this was the first day that the wagons had been in use.)

Plaintiffs' counsel then requested to observe Line 15b. Defendants apparently had not anticipated this request—once Plaintiffs' representatives arrived at Line 15b, which was performing grass-cutting work along the steep banks of a ditch where alligators were visible, they immediately observed that there was no shade wagon, nor indeed any shade structure whatsoever, nor was there seating, water or ice containers, or protective equipment available for

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Brian A. Jackson                                                                                                                3

Line 15b, *see, e.g.*, Exs. A–D, despite the fact that the Remedial Measures Order specifically requires Defendants to provide such basic supplies and protection to the Farm Lines.

That Defendants have asserted to the Court that LSP's new shade wagons sufficiently mitigate the heat-related risks on the Farm Line so as to render Plaintiffs' claims moot, when in reality Defendants still operate at least some Farm Lines without even the remedial measures required by the Court *more than two months ago*, demonstrates Defendants' fundamental disregard for the health and safety of the men in their custody. Such litigation posturing with total disregard to the facts should not be countenanced. *See* ECF No. 109 ("As Defendants are no doubt aware, should [Defendants' documentation regarding operation of the Farm Line submitted to the Court] contain misleading or materially incomplete information, which would likely be revealed in testimony at trial, failure to comply with the remedial measures ordered by the Court will almost certainly factor into the Court's decision on Plaintiffs' Eighth Amendment claims, and could subject Defendants to contempt proceedings.").

Second, Defendants' Letter describes revisions Defendants allegedly have made to one of their heat-related policies, HCP-8. These changes to HCP-8 are wholly inadequate.

Notably, Defendants modified their policy effective October 20, 2024—more than a month after the close of fact discovery and weeks after the close of expert discovery—leaving Plaintiffs with no opportunity to serve document discovery requests or to ask questions at depositions regarding the revised HCP-8 and its implementation.[2] Moreover, many of the changes to HCP-8 described in Defendants' Letter merely codify remedial measures Defendants are already obligated to implement under the Remedial Measures Order, *e.g.*, providing 15-minute rest breaks every hour when a heat alert is issued, providing shaded areas for breaks near the Farm Lines, and providing sunscreen to men working on the Farm Line.

In other ways, the changes to HCP-8 described in Defendants' Letter actually make HCP-8 *less protective* of men on the Farm Line than the previous version of the policy that the Court found was likely deficient. For example, the former version of HCP-8 provided that a heat alert should be issued whenever the heat index at LSP reached 88 degrees Fahrenheit. The new version of HCP-8 *increases* the threshold for issuing a heat alert to 91 degrees Fahrenheit. This means that, when the heat index is in the very hot range of 88 to 90 degrees Fahrenheit, LSP is no longer required by its own policies to provide the precautions required when a heat alert is issued, including protections for persons known to be heat sensitive. Already, Defendants' documentation suggests that such individuals often are not being brought in upon the issuance of a heat alert; raising the heat index further only exacerbates the risk to these, and indeed, to all men on the Farm Line.

Similarly, the revised version of HCP-8 provides *less protection* to men at LSP who take medications that increase their risk of heat-related illness than the previous version of the policy.

---

[2]   Plaintiffs did not receive the revised HCP-8 (or any drafts of the policy revisions) until the document was filed with the Court alongside Defendants' Letter.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Brian A. Jackson                                                                                                  4

Under the prior version of HCP-8, anyone who was prescribed a medication on the list of Heat Pathology Medications appended as Attachment A was automatically provided heat precaution duty status. *See, e.g.*, ECF. No. 126-12 at 89:2–13; June 18 Hearing Transcript (Defendants' counsel: "Anyone that's on there gets a heat-related duty status."). Indeed, earlier this month, the Solicitor General represented to the Fifth Circuit that Attachment A functioned as an automatic trigger for heat caution duty status. *See Voice of the Experienced* v. *Wescott*, No. 24-30420 (5th Cir.) Dkt. No. 65 at 8 ("If a prisoner is on one of the listed medications, he *will* receive heat duty status, which, for example, would mean that he is not allowed to work outside when the temperature exceeds 88 degrees Fahrenheit.") (emphasis added).

That appears to no longer be true. As Defendants' Letter describes, the new version of HCP-8 eliminates this automatic trigger and instead provides that people taking medications listed on the new Attachment A should be evaluated and whether heat precaution duty status should be provided to them is a determination left to the discretion of individual providers. Sworn testimony in this action indicates that even at the highest levels, LSP medical providers make what should be medical decisions on non-medical bases, such as the labor needs of the institution. *See* Dkt. No. 120-26 at 139:4–141:23. Moreover, this new, extreme reliance on provider discretion is not how Defendants' expert, Dr. Reynolds-Barnes, intended for her revised list of medications in Attachment A to be implemented; Dr. Reynolds-Barnes testified that she intended that every person taking any drug included on the list should be provided heat precaution duty status as a default, unless a medical provider, in consultation with the patient, determined that such duty status was not appropriate. Ex. E at 165:5-12.

In sum, the measures described in Defendants' Letter are inadequate, are presented in bad faith, and are unlikely to be implemented faithfully. Given Defendants' track record in this litigation and the fact that discovery is now closed, the Court should, at a minimum, install a court-appointed expert pursuant to FRE 706, paid for by Defendants, to advise the Court concerning the sufficiency and implementation of the changes listed in Defendants' Letter and HCP-8 as revised.

To be clear, Plaintiffs commend Defendants for formally recognizing and attempting to mitigate some of the numerous life-threatening deficiencies they have long-known to exist on the Farm Line, even if those steps were made only because forced through litigation, and Plaintiffs remain willing to engage in settlement conversations with Defendants, including through a Court-ordered or Court-overseen mediation process. Plaintiffs have provided a framework for those negotiations to which they are awaiting a response. However, to the extent Defendants' Letter is intended to serve as that response, it is a transparent and misguided litigation strategy that fails to remedy the constitutional and statutory violations at issue in this case.

Respectfully submitted,

*/s/ Jeremy A. Benjamin*

Jeremy A. Benjamin

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Brian A. Jackson								5

cc:	All Counsel of Record (via ECF)