IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **VOICE OF THE EXPERIENCED**, a membership organization on behalf of itself and its members; and **MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY,** and **ALVIN WILLIAMS,** on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**JAMES LEBLANC**, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; **TIMOTHY HOOPER**, in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS** and **PRISON ENTERPRISES, INC.**<br><br>*Defendants*. | Civil Action No.: 3:23-cv-1304-BAJ-EWD |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE***

Like the now-condemned institutions of convict leasing and chain gangs, Angola's Farm Line is an anachronistic form of punishment that more closely approximates chattel slavery than contemporary prison norms. At trial, Plaintiffs will establish that the traumatic association between forced agricultural labor and slavery, along with the dangerous and exploitative working conditions in the fields, together create a substantial risk of serious psychological and physical harm to nearly every person incarcerated at Angola, but particularly to Black men. Defendants' longstanding practice of punishing through slave wages is one important piece of that story.

1

Despite this being a bench trial, Defendants seek a sweeping Order to exclude from trial "any evidence or testimony regarding incentive pay." ECF 129-1 at 1. According to Defendants, that evidence is irrelevant and likely to "confuse the issues, cause undue delay, and waste time." *Id.* Defendants are wrong and, for the reasons that follow, their motion should be denied.

### A. Motions *in limine*, like this one, are misplaced in a bench trial.

Motions *in limine* in the context of bench trials are widely recognized in the Fifth Circuit as unnecessary, a waste of time, or worse. *See Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727, 733 (S. D. Tex. 2001) ("[T]his is a bench trial, making any motion *in limine* asinine on its face."); *Windsor Vill. Condo. Owners' Ass'n v. Berkshire Hathaway Guard Ins. Co.*, 2023 U. S. Dist. LEXIS 72544 (M. D. La. 2023) (Jackson, J.) at *3 (*Daubert* motions and motions *in limine* are waste of judicial time and resources in a bench trial). This is because "the objectives motivating such motions—i.e., juror confusion resulting from introduction of unreliable, irrelevant, misleading, or overtly prejudicial evidence—are no longer implicated in a bench trial, because the Court is quite capable of excluding from its consideration inappropriate evidence of whatever ilk." *Id.* at *3 (quotation marks and citations omitted).

Instead of excluding broad swaths of evidence, as Defendants request here, "vigorous cross-examination [and] presentation of contrary evidence . . . are the traditional and appropriate means for attacking shaky but admissible evidence." *Id.* at *3 (quotation marks and citations omitted). These tools will be fully available to Defendants if they wish to defend at trial their practice of paying two cents an hour—or nothing at all—to generations of Black men forced to labor in Angola's plantation fields.

## B. Evidence of incentive pay—or lack thereof—is relevant and admissible.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Implicit in this definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove; and (2) the proposition to be proved must be one that is of consequence to the determination of the action. *Menard v. Targa Res. LLC*, 523 F. Supp. 3d 882, 887 (M.D. La. 2021) (Jackson, J.).

At trial, Plaintiffs will prove that Defendants do not operate the Farm Line for the purpose of growing vegetables. Instead, Defendants leverage the abhorrent legacy of slavery as a method of punishment and absolute control, make agricultural labor more difficult than necessary in order to degrade, debase, and dehumanize incarcerated men. As if to emphasize the limited value they attribute to those men, Defendants withhold access to healthcare and basic safety gear.

Angola's incentive wage system is one circumstance by which Defendants ensure the Farm Line remains a degrading and cruel punishment. "Incentive pay" is "compensation paid to an offender in the physical custody of the department and who is eligible to receive incentive wages and who has performed satisfactory work in the compensation grade in which he has been classified."[1] At Angola, Defendants pay incarcerated men two to four cents an hour, but often nothing at all, for their labor on the Farm Line. As with nearly every other aspect of the Farm Line, Defendants intentionally wield incentive pay as a means of reinforcing their message that the men assigned to the Farm Line are of negligible value. If, as Defendants contend, the Farm Line was actually intended to grow enough fresh food to feed the incarcerated population at Angola, then incentive pay would be used quite differently. Specifically, Prison Enterprises, the for-profit arm

---

[1] La. Admin. Code tit. 22 § I-341.

of the Department of Public Safety and Corrections, pays all incentive wages in the State's prisons.[2] The Department of Corrections can establish the rate of compensation between two and twenty cents an hour generally, and Prison Enterprises can increase the compensation rate to up to forty cents an hour for specialized Prison Enterprises' jobs.[3]

Rather than provide incentive pay to incentivize productivity, Defendants use it to deprive men of their basic humanity. It takes years for an incarcerated person to access his incentive pay. This is because most incarcerated people must work at least <u>three years</u> before even becoming eligible to earn incentive wages.[4] Then, after three years of compulsory labor, they make up to two cents an hour, no matter their position, for at least six months.[5]

Even after that, an incarcerated person does not necessarily get full access to their pay. Each incarcerated person has three bank accounts: savings, drawing, and reserve.[6] The DOC requires each person to maintain a $250 balance in his savings account at all times before the incarcerated person can deposit compensation into another account.[7] At two cents an hour, it takes at least 25,000 hours of work on the Farm Line—roughly 13 <u>years</u> of full-time work— to accrue $250. If an incarcerated person needs medical care but cannot afford the $1 or $2 copay, he will fall into debt, further preventing him from reaching the $250 savings amount.[8]

---

[2] Plaintiffs have determined not to pursue their claims against Prison Enterprises, which operates commodity crop production at Angola. Prison Enterprises pays certain incarcerated people known as "trustees" up to 40 cents an hour to cultivate row crops using tractors and other modern farm equipment, and then sells those commodities on the open market. *See* Ex. A (Stagg Deposition) at 122:20-23, 49:10-19; *see also* La. Admin. Code tit. 22 § I-331(E)(2)(g); ECF 49-34 at 2.
[3] *See* La. R.S. § 15:873.
[4] Ex. B, DOC Regulation No. AM-C-1, *Inmate Incentive Pay and Other Wage Compensation* at 6(A) (Bates 017879); La. Admin. Code tit. 22 § I-331(D)(1).
[5] La. Admin. Code tit. 22 § I-331 (E)(2)(a); *see also* Ex. C, *LA Informational Handbook for Friends and Families of People in Prisons*," Louisiana Department of Public Safety and Corrections, at 28, https://doc.louisiana.gov/wp-content/uploads/2019/09/handbook4friends.familiesofinmates_9_11_19.pdf (hereinafter, "Informational Handbook").
[6] ECF 120-24 at 67-69, *LSP Orientation Manual*, Section IV, "Offender Banking."
[7] *Id.* at 67; La. R.S. § 15:874(4)(c).
[8] Ex. D, LSP Dir. 13.032 Health Care Co-Payments (June 12, 2024) (Bates 022779-83) at 3 (022781).

Incarcerated people are left with <u>even less</u> disposable income because Defendants charge exorbitant rates for necessities like food, hygiene products, warm clothing, medications, and medical care. Angola's canteen, for example, is one of the only approved method for incarcerated people to purchase goods from the outside. The canteen's inventory ranges from toilet paper ($1.33) and sunscreen ($12.31) to tuna pouches ($1.97) and work boots ($38.67 to $122.84).[9]

Prison Enterprises buys canteen items in bulk, marks those items up by approximately 20%, and then resells them to correctional facilities.[10] Then, the correctional facilities charge another 33.3% markup on those items.[11] As a result, both Prison Enterprises and Angola generate substantial revenue by selling necessities to incarcerated people and their families.[12]

While the cost of canteen items has risen over time, Farm Line wages have not. Angola's award-winning newsmagazine, *The Angolite*, reported in 1956 that a new incentive pay scale "will be in three categories with 5% of the population receiving 5¢ per hour; 10% will receive 3½¢ per hour; and 85% will receive 2¢ per hour."[13] Today, two pennies an hour remains the prevailing wage for Farm Line labor. At that rate, it would take more than 66 hours of manual labor in the fields to afford a single roll of toilet paper from canteen.

It is therefore clear that evidence "related to incentive wages" will make a fact—whether Defendants' operation of the Farm Line constitutes cruel and unusual punishment—more or less

---

[9] ECF 120-38 at 5 (022748), 6 (022749), 4 (022747), 10 (022753).
[10] *See* Ex. A (Stagg Deposition) at 139:22-140:2 (describing a 20.5% markup for canteen items); Ex. E, Daryl G. Purpera, *Prison Enterprises – Evaluation of Operations, Department of Public Safety and Corrections*, Louisiana Legislative Auditor, Performance Audit Services, May 1, 2019 at 24-25, 21 n.35, https://s3.documentcloud.org/documents/6430079/Louisiana-Legislative-Auditor-Prison-Enterprises.pdf ("As of fiscal year 2018, markup on canteen items is 20.5%, 19.0% on tobacco items, and varies for personal property items.").
[11] *Id.* at 25.
[12] *See* Ex. F, Prison Enterprises 2022 Annual Report at 33. From 2021 to 2022, Prison Enterprises conducted more than $30.5 million in industry, agriculture, and retail sales combined. Nearly 35% of that sum—more than $10.5 million—was from sales to canteens that incarcerated people and their families depend on.
[13] *See* Ex. G, *Incentive Pay Outlined to Group*, THE ANGOLITE, Nov. 1956, Vol. 4, No. 48 at 2, https://jstor.org/stable/community.33275082.

probable. *See* Fed. R. Evid. 401. Defendants makes no persuasive argument to the contrary and, instead, point to a handful of inapposite cases concerning whether incarcerated people are legally entitled to pay at all. *See* ECF 129-1 at 2-3 (citing *Wendt v. Lynaugh*, 841 F.2d 619 (5th Cir. 1988) (whether the Thirteenth Amendment provides a right to wages); *Rochon v. Louisiana State Penitentiary Inmate Acct.*, 880 F.2d 845 (5th Cir. 1989) (whether Louisiana's inmate banking scheme deprived an individual of his property without due process); *Loving v. Johnson*, 455 F.3d 562 (5th Cir. 2006) (concerning the employee-employer relationship under the FLSA)).

These issues are not present here, where Plaintiffs assert that Defendants' incentive pay policies and practices contribute to a set of conditions that are unconstitutionally dehumanizing and degrading. As such, evidence of incentive wages is relevant and admissible. *See Menard*, 523 F.Supp.3d at 885.

### C. There is no risk of confusion or delay by evidence of incentive wages.

Defendants are also incorrect that "[a]ny evidence regarding incentive pay rates will only serve to confuse the issues, cause undue delay, and waste time at trial, which is prohibited by F.R.E. 403." ECF 129-1 at 4. Under Rule 403, the Court may exclude relevant evidence only "if its probative value is <u>substantially outweighed</u> by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). "[T]he exclusion of evidence under Rule 403 should occur only sparingly." *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993).

This is not one of those rare occasions. Defendants' purported fear that this Court will become confused or delayed by evidence of incentive wages is unfounded and unsupported. At any rate, it is well established that judges in bench trials are afforded "great latitude" to admit more evidence than would be the case in a jury trial. *See Goodman v. Highlands Ins. Co.*, 607 F.2d 665,

6

668 (5th Cir. 1979); 11 Wright, Miller, & Kane, Federal Practice & Procedure § 2885 (1995 & Supp. 2010) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence.").

### D. Conclusion

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendants' Motion *in Limine* to Exclude Evidence Related to Incentive Pay, ECF 129.

Dated: January 10, 2025

**THE PROMISE OF JUSTICE INITIATIVE**

*/s/ Lydia Wright*
Lydia Wright, La. Bar No. 37926
Samantha Bosalavage, La. Bar No. 39808
Kara Crutcher (PHV) IL Bar No. 6337639
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
lwright@defendla.org
sbosalavage@defendla.org
kcrutcher@defendla.org

**RIGHTS BEHIND BARS**

*/s/ Amaris Montes*
Amaris Montes (PHV) MD Bar No. 2112150205
416 Florida Avenue NW, Se. 26152
Washington, D.C. 20001
Tel: (202) 455-4399
amaris@rightsbehindbars.org

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Jeremy Benjamin*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Michael McGregor (PHV) NY Bar No. 5510490
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo R. Sabater (PHV) NY Bar No. 5933379
Leah R. Weiser (PHV) NY Bar No. 6027601
1285 Avenue of the Americas,
New York, NY 10019-6064

Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
mmcgregor@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
lweiser@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*