# Exhibit 2

# United States Court of Appeals
## for the Fifth Circuit

———————

No. 24-30420

———————

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2024

Lyle W. Cayce
Clerk

VOICE OF THE EXPERIENCED, a membership organization *on behalf of itself and its members*; MYRON SMITH, *Individually and on behalf of all others similarly situated*; DAMARIS JACKSON, *Individually and on behalf of all others similarly situated*; NATE WALKER, *Individually and on behalf of all others similarly situated*; DARRIUS WILLIAMS, *Individually and on behalf of all others similarly situated*; KEVIAS HICKS; JOSEPH GUILLORY; KENDRICK STEVENSON; ALVIN WILLIAMS,

*Plaintiffs—Appellees*,

*versus*

JAMES M. LEBLANC, *Secretary, Department of Public Safety and Corrections*; TIM HOOPER, *Warden, Louisiana State Penitentiary*; MISTY STAGG, *in her official capacity as Director of Prison Enterprises, Incorporated*; LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; PRISON ENTERPRISES, INCORPORATED,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:23-CV-1304

———————————————————

### UNPUBLISHED ORDER

Before HO, WILSON, and RAMIREZ, *Circuit Judges*.

PER CURIAM:

The Secretary of the Louisiana Department of Public Safety and Corrections and other State defendants seek a stay pending appeal of a district court's order requiring the State to develop additional policies protecting inmates working outdoors from heat-related illnesses. For the reasons explained below, we grant in part and deny in part the State's motion for a stay.

## I.

Plaintiffs—Louisiana State Penitentiary inmates along with the organization Voice of the Experienced—assert that prisoners are forced to perform agricultural labor on LSP's "Farm Line" under conditions that violate the Eighth Amendment. Specifically, they allege that prisoners assigned to the Farm Line are forced to work during the summer without adequate protection from the Louisiana heat, placing them at high risk of heat-related illnesses, including heat stroke. Plaintiffs filed their suit as a class action. As relevant here, the named inmate plaintiffs seek to represent a class of all current and future LSP prisoners who could be forced to perform agricultural labor, along with a subclass composed of LSP inmates with disabilities.

On May 13, Plaintiffs moved for a preliminary injunction and temporary restraining order prohibiting LSP from operating the Farm Line when the heat index reaches or exceeds 88 degrees. On July 2, the district court partially granted Plaintiffs' motion, declining to enjoin Farm Line operations completely, but requiring the State to revise or create several policies. Specifically, the district court required the State to (1) "[c]orrect the deficiencies of Directive No. 13.067 noted herein, including the lack of shade and adequate rest provided to incarcerated persons laboring on the Farm Line"; (2) "[c]orrect the problems with Defendants' equipment policies noted herein, including the failure to provide sunscreen and other necessary protective clothing and equipment to those laboring on the Farm Line"; (3) "[s]ubmit a revised and expanded Heat Pathology Medications list"; (4) "[c]reate a

procedure to ensure that all incarcerated persons suffering from health conditions that significantly inhibit thermoregulation are assessed by medical personnel and are granted heat precaution duty status"; and (5) "[d]evelop an additional heat-related policy to protect those laboring outdoors when heat index values reach or exceed 113 degrees Fahrenheit, the temperature at which the National Weather Service issues excessive heat warnings." The order also required the State to submit a memorandum within seven days with its "proposed remedies."

The State sought emergency relief from this Court, seeking both an administrative stay and a full stay of the district court's order pending appeal. On July 5, we granted an administrative stay.

## II.

We first address our jurisdiction. The district court labeled its order as a temporary restraining order. Ordinarily, we lack jurisdiction to review a TRO under 28 U.S.C. § 1292(a)(1). *See In re Lieb*, 915 F.2d 180, 183 (5th Cir. 1990). However, "the label attached to an order is not dispositive." *Abbott v. Perez*, 585 U.S. 579, 594 (2018). "[W]here an order has the practical effect of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Id.* (internal quotation omitted). In this case, the district court's order has the practical effect of an injunction. It includes no expiration date, instead providing indefinite relief. In addition, the district court held a hearing at which the State strongly contested the need for injunctive relief. *See Sampson v. Murray*, 415 U.S. 61, 87 (1974) ("[W]here an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified."). We therefore have jurisdiction to resolve the State's motion for a stay.

In addition, the Federal Rules of Appellate Procedure ordinarily require litigants to move for a stay in the district court before seeking relief from a court of appeals. *See* FED. R. APP. P. 8(a)(1)(A). But Rule 8 provides an exception when first seeking relief from the district court would be "impracticable." *Id.* R. 8(a)(2)(A)(i). We agree with the State that the compressed timeline required by the district court's order rendered it impracticable to first seek a stay from the district court. We accordingly proceed to the merits.

## III.

"[T]he issuance of a stay is left to the court's discretion." *Nken v. Holder*, 556 U.S. 418, 434 (2009). When determining whether to grant a stay, we consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (internal quotation omitted). The first two factors are the most important. *Id.*

### A. Likelihood of Success on the Merits

The State advances two sets of merits arguments. First, the State argues that the district court's order violates the Prison Litigation Reform Act. Second, the State argues that the district court's Eighth Amendment analysis was flawed.

#### 1. PLRA

The State argues that the order violates the PLRA because (1) none of the plaintiffs are currently working on the Farm Line; (2) the order grants classwide relief even though no class has yet been certified; and (3) the order is overbroad.

No. 24-30420

Taking the State's third argument first, we agree that portions of the district court's order are overbroad. In particular, parts (3), (4), and (5) of the order appear to reach beyond LSP to cover the entire Louisiana Department of Public Safety and Corrections, rather than just those working on LSP's Farm Line. That violates the PLRA, which requires injunctions to "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," 18 U.S.C. § 3626(a)(1)(A), and preliminary injunctions specifically to "extend no further than necessary to correct the harm the court finds requires preliminary relief" and to "be the least intrusive means necessary to correct that harm," *id.* § 3626(a)(2). *See also Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015) ("The PLRA limits relief to the particular plaintiffs before the court."). In this case, Plaintiffs' proposed classes are limited to LSP inmates who could be forced to perform agricultural labor. They do not extend to all Louisiana inmates.

That leaves parts (1) and (2) of the district court's order. These requirements appear to largely concern LSP policies and to be targeted specifically at the Farm Line. In the State's view, however, these requirements also violate the PLRA because none of the named plaintiffs are currently working on the Farm Line and because the district court granted classwide relief without certifying the class.

Regarding whether the named plaintiffs are currently being forced to work in the fields, the fact that the named plaintiffs are currently indefinitely prohibited from working in the fields does not make absolutely clear that the State will not direct them to do so in the future. The State's own affidavit from Assistant Warden Gagnard explains that this change was made in response to Plaintiffs' motion for a preliminary injunction and TRO. It is accordingly not clear that LSP will not resume requiring the named plaintiffs to work in the fields once this litigation ends. *See Farmer v. Brennan*, 511 U.S. 825, 846 n.9 (1994) (noting that prison officials can "prov[e], during the

litigation, that they [a]re no longer unreasonably disregarding an objectively intolerable risk of harm," but they must also show that "they would not revert to their obduracy upon cessation of the litigation"); *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.").

With respect to class certification, the State claims that *Ball v. Le-Blanc*, 792 F.3d 584 (5th Cir. 2015), bars classwide relief before class certification. But *Ball* was "not a class action," and it said nothing about whether class certification must precede preliminary classwide relief under the PLRA. *Id.* at 599. The State cites no other authority for its position, and there appears to be conflicting case law on this issue. *Compare, e.g.*, *Thomas v. Johnston*, 557 F. Supp. 879, 916 n.29 (W.D. Tex. 1983) ("It appears to be settled . . . that a district court may, in its discretion, award appropriate classwide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its general equity powers."), *with Norbert v. City and County of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021) ("Plaintiffs appear to seek class-wide relief, but at the time of the preliminary injunction decision (and now), no class had been certified. It is well-established that '[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis.' Thus, the plaintiffs' cross-appeal must be limited to the named plaintiffs' claims only.") (citation omitted) (quoting *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983)). In addition, we have noted that "[c]lass-wide relief may be appropriate in an individual action if such is necessary to give the prevailing party the relief to which he or she is entitled." *Hernandez v. Reno*, 91 F.3d 776, 781 (5th Cir. 1996). On the present briefing, we cannot conclude that the district court erred by granting classwide relief on a preliminary basis for parts (1) and (2) of its order. The

State has therefore not shown a likelihood of success on this issue at this time. The State is, of course, free to advance this argument with the merits panel.

### 2. *Eighth Amendment*

To prevail on an Eighth Amendment claim, (1) prison conditions must objectively "pose an unreasonable risk of serious damage to a prisoner's health" and (2) prison officials must have subjectively "acted with deliberate indifference to the risk posed." *Ball*, 792 F.3d at 592 (internal quotation omitted).

Our precedent is clear that exposure to extreme heat qualifies as an Eighth Amendment harm. *See Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) ("It is well-established in our circuit that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.") (internal quotation omitted). We have also held that the lack of protective equipment in extreme weather, or working conditions that pose serious health risks, can suffice for an Eighth Amendment violation. *See Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999) (finding to be "troubling" the plaintiff's "claim that he was forced to withstand strong winds and cold without the protection afforded by jackets and blankets"); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) ("If prison officials knowingly put Jackson on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs.").

Instead of challenging the objective prong of the Eighth Amendment analysis, the State's motion focuses on deliberate indifference. The State argues that the district court's analysis improperly relied on (1) the State's own heat-related policies, which, in the district court's view, show that the State is aware of the risks posed by extreme heat; (2) the denial of multiple heat-

related administrative grievances; and (3) industry labor guidelines. If the district court had relied solely on these sources, we might agree with the State. *See Ball*, 792 F.3d at 595 ("[A] request for administrative relief cannot alone prove deliberate indifference."); *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, . . . the state is not constitutionally required to observe all the safety and health standards applicable to private industry.").

But deliberate indifference is based on "the totality of the record evidence." *Ball*, 792 F.3d at 595. In this case, the district court additionally relied on several other sources of evidence. These sources include the DPSC's own educational materials, which specifically recommend, for example, avoiding heat-related illnesses by "tak[ing] rest periods in shady or cool areas" and "us[ing] a sunscreen that is at least SPF 15." The district court additionally pointed to medical records showing that multiple inmates working on the Farm Line experienced symptoms consistent with heat-related illnesses. And, as the district court noted, common sense indicates that working for long hours in the summer sun without shade, sufficient rest, or adequate protective equipment poses serious health risks. The State is therefore not likely to succeed in its challenge to parts (1) and (2) of the district court's order.

As noted above, parts (3), (4), and (5) of the district court's order are overbroad under the PLRA because they grant relief beyond the parties in this case. They also appear to be substantively overbroad. The district court's analysis focused on the State's deliberate indifference to the general risks associated with extreme heat. The district court also cited expert evidence that, as an objective matter, additional medications should be added to the Heat Pathology Medications list and that additional inmates should have heat precaution duty status. But the district court cited scant evidence for the conclusion that its deliberate indifference finding should extend beyond

heat risks generally to the claims of heat-sensitive inmates specifically, such as how the State determines which medications are placed on the Heat Pathology Medications list or whether a particular inmate should receive a heat precaution duty status.

In addition, LSP already appears to have a policy for determining who receives a heat precaution duty status. The DPSC-wide HCP8 policy directs "each DPS&C facility" to "have a mechanism to identify offenders more vulnerable to heat and to enforce provisions to reduce heat pathology among all offenders." And LSP's Directive No. 13.067 provides additional information about how this process works. For example, Directive No. 13.067 notes that a "health care practitioner/provider determines on a case-by-case basis if a heat precaution duty status is to be ordered based on the offender's chronic disease and/or prescribed medications."

The district court similarly failed to point to evidence demonstrating the State's deliberate indifference with respect to part (5) of the order, which specifically concerns days when the heat index exceeds 113 degrees. It is therefore unclear that such relief is warranted beyond that already provided by parts (1) and (2) of the order.

\* \* \*

For these reasons, the State is likely to succeed on the merits with respect to parts (3), (4), and (5) of the district court's order. However, the State has not demonstrated that it is likely to succeed on the merits with respect to parts (1) and (2) of the order.

*B. Remaining Stay Factors*

We agree with the State that it faces irreparable harm without a stay pending appeal. "[I]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws,

regulations, and procedures, than the administration of its prisons." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006) (internal quotation omitted). "The Louisiana Legislature assigned the prerogatives of prison policy to DPSC." *Marlowe v. LeBlanc*, 810 F. App'x 302, 306 (5th Cir. 2020). The district court's order therefore "prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury." *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020).

The two remaining factors do not change the analysis. Plaintiffs point to the heat risks inmates face while working on the Farm Line. But those risks are diminished due to the parts of the district court's order not subject to this partial stay. And declining to stay parts (3), (4), and (5) of the district court's order would intrude on state sovereignty, along with subjecting the State to extensive, DPSC-wide policy changes and compliance costs. In addition, "[b]ecause the State is the appealing party, its interest and harm merge with that of the public." *Id.* at 804 (internal quotation omitted).

\* \* \*

We accordingly vacate the administrative stay. For the reasons discussed above, we grant the State's motion for a stay pending appeal with respect to parts (3), (4), and (5) of the district court's order. We deny the State's motion for a stay pending appeal with respect to parts (1) and (2) of the district court's order.