# Exhibit 46

Randy Lavespere, M.D.
July 29, 2024

THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF LOUISIANA


VOICE OF THE EXPERIENCED, a
membership organization on
behalf of itself and its
members; and MYRON SMITH,
DAMARIS JACKSON, NATE
WALKER, DARRIUS WILLIAMS,
KEVIAS HICKS, JOSEPH                Civil Action No.
GUILLORY, KENDRICK                  3:23-cv-1304-BAJ-EWD
STEVENSON, and ALVIN
WILLIAMS, on behalf of
themselves and all others
similarly situated

Vs.

JAMES LEBLANC, in his
official capacity as
Secretary of the Louisiana
Department of Public Safety
and Corrections; TIMOTHY
HOOPER, in his official
capacity as Warden of
Louisiana State
Penitentiary; MISTY STAGG,
in her official capacity as
Director of Prison
Enterprises, Inc.;  the
LOUISIANA DEPARTMENT OF
PUBLIC SAFETY & CORRECTIONS;
and PRISON ENTERPRISES, INC.

   * * * * * * * * * * * * * * * * * * * * * * * *

        REMOTE VIDEOTAPED DEPOSITION OF

            RANDY LAVESPERE, M.D.

  IN HIS PERSONAL CAPACITY AND AS A 30(B)(6) WITNESS



                July 29, 2024

Randy Lavespere, M.D.
July 29, 2024

1    going on ten years ago, and I think the appellate
2    court saw it.  And so we're expecting a different
3    ruling.
4         As a matter of fact, both the attorneys
5    that were -- that were heading up the litigation,
6    they've both since gone.  As a matter of fact, the
7    appellate court give the last attorney such a
8    scolding, he resigned the next day.  Point-blank
9    asked him, What in the world do you want these
10   guys to do?
11        We have made several changes at Angola.
12   Our medical care is good, and we're going to stick
13   by that because it is good.  Our emergency care
14   has improved and it's very good.  So that's why I
15   disagree with her.
16   Q.  So when you say that there have been many
17   changes to the emergency care, you referenced
18   during your testimony just now that that includes
19   the RN and the nurse practitioner in the ATU and
20   the fact that EMTs are no longer providing the
21   emergency room care, right?
22   A.  They're no longer providing the primary
23   emergency room care.  They're used as an ancillary
24   in the emergency room.  Now, don't get me wrong,
25   if there's a code that comes in and they're

Randy Lavespere, M.D.
July 29, 2024

1   working the code, they'll bring the guy in the

2   code room and they'll continue coding them, but

3   the RNs and the NPs jump in, right?

4         But for the most part, we've made several

5   improvements in our emergency care and it's very

6   good.

7         Q.  Other than the RNs, the nurse

8   practitioner, and the changes in terms of how you

9   use EMTs, are there any other changes to the

10  emergency care at LSP that you were thinking of

11  when you wrote this sentence?

12        A.  Sure.  We have nurses that now go down and

13  do all self-declared emergencies, that's a big

14  thing.  No -- our emergency care goes above and

15  beyond what other correctional facilities have

16  ever thought of doing.

17        We're doing a sick call by TeleMed right

18  now.  An inmate makes a sick call, the next day

19  he's seen on TeleMed by a provider, not an RN, not

20  an LPN; by a nurse practitioner.  Problems are

21  solved on a day-to-day basis.

22        So we've got sick call going every Monday

23  through Friday, we have RNs going down to do

24  self-declared emergencies, and then the emergency

25  room changes that I told you.  Our care is good.

Randy Lavespere, M.D.
July 29, 2024

```
 1          MS. WEISER:

 2              We can take this down.

 3     BY MS. WEISER:

 4       Q.  I assume from our conversation so far,

 5     sir, that you are familiar with Dr. Vassallo and

 6     her reports, right?

 7       A.  All too much.

 8       Q.  Do you acknowledge that Dr. Vassallo is an

 9     expert in the field of thermoregulation?

10       A.  Well, that's what she says.  I mean, I

11     don't -- I don't know very many experts in the

12     field of thermoregulation, but I did read her -- I

13     did read her report, and it's inaccurate, a lot of

14     it.  And I have to say that.

15              I'm very disappointed in her as an expert

16     in thermoregulation, the way she relayed her

17     information, because it's very inaccurate.

18       Q.  So you contest that Dr. Vassallo is an

19     expert in thermoregulation?

20       A.  Not at all, I don't attest (sic) she's an

21     expert.  She lists her qualifications very handily

22     in that paper.  But the way that she wrote the

23     report is very misleading to the court.  It's

24     misleading to me.

25              She takes medications out of context, she
```

Randy Lavespere, M.D.
July 29, 2024

1    takes -- she tries to make a story out of pieces,

2    all right?  She gives things to the court almost

3    like a smoke screen, and I don't agree with the

4    way she did it.  It's very inaccurate.  And I

5    think we're going to bring that to the forefront.

6    Especially when she talks about the patient

7    specifics.

8        Q.  Have -- so you're aware that Dr. Vassallo

9    has opined that the heat pathology medications

10   list is inadequate, right?

11       A.  Right.

12       Q.  And since becoming aware that she issued

13   that opinion, what have you done?

14       A.  Well, actually, when I told you we had a

15   meeting with our expert the other day, we talked

16   about some things.  And I do think we're probably

17   going to modify that list; I don't think the

18   additions that we're going to make are going to be

19   absolute modifiers that's going to give people an

20   immediate heat precaution duty status.

21           I think there's going to be some additions

22   that, say if you're on one -- you start one of

23   these medications that are anhydrotics, that you

24   start looking at things; if you're on two, then

25   you start considering things heavily.

Randy Lavespere, M.D.
July 29, 2024

1          But I don't think that's an automatic

2     disqualifier from people working outside, the

3     additions that we're going to make.

4          Q.  So you said --

5          A.  And I don't -- it's recommended that we

6     make some additions -- an addition in particular

7     with Benadryl.

8          Q.  You said that you think you're going to

9     modify the list.

10          When do you anticipate that taking place?

11          A.  Well, I've only had one conversation with

12     our expert.  And as time goes on and he's able to

13     get into the case more readily, I think he'll give

14     us some recommendations, because he's got several

15     years of experience in corrections.  And I think

16     that our team as a whole will look at those

17     recommendations and make modifications according

18     to his recommendation.

19          Q.  Do you expect there to be changes made to

20     the list within this summer?

21          A.  Well, the summer is almost over, really.

22     But I do expect changes to be made; to what

23     extent, I don't know, but we're looking at it.

24     And I think our expert is a very knowledgeable guy

25     and he's been around in corrections and, you know,

Randy Lavespere, M.D.
July 29, 2024

1    he's got access to what several different states

2    are doing and I think he's going to lead us in the

3    right direction.

4         And we're going to make some

5    modifications; to what extent, I don't know,

6    they're going to be left up to him and approved by

7    Chief Schmidt, approved by me, and approved by the

8    Secretary.  But I can honestly tell you there's

9    discussion about modifying the list.

10   Q.  So you don't anticipate that changes to

11   the list will be made before the end of this

12   summer, correct?

13   A.  What do you call the end of this summer?

14   What's your date?

15   Q.  Well, we can use the heat tracking period

16   under the policies, which is going until

17   October 31st.

18        Do you anticipate changes happening prior

19   to October 31st?

20   A.  I would anticipate -- and when is this

21   trial?

22   Q.  That's not relevant, sir.

23        Do you anticipate changes happening prior

24   to October 31st?

25             THE WITNESS:

Randy Lavespere, M.D.
July 29, 2024

```
 1              Do you have a date for our trial?

 2         MR. BLANCHFIELD:

 3              September 3rd.

 4         THE WITNESS:

 5              September 3rd?

 6    BY MS. WEISER:

 7         Q.  We do.  But the question is whether you

 8    anticipate the changes happening prior to

 9    October 31st?

10         A.  The reason I ask about the trial is I want

11    to see how much time that gives our expert, right.

12    So he just picked this case up a couple weeks ago,

13    so there's a lot of information for him to go

14    through.  So we're at August, September.

15              I would say that if they're not made by

16    October, they would be made shortly thereafter,

17    because I think he's going to make some

18    recommendations for us.

19         Q.  So just to clarify, you're relying on the

20    expert that's been retained for this litigation to

21    consult on making changes to the heat pathology

22    medication list; is that right?

23         A.  Yeah.  He's an expert.  I mean, he's an

24    expert in thermoregulation that has correctional

25    experience, why would we not listen to him?
```

Randy Lavespere, M.D.
July 29, 2024

```
 1          MS. WEISER:
 2               I think we can go off the record
 3          briefly.
 4          THE VIDEOGRAPHER:
 5               Going off the record.  The time is
 6          8:12 p.m. Central Standard Time.
 7          (A break was taken from 8:12 p.m. to
 8          8:17 p.m.)
 9          THE VIDEOGRAPHER:
10               We're now back on the record.  The
11          time is 8:17 p.m. Central Standard Time.
12          MS. WEISER:
13               I have no further questions.
14               Mr. Blanchfield, do you have any
15          questions?
16          MR. BLANCHFIELD:
17               No, I don't.  Thank you.
18          MS. WEISER:
19               All right.  Thank you all.  Thank you
20          very much for your time, Dr. Lavespere.
21          THE VIDEOGRAPHER:
22               This concludes today's testimony.
23          We're going off the record at 8:17 p.m.
24          DEPOSITION CONCLUDED AT 8:17 P.M.
25
```

Randy Lavespere, M.D.
July 29, 2024

1              REPORTER'S PAGE

2       I, RITA DEROUEN, Certified Court Reporter in and

3    for the State of Louisiana, (CCR #2014018),

4    Registered Professional Reporter (RPR #006908),

5    the officer, as defined in Rule 28 of the Federal

6    Rules of Civil Procedure and/or Article 1434(B) of

7    the Louisiana Code of Civil Procedure, do hereby

8    state on the record:

9       That due to the interaction in the spontaneous

10   discourse of the proceeding, double dashes (--)

11   have been used to indicate pauses, changes in

12   thought, and/or talkovers; that same is the proper

13   method for a transcription of proceedings, and

14   that the double dashes (--) do not indicate that

15   words or phrases have been left out of this

16   transcript;

17      That any spelling of words and/or names which

18   could not be verified through reference material

19   have been denoted with the parenthetical

20   "(phonetic)";

21      That the parenthetical "(sic)" is used to denote

22   when a witness stated a word or phrase that

23   appears odd or erroneous to show that it was

24   quoted exactly as it stands.

25                      RITA DEROUEN, CCR, RPR

Randy Lavespere, M.D.
July 29, 2024

```
 1                    CERTIFICATE

 2

 3       This certification is valid only for a

 4   transcript accompanied by my original signature

 5   and original required seal on this page.

 6       I, RITA A. DEROUEN, Certified Court Reporter in

 7   and for the State of Louisiana, (CCR #2014018),

 8   Registered Professional Reporter (RPR #006908), as

 9   the officer before whom this testimony was taken,

10   do hereby certify that RANDY LAVESPERE, M.D.,

11   having been duly sworn by me upon authority of

12   R.S. 37:2554, did testify on July 29, 2024, as

13   hereinbefore set forth in the foregoing 269 pages;

14   that this testimony was reported by me in

15   stenographic shorthand, was prepared and

16   transcribed by me or under my personal direction

17   and supervision, and is a true and correct

18   transcript to the best of my ability and

19   understanding; that the transcript has been

20   prepared in compliance with the transcript format

21   guidelines required by statute and rules of the

22   Board; that I am informed about the complete

23   arrangement, financial or otherwise, with the

24   person or entity making arrangements for

25   deposition services; that I have acted in
```