# Exhibit 48

THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF LOUISIANA


VOICE OF THE EXPERIENCED, a
membership organization on
behalf of itself and its
members; and MYRON SMITH,
DAMARIS JACKSON, NATE
WALKER, DARRIUS WILLIAMS,
KEVIAS HICKS, JOSEPH            Civil Action No.
GUILLORY, KENDRICK             3:23-cv-1304-BAJ-EWD
STEVENSON, and ALVIN
WILLIAMS, on behalf of
themselves and all others
similarly situated

Vs.

JAMES LEBLANC, in his
official capacity as
Secretary of the Louisiana
Department of Public Safety
and Corrections; TIMOTHY
HOOPER, in his official
capacity as Warden of
Louisiana State
Penitentiary; MISTY STAGG,
in her official capacity as
Director of Prison
Enterprises, Inc.; the
LOUISIANA DEPARTMENT OF
PUBLIC SAFETY & CORRECTIONS;
and PRISON ENTERPRISES, INC.

* * * * * * * * * * * * * * * * * * * * * * * * *

REMOTE VIDEOTAPED DEPOSITION OF

SHARITA SPEARS

IN HER PERSONAL CAPACITY AND AS A 30(B)(6) WITNESS


August 5, 2024

Sharita Spears 30(b)(6)
August 05, 2024

1      Q.  Are they -- the men incarcerated at Angola

2    educated on the definition of a "major life

3    activity"?

4      A.  I'm not sure.

5      Q.  Do you know whether the men at Angola are

6    educated on the procedure for requesting an

7    accommodation as set forth in Section C of HCP37?

8      A.  When they come through the intake process,

9    they receive a handbook, and the -- on the units

10   they should have posted policies for the inmates

11   to review.

12          Is that what you're asking, or you're

13   asking if someone specifically talks to them.

14     Q.  I'm just asking whether it's verbal or

15   written if they're -- the men at Angola are

16   educated on the procedures to request an ADA

17   accommodation?

18     A.  To my knowledge, the written information

19   is provided to the inmates, yes.

20     Q.  At intake?

21     A.  And while they're incarcerated.

22     Q.  And while they're incarcerated, do you

23   know how it's provided to them, the information?

24     A.  They have posted policies on the -- on

25   each unit.

Sharita Spears  30(b)(6)
August 05, 2024

```
1          Q.  Okay.  If you go to Bates 017392, and just
2    looking at the definition of "disability," I think
3    you stated this earlier, but this list is not
4    exhaustive; is that right?
5          A.  Correct.
6          Q.  Okay.  Ms. Spears, disabilities can be
7    non-physical, correct?
8          A.  Yes, if it's a mental, uh-huh.
9          Q.  Okay.
10         A.  Physical or mental impairment.
11         Q.  Okay.  Ms. Spears, is high blood pressure
12   a disability?
13         A.  It can be.
14         Q.  And what does that depend on?
15         A.  If it substantially limits one or more
16   major activity when it's in -- when their pressure
17   is raised.  So if it officially limits something
18   or prevents them from having equal access to
19   something, it could be categorized; but on its
20   own, not necessarily.  But it's an individualized
21   assessment of each individual person.
22         Q.  And who conducts that individualized
23   assessment of the individual person?
24         A.  So in accordance with our policy, the
25   inmates will be reviewed by medical, and then
```

Sharita Spears  30(b)(6)
August 05, 2024

1    medical will make a recommendation.  And we will

2    ask them, you know, if something -- if a major

3    life activity is substantially limited by the

4    disability and, of course, talk to the inmate to

5    see what major life activity that he is alleging

6    is affected.

7        Q.  So just to -- again, to be clear, major

8    life activity like walking, bending, breathing,

9    those major life activities as examples?

10       A.  Correct.

11       Q.  Okay.  What about someone who's suffered a

12   broken leg and has persistent disability walking,

13   would that qualify as a disability in your view?

14       A.  Yeah, if they have a -- yeah, it limits

15   their walking.

16       Q.  Okay.  And Ms. Spears, what about someone

17   who takes medication for anxiety and depression,

18   would that qualify a person as having a

19   disability?

20       A.  Again, it could qualify as a person with a

21   disability if they meet all of the prongs in the

22   disability test to determine if they're a

23   qualified person.

24       Q.  Is it your view that someone with anxiety

25   and depression that takes medication to treat that

Sharita Spears  30(b)(6)
August 05, 2024

1    ailment is no longer disabled or --

2        A.  As in -- ask the question --

3        Q.  Let me take a step back.

4            Do you view anxiety and depression as

5    qualifying disabilities if they meet your criteria

6    that you just discussed?

7        A.  If it substantially limits one or more

8    major life activities, yes, it could be qualified

9    as a disability.

10       Q.  Okay.  Ms. Spears, are you familiar with

11   the process of thermoregulation?

12       A.  No.

13       Q.  So you do not know or are familiar with

14   what the term "thermoregulation" means?

15       A.  Through reading the information, I -- am I

16   familiar with the process, no, I'm not.  That was

17   your question.  Have I read the exhibit that you

18   put on the screen initially, the suit --

19       Q.  Yes, the lawsuit.

20       A.  -- that has that definition, yes, I have

21   seen it and read it.  But does that make me

22   understand what it is, no, it does not.

23       Q.  Okay.  And just so we're on the same page,

24   when I say "thermoregulation," I'm referring to

25   the physiological function of the body to regulate

Sharita Spears  30(b)(6)
August 05, 2024

1    internal body temperature; is that fair, or is

2    that clear?

3        A.  Yes, it's clear now.

4        Q.  Okay.  And would you consider the process

5    of regulating internal body temperature of a human

6    a normal function, a normal bodily function?

7        A.  Yes.

8        Q.  Okay.  In other words, a person needs to

9    properly thermoregulate in order to avoid injury

10   or death?

11       A.  Is that a question or a statement?

12       Q.  That is a question.

13       A.  Can you rephrase it.

14       Q.  Sure.

15           If a person is not able to properly

16   regulate their internal body temperature, can they

17   be injured or die?

18       A.  I'm not sure.  I'm not medical.

19       Q.  Okay.  So Ms. Spears, it's -- would you --

20   I might know the answer to this, but is

21   thermoregulation, in your view, considered a major

22   life activity?

23       A.  Based on the definition that you just

24   provided, yes.

25       Q.  Okay.  And Ms. Spears, is a health

Sharita Spears  30(b)(6)
August 05, 2024

1    condition that causes someone's ability to

2    thermoregulate to be inhibited considered a

3    disability?

4         A.  Say the question once again.

5         Q.  Sure.

6              Is a health condition that causes a

7    person's ability to thermoregulate -- excuse me,

8    is a health condition that inhibits a person's

9    ability to thermoregulate a disability?

10        A.  Yes.

11        Q.  Okay.  And a health condition that

12   significantly inhibits thermoregulation could

13   limit one or more -- excuse me, a health condition

14   that significantly inhibits thermoregulation could

15   limit one or more major life activities; would you

16   agree with that statement?

17        A.  I can't agree with it because I'm not

18   medical.  So in that situation, I would defer to

19   medical.

20        Q.  Okay.  Okay.  So stepping back, does the

21   definition of "disability" under HCP37 include a

22   person whose ability to thermoregulate is

23   inhibited?

24        A.  Yes, if it's a physical impairment.

25        Q.  Okay.  Ms. Spears, talking now a little

Sharita Spears 30(b)(6)
August 05, 2024

1    bit about reasonable accommodations, does LSP have

2    a duty to accommodate all men at LSP with a

3    disability where reasonably possible?

4        A.  Yes.

5        Q.  And assuming a person is disabled as

6    defined under HCP37, does an adjustment to a

7    person's work status constitute a reasonable

8    accommodation?

9        A.  Yes.

10       Q.  Ms. Spears, what are some examples, in

11   your experience, of reasonable accommodations that

12   have been previously provided to persons in DOC

13   custody?  Let's start with what are the most

14   common?

15       A.  So we have given -- so most of the things

16   that get to my level are -- we have given

17   accommodations for prosthetics.  We have given

18   accommodations for hearing impaired, so hearing

19   aids versus pocket talkers.  We've given reading

20   pens.  We've given, of course, video phones.

21          We've given changing in housing

22   assignments.  They've given different types of

23   accommodations based on the requester's needs when

24   they have been identified as a qualifying person

25   under the Americans with Disabilities Act.

Sharita Spears  30(b)(6)
August 05, 2024

1      Q.  Okay.  And Ms. Spears, what are the
2   primary reasons that DOC has, in the past, denied
3   an accommodation request?
4      A.  So I can't give you a -- is there a
5   particular scenario, or you just want --
6      Q.  If you could tell me generally.  Is there
7   a common reason that you see accommodation
8   requests get denied?
9      A.  I haven't -- so I haven't identified that
10   it was a common reason, again, because each
11   request for accommodation is assessed on an
12   individualized basis, and so the denial reasons
13   will vary based on the particular requester and
14   what the situation revolving around their request
15   is.
16      Q.  Okay.  And Ms. Spears, I think we talked a
17   moment ago, but accommodations are made for
18   persons with mental disabilities, correct?
19      A.  Yes.  A physical or mental impairment.
20      Q.  Okay.  And what about persons with PTSD or
21   a history of traumatic response?
22      A.  So accommodations are made for any
23   qualifying persons that has a mental or physical
24   impairment.
25      Q.  PTSD would qualify in that definition?

Sharita Spears  30(b)(6)
August 05, 2024

1        A.   PTSD would be a qualifying disability

2   based upon the individualized assessment.

3        Q.   Okay.  And going back to the definition of

4   "major life activity" in HCP37, we discuss, and I

5   think it's stated directly in the statement there,

6   this list is only illustrative, right?

7        A.   Yes.

8        Q.   And that means more activities can be

9   considered major life activities, correct?

10       A.   Correct.

11       Q.   Okay.  Ms. Spears, HCP37 establishes a

12   monitoring requirement; is that right?

13       A.   It establishes what type of requirement?

14       Q.   A monitoring requirement.

15       A.   A monitoring requirement, yes.

16       Q.   Okay.  And if we could turn to that page

17   in HCP37, which is Bates 938, this is the

18   monitoring requirement that we just discussed,

19   right, in HCP37?

20       A.   Yes.

21       Q.   Okay.  Does DOC maintain records for all

22   the requests for accommodations?

23       A.   We maintain records for all requests for

24   accommodations that are entered into the database.

25       Q.   Is there circumstances in which they would