**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VOICE OF THE EXPERIENCED**, a membership organization on behalf of itself and its members; and **MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY, KENDRICK STEVENSON**, and **ALVIN WILLIAMS**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**JAMES LEBLANC**, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; **TIMOTHY HOOPER**, in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**; and **PRISON ENTERPRISES, INC.**,<br><br>Defendants. | Civil Action No.: 3:23-cv-1304-BAJ-EWD |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS
OF FOURTH SUPPLEMENTAL DECLARATION OF DR. SUSI VASSALLO**

In their Motion to Strike, ECF 214-1, Defendants complain that Dr. Susi Vassallo's

Declaration in Support of Plaintiffs' Motion for a Second Temporary Restraining Order and

Preliminary Injunction ("Fourth Supplemental Declaration"), ECF 201-3, impermissibly contains

three "new" opinions:

1. Louisiana Department of Public Safety & Corrections' ("DOC") new Health Care Policy No. 8 (HCP8) applies heat precautions based on the calendar, without regard to actual atmospheric conditions that can contribute to heat stress, *see* ECF 201-3 ¶ 7 (explaining that "[f]rom a medical perspective, this time limitation is arbitrary because heat-related illnesses and injuries can occur year-round");

1

2.      DOC's new HCP8 is deficient because it requires heat index monitoring only once every two hours (and only between May 1 and October 31), without regard to the well-established physiological effect of accumulated heat on the body or the fact that the heat index can change rapidly over short periods, *see id.* ¶ 8; and

3.      Wet Bulb Globe Temperature ("WBGT") monitoring from Angola's fields would achieve far more accurate and reliable measurements of atmospheric conditions than the heat index data recorded in the shade at the National Weather Service's New Roads False River Regional Airport weather station, *see id.* ¶¶ 18–28, *esp.* ¶ 24 (explaining that the very sources relied upon by Dr. Carl Keldie and the DOC— including from NIOSH and OSHA—widely agree that WBGT is more accurate, efficient, and effective than heat index monitoring alone).

Dr. Vassallo's supplementation[1] was properly and timely disclosed, particularly considering Defendants' new heat pathology policies and the uncertain future of the National Weather Service. This is appropriate supplementation, and Defendants have suffered no possible prejudice, surprise, or harm as a result. Indeed, Defendants have already filed a new affidavit from Dr. Keldie which addresses each opinion they now seek to strike. *See* ECF 212-14 (Affidavit of Dr. Carl Keldie) ¶¶ 12–21 ("Heat Alert Threshold"); ¶¶ 44–48 ("Monitoring Heat"); ¶¶ 42–43 ("Heat Season"). With no discernable basis in fact or law, Defendants' Motion to Strike should be denied.

## BACKGROUND

### A.    Dr. Susi Vassallo's Expertise

Dr. Vassallo has been recognized by federal courts nationwide—including this one—as an expert in correctional medicine, emergency medicine, medical toxicology, and thermoregulation. *See, e.g., Gates* v. *Cook*, 376 F.3d 323, 339 n.9 (5th Cir. 2004) ("Dr. Vassallo . . . has lectured extensively on thermoregulation and hyperthermia (heat illness) and has authored the

---

[1]   Defendants do not quibble with any other aspects of Dr. Vassallo's Fourth Supplemental Declaration, including her critiques of LSP's (a) arbitrary decision to raise the heat alert threshold from a heat index of 88°F to a heat index of over 91°F; (b) deficient revisions to the Heat Pathology Medication List; (c) deficient revisions to the Medical Exclusion List; and (d) misguided reliance upon physical structures to serve as purported cooling stations. *See* ECF 201-3.

'Thermoregulatory Principles' chapter of Goldfrank's Toxicologic Emergencies, a textbook on medical toxicology."); *Lewis* v. *Cain*, 701 F. Supp. 3d 361, 384 (M.D. La. 2023) (Dick, C.J.), *appeal dismissed sub nom. Parker* v. *Hooper*, 128 F.4th 691 (5th Cir. 2025) ("Dr. Vassallo was accepted by the Court as an expert in emergency medicine, toxicology, and correctional medicine, and the Court found her testimony credible."); *Gumns* v. *Edwards*, 2020 WL 2510248, at \*10 (M.D. La. May 15, 2020) (Dick, C.J.) (crediting Dr. Vassallo as an "expert in correctional medicine and in the care and treatment of COVID-19 patients"); *Ball* v. *LeBlanc*, 988 F. Supp. 2d 639, 665 (M.D. La. 2013) (Jackson, J.), *aff'd in part, vacated in part on other grounds, remanded*, 792 F.3d 584 (5th Cir. 2015) ("Vassallo is a certified correctional health professional and an expert on the effects of drugs and illness on an individual's ability to thermoregulate (or regulate one's own body temperature."); *Cole* v. *Collier*, 2017 WL 3049540, at \*9 (S.D. Tex. July 19, 2017) ("Dr. Vassallo is a specialist in thermoregulation—the capacity of the body to maintain the temperature of 98.6 degrees."); *McCollum* v. *Livingston*, 2017 WL 608665, at \*22 (S.D. Tex. Feb. 3, 2017) (accepting Dr. Vassallo as an "expert on thermoregulation").

     **B.**    **Dr. Vassallo's Opinions**

     In this case, Dr. Vassallo was asked to opine as to the impact of prolonged exposure to heat on the incarcerated men who perform compulsory agricultural labor on Angola Prison's notorious "Farm Line." *See* ECF 37-3 ¶ 8. Her opinions, as relevant to the instant motion, are summarized below.

     1.    <u>Dr. Vassallo's Initial Declaration (ECF 37-3)</u>

     In her 31-page initial declaration, filed May 8, 2024, before discovery in this action had really begun, Dr. Vassallo opined that "men incarcerated at Angola are forced to labor on the Farm Line, even during conditions of extreme heat and humidity, under threat of severe punishment if

their work is considered inadequate. These individuals cannot avoid the conditions that cause and exacerbate heat stress." ECF 37-3 ¶ 77. As a result, "the Farm Line at Angola is unsafe for every incarcerated person, and especially for people with disabilities and health conditions that impede their ability to thermoregulate." *Id.* ¶ 103.

To reach these opinions, Dr. Vassallo relied in part on her decades of experience in emergency and correctional medicine, including as one of three medical experts for the certified class in *Lewis* v. *Cain*, No. 3:15-cv-00318-SDD-RLB (M.D. La.). *See* ECF 37-3 ¶ 103 ("My knowledge of the unconstitutional and inadequate medical care provided at Angola heightens my fear that a person forced to labor on the Farm Line will deteriorate or die at Angola due to unsafe conditions and the poor health care provided at the prison.").

Particularly relevant here, Dr. Vassallo also explained how atmospheric factors—including high temperature, humidity, radiant heat, and wind speed—impact the body's ability to regulate temperature through perspiration and vasodilation, which could in turn lead to heat stress. *Id.* ¶¶ 21–22, 31, 36 (discussing Angola's fields, "which lack shade and expose men made to labor on the Farm Line to direct sunlight"). Dr. Vassallo explained that air temperature alone cannot accurately measure how the body feels, *id.* ¶ 31, and observed that conditions of high heat and humidity are common at Angola, especially (i.e., not only) during the summer, *id.* ¶¶ 86, 88–90. Dr. Vassallo cited the vast epidemiological and public health literature indicating that the risk for heat-related disorders increases sharply when the heat index exceeds 88°F. *Id.* ¶¶ 33, 67–69, 93.

Dr. Vassallo reviewed then-current DOC heat pathology policies and regulations, including the now-outdated HCP8 (dated August 21, 2018) and LSP Directive No. 13.067 (dated March 21, 2019). *See id.* ¶¶ 10–12. Listing several illustrative examples, Dr. Vassallo opined that Defendants'

heat pathology policies were inadequate as written and, in any event, were not actually implemented or followed at LSP. *Id.* ¶¶ 95–98.

Because discovery had only just commenced, Dr. Vassallo could not obtain or review other helpful information, including plaintiff medical records and "[u]pdated or new policies, post orders, protocols, or directives for health care or custody staff on heat precautions . . ." *Id.* ¶¶ 13. So, Dr. Vassallo "reserve[d] the right to supplement this declaration and to refine my opinion, or develop additional opinions, based on additional information that may become available to me." *Id.* ¶ 14; *see also* ECF 54 ¶ 2 (incorporating by reference subsequent declarations); ECF 120-61 ¶ 1 n.2 (same); ECF 201-3 ¶ 2 n.1 (same).

### 2.    Dr. Vassallo's Supplemental Declaration (ECF 54)

After Dr. Vassallo issued her initial declaration, Defendants produced some of Plaintiffs' medical records.[2] *See* ECF 54 ¶ 3 ("Angola's medical records are often incomplete and inaccurate, and are unreliable indicators of whether and when heat-related illness occurs on the Farm Line"); *id.* ¶ 9 n.2 (noting that some records were illegible). On May 28, 2024, Dr. Vassallo submitted a supplemental declaration addressing those medical records. ECF 54 (filed under seal due to patient medical information).

Dr. Vassallo reiterated that men who perform compulsory agricultural labor on Angola's Farm Line—including those who are younger and relatively healthier—are at substantial risk of serious physical and psychological harm due to their prolonged exposure to heat indices above 88°F. *Id.* ¶ 2. Individuals with medical or mental health conditions that make them more susceptible to heat-related injuries, or who take medications that adversely affect the body's ability

---

[2]    With the exception of the production of certain limited "Self-Declared Emergency (SDE)" documentation specifically ordered by the Court, Defendants have refused to produce the medical records of putative class members pending a decision on class certification.  Plaintiffs continue to reserve their right to those highly relevant records.

to thermoregulate, are particularly at risk of serious physical harm from heat exposure on the Farm Line. *Id.* According to Dr. Vassallo, "[g]iven the extreme heat and strenuous physical labor required, it is my opinion that all individuals working the Farm Line during periods of high heat, and particularly those with impaired thermoregulation, are at substantial risk of heat-related illness." *Id.* ¶ 3.

3.    Dr. Vassallo's Second Supplemental Declaration (ECF 120-61)

On August 26, 2024, Dr. Vassallo issued a second supplemental declaration based on new information, including recent depositions, newly disclosed data, and her personal observations of the Farm Line on July 22, 2024.  ECF 120-61 ¶ 1. Dr. Vassallo focused on three issues:  (1) LSP's failure to provide adequate medical care to incarcerated men who experience emergencies in the field; (2) LSP's failure to prevent heat-related illness ("HRI") in the field; and (3) LSP's failure to revise its heat pathology medication list to include classes of medications known to impair thermoregulation. *Id.* ¶ 2. Dr. Vassallo opined that many incarcerated men work in the fields "despite having two or more heat-related illness risk factors (i.e. high body mass index, medication use, chronic illnesses, history of prior HRI, extensive skin pathology)." *Id.* ¶ 5.

Dr. Vassallo also explained that OSHA, NIOSH, American Conference of Governmental Industrial Hygienists, American Society of Safety Professionals, and the State of Louisiana have all published recommendations for protecting workers from heat related illnesses. *Id.* ¶ 18. Dr. Vassallo discussed at length a recent OSHA report providing quantitative evidence of the effectiveness of multi-component interventions in reducing HRIs. *Id.* ¶¶ 19–25 (citing Heat Injury and Illness Prevention in Outdoor and Indoor Work Settings, U.S. Department of Labor, Occupational       Safety       and       Health       Administration,       available       at

https://www.osha.gov/sites/default/files/Heat-NPRM-Final-Background-to-Sum-Ex.pdf)

(hereinafter "OSHA Report")).

That OSHA Report explained the history of heat as a recognized occupational hazard,

including the development of WBGT to measure heat stress.[3] OSHA criticized the use of a single

reading (e.g., daily maximum heat index) to capture each affected worker's exposure on a given

day because, "[i]n reality, conditions fluctuate throughout the day."[4] According to OSHA, the "use

of nearest monitor weather data is also likely to lead to exposure misclassification."[5]

4.      Dr. Vassallo's Deposition and Defendants' Subsequent Disclosures

When Defendants deposed Dr. Vassallo on September 24, 2024, they did not raise the

OSHA Report or any other study upon which she relied. *See generally* ECF 214-3 (Deposition

Transcript of Dr. Susi Vassallo).[6]

DOC revised HCP8 three weeks after Dr. Vassallo's deposition. Six months after that, on

April 8, 2025, LSP revised Directive No. 13.067. *See* ECF 212-2 at 9-10.

5.      Dr. Vassallo's Fourth Supplemental Declaration (ECF 201-3)

On March 26, 2025, Plaintiffs filed Dr. Vassallo's Fourth Supplemental Declaration in

support of their Motion for a Second Temporary Restraining Order and Preliminary Injunction.

ECF 201-3. There, Dr. Vassallo addressed the remedial measures purportedly undertaken by

Defendants in recent months, including "LSP's (a) decision to raise the heat alert threshold from

a heat index of 88°F to a heat index of over 91°F; (b) revisions to the Heat Pathology Medication

List; (c) revisions to the Medical Exclusion List; and (d) reliance upon physical structures to serve

---

[3]   *See* Heat Injury and Illness Prevention in Outdoor and Indoor Work Settings, U.S. Department of Labor, Occupational Safety and Health Administration, at 24-26, available at https://www.osha.gov/sites/default/files/Heat-NPRM-Final-Background-to-Sum-Ex.pdf.

[4]   *Id.* at 198-199.

[5]   *Id.*

[6]   Defendants' assertion that Dr. Vassallo "confirmed her testimony would be limited to the three declarations submitted," ECF 214-1 at 3, is inaccurate and unsupported by the deposition transcript. *See* ECF 214-3.

as purported cooling stations." *Id.* ¶ 3. Consistent with her prior declarations and deposition testimony, Dr. Vassallo opined that "those measures, even if diligently implemented, would be insufficient to adequately protect men on the Farm Line." *Id.* ¶ 4.

Dr. Vassallo also discussed the OSHA guidance relied upon by Dr. Keldie in his first declaration. *Id*. ¶ 24 ("In fact, the sources relied upon by Dr. Keldie and the DOC—including from NIOSH, the CDC, and OSHA—widely agree that WBGT is more accurate, efficient, and effective than heat index monitoring alone."). Indeed, the OSHA guidance cited by Dr. Keldie emphasizes that "[e]mployers should not rely on Heat Index alone for the most accurate hazard assessment," as it "is measured in the shade" and "does not account for the effects of wind, sunlight, radiant heat sources, or workload." ECF 201-22 at 5, 6; *see also* ECF 37-3 (Vassallo Decl.) ¶¶ 21–22, 31, 36 (discussing the effects of atmospheric variables and sunlight on the body). Instead, "OSHA recommends the use of wet bulb globe temperature (WBGT) monitor to measure workplace environmental heat" because it "accounts for *all four* major environmental heat factors—temperature, humidity, radiant heat, and wind." ECF 201-22 at 3, 5 (emphasis in original).[7]

## ARGUMENT

### A.    The Federal Rules of Civil Procedure Permit Supplementation of Expert Reports

An expert witness must provide a report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). And Rule 26(e) requires a party to "supplement or correct" disclosures that are incomplete or incorrect "in some material respect." Fed. R. Civ. P. 26(e)(1)(A). Any such supplementation "must be disclosed by the time the party's pretrial disclosures . . . are due." Fed. R. Civ. P. 26(e)(2).

---

[7]    In modifying HCP8, Defendants also relied on NIOSH guidelines explaining that WBGT is the "index most frequently used and recommended for use throughout the world." *See* ECF 201-17 (Defendants' interrogatory responses); ECF 201-24 (NIOSH guidelines).

Opinions not properly disclosed "as required by Rule 26(a) or (e)" should be excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district court has "broad discretion" in imposing or withholding a Rule 37 sanction. *Passmore* v. *Baylor Health Care Sys.*, 823 F.3d 292, 294–95, 296–97 (5th Cir. 2016) (holding that Rules 26 and 37 operate jointly to create a "federal discovery scheme" that assigns "broad discretion" to district courts with respect to "their control of timing and sanctions for noncompliance").

District courts consider four factors when determining whether to exclude expert evidence as a sanction for the violation of a scheduling order: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Certain Underwriters at Lloyd's, London* v. *Axon Pressure Prods. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020).

**B.    Dr. Vassallo's Opinions Were Properly and Timely Disclosed**

Without citation to relevant legal authority, Defendants argue the challenged paragraphs of Dr. Vassallo's Fourth Supplemental Declaration were not timely disclosed. *See* ECF 214-1 at 4-5. Defendants base this specious claim on *Sobrino-Barrera* v. *Anderson Shipping Co.*, 495 F. App'x 430 (5th Cir. 2012), an unpublished maritime personal injury action where the district court excluded an expert's supplemental affidavit filed at summary judgment because it set forth an entirely new methodology with no justification for untimeliness.

*Sobrino-Barrera* bears no resemblance to this action. First, Dr. Vassallo's Fourth Supplemental Declaration is timely, particularly since there is no trial date or current deadline for pretrial disclosures. *See* Fed. R. Civ. P. 26(e)(2). Second, and unlike in *Sobrino-Barrera*, the contested paragraphs do not set forth a new methodology. Instead, Dr. Vassallo simply updates her existing analysis based on new information, including Defendants' new heat pathology policy. This is appropriate supplementation. *See* Fed. R. Civ. P. 37(c)(1).

So, too, is Dr. Vassallo's opinion that WBGT monitoring from Angola's fields would achieve far more accurate and reliable measurements of atmospheric conditions than the heat index data recorded in the shade at the National Weather Service's New Roads False River Regional Airport weather station. ECF 201-3 ¶¶ 18–28. Critically, the ongoing reliability of the NWS, a federal agency, has changed drastically in recent months.[8] Even during the course of this litigation, NWS heat index data recordings have been intermittent and unpredictable. *See e.g.,* ECF 82; ECF 90; ECF 107; ECF 108; ECF 110; ECF 114; ECF 116.

In any event, and as Dr. Vassallo has explained, *see* ECF 201-3 ¶ 24, the very sources relied upon by Dr. Keldie and the DOC—including from NIOSH and OSHA—agree that WBGT is more accurate, efficient, and effective than heat index monitoring alone. *See* ECF 201-20 (Keldie Decl.) (relying extensively on OSHA guidance extolling WBGT as the industry standard); ECF 201-17 at 4 (Defendants' sworn admission that DOC relied on NIOSH guidelines, which in turn state that WBGT is the "index most frequently used and recommended for use throughout the world"); *see also* ECF 120-61 (Vassallo Second Supp. Decl.) ¶¶ 19–25 (same).

**C.    Defendants Have Suffered No Prejudice, Surprise, or Harm**

The purpose of Rule 26(e) is to prevent prejudice and surprise. *See Reed* v. *Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994). Defendants do not claim prejudice or surprise here. *See generally* ECF 214-1. Instead, they complain the contested paragraphs have caused them harm, apparently because "Defendants were given 16 days to respond" to Plaintiffs' Motion for a Second Temporary Restraining Order and Preliminary Injunction. *Id.* at 5.

---

[8]    *See* https://wgno.com/news/louisiana/lsu-climatologist-warns-doge-noaa-cuts-may-disrupt-weather-forecasting/ (LSU professor discussing potential impact of budget cuts on NWS's ability to provide up-to-date weather information).

In any case, Defendants *did* respond to Plaintiffs' Motion, and they did so within the time frame ordered by this Court. *See* ECF 212. Defendants even filed a new affidavit from Dr. Keldie, which addresses each of the three opinions which Defendants now seek to strike. *See* ECF 212-14 (Affidavit of Dr. Carl Keldie) ¶¶ 12-21 ("Heat Alert Threshold"); ¶¶ 44-48 ("Monitoring Heat); ¶¶ 42-43 ("Heat Season"); *cf. Reese* v. *Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) ("[T]he expert disclosure rule is intended to provide opposing parties [a] reasonable opportunity to . . . arrange for expert testimony from other witnesses.") (internal citations omitted)). Accordingly, even if the paragraphs at issue were untimely disclosed (they were not), such disclosure was both substantially justified and harmless. *See* Fed. R. Civ. P. 37(c)(1).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike Portions of Fourth Supplemental Declaration of Dr. Susi Vassallo, ECF 212, should be denied.

Dated: April 16, 2025

**THE PROMISE OF JUSTICE INITIATIVE**

*/s/ Samantha Pourciau*
Samantha Pourciau, La. Bar No. 39808
Kara Crutcher (PHV) IL Bar No. 6337639
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
sbosalavage@defendla.org
kcrutcher@defendla.org

**RIGHTS BEHIND BARS**

*/s/ Lydia Wright*
Lydia Wright, La. Bar No. 37926416
Amaris Montes (PHV) MD Bar No. 2112150205
D Dangaran, (PHV) D.C. Bar No. 90023981
1800 M St. NW Fnt. 1 #33821
Washington, D.C. 20033
Tel: (202) 455-4399
lydia@rightsbehindbars.org
amaris@rightsbehindbars.org
d@rightsbehindbars.org

**PAUL, WEISS, RIFKIND, WHARTON**
 **& GARRISON LLP**

*/s/ Jeremy A. Benjamin*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Michael McGregor (PHV) NY Bar No. 5510490
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo Sabater (PHV) NY Bar No. 5993217
Chizoba D. Wilkerson (PHV) NY Bar No. 5903943
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
mmcgregor@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
cwilkerson@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*