UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF ITSELF AND ITS MEMBERS, ET AL.<br><br>VERSUS<br><br>JAMES LEBLANC, ET AL. | CIVIL ACTION<br><br>NO. 23-01304-BAJ-EWD |

### RULING AND ORDER

Now before the Court are Defendants James LeBlanc, Timothy Hooper, and Louisiana Department of Public Safety and Corrections' **Motions In Limine And Daubert Motions To Exclude Or Limit Testimony Of Plaintiffs' Expert Witnesses Joshua Sbicca, Ph.D., and Evelynn Hammonds (Doc. 125, Doc. 126, collectively the "Motions")**. Plaintiffs oppose the Motions. (Doc. 137). Defendants filed a Reply Brief. (Doc. 183).

### I. BACKGROUND

Plaintiffs filed an Amended Complaint on December 15, 2023, seeking, among other relief, certification of various classes, and declaratory judgment in favor of Plaintiffs finding that Defendants are violating the constitutional rights of the members of the putative classes by forcing them to work on the Farm Line[1] in unsafe and inhumane conditions. (Doc. 21). The complete alleged facts of this case have been provided by the Court at length in its previous ruling. (*See* Doc. 70). Since that Ruling,

---

[1] The Farm Line is one of Louisiana State Penitentiary's agricultural programs in which men sentenced to hard labor at the prison must harvest fruits and vegetables as a part of their sentence. (*See* Doc. 70). The current conditions of the Farm Line remain in dispute.

Plaintiffs have offered the expert testimony of Dr. Evelynn Hammonds and Dr. Joshua Sbicca in support of their Motion To Certify Class.[2] (Doc. 120).

In their Motions in Limine, Defendants ask the Court to prohibit or substantially limit the testimony of Plaintiffs' experts Joshua Sbicca, Ph.D., and Evelyn Hammonds. (*See* Doc. 125–126). For the reasons described below, Defendants' Motions are **DENIED**.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness may be qualified as an expert by knowledge, skill, experience, training, or education, and that this expert may testify in the form of an opinion or otherwise if the proponent demonstrates that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[2] This Court has considered whether to apply a relaxed *Daubert* standard in the context of a class certification hearing and emphasized:

> [A] plain reading of Federal Rule of Evidence 702 does not suggest a different application of the Court's gatekeeping function in the context of class certification. The prevailing view seems to be that where an expert's testimony is critical to class certification, "a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion"—*i.e.*, "the district court must perform a full *Daubert* analysis before certifying the class." Moreover, the United States Supreme Court has suggested that district courts should apply the same standard at the class certification stage that they would apply to expert testimony offered at a later stage of proceedings.

*Carroll v. SGS Auto. Servs., Inc.*, No. CV 16-537-SDD-RLB, 2020 WL 7024477, at *2 (M.D. La. Nov. 30, 2020) (Dick, J.) (internal citations omitted).

2

"Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based." *Fayard v. Tire Kingdom, Inc.*, No. CIV.A. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010). The Court has broad discretion in deciding whether to admit expert opinion testimony. *See Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 340 (M.D. La. 2021) (collecting cases).

Rule 702 was amended in 2023 in two respects. First, to emphasize that 702 factors must be demonstrated by a preponderance of the evidence. The official comments explain that this "was made necessary by the courts that have failed to apply correctly the reliability standard of th[e] rule" Fed. R. Evid. 702 (2023 Amendments). Second, Rule 702(d) was amended to emphasize that an expert's opinion "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.*; *see also Ozuna v. Pena*, No. CV 22-915-SDD-RLB, 2024 WL 2955609, at *1 (M.D. La. June 12, 2024)

### III. DISCUSSION

Defendants argue that both Sbicca and Hammonds' expert testimony should be excluded or substantially limited for numerous reasons. First, Defendants argue that neither expert should be permitted to testify regarding causation of class members' physical or psychological harm. (Doc. 125-1 at 6; Doc. 126-1 at 6). Second, Defendants argue that the proposed experts' testimonies are unreliable, speculative,

3

and based on their own unsupported statements and conclusions. (Doc 125-1 at 9; Doc. 126-1 at 7). Third, Defendants argue that many of the conclusions made by Sbicca and Hammonds amount to impermissible legal conclusions. (*Id.* at 7, 6). The Court will address each argument below.

### A.    Testimony Regarding Causation of Physical or Psychological Harm.

In their Motions, Defendants argue that neither Sbicca nor Hammonds is qualified to testify regarding whether work on the Farm Line produces psychological or physical harm. (Doc. 125-1 at 6; Doc. 126-1 at 6). In their opposition, Plaintiffs agree: "[N]either Dr. Hammonds nor Dr. Sbicca has ever purported to diagnose any medical or psychological harm suffered by any named plaintiff or class members, and *neither intends to do so at trial.*" (Doc. 173 at 14) (emphasis added).

Plaintiffs assert that instead, Sbicca and Hammonds will testify regarding the historical risk of harm under Farm Line conditions. (*See* Doc. 173 at 18, 26). Defendants do not address Sbicca and Hammonds' testimony from a historical lens; Defendants instead object to any mention of an increased risk of harm. (*See* Doc. 125-1 at 6; Doc. 126-1 at 6).

To the extent that either Hammonds or Sbicca attempt to testify regarding causation of physical or psychological harm to the purported class members, Defendants may object to such testimony at the time of trial, and the Court will rule on any objection at that time. The Court will not otherwise limit Sbicca and Hammonds' testimony regarding the historical risk of harm under Farm Line conditions at this time.

4

B.   **Whether Hammonds and Sbicca's Expert Testimony Is Speculative, Unreliable, or Based on Their Own "Ipse Dixit."[3]**

Defendants challenge Hammonds and Sbicca's opinions as "speculative, unreliable, and based upon their own *ipse dixit.*" (Doc. 125-1 at 9; Doc. 126-1 at 7). Specifically, Defendants argue that: (1) the experts are not reliable; (2) the experts' relied on insufficient materials in reaching their conclusions; and (3) Sbicca has a biased opinion, rendering his conclusions of no use to the factfinder. The Court will address each in turn.

   i.   **Measuring the Reliability of Hammonds and Sbicca's Expert Opinions.**

The United States Supreme Court recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

In that vein, the United States Court of Appeals for the Fifth Circuit has concluded that "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)).

---

[3] *Ipse dixit* is defined by Black's Law Dictionary as "something asserted but not proved." *Ipse Dixit*, Black's Law Dictionary (12th ed. 2024).

5

In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies," district courts are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case." *Id.* (internal citations omitted) (relying on *Pipitone*, 288 F.3d at 247) (emphasis added). Here, Hammonds and Sbicca's expertise falls within the social sciences. Thus, the Court will examine their professional experience, education, training, and observations in that context.

Regarding Hammonds, Defendants acknowledge that Hammonds is imminently qualified in her field. (Doc. 126-1 at 6). Hammonds is the Barbara Gutmann Rozenkrantz Professor of the History of Science at Harvard University. (*Id.*). Hammonds is also a Professor of African American Studies at Harvard University within the Faculty of Arts and Sciences. (*Id.*). At Harvard, Dr. Hammonds served as first Senior Vice Provost for Faculty Development and Diversity (2005–2008), Dean of Harvard College (2008–2013), and Chair of the Department of History of Science (2017–2022). (*Id.*). Dr. Hammonds has published extensively. (*Id.*). She has written articles in leading peer-reviewed academic journals and books, among other academic distinctions. (*Id.*). Her research has appeared in journals such as *Nature*, *American Psychologist*, and *Science*. (*Id.*).

Dr. Hammonds has earned the following degrees: (1) Bachelor of Science in Physics from Spelman College; (2) Bachelor of Electrical Engineering from the

Georgia Institute of Technology; (3) Master of Science in Physics from the Massachusetts Institute of Technology; and (4) Doctor of Philosophy in the History of Science from Harvard University. (Doc. 126-7 at 3).

Sbicca, like Hammonds, is imminently qualified in his field. Sbicca earned his Bachelor of Science in Sociology and Political Science from Santa Clara University. (Doc. 125-7 at 3). Sbicca went on to earn his M.A and Ph.D. in Sociology from the University of Florida. (*Id.*). He is currently an Associate Professor and the Associate Chair of the Department of Sociology at Colorado State University ("CSU"). (*Id.*). Sbicca founded the Prison Agriculture Lab at CSU, where he currently serves as its Director. (*Id.*). Sbicca serves as a faculty affiliate for Food Systems and the Center for Fair and Alternative trade at CSU. (*Id.*)

Sbicca has published on topics related to sociology and prison agricultural labor, including "numerous articles in leading peer-reviewed academic journals, chapters for academic volumes, and encyclopedias." (Doc 173 at 10). Sbicca has also written articles for leading peer-reviewed academic journals and has served as an editor of several academic publications. (Doc. 125-7 at 3). Sbicca has authored three books—Environmental Justice in the Anthropocene: From (Un)Just Presents to Just Futures, A Recipe for Gentrification: Food, Power, and Resistance in the City, and Food Justice Now!: Deepening the Roots of Social Struggle. (*Id.*).

As the Fifth Circuit has made clear, "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123

(5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)). In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. An examination of Hammonds and Sbicca's professional experience, education, training, and observations, reveals that both are qualified in their fields. The Court will not exclude their opinions.

### ii. Experts' Reliance Materials.

Defendants also seek to exclude both experts' conclusions that the Farm Line creates a heightened risk of physical and psychological harm because their opinions are based on mischaracterized or insufficient materials from the factual record. (Doc. 125-1 at 13–14; Doc. 126-1 at 11). In support of their argument, Defendants provide excerpts from deposition testimony and both expert reports in arguing that they address only portions of the factual record, mischaracterizing certain exchanges. *(Id.)*. Defendants argue that this proves that Hammonds and Sbicca failed to support their opinions, rendering their conclusions unreliable. (*Id.* at 13).

This Court has found, however, that "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Roake v. Brumley*, No. CV 24-517-JWD-SDJ, 2024 WL 4751509, at *5 (M.D. La. Nov. 12, 2024), *hearing en banc denied*, 132 F.4th 748 (5th Cir. 2024)

> Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:
>
> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system.

8

> As the Daubert Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the juror's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

*Roake v. Brumley*, No. CV 24-517-JWD-SDJ, 2024 WL 4751509, at *5–6 (M.D. La. Nov. 12, 2024), *hearing en banc denied*, 132 F.4th 748 (5th Cir. 2024) (citing *Scordill v. Louisville Ladder Grp., L.L.C.*, No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (additional citations omitted)).

And "since Rule 702 is aimed at protecting jurors from evidence that is unreliable for reasons they may have difficulty understanding, in a bench trial there is greater discretion regarding procedure and even the stringency of gatekeeping." 29 Victor J. Gold, Federal Practice & Procedure § 6270 (2d ed. 2024).

> In a bench trial, the principal reason for the Court's gatekeeping function is not implicated, namely to guard against jury confusion which may result from irrelevant and/or unreliable expert opinion testimony. The purpose of the Court's gatekeeping function required by *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury." "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."

*Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 2516876, at *1 (M.D. La. June 18, 2019) (Dick, C.J.) (citations omitted); *see also Nassri v. Inland Dredging Co.*,

9

No. 11-853, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013).

Stated another way, "[t]here is less need for the gate keeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Smiley*, 2021 WL 292449, at *8–9; *see also Roake v. Brumley*, No. CV 24-517-JWD-SDJ, 2024 WL 4751509, at *8 (M.D. La. Nov. 12, 2024), *hearing en banc denied*, 132 F.4th 748 (5th Cir. 2024).

### iii. Whether Dr. Sbicca's Opinion is Biased.

Defendants argue that Sbicca's "personal preference" for rehabilitative practices taint his opinion and argue that his conclusions are not sufficiently related to Louisiana State Penitentiary. (Doc 125-1 at 16). Defendants claim that Sbicca's opinions relate to "societal issues, not specific issues at LSP." (*Id.* at 17). Defendants argue that, as a result, Sbicca's opinions do not assist the trier-of-fact in an analysis of the facts of this case. (*Id.*) Plaintiffs respond that, even if Sbicca's testimony were biased, it "would not be a proper basis to exclude his testimony" on a *Daubert* motion because, the Court's primary task is to evaluate an expert's opinions relevancy and reliability, not his personal bias. (Doc. 173 at 22).

The Court is instructed by *Daubert* to consider an expert's methodology, not his conclusions. *Daubert*, 509 U.S. at 594–95. On a *Daubert* motion, "the Court's primary duty in its gate-keeping function is to determine whether the witness is

10

qualified and whether his opinions are relevant and reliable, not whether the witness has a personal bias." *Brawhaw ex rel. Hays* v. *Marine Health Care, Inc.*, 2008 WL 2004707, at *5 (N.D. Miss. May 8, 2008); *see Johnson* v. *Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 167 (E.D. La. 2011) (denying *Daubert* motion and holding that it is the factfinder who must determine questions of bias).

Indeed, a *Daubert* challenge does not test the correctness of the opinion but only the methodology utilized by the expert. Fed. R. Evid. 702 Advisory Committee's Notes to 2023 Amendment ("[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."); *see also Roake v. Brumley*, 756 F. Supp. 3d 219, 235 (M.D. La.), *hearing en banc denied*, 132 F.4th 748 (5th Cir. 2024). This Ruling on the *Daubert* challenge makes no comment in that regard. Whether the Court finds Hammonds and Sbicca's opinions substantively persuasive and supported by the evidence will be considered on the merits of Plaintiffs' Motion for Class certification. The Court will not exclude Sbicca's testimony on the basis of his alleged bias.

### C. Legal Conclusions.

In their Motions, Defendants argue that Sbicca and Hammonds should be barred from offering legal conclusions. (Doc. 125-1 at 8; Doc. 126-1 at 8). Defendants argue that Hammonds' opinion regarding an increased risk of physical or psychological harm is an impermissible legal conclusion because it addresses the first element of Plaintiffs' Eighth Amendment claim. (Doc. 126 at 8–9). Defendants argue

that Sbicca's report attempts to reword phrases to hide his legal conclusions, emphasizing that: "[t]hough he avoids using the words 'cruel' and 'unusual,'" this description shows [Sbicca's] attempt to state a conclusion that the Farm Line must be viewed as cruel and unusual punishment." (Doc. 125-1 at 12).

Plaintiffs respond that Defendants' concern about legal conclusions is premature and unfounded. (Doc. 173 at 6). Plaintiffs emphasize that they "recognize the well-established limits of expert testimony and do not intend to rely upon Dr. Hammonds or Dr. Sbicca to offer any legal conclusions." (*Id.*). Plaintiffs argue that any objections to legal conclusions would be more appropriately raised at trial. (*Id.*).

It is well settled that experts may not offer opinions that amount to conclusions of law. *C.P. Interest, Inc., California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001). Thus, Hammonds and Sbicca may not offer legal conclusions. Whether Hammonds and Sbicca's conclusions are, in fact, legal conclusions, is an issue that the Court will address at trial. The Court reminds the parties that as the tier-of-fact, there is no issue of jury confusion or prejudice in this case. *See Roake, supra*. Thus, the Court will not exclude excerpts of Hammonds and Sbicca's testimony at this time.

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motions In Limine And Daubert Motions To Exclude Or Limit Testimony Of Plaintiffs' Expert Witnesses Joshua Sbicca, Ph.D., and Evelynn Hammonds** (Doc. 125; Doc. 126) are

DENIED.

Baton Rouge, Louisiana, this 21ST day of April, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**