## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **VOICE OF THE EXPERIENCED**, a membership organization on behalf of itself and its members; and **MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY, KENDRICK STEVENSON**, and **ALVIN WILLIAMS**, on behalf of themselves and all others similarly situated, | Civil Action No.: 3:23-cv-1304-BAJ-EWD |
| *Plaintiffs*, | |
| v. | |
| **JAMES LEBLANC**, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; **TIMOTHY HOOPER**, in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**; and **PRISON ENTERPRISES, INC.**, | |
| *Defendants*. | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A
## SECOND TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I.    THIS COURT HAS AUTHORITY TO ENJOIN DOC'S CONDUCT ............................2

II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THeir HEAT CLAIMS .......................4

    A.    Defendants' New Measures Fail to Remedy the Constitutional Violations............4

        1.    Defendants' Calendar-Based Heat Season Is Arbitrary. .............................4

        2.    Defendants' Decision to Raise the Heat Alert Threshold Was
Based on Counsel's Assessment of What This Court Would
Permit, Not on Any Science........................................................................5

        3.    The Outdoor Work-Stop Threshold Is Dangerously High.........................6

        4.    HPDS Medications and Medical Exclusions Lists Are
Underinclusive. .........................................................................................7

        5.    Defendants' Heat Measurements Are Unreliable........................................8

        6.    Enforcement of Heat Precautions Is Inconsistent. .....................................9

    B.    Defendants' Other Defenses Fail ..........................................................................9

III.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR ADA CLAIMS ...................11

IV.   DEATH AND SERIOUS INJURY ARE PLAINLY IRREPARABLE ...........................11

V.    THE EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION .....................12

VI.   THE REQUESTED RELIEF IS APPROPRIATE UNDER THE PLRA.........................12

CONCLUSION......................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ball* v. *LeBlanc*,
  <u>792 F.3d 584</u> (5th Cir. 2015) ........................................................1, 4, 9

*Ball* v. *LeBlanc*,
  No. 3:13-cv-00368 (M.D. La. Nov. 5, 2018) ...........................................4

*Blackmon* v. *Garza*,
  <u>484 F. App'x 866</u> (5th Cir. 2012) ......................................................1, 10

*Book People, Inc.* v. *Wong*,
  <u>91 F.4th 318</u> (5th Cir. 2024) .................................................................12

*Brown* v. *Plata*,
  <u>563 U.S. 493</u> (2011)...............................................................2, 3,  10, 12

*Califano* v. *Yamasaki*,
  <u>442 U.S. 682</u> (1979)................................................................................2

*Cole* v. *Collier*,
  <u>2017 WL 3049540</u> (S.D. Tex. July 19, 2017).................................5, 10

*Farmer* v. *Brennan*,
  <u>511 U.S. 825</u> (1994)...............................................................................10

*Gates* v. *Cook*,
  <u>376 F.3d 323</u> (5th Cir. 2004) ........................................................4,  9, 10

*Georgia Advoc. Off.* v. *Jackson*
  <u>4 F.4th 1200</u> (11th Cir. 2021) .................................................................3

*Gillespie* v. Crawford,
  <u>858 F.2d 1101</u> (5th Cir. 1988) ..............................................................11

*Harding* v. *Edwards*,
  <u>487 F. Supp. 3d 498</u> (M.D. La. 2020).................................................11

*Harris* v. *Angelina Cnty., Tex.*
  <u>31 F.3d 331</u> (5th Cir. 1994) ....................................................................9

*Helling* v. *McKinney*,
  <u>509 U.S. 25</u> (1993).................................................................................11

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Hinojosa* v. *Livingston*,
807 F.3d 657 (5th Cir. 2015) ...................................................................10

*Jensen* v. *Shinn*,
609 F. Supp. 3d 789 (D. Ariz. 2022) .......................................................11

*Jones* v. *Diamond*,
594 F.2d 997 (5th Cir. 1979) .....................................................................2

*Jordan* v. *Gardner*,
986 F.2d 1521 (9th Cir. 1993) .................................................................10

*Lewis* v. *Cain*,
2021 WL 1219988 (M.D. La. Mar. 31, 2021) .............................................1

*Mayweathers* v. *Newland*,
258 F.3d 930 (9th Cir. 2001) .....................................................................3

*Melendez* v. *Sec'y, Fla. Dep't of Corr.*,
2022 WL 1124753 (11th Cir. Apr. 15, 2022) .............................................3

*Monroe* v. *Bowman*,
122 F.4th 688 (7th Cir. 2024) .....................................................................3

*Niz-Chavez* v. *Garland*,
593 U.S. 155 (2021) ....................................................................................2

*Patterson* v. *Daniels*,
2013 WL 2100546 (E.D. La. March 22, 2013) ..........................................12

*Slaughter* v. *Southern Talc Co.*,
919 F.2d 304 (5th Cir. 1990) .....................................................................7

*Smith* v. *Edwards*,
88 F.4th 1119 (5th Cir. 2023) .....................................................................3

*Voice of the Experienced* v. *LeBlanc*,
2024 WL 3279899 (M.D. La. July 2, 2024) ..............................................10

*Voice of the Experienced* v. *Westcott*,
No. 24-30420, ECF-65 (5th Cir. Oct. 9, 2024) ...........................................3

*Webb* v. *Livingston*,
618 F. App'x 201 (5th Cir. 2015) ................................................................1

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

**Statutes**

18 U.S.C. § 3626(a)(2)..................................................................................2, 12

1 U.S.C. § 1...................................................................................................2

**Other Authorities**

Hospers, Lily, et al., *The effect of prescription and over-the-counter medications on core temperature in adults during heat stress: a systematic review and meta* analysis, 77 EClinicalMedicine 1 (2024)....................................................7, 8

Shannon Heckt, *LSU climatologist warns DOGE NOAA cuts may disrupt weather forecasting*, WGNO ABC ( Mar. 12, 2025) https://wgno.com/news/louisiana/lsu-climatologist-warns-doge-noaa-cuts-may-disrupt-weather-forecasting/ ..............................................................8

Plaintiffs filed the instant motions with the utmost sense of urgency as another season of blistering heat approaches. Temperatures are rising fast, with heat indices already regularly exceeding 88°F and even 91°F. *See* Ex. 51.

Last summer, this Court entered a preliminary injunction after finding Plaintiffs likely to succeed on the merits of their claim that the Farm Line is cruel and unusual punishment in violation of the Eighth Amendment. ECF 70. That injunction expired 90 days later. *See* 18 U.S.C. § 3626(a)(2). Defendants now claim they have fixed the unconstitutionally dangerous conditions that necessitated this lawsuit in the first place. In reality, Defendants have chosen to make conditions *less safe*, including by arbitrarily *increasing* the threshold at which they issue a heat alert, which, in turn, increases the threshold at which their heat precaution measures are triggered and men with a heat precaution duty status ("HPDS") are entitled to relief from forced labor in Angola's fields. *See* ECF 212-11 (HCP8, effective Oct. 20, 2024); ECF 212-4 (Directive No. 13.067, effective April 8, 2025).

The Fifth Circuit has repeatedly affirmed determinations that prison officials violated the Eighth Amendment where they implemented remedial measures that proved inadequate to protect plaintiffs from extreme heat. *See Ball* v. *LeBlanc*, 792 F.3d 584, 592–93 (5th Cir. 2015); *Webb* v. *Livingston*, 618 F. App'x 201, 209 (5th Cir. 2015); *Blackmon* v. *Garza*, 484 F. App'x 866, 871–72 (5th Cir. 2012); *see also Lewis* v. *Cain*, 2021 WL 1219988, at *39 (M.D. La. Mar. 31, 2021) ("[E]fforts to correct systemic deficiencies that simply do not go far enough, when weighed against the risk of harm, also constitute deliberate indifference because such insufficient efforts are not reasonable measures to abate the identified substantial risk of serious harm.") (cleaned up) (internal citations omitted).

The same result is appropriate here. Plaintiffs' Motion for a Second Temporary

Restraining Order and Preliminary Injunction should be granted.

## I.    THIS COURT HAS AUTHORITY TO ENJOIN DOC'S CONDUCT

Defendants urge the Court to adopt a strained interpretation of the PLRA that would prevent it from taking *any* action to remedy constitutionally deficient conditions at LSP simply because Plaintiffs previously obtained a preliminary injunction. Specifically, Defendants make two interrelated arguments about the PLRA, both of which stretch its requirements beyond recognition: first, that "a plaintiff may never obtain multiple preliminary injunctions in the same litigation," ECF 223 ("Resp.") at 13, and second, that Plaintiffs seek to extend an expired injunction, *id.* at 14–15 (citing 18 U.S.C. § 3626(a)(2)). Both arguments contravene Supreme Court and other federal precedent.

Defendants' argument that the PLRA does not permit multiple preliminary injunctions flies in the face of established precedent and the basic principle that courts in equity have discretion to protect individuals from constitutional violations. Federal courts have the authority—and obligation—to eliminate and remedy conditions of cruel and unusual punishment. *See Brown* v. *Plata*, 563 U.S. 493, 511 (2011) ("If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation."); *Jones* v. *Diamond*, 594 F.2d 997, 1015 (5th Cir. 1979).

Defendants' textualist reading of the PLRA as limiting courts to a single order of injunctive relief is far from "the clearest command." *Califano* v. *Yamasaki*, 442 U.S. 682, 705 (1979); *see also Niz-Chavez* v. *Garland*, 593 U.S. 155, 164 (2021) ("When reading the U.S. Code," federal courts are "to assume 'words importing the singular include and apply to several persons, parties, or things.") (citing 1 U.S.C. § 1). This tortured reading of the PLRA conflicts with federal courts nationwide that have permitted successive orders for either preliminary or permanent injunctive

relief.[1]  *See, e.g.*, *Monroe* v. *Bowman*, <u>122 F.4th 688, 697</u> (7th Cir. 2024) (holding that, under the PLRA, plaintiffs "may ask the district court for a new injunction, preliminary or permanent"); *Melendez* v. *Sec'y, Fla. Dep't of Corr.*, <u>2022 WL 1124753</u>, at *20–21 (11th Cir. Apr. 15, 2022) (affirming a second preliminary injunction after the first expired by operation of the PLRA); *Mayweathers* v. *Newland*, <u>258 F.3d 930, 936</u> (9th Cir. 2001) ("Nothing in the [PLRA] limits the number of times a court may enter preliminary relief.").

Beyond this, Defendants' attempt to construe Plaintiffs' new motion as an improper "extension" of their first preliminary injunction is even less persuasive.  The instant motion seeks entirely new relief, the merits of which are presented below.  But even if the present motion could be considered an "extension" of this Court's first order of injunctive relief, the Fifth Circuit has endorsed the practice of extending a 90-day injunction under the PLRA.  *See Smith* v. *Edwards*, <u>88 F.4th 1119, 1127</u> (5th Cir. 2023) ("[T]hough the injunction automatically expired under the PLRA, Plaintiffs could have sought an extension to extend its duration.").  Defendants conceded this point in their appeal of <u>ECF 70</u>, the preliminary order issued by this Court earlier in this case.  *Voice of the Experienced* v. *Westcott*, No. 24-30420, <u>ECF 65 at 28</u>–29 (5th Cir. Oct. 9, 2024) (acknowledging that *Smith* held that extensions are permitted but calling *Smith* "incorrect").

In essence, Defendants urge this Court to chart a new course depriving thousands of incarcerated class members of a remedy for the ongoing violation of their constitutional rights.  This Court should decline the invitation.  *See Brown*, <u>563 U.S. at 526</u> ("Courts should presume that . . . Congress did not leave [incarcerated people] without a remedy for violations of their

---

[1]    *Georgia Advoc. Off.* v. *Jackson* was vacated before it could be reversed en banc.  <u>4 F.4th 1200, 1211</u> (11th Cir. 2021), *vacated,* <u>33 F.4th 1325</u> (11th Cir. 2022).  Cases following *Georgia* in the Eleventh Circuit have intentionally disregarded *Georgia*'s holding regarding multiple injunctions and allowed them to go forward in prisoner cases.  *See, e.g.*, *Melendez* v. *Sec'y, Fla. Dep't of Corr.*, <u>2022 WL 1124753</u>, at *21 (11th Cir. Apr. 15, 2022).

constitutional rights.").

## II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR HEAT CLAIMS

### A.     Defendants' New Measures Fail to Remedy the Constitutional Violations

Plaintiffs have already explained the myriad ways in which Defendants have failed to protect class members from heat-related harm.  *See* ECF 201-1 ("Mot.") at 10–12 (discussing HCP8's arbitrary applicability period); 12–15 (discussing DOC's decision to raise the heat alert threshold); 15–16 (discussing deficiencies in the Heat Pathology Medication List); 16–17 (discussing deficiencies in the Medical Exclusions List); 17–19 (discussing DOC's failure to implement other adequate remedial measures).  Defendants' knowing failure to take precautions when there are obvious dangerous working conditions is evidence of deliberate indifference.  *Ball*, 792 F.3d at 594–95.  Each of Defendants' arguments in opposition falls short.

### 1.     *Defendants' Calendar-Based Heat Season Is Arbitrary.*

Contrary to Defendants' assertions, neither *Ball* nor *Gates* "approved" the arbitrary heat season set forth in HCP8.  *Ball*, 792 F.3d at 589; *Gates* v. *Cook*, 376 F.3d 323, 327 (5th Cir. 2004). Instead, those cases addressed policies pertaining to indoor climate control.  In any event, LSP agreed in the *Ball* settlement to monitor the heat index beyond the months set forth in HCP8.  *Ball* v. *LeBlanc*, No. 3:13-cv-00368, ECF 475-1 at 2 (M.D. La. Nov. 5, 2018) (extending monitoring period to *April* through October).

Already this year, on April 2 and 3, 2025, two individuals with HPDS were forced to labor on the Farm Line on days when the heat index exceeded 88°F and before the Angola heat season began.  *See* Tutt Decl. at ¶¶ 5–6; Carter Decl. at ¶¶ 5–6; *see also* Ex. 52 at -01756, -01759.  On April 2, 2025, when Mr. Tutt began feeling nauseated and dizzy, he made a Self-Declared Emergency in the field but was never seen by a medical provider.  *See* Tutt Decl. at ¶¶ 6–7; Ex. 52 at -01756.  On April 3, 2025, when Mr. Carter began feeling light-headed, dizzy and nauseous, he

made a Self-Declared Emergency and was told to drink water and take a 15-minute break.  *See* Carter Decl. ¶ 6; Ex. 52 at -01759.

> 2.     *Defendants' Decision to Raise the Heat Alert Threshold Was Based on Counsel's Assessment of What This Court Would Permit, Not on Any Science.*

This Court and others have endorsed 88°F as the appropriate threshold for examining heat risk in prisons.  *See, e.g.*, *Cole* v. *Collier*, 2017 WL 3049540, at *18 (S.D. Tex. July 19, 2017) ("[F]or purposes of litigation, the Court has no basis upon which to question Dr. Vassallo's choice of 88 degrees as a threshold above which the risk of heat-related illness increases, and the Court finds that this choice is sound.").  Defendants have, too.  *See* ECF 201-34 at 4 (HCP8, August 21, 2018).

Remarkably, Dr. Carl Keldie denies the scientific consensus that the incidence of heat-related emergency department visits, hospitalizations, and death increases sharply when the heat index reaches the mid- to high-80s.  *See* ECF 201-03 ¶ 15; 201-05 ¶ 33.  In fact, after a heat index of approximately 86°F, risk of death increases almost *exponentially*.  *See* ECF 201-03 ¶ 15.

In Dr. Keldie's view, it would be "very reasonable" and "extremely safe" to increase the heat alert threshold to 95°F.  *See* ECF 120-19 at 225:22–226:1; 226:18–227:3.  But Defendants ignored Dr. Keldie's recommendation and instead credited *defense counsel's* opinion.  *See* ECF 201-06 at 70:5–8 (Lavespere 30(b)(6)).

Defendants now scramble to back-track.  Resp. at 9; *see also id.* at 17.  They claim that DOC "increased the heat alert threshold from 88 to 91 degrees based on the opinions of Dr. Keldie, which are supported by the U.S. Army, the National Weather Service and NOISHI [sic]."  Resp. at 9.  If anything, and as Plaintiffs have explained, *see* Mot. at 13–15, those sources support Plaintiffs' positions.  *See, e.g.*, Ex. 53 (Exhibit V to Keldie Report) (purported U.S. Army chart applying WBGT monitoring but not setting any "threshold" for heat protection); Resp. at 16 (NWS

heat index chart demonstrating the likelihood of heat disorders increases with prolonged exposure or strenuous activity). They certainly provide no support for a 91°F heat threshold.

Defendants also conveniently fail to mention that Dr. Keldie's report was also apparently informed by an OSHA report entitled "Prevention: Heat Hazard Recognition." *See* ECF 201-21 (Exhibit IV to Keldie Report, citing ECF 201-22). That guidance—in direct contradiction to Dr. Keldie's recent affidavit—(a) unequivocally advocates for WBGT monitoring instead of heat index monitoring; (b) warns that outdoor workers have died of heat stroke when the day's maximum heat index was only 86°F and that less severe heat-related illnesses can occur at even lower heat index values; and (c) defines "[p]icking fruit or vegetables" as a moderate workload activity. *Compare* ECF 201-22 at 5–7 (OSHA Report) *with* ECF 212-14 at ¶¶ 48, 22, 18 (Keldie Affidavit).

Most damningly, Defendants' response brief says that this change was informed by NIOSH, *see* Resp. at 9, but NIOSH clearly recommends "a [WBGT] of about 30°C (86°F)" as "the upper limit for unimpaired performance on sedentary tasks," and for moderate work like the Farm Line, endorses an "upper limit" of 82.4°F. ECF 201-24 at 143.

### 3. The Outdoor Work-Stop Threshold Is Dangerously High.

Defendants next challenge Dr. Vassallo's opinion that all outdoor work should stop when the heat index reaches 103°F. Resp. at 20; *see also* ECF 201-03 at ¶¶ 29–30. According to Defendants, this would impermissibly hold DOC "to a higher standard than all agricultural workers across the country." Resp. at 20. This is a red herring. Neither agricultural workers, nor workers in any other industry in this country are forced to work in 113°F heat indices on threat of disciplinary sanctions—including solitary confinement—if they refuse. Moreover, Defendants cannot treat the absence of a national standard as proof of such a standard without presenting any evidence whatsoever as to common practices across the agricultural sector.

4.       *HPDS Medications and Medical Exclusions Lists Are Underinclusive.*

Defendants failed to revise the Heat Pathology Medication List to include classes of medications known to impair thermoregulation.  ECF 201-3 at ¶¶ 32–45.  Dr. Reynolds-Barnes has, until now, failed to justify her conclusions with *a single* citation to any authority.  *See* ECF 120-62 at 4 (stating she reviewed "literature"); ECF 201-19 at 116:4–18 ("And I did not keep a list of everything.  I mean, some things got pulled.  Some things I just reviewed online.").  Far from proving men on the Farm Line are not at imminent risk of harm, her opinions would not even be *admissible* at trial.  *Slaughter* v. *S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) (explaining that expert reports that are "nothing more than bare conclusions" are inadmissible because they offer no value to the trier of fact).

Dr. Reynolds-Barnes's new affidavit, ECF 212-13, is no improvement.  Taking the example of SSRIs, Dr. Reynolds-Barnes has now found a single article which she erroneously holds out as support that SSRIs should be omitted from the Heat Pathology Medication List because they do not impact "core temperature."  ECF 212-13 at ¶ 8 (citing Hospers, Lily, et al., *The effect of prescription and over-the-counter medications on core temperature in adults during heat stress: a systematic review and meta analysis*, 77 EClinicalMedicine, 1 (2024) [hereinafter "Hospers"]).  In fact, and as Dr. Vassallo has explained, increased core temperature is only one of many variables that can cause an unacceptable and unconstitutional risk of serious harm to heat-sensitive patients.  *See* ECF 202-03 at ¶¶ 39–40 (describing that SSRIs make individuals prone to heat related illness because they "impair the function of the hypothalamus" and  lead to "increased sweating promoting dehydration, electrolyte derangements (e.g., hyponatremia).")  Additionally, Dr. Reynolds-Barnes's newfound source contradicts many of her own conclusions.  For example, the study found that antipsychotics, diuretics, beta blockers, antihistamines, sympathomimetics, and medications with anticholinergic properties of two or lower may have *no* effect on either

7

thermoregulation or core temperature. Hospers at 12. But there is no dispute that these medications *should* be included on the Heat Pathology Medication List. *See* ECF 120-62 at 5–6 (Reynolds-Barnes Report); ECF 201-25 (HCP8 Attachment A, Nov. 7, 2024).

Defendants' Medical Exclusions List is likewise deficient. For instance, Defendants advance the absurd argument that diabetes can be "cured" by forced agricultural labor on the Farm Line. ECF 212-14 at ¶ 60. They claim coronary artery disease is not on the List because a different and more serious condition *is* on the List. *Id*. at ¶ 58. These assertions demonstrate Defendants' ongoing deliberate indifference to the *current* risk of harm faced by people with pre-existing conditions or co-morbidities forced to labor in high heat.[2]

### 5. *Defendants' Heat Measurements Are Unreliable.*

Defendants do not dispute that WBGT monitoring from the worksite is more accurate, efficient, and effective than heat index monitoring from an NWS station miles away. They fail to articulate any burden—financial or otherwise—associated with WBGT monitoring. Resp. at 34.

Instead, Defendants point out that in June 2024—the very beginning of discovery—the parties agreed to use National Weather Service heat index data. ECF 64 at 1–2. But the ongoing reliability of the NWS, a federal agency, has changed drastically in recent months.[3] Even during the course of this litigation, NWS heat index data recordings have been intermittent and

---

[2]    Defendants argue that "Plaintiffs have failed to point to one instance of an offender with diabetes who is assigned to the Farm Line that is experiencing serious difficulty thermoregulating" and therefore fail to show a risk of harm to any potential class member. ECF 212-2 at 26. Defendants have refused to produce medical records of class members prior to class certification, but even with just the records of the self-declared emergencies placed by men on the Farm Line, there is at least one instance from summer 2024 of an individual with pre-diabetes suffering heat-related symptoms. *See* ECF 122-09 at 3–4 (self-declared emergency ("SDE") record from June 7, 2024, of a 31-year old man with pre-diabetes complaining that he was lightheaded and dizzy and instructed to drink more water by the medical provider that assessed him, over thirty minutes after he called for medical attention).

[3]    *See* Shannon Heckt, *LSU climatologist warns DOGE NOAA cuts may disrupt weather forecasting*, WGNO (Mar. 12, 2025), https://wgno.com/news/louisiana/lsu-climatologist-warns-doge-noaa-cuts-may-disrupt-weather-forecasting/ (LSU professor discussing potential impact of budget cuts on NWS's ability to provide up-to-date weather information).

unpredictable.  *See, e.g.*, ECFs 82 at 1; 90 at 1; 107 at 1; 108 at 1; 110 at 1; 114 at 1; 116 at 1.

6.    <em>Enforcement of Heat Precautions Is Inconsistent.</em>

Defendants *still* fail to comply with their own heat policies, as exemplified by the events of August 6, 2024.[4]  They fail to even acknowledge that Plaintiff Hicks has not received HPDS and that other class members have not been notified of any modifications to their status.  *See* ECF 201-30.  And they do not contest or explain their persistent failure to bring those with HDPS off the Line.  *See generally,* Resp. at 29–30.

**B.    Defendants' Other Defenses Fail**

Defendants raise several anemic defenses, each of which fails. *First*, the adequacy of remedial measures depends on the totality of circumstances.  The combined impact of systemic deficiencies may "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need."  *Gates*, 376 F.3d at 333; *see also Ball*, 792 F.3d at 595 (evaluating defendants' subjective state of mind "on the totality of the record evidence" concerning their purported efforts to reduce heat risks at Angola's death row).

*Second*, Defendants' post-litigation remedial measures do not discharge an allegation of deliberate indifference.  *See Ball*, 792 F.3d at 595–96 (affirming deliberate indifference to known risk of heat injury even after LSP began providing misting, fans, access to ice water, and daily showers); *Gates*, 376 F.3d at 340–41 (affirming deliberate indifference despite prison's remedial efforts regarding cell conditions and healthcare); *Harris* v. *Angelina Cnty., Tex.*, 31 F.3d 331, 335–36 (5th Cir. 1994) (affirming prison's deliberate indifference to crowding risks where prison built a dormitory, transferred individuals, and offered alternatives to incarceration).

*Third*, Plaintiffs do not ask this Court to treat Defendants' deficient policies as the sole

---

[4]    Plaintiffs cited an incorrect example in discussing September 16, 2024, Resp. at 20, and aver that they intended to cite August 6, 2024, described earlier in their opening brief, Mot. at 11–12, for a related proposition.

9

evidence of their mental state, as Defendants argue. Rather, those policies, alongside Defendants' "current attitudes and conduct," fail to meaningfully rectify an already identified risk of serious bodily harm over the last year together satisfy the subjective prong. *See Farmer* v. *Brennan*, 511 U.S. 825, 827 (1994) (noting that "current attitudes and conduct" as reflected in "developments that postdate the pleadings and pretrial motions" are relevant to subjective factor) (internal citation omitted).

*Fourth*, the Fifth Circuit has long recognized the "obvious" dangers of insufficient heat protections for incarcerated people. *See, e.g.*, *Hinojosa* v. *Livingston*, 807 F.3d 657, 667 (5th Cir. 2015); *Gates*, 376 F.3d at 340; *Blackmon*, 484 F. App'x at 873; *Cole*, 2017 WL 3049540, at *40. Both this Court and the Fifth Circuit made clear that Defendants' policies and practices were inadequate to abate that risk. *Voice of the Experienced* v. *LeBlanc*, 2024 WL 3279899, at *28–29 (M.D. La. July 2, 2024); ECF 201-04 at 7–8.

*Finally*, that Defendants supposedly consulted their litigation experts in promulgating remedial measures at LSP is not, as Defendants suggest, dispositive. Resp. at 8, 19. This Court is under no obligation to accept as gospel the opinions of Drs. Keldie and Reynolds-Barnes, regardless of the basis for their conclusions or whether the conditions they approve satisfy the constitutional minima. *See Jordan* v. *Gardner*, 986 F.2d 1521, 1529 (9th Cir. 1993) ("It is not enough to say that before enacting a policy prison authorities considered an issue carefully . . . Prison authorities are also required to afford sufficient weight to the constitutional rights of individuals."); *see also Brown*, 563 U.S. at 539–42 (approving district court's evaluation of competing expert testimony and setting goals for prison population levels somewhere in the middle).

Further, that Defendants "consulted" these experts says nothing regarding their attitude

towards safety on the Farm Line. Resp. at 8. Defendants retained Drs. Reynolds-Barnes and Keldie not as independent consultants in a genuine effort to improve conditions on the Farm Line, but as part of their litigation defense; Defendants cannot be applauded for updating their policies when even their own expert witness observed those policies were not medically sound. Resp. at 8; ECF 212-10 at 15:20–16:14 (Reynolds-Barnes) ("The DOC specifically asked that I review the list. And upon review of the list, obviously I felt the list needed to be updated."). And that is all on top of the fact that Defendants merely rubber-stamped the opinions of Dr. Keldie and Dr. Reynolds-Barnes, with no actual inquiry into the cause, effect, and/or treatment of heat-related injuries suffered by men on the Farm Line. *See* Mot. at 8; ECF 201-06 at 24:4–28:11 (Lavespere 30(b)(6)); *cf. Jensen* v. *Shinn*, 609 F. Supp. 3d 789, 867 (D. Ariz. 2022) (citing prison official's failure to "read any of the expert declarations in [the] case" as evidence of deliberate indifference).

## III.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR ADA CLAIMS

Beyond their *Gillespie* argument and specious claim that Plaintiffs have not identified a class member with impaired thermoregulation, Defendants do not refute Plaintiffs' evidence or arguments for relief with respect to people with impaired thermoregulation. *See* Mot. at 21–24; *Gillespie* v. *Crawford*, 858 F.2d 1101 (5th Cir. 1988).

## IV.    DEATH AND SERIOUS INJURY ARE PLAINLY IRREPARABLE

"[T]here can be no injury more irreparable than a risk of serious, lasting illness or death." *Harding* v. *Edwards*, 487 F. Supp. 3d 498, 527 (M.D. La. 2020) (cleaned up) (internal citation omitted). Those risks remain attendant to the Farm Line. Defendants' absurd claim that there have been no incidents of heat stroke, and so there is no *risk* of heat stroke, is illogical and untrue. *See* ECF 201-03 at ¶¶ 99–102 (Vassallo First Decl.). In any event, "a remedy for unsafe conditions need not await a tragic event." *Helling* v. *McKinney*, 509 U.S. 25, 33 (1993).

## V.      THE EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION

Where, as here, a constitutional violation is occurring, the public interest favors an injunction. *Book People, Inc.* v. *Wong*, 91 F.4th 318, 341 (5th Cir. 2024). Even while remaining "sensitive" to the State's interests in prison management, this Court "must not shrink from [its] obligation to enforce the constitutional rights of all persons, including prisoners." *Brown*, 563 U.S. at 511 (cleaned up). Defendants' cited authorities are inapposite. *See, e.g.*, *Patterson* v. *Daniel*s, 2013 WL 2100546, at *21 (E.D. La. March 22, 2013) (balancing a prisoner's nonexistent liberty interest against a prison's administrative interests).

## VI.     THE REQUESTED RELIEF IS APPROPRIATE UNDER THE PLRA

Defendants concede that Plaintiffs "are entitled to a remedy that *eliminates* the constitutional injury." Resp. at 33 (emphasis added). Plaintiffs will prove at trial that stopping the Farm Line altogether is the only way to eliminate the risk posed by Defendants' systemic failures. The instant motion, however, does not seek that relief. As Plaintiffs explained in their opening brief, the proposed injunction here is narrowly drawn, extends no further than necessary to correct the harm, and is the least intrusive means necessary to correct that harm. *See* Mot. at 24–25 (citing 18 U.S.C. § 3626(a)(2)). Contrary to Defendants' mischaracterization, Plaintiffs do not seek relief extending beyond the Farm Line at LSP. *See* Resp. at 3. Indeed, Plaintiffs merely seek a return to a heat alert threshold of 88°F, an accurate, efficient, and reliable way to measure actual conditions at the worksite, and other changes to Defendants' heat pathology policies and practices as applied only to the Farm Line. This narrow relief is within the scope of relief previously ordered by this Court and the Fifth Circuit on a class-wide basis. *See* ECFs 201-04 at 2, 5, 8; 70.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion.

Dated: April 18, 2025

THE PROMISE OF JUSTICE INITIATIVE

*/s/ Samantha Pourciau*
Samantha Pourciau, La. Bar No. 39808
Kara Crutcher (PHV) IL Bar No. 6337639
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
sbosalavage@defendla.org
kcrutcher@defendla.org

RIGHTS BEHIND BARS

*/s/ Lydia Wright*
Lydia Wright, La. Bar No. 37926416
Amaris Montes (PHV) MD Bar No. 2112150205
D Dangaran, (PHV) D.C. Bar No. 90023981
1800 M St. NW Fnt. 1 #33821
Washington, D.C. 20033
Tel: (202) 455-4399
lydia@rightsbehindbars.org
amaris@rightsbehindbars.org
d@rightsbehindbars.org

PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP

*/s/ Jeremy A. Benjamin*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Michael McGregor (PHV) NY Bar No. 5510490
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo Sabater (PHV) NY Bar No. 5993217
Chizoba D. Wilkerson (PHV) NY Bar No. 5903943
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
mmcgregor@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
cwilkerson@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*