# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **VOICE OF THE EXPERIENCED,** a membership organization on behalf of itself and its members; **and MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY, KENDRICK STEVENSON,** and **ALVIN WILLIAMS,** on behalf of themselves and all others similarly situated, | * * * * * * * * * * * | **CIVIL ACTION** **NO.: 3:23-cv-1304** **JUDGE BRIAN A. JACKSON** |
| **VERSUS** | * * | |
| **JAMES LEBLANC,** in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections**; TIMOTHY HOOPER,** in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS;** and **PRISON ENTERPRISES, INC.** | * * * * * * * * * * * * * | **MAGISTRATE JUDGE** **ERIN WILDER-DOOMES** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANTS' POST HEARING BRIEF REGARDING PLAINTIFFS' APPLICATION FOR SECOND TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**NOW INTO COURT,** through undersigned counsel, come Defendants herein, **LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, JAMES LEBLANC,** in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, **TIMOTHY HOOPER,** in his official capacity as Warden of Louisiana State Penitentiary, and the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS** ("Defendants"), who file, as directed by the Court at the April 23 hearing, this

1

Post Hearing Briefing Regarding Plaintiffs' Application for Second Temporary Restraining Order and Preliminary Injunction (R.Doc. 201).

As fully briefed in Defendants' Response to Plaintiffs' Application for Second Temporary Restraining Order and Preliminary Injunction (R.Doc.223), Plaintiffs fail to meet their high burden of proof for a preliminary mandatory injunction. Defendants will only address issues that were raised at the hearing, but fully adopt and incorporate their original Response herein (R.Doc.223).

1. **Plaintiffs' Injunction Request Far Exceeds the PLRA**

Plaintiffs' argument that their injunction requests only apply to the Farm Line is untenable. Plaintiffs seek changes to HCP8, which applies to all DPSC facilities and all DPSC offenders, including both indoor and outdoor procedures. LSP's Directive 13.067 also applies facility wide at LSP, ton include any and all outdoor work across the facility, as well as indoor procedures across the facility. These changes to HCP and 13.067 that Plaintiffs seek include lowering the heat alert threshold in HCP8, increasing the temperature monitoring intervals in 13.067 from one hour to 30 minutes, expanding the heat pathology medication list and medical condition list in HCP8, and lowering the cease work threshold in HCP8. All of these requests are overbroad.

The Fifth Circuit has already held in this case that any injunction that applies to DPSC offenders as a whole, or even LSP offenders who do not work the Farm Line, is overbroad and violates the PLRA. R.Doc. 201-4, p. 6. The following compares the Fifth's Circuit's ruling on Defendants' motion to stay with the current injunction requests:

| Injunction that the Fifth Circuit Found Overbroad in violation of PLRA<br>R.Doc. 201-4 | Injunction Request in Second TRO<br>R.Doc. 201-1, p. 7. |
|---|---|
| "[s]ubmit a revised and expanded Heat Pathology Medications list" | "expand the list of medications and conditions qualifying a person for HPDS" and "grant HPDS to all persons taking such medications or diagnosed with such conditions within 10 days"<br><br>R.Doc. 201-1, p. 7. |
| "[c]reate a procedure to ensure that all incarcerated persons suffering from health conditions that significantly inhibit thermoregulation are assessed by medical personnel and are granted heat precaution duty status" | |
| "[d]evelop an additional heat-related policy to protect those laboring outdoors when heat index values reach or exceed 113 degrees Fahrenheit, the temperature at which the National Weather Service issues excessive heat warnings." | "lower the threshold for all outdoor work to cease from a heat index of 113°F to a heat index of 103°F"<br><br>"issue a "heat alert" whenever the heat index meets or exceeds 88°F and to monitor the heat index every 30 minutes" |

The Fifth Circuit explicitly held that the very injunction that Plaintiffs seek here violates the PLRA. The same result should be reached by this Court. Plaintiffs' requested injunction seeks changes to DPSC-wide policy, as well as Directive 13.067, which applies to any and all outdoor work across the LSP facility, as well as all indoor procedures.

Sweeping institution-wide directives like those sought here are never "narrowly tailored." *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018) ("[I]nstitutional reform injunctions are disfavored, as they 'often raise sensitive federalism concerns' and they 'commonly involve[ ] areas of core state responsibility.' ") (quoting *Horne v. Flores*, 557 U.S. 433, 450, 129 S. Ct. 2579, 2593, 174 L.Ed.2d 406 (2009)) (holding injunction mandating sweeping changes to Texas's foster care system overly broad); cf. *Valentine v. Collier*, 956 F.3d 797, 806 (5th Cir. 2020)

("[M]icromanagement, enforced upon threat of contempt, does not reflect the principles of comity commanded by the PLRA."). *United States v. Mississippi*, 82 F.4th 387, 400 (5th Cir. 2023).

Despite Plaintiffs' attempt to argue otherwise, the injunction request seeks policy changes to DPSC policies that apply to all facilities and DPSC offenders, as well as LSP directives that affect indoor procedures, and outdoor procedures for offender jobs other than the Farm Line. The injunction request violates the PLRA and should be denied on this basis alone.

**2. The PLRA does not allow this Court to require DPSC and LSP to codify procedures already in place into the policies that Plaintiffs choose**

At the hearing, it appears that Plaintiffs' counsel argued that Plaintiffs are seeking a ruling from the Court requiring that offenders working the Farm Line be provided with: (1) lace up boots; (2) sun hats; (3) sunscreen; (4) gloves; (5) socks, (6) 15-minute breaks every 45 minutes; (7) ice and water; (8) shade.[1] However, **all of these items and protections have been, and are currently, being provided**.[2] Plaintiffs' counsel arguments that they "have serious doubts" that those items are being provided is not sufficient for a preliminary injunction. Transcript, p. 13.[3]

Plaintiffs appear to take issue with the fact that certain protections, which would only apply to offenders working Line 15, 15b, 24 and 25, are not codified in HCP8, which applies to all

---

[1] Plaintiffs further seek an order codifying the preliminary injunction rulings issued by the Court. First, all parties agree that the preliminary injunction expired. Defendants voluntarily implements policies and procedures consistent with this Court's rulings. To require these procedures, currently in place, and included in non-heat pathology policies, to be codified in the policies of Plaintiffs' choosing is the definition of micromanaging, which is prohibited by the PLRA.

[2] See R.Doc. 223-7; R.Doc. 201-35, p. 79-83.

[3] Throughout this litigation, Plaintiffs rely on affidavits from offenders regarding conditions of the Farm Line. These affidavits are not reliable, and are contradicted by the actual conditions. See for example testimony from field officer Orlando Scott wherein he explained that during the inspection with plaintiffs' counsel, the offenders hid their cups and gloves in the field and then told counsel that they were never provided any. R.Doc. 120-13, p.34-35. See also R.Doc. 120-13, p. 42- 44. In reply to the Preliminary Injunction, Plaintiffs' submitted affidavits of offenders stating that the shade wagon was not in the field on a specific day. Because these affidavits were submitted via Plaintiffs' reply, Defendants are unable to respond to those affidavits with contradicting evidence. However, Roland Sylvester consistently testified that the shade wagons are brought to the field every day, without exception. See also Transcript from Class Certification Hearing, Vol 3., p. 27.

outdoor work across all DPSC facilities. See R.Doc. 201-1, p. 25. Even further, 13.067 applies to all outdoor work across LSP's facility. As such, protections that are specific to the Line 15, 15b, 24 and 25 would and could not be codified in policies that apply facility wide (and to offenders who are not class members).

HCP8 and 13.067 expressly provide the following to all outdoor work areas, across DPSC and LSP: (1) shade; (2) sunscreen; (3) ice and water; (4) 15 minute breaks every 45 minutes. LSP officers continuously and consistently testify that shade, rest breaks, ice and water (with cups provided) and sunscreen are provided every single day that lines go out. R.Doc. 201-35, p. 31; R.Doc. 120-3, p. 42-44. In fact, LSP provides these protections year-round and regardless of the heat index. R.Doc. 2233-7; R.Doc. 240-2.

With respect to Lines 15, 15b, 24 and 25, LSP implements HCP8 and 13.067 related to heat pathology. Additional measures are implemented that are specific to the work done for each of those lines. For Lines 15, 24 and 25, shade is provided via the shade wagons (and in the future with the shade pavilions). For Line 15b, the mobile grass cutting crew, shade is provided via the bus that is always parked near the worksite. The bus provides shade, seating and holds the ice, water and cups. R.Doc.201-35, p. 44-48.

In addition, all offenders at LSP are issued clothing, which may vary depending on their job assignment. This includes pants, long sleeved shirts, rubber boots, lace up boots and hats. R.Doc. 49-1, 49-7; R.Doc. 120-3, p. 42-44. Again, the issuance of clothing is not a procedure that is governed by the heat pathology policies. Further, gloves and cups are governed by a separate policy. R.Doc. 49-5; R.Doc. 111-2, 111-3.

The PLRA does not allow courts to micromanage where and how prison procedures are codified. "[w]hen weighing any form of injunctive relief, federal courts must be mindful not to

5

jump at the chance to take prison administration into their own hands and out of the hands of the people entrusted with such tasks by the state." *Alex A. by & through Smith v. Edwards*, No. CV 22-573-SDD-RLB, 2022 WL 4445499, at *18 (M.D. La. Sept. 23, 2022). See also *Creel v. City of Baton Rouge/Par. of E. Baton Rouge*, No. CV 20-880-SDD-EWD, 2021 WL 856710, at *1 (M.D. La. Mar. 8, 2021). Plaintiffs seek an injunction requiring DPSC to "codify" procedures that are already in place, and included in other policies that are not heat pathology policies. This far exceeds what is envisioned by the PLRA.

Lastly, while Plaintiffs' counsel stated in the hearing that Plaintiff seek an age limit on field workers, no evidence whatsoever was submitted in this second preliminary injunction on this issue. Likewise, while there was a discussion at the hearing regarding copays, no evidence whatsoever was submitted on this issue, nor have Plaintiffs provided any evidence that offenders working the Farm Line were or were not charged for self-declared emergencies. Even so, prior to this suit being filed, it is DPSC's policy that offenders are not charged copays for work related illnesses or injuries. R.Doc. 95-8. This policy existed prior to this lawsuit and is in effect today. Federal courts cannot issue an injunction that requires prisons to follow their own policies. *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020)(finding that an injunction that would promote compliance with a prison's own COVID-19 policies was prohibited under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

### 3. Plaintiffs' Request For Preliminary Injunction Regarding the Heat Season is Moot

Plaintiffs seek a preliminary injunction to change HCP's requirement of a "heat season" which is in effect from May 1 through October 31 each year. At the outset, since the filing of the preliminary injunction, the heat season began on May 1. Plaintiffs cannot show irreparable harm,

as the heat season is in effect until October 31. Any preliminary relief would expire prior to the ending of the heat season.

### 4. Plaintiffs Cannot Meet Their High Burden for a Preliminary Injunction on the Heat Alert Threshold

Despite the fact that there is no national standard that applies to employers of outdoor workers across the country, Plaintiffs seek an injunction to impose a lower heat index threshold that requires DPSC and LSP to initiate certain measures.

At the outset, in operating a prison, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. *Sampson v. King*, 693 F.2d 566, 568 (5th Cir. 1982). Even so, currently, there are no OSHA standards that apply to private sector employers regarding heat safety.[4] The National Institute for Occupational Safety and Health (NIOSH) has published recommended standards for occupational heat stress, which is cited by OSHA.[5] NIOSH provides that when the heat index is less than 91 degrees, the risk level is "lower" and the protective measures should include "basic health and safety planning." R.Doc. 201-24, p. 192. When the heat index is between 91 and 103, the risk is "moderate" and the protective measures include implementing "precautions and heightened awareness." *Id.*

This "recommended" standard is exactly what HCP8 implements. During the heat season, HCP8 provides that all offenders are provided water, ice, shaded area for rest breaks and sunscreen, i.e., "basic health and safety planning." Once the heat index reaches 91 degrees, a heat alert is issued. Individuals with a heat precautions duty status are brought indoors. In addition, required 15-minute breaks occur every 45 minutes, water and ice and available at least every 30 minutes,

---

[4] https://www.osha.gov/heat-exposure/standards
[5] https://www.osha.gov/heat-exposure/standards; R.Doc. 201-24.

and work hours may be adjusted. As such, DPSC implements "precautions and heightened awareness" when the heat index reaches 91 degrees, as recommended by NOISH.

Plaintiffs propose an injunction that exceeds even "recommended" guidelines that would apply in the private sector. Relying solely on Dr. Vassallo, Plaintiffs assert that a heat alert should be issued at a heat index of 88 degrees. However, in the context of prison health and safety standards, "[s]tandards suggested by experts are merely advisory." *Id*.

As fully briefed in their Response (R.Doc.223), Dr. Vassallo's proposed heat alert threshold is contradicted by other national sources. The US Army does not provide any required precautions for heat safety when the heat index is 88 or 91 degrees, and the work is an "easy work load." R.Doc. 223-12. Again, NOISH does not recommend additional precautions until the heat index reaches 91 degrees. R.Doc. 201-24, p. 192. Other states, such as California and Colorado, require additional precautions when the heat index reaches 95 degrees.[6] OSHA has proposed standards (that are still in the public comment phase) that recommends additional measures be taken at 90 degrees.[7] The measures suggested by OSHA at 90 degrees are far less than the measures implemented by HCP8.[8] All of these sources, which are specifically aimed at heat safety for outdoor workers, contradict Dr. Vassallo's proposal of 88 degrees.

Again, as more fully briefed in the Response, the studies that Dr. Vassallo relies on for the heat index of 88 degree threshold are simply not applicable here. First, the data relied on by Dr. Vassallo regarding an alleged increased risk when the heat index reaches 88 degrees are not clinically significant. R.Doc.223-12, p. 9. Dr. Vassallo attempts to extrapolate an alleged <u>relative risk of above zero</u> to a <u>substantial risk of harm from a constitutional standpoint</u>. This simply does not

---

[6] https://www.govinfo.gov/content/pkg/FR-2024-08-30/pdf/2024-14824.pdf (page 49, table V-2).
[7] https://www.osha.gov/sites/default/files/publications/heat-rulemaking-factsheet.pdf
[8] OSHA's proposed protections only include 15 minute rest breaks every 2 hours.
https://www.osha.gov/sites/default/files/publications/heat-rulemaking-factsheet.pdf

correlate, especially given the protective measure in place regardless of the heat index. As the Fifth Circuit explained, the Constitution does not require the elimination of all risks related to heat illnesses. *Ball*, 792 F.3d at 599 ("Some risk is permissible and perhaps unavoidable.").

Second, the studies that Dr. Vassallo rely on are not based on exertional heat illnesses, nor are they specifically related to outdoor work. The National guidelines, as they relate the heat safety for outdoor workers, do not set forth an 88-degree heat index standard. As NOISHI published, "A recent study found that 86% of heat injuries were associated with a heat index range of 32.2°C to 40°C (**90°F to 104°F**) [Armed Forces Health Surveillance 2011]." (emphasis added). R.Doc. 201-24, p. 98.

Further, while HCP8 provide additional protections when the heat index reaches 91 degrees, LSP provides these protections to Farm Line workers outside of heat season and before heat alerts are issued. R.Doc.223-7. Every day, offenders are provided ice, water, cups, shade and 15 minute rest breaks every 45 minutes. *Id*.; R.Doc. 240-2. These measures are provided regardless of the temperature. *Id*. There is no substantial risk of serious harm where heat protections are provided when the heat index is less than 91 degrees.

Plaintiffs failed to show likelihood of success on the merits as to the heat alert threshold. Plaintiffs attempt to hold DPSC and LSP to a higher standard than private employers are held for outdoor worker heat safety. Further, the national guidance (not required standards) support the 91 degrees heat index threshold. Plaintiffs have failed to show a constitutional violation or that Defendants acted with deliberate indifference.

## 5. Plaintiffs Cannot Meet Their High Burden for a Preliminary Injunction on the Heat Index Threshold to Cease Work

In addition to the fact that the Fifth Circuit held that an injunction requiring additional protections in HCP 8 regarding cease work requirements violates the PLRA, Plaintiffs cannot show

that the cease work threshold of 113 heat index is unconstitutional. Again, Plaintiffs seek to hold DPSC to a higher standard than private sector employers are held to, as no OSHA standard exists that requires employees to cease outdoor work at any specific heat index.

DPSC recently added a cease work threshold in its revisions to HCP8. This addition was based in part on this court's prior ruling. In Louisiana, the National Weather Service issues excessive heat warning when the heat index reaches 113 degrees.[9] This supports a cease work threshold of 113 degree heat index. Plaintiffs cannot meet their high burden to show success on the merits or deliberate indifference.

### 6. Plaintiffs Cannot Meet Their High Burden for a Preliminary Injunction on the Medication List in HCP8

Despite the fact that the Fifth Circuit explicitly held that an injunction requiring additions to the Medication List in HCP8 violates the PLRA, Plaintiffs seek an identical injunction. However, since the filing of the first injunction, Defendants retained experts to review the heat pathology medication list and added over 40 medications to the list.

At issue here are three categories of medications. Dr. Barnes, the only PharmD expert, opines that SSRIs do not have enough anticholinergic activity to prevent the body from compensation from heat and therefore these medications should not be included on the heat pathology medication list. R.Doc. 223-11. Similarly, dihydropyridine channel blockers, angiotensin converting enzymes inhibitors (ACE) and angiotensin receptive blockers (ARBS) do not have anticholinergic activity or otherwise prevent the body from compensation from heat. R.Doc. 223-11. Dr. Barnes' opinions are supported by the recent medical literature.

---

[9] https://www.weather.gov/lix/wwa_criteria#Heat%20Products

Differing opinions of experts are insufficient to show deliberate indifference. DPSC revised its medication list in accordance with qualified expert recommendations. The preliminary injunction should be denied.

7. **Plaintiffs Cannot Meet Their High Burden for a Preliminary Injunction on the Medical Exclusion List**

Upon the recommendations of their experts, HCP8 was revised to create a list of chronic illnesses that require a health care provider to evaluate an offender for a heat precaution duty status. Plaintiffs fail to prove how DPSC was deliberately indifferent in creating a clinician tool that can be used to provide duty statuses to offenders who have chronic illness that may make them more vulnerable to heat, in the event those offenders with chronic illnesses are not provided a more restrictive duty status because of their chronic illness.

Plaintiffs again attempt to have this court micromanage prison administration. The current list includes any offender who is diabetic and has a BMI of greater than 35. R.Doc. 223-9; 223-12. Plaintiffs' attempt to require DPSC to include all offenders with diabetes, even if the offender's diabetes is controlled. Further, the list includes ischemic heart disease, i.e. coronary heart disease that is no longer stable. R.Doc. 223-9; 223-12. Plaintiffs' attempt to micromanage the extent of the medical conditions on the clinical tool. Neither the PLRA nor federalism allow Plaintiffs to request this sort of policy re-write.

Further, the medical exclusion list applies to all DPSC facilities and offenders. Directive 13.067 applies to all offenders at LSP, even if those offenders would not be included in the class. This injunction request is not supported and is overbroad.

8. **Plaintiffs Cannot Show Deliberate Indifference**

In response to this litigation, Defendants hired well-qualified experts to review its policy. Defendants have issued over 1800 heat precaution duty statuses based on the expanded medication

11

list and medical condition list. DPSC implemented measures that are not even required by National guidance for employees laboring outdoors. Adequate rest breaks, water, shade and sunscreen are provided every day. Defendants have continued to implement new measures in the field, to include the shade wagons and the soon to be constructed shade pavilions, which will have seating, shade and fans. There is no evidence that given the current policies in place, coupled with the safe operation of the Farm Line, Defendants subjectively believe that the measures they are taking are inadequate. Plaintiffs' mere disagreement with policy provisions cannot establish deliberate indifference.

**9. Plaintiffs Fail to Show Irreparable Harm**

"[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, No. CV 18-23-SDD-EWD, 2019 WL 491312, at *2 (M.D. La. Feb. 7, 2019), citing *Gonannies, Inc. v. GoAuPair.Com, Inc.*, 464 F.Supp.2d 603, 609 (N.D. Tex. 2006). Wright and Miller recognizes that "[a] long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." *Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, No. CV 18-23-SDD-EWD, 2019 WL 491312, at *2 (M.D. La. Feb. 7, 2019)

The changes to HCP 8, including the heat alert threshold, the cease work threshold, and the medication list, were finalized and went into effect in October 2024. Yet, Plaintiffs filed this preliminary injunction on March 26, only weeks for the heat season was to begin. As the Middle District has found, "delay between knowledge of the harm and the filing of this motion undermines

the urgency of the request." *Id*. Plaintiffs fail to show irreparable harm and the injunction should be denied.

**10. Plaintiffs' Request for a court appointed expert must be denied**

Plaintiffs' preliminary injunction motion devotes three sentences to their request to appoint a court expert to monitor WBGT and to consult the court regarding Defendants' policies. Plaintiffs fail to show how the issues in the case so complicated as to require the appointment of an expert witness to assist the Court. *Duncan v. Nunez*, No. 1:17-CV-1623-P, 2020 WL 13721392, at *2 (W.D. La. Jan. 24, 2020).

Further, Plaintiffs seek WBGT monitoring at LSP. The temperature readings for WBGT would not correlate to the heat policies in effect, or even the heat alert threshold espoused by Dr. Vassallo, who relies on heat index. A 91 degree WBGT reading would not correlate to a 91 degree heat index reading. All of the policies in place, and opinions of Plaintiffs' own experts, are based on heat index. A WBGT reading would not assist the Court, Plaintiffs or Defendants with the issues of when a heat alert should be called.

In addition, Plaintiffs' overt focus on the Rules of Evidence appears designed to circumvent the PLRA's specific procedures for special masters, including how they are selected and who pays for them, which independently signals the unlawfulness of their demand. 18 U.S.C. § 3626(f). Plaintiffs' request should be denied.

**11. Plaintiffs' Request for  Temporary Restraining Order is Now Moot**

Plaintiffs sought a temporary restraining order regarding the heat alert threshold, and after a hearing, a preliminary injunction on the same issue, in addition to other requests. Because the parties attended a hearing, the request for the temporary restraining order is now moot. See FRCP 65, wherein a temporary restraining order can be issued without notice and without a hearing and

a preliminary injunction can only be issued on notice to the adverse party. See also R.Doc. 201-4, p. 4.

**CERTIFICATE OF SERVICE**

    I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record.

    Baton Rouge, Louisiana, this 16th day of May, 2025.

      s/Andrew Blanchfield
      Andrew Blanchfield

Respectfully submitted,
**LIZ MURRILL**
**Attorney General**

By:   s/Andrew Blanchfield
Andrew Blanchfield, T.A. (#16812)
Email: ablanchfield@keoghcox.com
Christopher K. Jones (#28101)
Email: cjones@keoghcox.com
C. Reynolds LeBlanc (#33937)
Email: rleblanc@keoghcox.com
Chelsea A. Payne (#35952)
Email: cpayne@keoghcox.com
Special Assistant Attorneys General
Post Office Box 1151
Baton Rouge, Louisiana 70821
Telephone: (225) 383-3796
Facsimile: (225) 343-9612

14