# Exhibit 54

<pre>
 1              UNITED STATES DISTRICT COURT

 2              MIDDLE DISTRICT OF LOUISIANA

 3

 4  VOICE OF THE EXPERIENCED,    :CIVIL ACTION
    ET AL,
 5
    VERSUS                      :NO. 23-CV-1304-BAJ-EWD
 6
    LEBLANC, ET AL              :APRIL 22, 2025
 7
    ========================================================
 8    MOTIONS HEARING FOR TEMPORARY RESTRAINING ORDER
                AND PRELIMINARY INJUNCTION
 9        BEFORE THE HONORABLE BRIAN A. JACKSON
             UNITED STATES DISTRICT JUDGE
10
                  A P P E A R A N C E S
11

12  FOR THE PLAINTIFFS:

13       PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
         BY: JEREMY A. BENJAMIN, ESQUIRE
14       BY: ARIELLE B. McTOOTLE, ESQUIRE
         BY: MICHAEL C. McGREGOR, ESQUIRE
15       1285 AVENUE OF THE AMERICAS
         NEW YORK, NEW YORK 10019
16
         RIGHTS BEHIND BARS
17       BY: LYDIA WRIGHT, ESQUIRE
         416 FLORIDA AVENUE NW #26152
18       WASHINGTON, D.C. 20002

19       THE PROMISE OF JUSTICE INITIATIVE
         BY: SAMANTHA POURCIAU, ESQUIRE
20       1024 ELYSIAN FIELDS AVENUE
         NEW ORLEANS, LOUISIANA 70117
21

22  FOR THE DEFENDANTS:

23       KEOGH, COX & WILSON, LTD
         BY: ANDREW BLANCHFIELD, ESQUIRE
24       BY: CHRISTOPHER K. JONES, ESQUIRE
         BY: CHELSEA ACOSTA PAYNE, ESQUIRE
25       701 MAIN STREET
         BATON ROUGE, LOUISIANA 70802
</pre>

1

2

3
            REPORTED BY:  NATALIE W. BREAUX, RPR, CRR
4                      UNITED STATES COURTHOUSE
                          777 FLORIDA STREET
5                  BATON ROUGE, LOUISIANA 70801
                            (225) 389-3565
6                  NATALIE_BREAUX@LAMD.USCOURTS.GOV

7

8   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
              COMPUTER-AIDED TRANSCRIPTION SOFTWARE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (APRIL 22, 2025)
 2                     PROCEEDINGS
 3        THE LAW CLERK:  ALL RISE.
 4           (CALL TO THE ORDER OF COURT.)
 5        THE COURT:  GOOD AFTERNOON, EVERYONE.  BE
 6   SEATED.
 7                 PLEASE CALL THE CASE.
 8        THE COURTROOM DEPUTY:  CIVIL CASE NO.
 9   23-1304, VOICE OF THE EXPERIENCED, ET AL, VERSUS
10   LEBLANC, ET AL.
11        THE COURT:  ALL RIGHT.  COUNSEL, PLEASE
12   ENTER YOUR APPEARANCES, AS IS OUR CUSTOM IN FEDERAL
13   COURT, FROM THE FORWARD PODIUM, BEGINNING WITH
14   COUNSEL FOR THE PLAINTIFFS.
15        MS. POURCIAU:  SAMANTHA POURCIAU ON BEHALF
16   OF THE PLAINTIFFS.
17        THE COURT:  MS. POURCIAU.
18        MS. WRIGHT:  GOOD AFTERNOON.
19             LYDIA WRIGHT WITH RIGHTS BEHIND BARS,
20   FOR THE PLAINTIFFS.
21        THE COURT:  WELCOME, MS. WRIGHT.
22        MR. BENJAMIN:  GOOD AFTERNOON, YOUR HONOR.
23             JEREMY BENJAMIN FROM PAUL, WEISS,
24   RIFKIND, WHARTON & GARRISON, FOR THE PLAINTIFFS.
25        THE COURT:  WELCOME, MR. BENJAMIN.
```

1          **MR. McGREGOR:**  GOOD AFTERNOON, YOUR HONOR.

2               MICHAEL McGREGOR FROM PAUL WEISS ON

3  BEHALF OF THE PLAINTIFFS.

4          **THE COURT:**  WELCOME.

5          **MS. McTOOTLE:**  GOOD AFTERNOON, YOUR HONOR.

6               ARIELLE McTOOTLE FOR THE PLAINTIFFS.

7          **THE COURT:**  WELCOME.  ALL RIGHT.  THANK YOU,

8  COUNSEL.

9               AND FOR THE STATE.

10          **MR. BLANCHFIELD:**  GOOD AFTERNOON, YOUR

11  HONOR.

12               ANDREW BLANCHFIELD ON BEHALF OF THE

13  DEFENDANTS.

14          **THE COURT:**  HOW ARE YOU, MR. BLANCHFIELD?

15          **MR. BLANCHFIELD:**  I'M GREAT.  THANK YOU.

16          **THE COURT:**  GREAT.

17          **MR. JONES:**  GOOD AFTERNOON, YOUR HONOR.

18               CHRISTOPHER JONES ON BEHALF OF THE

19  DEFENDANTS.

20          **THE COURT:**  MR. JONES, ALWAYS A PLEASURE TO

21  SEE YOU.

22          **MS. PAYNE:**  GOOD AFTERNOON, YOUR HONOR.

23               CHELSEA PAYNE ON BEHALF OF DEFENDANTS.

24          **THE COURT:**  MS. PAYNE, THANK YOU.

25               ALL RIGHT.  WELL, AGAIN, WELCOME,

1    EVERYONE.

2              WE HAVE A COUPLE OF MATTERS TO TAKE UP

3    TODAY.  THE FIRST WILL BE THE SECOND APPLICATION FOR

4    THE TEMPORARY RESTRAINING ORDER THAT WAS FILED BY THE

5    PLAINTIFFS.  I ANTICIPATE THAT WE'LL APPORTION ABOUT

6    30 TO 40 MINUTES TO ADDRESS THAT ISSUE.

7              I WILL TELL YOU NOW THAT, GIVEN THE

8    INFORMATION THAT I EXPECT TO RECEIVE TODAY AND THE

9    ARGUMENTS I EXPECT COUNSEL TO MAKE, IT'S LIKELY THAT

10   I WILL TAKE THAT MATTER UNDER ADVISEMENT.  BUT BE

11   ASSURED THAT I'M VERY MUCH AWARE OF THE EXIGENCY OF

12   THE ISSUE AND THE COURT WILL ISSUE A RULING

13   FORTHWITH.

14             THE SECOND ISSUE WE WILL TAKE UP IS THE

15   EVIDENCE ON THE CLASS CERTIFICATION HEARING.  IT IS

16   MY UNDERSTANDING THAT COUNSEL FOR BOTH SIDES INTEND

17   TO PRESENT EXPERT WITNESSES AND PLAINTIFF INTENDS TO

18   PRODUCE TWO PROSPECTIVE OR PUTATIVE CLASS MEMBERS.

19   AND WE'LL GIVE YOU-ALL AN OPPORTUNITY TO PRESENT

20   THOSE.

21             IT IS ALSO MY UNDERSTANDING THAT AT

22   LEAST ONE OF THE EXPERT WITNESSES WILL TESTIFY VIA

23   ZOOM.  IT'S HIGHLY UNUSUAL THAT WE WILL ALLOW THAT

24   HERE IN FEDERAL COURT; HOWEVER, THIS IS NOT THE JURY

25   PHASE OF THE TRIAL.  THIS IS NOT A JURY TRIAL ANYWAY.

1  NONETHELESS, BECAUSE OF THE CIRCUMSTANCES HERE, OF

2  COURSE, I'VE PERMITTED THE EXAMINATION OF THE EXPERT

3  WITNESSES, AT LEAST FOR THE CLASS CERTIFICATION

4  PORTION OF THE TRIAL OR THE CASE, THROUGH ZOOM.

5  HOWEVER, ONCE THE TRIAL ON THE MERITS PROCEEDS, ALL

6  WITNESSES WILL BE REQUIRED TO TESTIFY HERE IN COURT

7  AND IN PERSON.

8           SO AGAIN, LET'S FIRST TAKE UP THE ISSUE

9  WITH RESPECT TO THE SECOND TRO.  NOW, THE RECORD

10 INDICATES OR REFLECTS THAT PROCEDURALLY -- THE

11 PROCEDURAL HISTORY REFLECTS THAT THIS CASE WAS

12 INITIALLY FILED BACK ON SEPTEMBER 16, 2023.  AN

13 AMENDED COMPLAINT WAS FILED ON DECEMBER 15TH OF 2023.

14 THE PARTIES ENGAGED IN SOME, I GUESS, LIMITED

15 DISCOVERY AT THAT TIME AND CONFERRED ON A NUMBER OF

16 ISSUES ATTENDANT TO THE ISSUES FEATURED IN THIS CASE.

17           ON MAY 13TH OF 2024 PLAINTIFFS FILED A

18 MOTION FOR A PRELIMINARY INJUNCTION AND A TRO.  AND

19 FOLLOWING A HEARING ON THE MATTER, THE COURT ON JULY

20 24TH OF -- JULY 2ND OF 2024, THAT IS -- ENTERED A TRO

21 PROHIBITING CERTAIN ITEMS AND REQUIRING THAT THE

22 STATE TAKE AFFIRMATIVE STEPS TO ADDRESS CERTAIN

23 ISSUES, WHICH I WILL NOTE THE STATE HAS ADDRESSED.

24 AND I THINK IT'S FAIR TO SAY, BASED UPON THE HEARINGS

25 WE HAD ON THAT MOTION, THE STATE AGREED THAT THERE

1   WERE CERTAIN ITEMS THAT IT COULD IMPLEMENT THAT WOULD

2   ABATE SOME OF THE CONCERNS RAISED BY THE PLAINTIFF.

3   THAT WAS ISSUED ON JULY 2, 2024.

4           THE STATE APPEALED THE COURT'S RULING

5   ON THAT DATE.  CERTAIN PORTIONS OF THE COURT'S ORDER

6   HAVE BEEN STAYED BY THE FIFTH CIRCUIT FOLLOWING

7   ADDITIONAL TREATMENT; ALTHOUGH BOTH SIDES, IT'S MY

8   UNDERSTANDING, HAVE AGREED THAT THE CASE IS NOW MOOT.

9   NONETHELESS, WE UNDERSTAND THAT THE CIRCUIT WANTS TO

10  ADDRESS CERTAIN ISSUES AND WE'LL TAKE THAT UP IN JUST

11  A MOMENT AS WELL, JUST FOR THE SAKE OF CLARITY.

12  HOWEVER, THE CIRCUIT DECLINED TO STAY OTHER PORTIONS

13  OF THE COURT'S JULY 2, 2024 ORDER, AND SO THAT'S

14  WHERE WE NOW STAND.  THIS SECOND TRO WAS FILED ON

15  MARCH 26TH OF THIS YEAR BY THE PLAINTIFFS.  AND SO

16  THAT'S WHERE WE WILL BEGIN; THAT IS, TO ADDRESS AND

17  DISCUSS SOME OF THE ITEMS THAT THE STATE IS NOW

18  REQUESTING A SECOND TIME.

19          AND, MS. POURCIAU, ARE YOU THE

20  DESIGNATED HITTER ON THIS ONE?

21      MS. POURCIAU:  I AM NOT.  MY COLLEAGUE,

22  JEREMY BENJAMIN, WILL BE HANDLING THIS ARGUMENT.

23      THE COURT:  MR. BENJAMIN, SO YOU'RE UP.

24  YOU'VE BEEN IN THE BATTER'S BOX, HUM?  ALL RIGHT.

25      MR. BENJAMIN:  THANK YOU.

1          THE COURT:  SO, MR. BENJAMIN, LET ME ASK AT

2   THE OUTSET FIRST -- AT THE OUTSET, SIR, THAT -- JUST

3   SO THAT BY FRAME OF REFERENCE, WHAT ARE YOU SEEKING

4   TODAY?  THAT'S MY FIRST QUESTION.  AND, OF COURSE,

5   THERE ARE CERTAIN SUBPARTS TO THAT QUESTION.

6          MR. BENJAMIN:  OF COURSE, YOUR HONOR.

7               SO AS YOUR HONOR SAID, THIS IS OUR

8   SECOND APPLICATION FOR PRELIMINARY RELIEF IN THIS

9   MATTER.  IN THIS APPLICATION WE ARE SEEKING DIFFERENT

10  RELIEF FROM WHAT WE SOUGHT THE FIRST TIME.  IN THIS

11  CASE WE ARE SEEKING RELIEF SPECIFIC TO A TEMPORARY

12  RESTRAINING ORDER.  THAT RELIEF CONSISTS OF REQUIRING

13  DEFENDANTS TO ISSUE A HEAT ALERT ANYTIME THE HEAT

14  INDEX MEETS OR EXCEEDS 88 DEGREES FAHRENHEIT AND TO

15  MONITOR THE HEAT INDEX MORE REGULARLY THAN THEY

16  CURRENTLY DO; NAMELY, EVERY 30 MINUTES.  THAT'S THE

17  FIRST PART OF THE RELIEF THAT WE'RE SEEKING.

18               THE SECOND PART OF THE RELIEF THAT WE

19  ARE SEEKING IS A PRELIMINARY INJUNCTION.  THAT

20  INJUNCTION WOULD INCLUDE THE AFOREMENTIONED RELIEF

21  WITH RESPECT TO THE HEAT INDEX AND THE HEAT ALERT,

22  THE MONITORING; AND IT WOULD ALSO INCLUDE A

23  REQUIREMENT THAT PROHIBITS THE ASSIGNMENT OF PEOPLE

24  RECOGNIZED AS REQUIRING HEAT PRECAUTION DUTY

25  STATUS -- BASICALLY HEAT-SENSITIVE PEOPLE -- TO BE

1    ASSIGNED TO THE LINE ANYTIME THE NATIONAL WEATHER

2    SERVICE WAS PREDICTING THAT THE HEAT INDEX WOULD HIT

3    88 DEGREES.

4                 ADDITIONAL RELIEF WE'RE LOOKING FOR IS

5    TO EXPAND THE MEDICATIONS AND CONDITIONS LIST THAT

6    QUALIFY A PERSON FOR HEAT PROTECTION -- HEAT

7    PRECAUTION DUTY STATUS.  WE ARE LOOKING FOR CERTAIN

8    CHANGES TO BE MADE WITH RESPECT TO THE POLICIES

9    CONCERNING SHADE, PPE, ET CETERA, BASICALLY CODIFYING

10   THE KINDS OF RELIEF THAT THE -- THAT YOUR HONOR HAD

11   ORDERED PREVIOUSLY; NAMELY, THAT THERE BE SUFFICIENT

12   SHADE, THAT IT BE SPREAD THROUGHOUT THE WORK AREA.

13   AND THE SAME FOR WATER AND AVAILABILITY OF GLOVES,

14   SUN HATS, SUNSCREEN.

15                 WE ARE LOOKING TO HAVE THE CEASE WORK

16   LEVEL.  RIGHT NOW THERE IS A STOP WORK PROVISION IN

17   BOTH DOC HCP 8, OR HEALTH CARE POLICY 8, WHERE ALL

18   OUTDOOR WORK STOPS AT 113 DEGREES.  THAT SAME

19   PROVISION IS PRESENT NOW IN THE NEWLY ENACTED LSP

20   DIRECTIVE 13.067, WHICH IS THE LSP COROLLARY TO HCP

21   8.

22        THE COURT:  AND TO BE CLEAR, THAT'S 113 HEAT

23   INDEX, NOT AMBIENT TEMPERATURE?

24        MR. BENJAMIN:  THAT'S CORRECT, HEAT INDEX.

25   I'M SORRY, YOUR HONOR.

1          AND THEN WE ARE ALSO LOOKING FOR THE

2    APPOINTMENT OF AN EXPERT PURSUANT TO FRE 706 TO

3    MONITOR CONDITIONS ON THE FARM LINE USING A WET BULB

4    GLOBE TEMPERATURE DEVICE AND TO CONSULT THE COURT

5    REGARDING DEFENDANTS' HEAT PRACTICES AND POLICIES.

6          **THE COURT:**  OKAY.  SO LET'S START WITH THE

7    FIRST ONE.  YOU'RE ASKING THE COURT TO -- WELL, LET

8    ME ASK YOU THIS:  WHAT'S THE PLAINTIFFS' POSITION

9    WITH RESPECT TO THE CONDITIONS ORDERED LAST YEAR;

10   THAT IS, IN THE FIRST TRO?

11          **MR. BENJAMIN:**  WELL, WE THINK THOSE ARE VERY

12   IMPORTANT PRECAUTIONS.  THEY ARE BASICALLY PROVIDING

13   THE BARE NECESSITIES OF SHADE, PPE, WATER, ET CETERA.

14   WE THINK THAT THOSE ARE CRITICALLY IMPORTANT

15   PROTECTIONS.  WE WERE A LITTLE DISHEARTENED THAT,

16   WHEN LSP AND DOC WERE REVISING THEIR HEAT PATHOLOGY

17   PROTOCOLS, THAT THEY DID NOT CODIFY THOSE VERY

18   SIMPLE, VERY NONINTRUSIVE NECESSARY PROTECTIONS.

19          SO OUR OPINION IS THAT THEY ARE

20   ABSOLUTELY NECESSARY; THAT THERE BE SUFFICIENT SHADE

21   LOCATED CLOSE TO THE WORK SITE; THAT WATER AND ICE BE

22   AVAILABLE THROUGHOUT THE WORK SITE; THAT BASIC PPE BE

23   PROVIDED.  SO WE UNDERSTAND THOSE TO BE ABSOLUTELY

24   NECESSARY PROTECTIONS.

25          **THE COURT:**  OKAY.  SO -- BUT IT'S YOUR

1  UNDERSTANDING THAT THE DEPARTMENT OF CORRECTIONS HAS

2  NOT CODIFIED THOSE PRECAUTIONS --

3          **MR. BENJAMIN:**  THAT'S CORRECT.

4          **THE COURT:**  -- IN ITS POLICIES?

5          ARE YOU ASKING THAT THOSE ITEMS BE

6  CODIFIED IN ITS POLICY ONLY WITH RESPECT TO ANGOLA?

7          **MR. BENJAMIN:**  WELL, YOU KNOW, I SHOULD HAVE

8  SAID THIS AT THE OUTSET.  EVERY BIT OF RELIEF THAT WE

9  WERE SEEKING WHEN I MENTIONED WHAT RELIEF WE ARE

10 SEEKING WITH RESPECT TO THE TRO, WITH RESPECT TO THE

11 PRELIMINARY INJUNCTION, WITH RESPECT TO THE MONITOR,

12 WE ARE SEEKING THAT RELIEF ONLY WITH RESPECT TO THE

13 FARM LINE, NOT --

14         **THE COURT:**  IS IT YOUR UNDERSTANDING -- YOU

15 CONDUCTED AN INVESTIGATION PRIOR TO FILING THE

16 LAWSUIT, AS LAWYERS ARE REQUIRED TO DO AND AS GOOD

17 LAWYERS WOULD DO ANYWAY.  RIGHT?

18         **MR. BENJAMIN:**  CORRECT.

19         **THE COURT:**  DID YOU FIND THAT THERE ARE ANY

20 OTHER FARM LINES OPERATED BY DOC?

21         **MR. BENJAMIN:**  THERE IS NOT --

22         **THE COURT:**  I'LL PUT THE QUESTION TO MR.

23 BLANCHFIELD OR HIS COLLEAGUES.

24         **MR. BENJAMIN:**  THERE IS NOT A FARM LINE

25 OPERATED IN THE SAME FASHION THAT THERE IS AT ANGOLA.

1  NOW, WE'VE ALWAYS BEEN CLEAR THAT THERE IS A LARGE

2  SECTION OF AGRICULTURAL WORK THAT EXISTS IN DOC AND

3  AT ANGOLA THAT ARE NOT AT ISSUE IN THIS LAWSUIT.  WE

4  ARE SEEKING RELIEF ONLY WITH RESPECT TO THE FARM

5  LINE, WHICH WE HAVE IDENTIFIED AS THE VEGETABLE FIELD

6  AND GRASS-CUTTING OPERATIONS THAT OCCUR ON LINES 15,

7  15B, 24 AND 25, WHICH RUN OUT OF CAMPS C AND D.

8          THE COURT:  SO YOU'RE WANTING -- YOU'RE

9  ASKING THE COURT TO GO ON AND CONTINUE TO REQUIRE

10 THAT PRISONERS BE PROVIDED WITH LACE-UP BOOTS?

11         MR. BENJAMIN:  CORRECT.

12         THE COURT:  SUN HATS?

13         MR. BENJAMIN:  YES.

14         THE COURT:  SUNSCREEN?

15         MR. BENJAMIN:  YES.

16         THE COURT:  PROTECTIVE LONG-SLEEVED SHIRTS

17 AND GLOVES?

18         MR. BENJAMIN:  YES.

19         THE COURT:  SOCKS?

20         MR. BENJAMIN:  YES.

21         THE COURT:  THAT THEY BE GIVEN ONE 15-BREAK

22 FOR EVERY 45 MINUTES OF WORK?

23         MR. BENJAMIN:  YES.

24         THE COURT:  ICE AND WATER?

25         MR. BENJAMIN:  YES.

1          **THE COURT:**  TENTS?

2          **MR. BENJAMIN:**  WE ARE NOT SEEKING

3    NECESSARILY TENTS.  WE ARE SEEKING, AT A MINIMUM,

4    SUFFICIENT SHADE.  THAT MIGHT BE TENTS, THAT MIGHT BE

5    SOMETHING ELSE.  BUT WE ARE LOOKING FOR SHADE TO BE

6    DISTRIBUTED ACROSS THE WORK SITE SO THAT IT IS

7    ACCESSIBLE ACROSS THE BOARD.

8          **THE COURT:**  CHAIRS?

9          **MR. BENJAMIN:**  YES.

10         **THE COURT:**  AND HOW MANY OF THESE ITEMS DO

11   YOU BELIEVE YOUR OPPONENTS AGREED TO?

12         **MR. BENJAMIN:**  I BELIEVE THAT THE -- THAT

13   DOC IS PROVIDING SUNSCREEN AS A COURSE IN THE CURRENT

14   POLICY.  THEY ARE STATING THAT SOME OF THESE OTHER

15   PROTECTIONS ARE AVAILABLE.  THEY'RE SAYING THAT

16   THEY'RE AVAILABLE YEAR-ROUND.  WE HAVE SERIOUS DOUBTS

17   ABOUT THAT BASED ON OUR OWN OBSERVATIONS DURING

18   INSPECTIONS, BASED ON DECLARATIONS FROM PUTATIVE

19   CLASS MEMBERS, AND BASED ON THEIR OWN DOCUMENTS AND

20   INCLUDING THAT THERE WERE LINE COUNTS.

21         **THE COURT:**  SO IN THE INTEREST OF KIND OF

22   STREAMLINING THESE THINGS, I'M GOING TO ASK TO HEAR

23   FROM THE COUNSEL FOR THE DEPARTMENT OF CORRECTIONS AT

24   THIS TIME SOLELY WITH RESPECT TO THESE ISSUES.

25              MR. BLANCHFIELD -- MR. BLANCHFIELD,

1   I'LL GIVE YOU AN OPPORTUNITY IN A COUPLE OF MINUTES

2   TO TELL ME ANYTHING YOU THINK -- YOU BELIEVE I SHOULD

3   KNOW WITH RESPECT TO THE PROCEDURE HERE THAT THE

4   COURT HAS AGREED -- HAS DECIDED, THAT IS, TO PROCEED

5   WITH HERE.  IN OTHER WORDS, IF YOU BELIEVE THAT THERE

6   IS -- AND IT'S IMPORTANT, I THINK, THAT WE ADDRESS

7   THE ISSUE OF THE COURT'S JURISDICTION AT THIS PHASE.

8   BUT LET'S GET TO WHAT MR. BENJAMIN HAS ADDRESSED AND

9   WHAT HE HAS -- HOW HE RESPONDED TO MY QUESTIONS.

10              NOW, IT'S MY RECOLLECTION THAT SEVERAL

11  MONTHS AGO YOU ADMITTED TO THE COURT THAT, *NO, JUDGE,*

12  *WE DON'T GIVE SUNSCREEN.  WE DON'T GIVE SOME OF THE*

13  *THINGS THAT WERE EVENTUALLY ORDERED IN THE FIRST TRO.*

14  SO I'M JUST GOING TO ASK YOU:  IS -- WE CAN JUST RUN

15  DOWN THE LIST.  IS THE STATE NOW PROVIDING SHADE TO

16  THOSE PERSONS WHO HAVE TO WORK ON THE FARM LINE?

17          **MR. BLANCHFIELD:**  YES, YOUR HONOR.

18          **THE COURT:**  IN WHAT FORM?

19          **MR. BLANCHFIELD:**  WELL, WE HAVE A -- I HAVE

20  A POWERPOINT THAT I WAS GOING TO RUN THROUGH.  I WANT

21  TO SHOW YOU WHAT WE'VE DONE.  I THINK IT'S VERY

22  IMPORTANT.

23          **THE COURT:**  WE'LL GET TO THAT IN JUST A

24  MINUTE.  I'LL GIVE YOU AN OPPORTUNITY TO DO THAT.

25  BUT HOW WOULD -- LET ME JUST ASK YOU TO DESCRIBE --

1    **MR. BLANCHFIELD:**  SO WHAT THEY HAVE DONE,

2    THEY HAVE CONSTRUCTED WHAT THEY CALL SHADE WAGONS.

3    THESE ARE VERY LARGE, OVER 20-FEET-LONG FLATBEDS WITH

4    ROOFS, WITH WATER, WITH SEATING AREA.  THEY'RE

5    MOBILE.  SO THAT WHEN WE GO TO A DIFFERENT PATCH TO

6    PICK CUCUMBERS, WE BRING -- WE HAVE TWO OF THEM.

7            **THE COURT:**  WHAT DO YOU CALL THAT, NOW?

8            **MR. BLANCHFIELD:**  SHADE WAGONS.

9            **THE COURT:**  SHADE WAGONS.

10           **MR. BLANCHFIELD:**  IN ADDITION TO THAT --

11           **THE COURT:**  AND LET ME ASK YOU:  HOW MANY

12   PERSONS CAN FIT IN OR RIDE ON A SHADE WAGON?

13           **MR. BLANCHFIELD:**  25 TO 30 ON EACH WAGON,

14   YOUR HONOR.

15           NOW, IN ADDITION TO THAT, THE -- WARDEN

16   VANNOY IS NOW BACK AS WARDEN OVER THERE, AND HE HAS

17   STARTED CONSTRUCTING -- WE HAVE A PROTOTYPE THAT'S

18   BEEN CREATED.  WE CALL IT A SHADE PAVILION.  IT'S A

19   24-BY-24, POURED-CONCRETE, FIXED PLATFORM.  IT'S GOT

20   A ROOF OVER IT PROVIDING SHADE.  IT HAS A BENCH AREA

21   PROVIDING UNLIMITED SEATING.  IT HAS RUNNING WATER

22   THAT THEY'VE RUN TO IT.  IT HAS ELECTRICITY WHICH

23   THEY'VE RUN TO IT.  IN EACH CORNER OF THE PAVILION

24   THERE ARE FANS THAT BLOW AIR ONTO THE INMATES.

25           YOU KNOW, THIS THING ABOUT, YOU KNOW,

1  PROTECTIVE GEAR, THEY'VE ALWAYS HAD PROTECTIVE GEAR.

2          **THE COURT:**  OKAY.  WELL, WE'RE GOING TO GET

3  TO THAT IN A MINUTE.

4                  SO THAT'S WITH RESPECT TO SHADE.

5  RIGHT?

6          **MR. BLANCHFIELD:**  THAT'S SHADE.

7          **THE COURT:**  OKAY.  SO LET'S MOVE ON NOW.

8  ARE THERE CHAIRS ON THIS SHADE WAGON OR WHEREVER THE

9  SHADE IS PROVIDED?

10          **MR. BLANCHFIELD:**  YES.

11          **THE COURT:**  ALL RIGHT.  IS WATER AND ICE

12  MADE AVAILABLE WITHIN THE SHADE WAGON?

13          **MR. BLANCHFIELD:**  YES.  UNLIMIT -- IT'S

14  UNLIMITED IN AMOUNT AND UNLIMIT -- THEY CAN GET A

15  DRINK WHENEVER THEY WANT.

16          **THE COURT:**  SO NO PROHIBITION OR CONSTRAINTS

17  ON TIME?

18          **MR. BLANCHFIELD:**  NONE AT ALL.  DESPITE WHAT

19  WAS DECLARED BY SOME OF THE INMATES, THEY'VE ALWAYS

20  HAD ACCESS TO THAT.

21          **THE COURT:**  UNDERSTOOD.

22                  NOW, A CLEAN CUP.  DOES EACH INMATE NOW

23  HAVE A CLEAN CUP?

24          **MR. BLANCHFIELD:**  EVERYBODY HAS A CUP.

25          **THE COURT:**  AND I REQUIRED THAT THERE BE ONE

1    15-MINUTE BREAK FOR EVERY 45 MINUTES OF WORK.

2             MR. BLANCHFIELD:  THEY ARE CURRENTLY -- THEY

3    START AT EIGHT O'CLOCK AND THEY HAVE -- THEY DON'T

4    WORK MORE THAN 45 MINUTES.  THEY TAKE A 15-MINUTE

5    BREAK.

6             THE COURT:  OKAY.  LET'S TALK ABOUT SOME OF

7    THE PPE.  LACE-UP BOOTS?

8             MR. BLANCHFIELD:  HAD THOSE FOREVER.

9             THE COURT:  SUN HATS?

10            MR. BLANCHFIELD:  HAD SUN HATS.  YOU'RE

11   GOING TO SEE SOME PICTURES WITH SUN HATS THAT THE

12   PLAINTIFFS TOOK PICTURES OF.  YES.

13            THE COURT:  AND LONG-SLEEVED SHIRTS AND

14   GLOVES?

15            MR. BLANCHFIELD:  THEY CAN WEAR LONG -- MOST

16   CHOOSE TO WEAR LONG SLEEVES.  SOME DON'T.  SOME WEAR

17   SHORT SLEEVES.

18            THE COURT:  AND SUNSCREEN?

19            MR. BLANCHFIELD:  SUNSCREEN, THEY -- WE DID

20   CHANGE FROM -- IT WAS AVAILABLE IN THE COMMISSARY FOR

21   THEM TO PURCHASE.  WE NOW HAVE IT OUT THERE.  THEY

22   DON'T USE IT.  NO ONE USES IT, BUT IT'S OUT THERE FOR

23   ANYBODY WHO WANTS IT EVERY DAY.

24            THE COURT:  FREE OF COST?

25            MR. BLANCHFIELD:  FREE OF COST.

1       **THE COURT:**  GOT IT.  AND SOCKS.

2           **MR. BLANCHFIELD:**  SOCKS.  THEY HAVE SOCKS.

3       **THE COURT:**  AND I ALSO ORDERED THAT THERE BE

4   FREE MEDICAL CARE AVAILABLE FOR THOSE WORKING THE

5   FARM LINE.

6           **MR. BLANCHFIELD:**  POLICY IS, IF THEY HAVE AN

7   ISSUE THAT IS WORK RELATED, THERE WILL BE NO CHARGE.

8       **THE COURT:**  WHO MAKES THAT DETERMINATION?

9           **MR. BLANCHFIELD:**  IT'S MADE INSIDE.  AFTER

10  THERE IS CARE RENDERED, THE HEALTH CARE PROVIDER

11  MAKES THAT DETERMINATION.

12      **THE COURT:**  IN OTHER WORDS, THE INMATE

13  THEMSELVES DON'T MAKE THAT DETERMINATION.  THE

14  MEDICAL PROFESSIONALS ON SITE MAKE THE DETERMINATION

15  OF WHETHER THE MEDICAL NEEDS WERE RELATED IN ANY WAY

16  TO WORK ON THE FARM LINE.  CORRECT?

17          **MR. BLANCHFIELD:**  CORRECT.  THAT'S CORRECT.

18      **THE COURT:**  HOW LONG IS YOUR POWERPOINT

19  PRESENTATION, MR. BLANCHFIELD?

20          **MR. BLANCHFIELD:**  JUDGE, WHEN WE HAD OUR

21  CONFERENCE, YOU SAID WE WOULD HAVE 30 MINUTES.  IT'S

22  NOT GOING TO BE 30 MINUTES, BUT --

23      **THE COURT:**  SO I'M GOING TO ASK YOU TO TAKE

24  ABOUT FIVE MINUTES TO RUN THROUGH, BECAUSE WE HAVE A

25  LOT TO COVER, INCLUDING THE CLASS CERTIFICATION

1  ISSUES.  HOW MANY SLIDES IN YOUR DECK?

2         **MR. BLANCHFIELD:**  18.

3         **THE COURT:**  OKAY.  I THINK WE CAN GET

4  THROUGH THAT PRETTY QUICKLY.

5         **MR. BLANCHFIELD:**  I THINK WE CAN, JUDGE.

6         **THE COURT:**  WE'RE ALL SET, READY TO GO?

7         **MR. BLANCHFIELD:**  ALL SET, READY TO GO?

8         **THE COURT:**  MS. PAYNE?  NOW, MS. PAYNE,

9  YOU'RE THE BRAINS BEHIND THIS OPERATION, CLEARLY.

10         **MR. BLANCHFIELD:**  I'VE BEEN FOUND OUT, YOUR

11  HONOR.

12         **THE COURT:**  OKAY.

13         BROOKE, WHY DON'T WE TURN -- JUST TILT

14  THE SCREEN, IF YOU WOULD, SO THAT THE PUBLIC CAN VIEW

15  THIS.  AND I BELIEVE -- LUKE, IS IT ON THAT SCREEN?

16  THANK YOU, LUKE.  LUKE IS MY VERY TALENTED INTERN

17  HERE.  LUCAS IS JOINING US TODAY.  ALL RIGHT.  THANK

18  YOU, CAPTAIN.

19         ALL RIGHT.  LET'S GO ON AND GET

20  STARTED.

21         **MR. BLANCHFIELD:**  THANK YOU, JUDGE.

22         AT THE OUTSET WE CONTEND THAT THE

23  INJUNCTION REQUEST DOES VIOLATE THE PLRA.  IT'S

24  ESSENTIALLY PLRA DOES NOT ENVISION SUCCESSIVE

25  INJUNCTIONS.  ALTHOUGH THEY SAY IT'S DIFFERENT,

1  THEY'RE REALLY ASKING FOR THE SAME RELIEF.

2          **THE COURT:**  OKAY.  AND WE'LL GET TO THAT IN

3  A MINUTE.  I'M MORE INTERESTED IN SEEING SOME OF THE

4  PHOTOS OF THE CONDITIONS THAT YOU ALLUDED TO.

5          **MR. BLANCHFIELD:**  OKAY.  WE CAN GO TO THE

6  NEXT SLIDE THEN.  THIS SLIDE IS THE HEAT INDEX, YOUR

7  HONOR.  THERE IS A LOT OF DISCUSSION ABOUT THE HEAT

8  INDEX AND HOW WE GOT TO 91 DEGREES AS BEING THE

9  LEVEL.  YOU'RE GOING TO HEAR TESTIMONY FROM OUR

10 EXPERTS ON THIS ISSUE.

11          WE NOTE THAT THE NATIONAL WEATHER

12 SERVICE, WHICH EVERYONE AGREES IS THE, QUOTE, GOLD

13 STANDARD, HAS 91 DEGREES AS THE LOWEST NUMBER IN THE

14 EXTREME CAUTION RANGE FOR HEAT INDEX.  IF YOU ALSO

15 LOOK TO THE NIOSH FOR GUIDANCE, THE MODERATE RISK

16 LEVEL -- THE LOWEST TEMPERATURE IN THE MODERATE RISK

17 LEVEL IS 91 DEGREES.  THAT'S WHY IT WAS CHOSEN.

18          **THE COURT:**  VERY GOOD.

19          **MR. BLANCHFIELD:**  GETTING ON TO WHAT WE HAVE

20 DONE, WHEN WE FIRST CAME BEFORE YOU, THE PLAINTIFFS

21 HAD MONTHS AND MONTHS AND EXPERTS AND FILED A TRO

22 PRELIMINARY INJUNCTION.  YOU GAVE US TEN DAYS TO

23 RESPOND.  WE DIDN'T HAVE EXPERTS, WE DIDN'T HAVE

24 ANYTHING.  WE WERE IN A HUNDRED-YARD RACE, THEY WERE

25 ALREADY CROSSING THE 50-YARD LINE.

1          NOW, SINCE THAT TIME WE HAVE HIRED

2    EXPERTS WHO HAVE GIVEN US A LOT OF GUIDANCE, AND I

3    WANT TO SHOW YOU WHAT WE'VE DONE.  SO WHAT YOU'RE

4    LOOKING AT HERE IS A PICTURE OF WHAT I REFERRED TO AS

5    THE SHADE WAGON.  YOU CAN SEE THAT THEY HAVE IGLOO®s

6    COOLERS, ACCESS TO WATER.  IN THE FOREGROUND THERE IS

7    THE PORTA POTTIES.  THESE ARE MOBILE UNITS.  THERE IS

8    SOME COMPLAINT THAT THERE IS NO PROTECTION FOR

9    WORKERS BETWEEN 88 AND 91 DEGREES FOR THE HEAT INDEX.

10   THERE IS PLENTY PROTECTION; THERE IS SHADE, THERE IS

11   WATER, THERE IS GATORADE.  THEY HAVE HATS, GLOVES AND

12   SUNSCREEN.

13          IF YOU GO TO THE NEXT --

14          **THE COURT:**  WHERE DO THE -- WHERE ON THIS

15   STRUCTURE DO THE INCARCERATED PERSONS SIT OR STAND?

16   THEY STAND THERE OR THERE ARE CHAIRS?

17          **MR. BLANCHFIELD:**  YOU SEE THEM SITTING IN

18   THE ONE PICTURE.  BUT IF YOU LOOK AT THE RIGHT-HAND

19   SIDE, YOUR HONOR, YOU CAN SEE THAT THERE IS BENCHES

20   THAT GO AROUND MOST OF THE PERIMETER EXCEPT FOR THE

21   END, WHICH IS WHERE THEY CAN -- THEY WALK ON.

22          **THE COURT:**  YEAH, THAT WAS MY QUESTION.  IS

23   THAT A BENCH OR IS THAT A SHELF?  BECAUSE IT LOOKS

24   LIKE THE IGLOO® COOLERS ARE ON WHAT APPEAR TO ME TO

25   BE A SHELF.

1          MR. BLANCHFIELD:  YEAH, THAT -- SO EACH --

2  THERE IS TWO BENCHES ON EITHER SIDE OF THE IGLOO®

3  COOLERS, AND THOSE ARE 20 TO 24 FEET LONG.  SO

4  THEY'RE ABLE TO SIT --

5          THE COURT:  ON EITHER SIDE OF THOSE?

6          MR. BLANCHFIELD:  ON EITHER SIDE.

7          THE COURT:  OKAY.  VERY GOOD.

8              OKAY.  WE CAN GO TO THE NEXT SLIDE.

9          MR. BLANCHFIELD:  SO THIS IS THE SHADE

10  PAVILION, YOUR HONOR.  24 BY 24.  THEY ARE GOING TO

11  -- THIS IS NOT MOVABLE.  SO WE'RE GOING TO HAVE SIX

12  MORE OF THESE STRUCTURES PLACED STRATEGICALLY

13  THROUGHOUT THE AREAS WHERE WE ARE FARMING PRODUCE.

14  YOU CAN SEE THE FANS.  YOU CAN SEE THERE IS

15  ELECTRICITY OUT THERE.  THERE IS RUNNING WATER TO TWO

16  DIFFERENT AREAS.  THERE IS THE BENCHES THERE FOR THEM

17  TO SIT.  AND THAT IS THE FIRST ONE CREATED.  THE

18  INTENT OF WARDEN VANNOY IS TO DO SIX MORE.  AND THIS

19  IS IN ADDITION TO THE SHADE WAGONS.  SO IF THERE IS

20  SOME AREA WHERE IT'S A BIT OF A PROBLEM, WE'RE JUST

21  GOING TO PULL THE WAGONS OUT THERE FOR THAT ISSUE.

22          THE COURT:  MR. BLANCHFIELD, I NEGLECTED TO

23  ASK:  DID YOU SHARE THIS POWERPOINT WITH YOUR

24  OPPONENTS?

25          MR. BLANCHFIELD:  YES.

1    THE COURT:  YOU HAVE IT, MR. BENJAMIN?

2    MR. BENJAMIN:  WE DO.

3    THE COURT:  THANK YOU.

4    MR. BLANCHFIELD:  YES.  OKAY.

5        NEXT, THE THRESHOLD TO CEASE WORK.  SO

6    THERE IS NO NATIONAL STANDARD --

7    THE COURT:  SO WAIT.  BEFORE WE GET TO THAT,

8    DO YOU HAVE ANY OTHER PHOTOGRAPHS OF ANY OTHER

9    PHYSICAL STRUCTURES OR PPE OR ANYTHING ELSE THAT

10   YOU'D LIKE TO SHARE?

11   MR. BLANCHFIELD:  THAT'S IT, YOUR HONOR.

12   THE COURT:  ALL RIGHT.  SO AGAIN, SO THAT

13   I'M CLEAR, THE STATE CONTINUES TO PROVIDE SUNSCREENS,

14   HATS, OTHER PPE, INCLUDING SOCKS AND GLOVES, CLEAN

15   CUPS FOR EVERY INMATE.  CORRECT?

16   MR. BLANCHFIELD:  CORRECT.

17   THE COURT:  ICE WATER IS MADE AVAILABLE.  IS

18   THAT RIGHT?

19   MR. BLANCHFIELD:  CORRECT.  AND GATORADE.

20   THE COURT:  SO, MR. BLANCHFIELD, I DON'T

21   WANT TO TAKE THINGS OUT OF ORDER, BUT I WANT TO COVER

22   ITEM BY ITEM.

23       SO LET ME ASK MR. BENJAMIN -- WHY DON'T

24   YOU COME ON -- YOU CAN USE THIS MICROPHONE RIGHT OVER

25   HERE, MR. BENJAMIN.

1          YOU CAN REMAIN THERE, MR. BLANCHFIELD.

2          DO YOU DISPUTE ANY OF THE

3   REPRESENTATIONS OFFERED BY MR. BLANCHFIELD WITH

4   RESPECT TO THE SHADE -- THE SYSTEM THAT THE STATE HAS

5   ADOPTED TO ASSURE SHADE FOR THE INMATES?

6          **MR. BENJAMIN:**  WE DO.  WE OBJECT TO QUITE A

7   BIT HERE.  YOU KNOW, WE -- I THINK AT THE OUTSET IT'S

8   IMPORTANT TO RECOGNIZE THAT NONE OF THIS IS IN

9   POLICY.  WE ASKED DR. LAVESPERE --

10          **THE COURT:**  JUST A MOMENT.

11          NATALIE, CAN YOU HEAR?

12          **MR. BENJAMIN:**  I'M SORRY.  AM I NOT CLOSE

13   ENOUGH?

14          **THE REPORTER:**  CAN YOU GET CLOSER TO THE

15   MICROPHONE?

16          **MR. BENJAMIN:**  IS THAT BETTER?

17          **THE COURT:**  YES.

18          **MR. BENJAMIN:**  NONE OF THIS IS IN POLICY.  I

19   ASKED --

20          **THE COURT:**  NO, I UNDERSTAND THAT.  BUT MY

21   QUESTION IS -- WELL, I GUESS LET ME ASK YOU,

22   HOPEFULLY MORE EFFECTIVELY:  BUT YOU DON'T DISAGREE

23   OR DISPUTE THAT THE STATE HAS IMPLEMENTED A POLICY OR

24   AT LEAST A PROCEDURE -- IT MAY NOT BE ENSHRINED IN A

25   WRITTEN POLICY AT THIS POINT.  BUT THEY HAVE

1  UNDERTAKEN SOME PRECAUTIONS TO ASSURE THE SAFETY OF

2  INMATES BY ERECTING THESE SHADE AREAS?

3          **MR. BENJAMIN:**  NO, WE DON'T AGREE WITH THAT.

4          **THE COURT:**  YOU DON'T, OKAY.

5          **MR. BENJAMIN:**  WE -- I'LL COME TO THE SHADE

6  AREAS IN JUST A MOMENT, BECAUSE THE FIRST THING WE --

7  FIRST TIME WE EVER SAW THAT WAS IN THE OPPOSITION.

8  AND I SEE ONE PICTURE.  I DON'T SEE ANY PEOPLE.  I

9  DON'T KNOW WHERE THAT IS.  I DON'T KNOW WHETHER IT'S

10  EVER BEEN USED.  I HAVE NO IDEA WHETHER THIS

11  PARTICULAR SHADE PAVILION IS ACTUALLY IN PLACE.  I

12  HAVE NO IDEA WHEN THEY'RE GOING TO BUILD THESE OTHER

13  ONES THAT THEY PLAN TO MAKE.

14          WHAT I DO KNOW IS THAT ON THE PICTURES

15  OF THE SHADE WAGON THAT WERE IN THAT POWERPOINT,

16  THOSE APPEARED FOR THE VERY FIRST TIME ON THE DAY

17  THAT WE DID OUR SECOND SITE INSPECTION.  THE VERY

18  FIRST TIME.  THEY WERE NOT PRESENT ON SOME FARM

19  LINES.  WE WENT OUT TO SEE LINE 15B.  THOSE SHADE

20  WAGONS WERE NOT THERE.  IN FACT, WE WENT TO 15B.

21  THERE WAS NO SHADE ANYWHERE, THERE WAS NO -- THERE

22  WAS NO ICE OR WATER VISIBLE.  THEY'VE EXPLAINED

23  THAT -- THERE IS A BUS THAT WAS PARKED QUITE A WAYS

24  FROM WHERE A LOT OF THESE FOLKS WERE WORKING -- THAT

25  THEY COULD GO TO AND THEY CAN SIT IN AN UN-AIR-

1    CONDITIONED BUS THAT THEY CLAIM HAS WATER AND ICE.

2    BUT THERE WAS NO SHADE WAGON, THERE WAS NONE OF THIS,

3    AND THERE IS CERTAINLY NOT SOMETHING SPREAD AROUND --

4         THE COURT:  WHEN DID YOU LAST VISIT THE

5    FACILITY?

6         MR. BENJAMIN:  THAT WAS ON, I'M GOING TO

7    SAY, OCTOBER 3RD.  IT WAS IN OCTOBER.

8         THE COURT:  BUT YOU WOULD AGREE WITH ME --

9    NOT TO CUT YOU OFF.  I'M NOT TRYING TO BE RUDE.  BUT

10   YOU WOULD AGREE WITH ME THAT THE STATE CERTAINLY

11   WOULD HAVE ENOUGH TIME TO ERECT THESE THINGS.  RIGHT?

12        MR. BENJAMIN:  WELL, I WOULD, EXCEPT FOR

13   THAT ON APRIL 2ND WE HAVE A DECLARATION FROM

14   MR. EVANS TUTTS.  THAT IS AT -- WHERE IS THAT?  THAT

15   IS AT ECF 224-5.  MR. TUTTS IS DESCRIBING BEING ON

16   THE LINE.  TO BE CLEAR, MR. TUTTS IS A HEAT-SENSITIVE

17   PERSON.  HE WAS SUFFERING HEAT-RELATED SYMPTOMS.  HE

18   CALLED IN A SELF-DECLARED EMERGENCY OR AN SDE.  HE

19   WAS NEVER SEEN THAT DAY, DESPITE CALLING IN THE SDE.

20   HE WAS TOLD LATER ON THAT IT'S ANGOLA'S POLICY THAT A

21   --

22        THE COURT:  WAIT.  YOU'RE GETTING A LITTLE

23   BIT AHEAD OF YOURSELF.  I'M TRYING TO SIMPLIFY THIS

24   AS BEST I CAN.  I HAVE TO COME TO SOME BASIC

25   UNDERSTANDING OF WHAT HAS ANGOLA PROVIDED AS OF THIS

1  DATE; AS OF APRIL 22, 2025.

2              NOW, YOU KNOW, YOU HAVEN'T HAD AN

3  OPPORTUNITY TO VISIT IN SEVERAL MONTHS, AND WE WILL

4  DISCUSS THAT.  MAYBE THAT'S WHAT WE'LL ALL HAVE TO

5  DO, IS VISIT THE FACILITY SO THAT WE CAN ALL OBSERVE

6  AND INSPECT WHAT THIS FACILITY HAS DONE, WHAT THE DOC

7  HAS DONE, SO THAT I CAN MAKE A JUDGMENT ABOUT THAT.

8          **MR. BENJAMIN:**  THAT IS CERTAINLY FAIR.  AND

9  I APOLOGIZE.  I SHOULD HAVE LED WITH THE FACT THAT

10  MR. TUTTS DESCRIBED THERE BEING NO SHADE AVAILABLE ON

11  THE DAY THAT HE CALLED IN THE SDE, NO CUPS AVAILABLE

12  IN THE MORNING, AND THAT THE WATER RAN OUT IN THE

13  AFTERNOON.

14          **THE COURT:**  NOW, WITH RESPECT TO -- IS

15  THE -- ARE THESE FACILITIES, THE SHADE WAGONS, ARE

16  THEY ONLINE TODAY?

17          **MR. BLANCHFIELD:**  THEY ARE AND THEY'RE OUT

18  THERE EVERY DAY.  WE TAKE ISSUE WITH BEING PROVIDED

19  NOT A SIGNED AFFIDAVIT BUT SOME -- WHOEVER THIS TUTTS

20  FELLOW IS.  WE'RE OUT THERE EVERY DAY WITH WATER.

21  THIS COMPLAINT -- AND I TRIED TO DO THIS EARLIER,

22  JUDGE.  THIS THING ABOUT IT'S NOT BEING WRITTEN DOWN,

23  WELL --

24          **THE COURT:**  WAIT, WAIT, WAIT.  YOU'RE

25  GETTING AHEAD.  FIRST I'M TRYING TO MAKE AN

1 | ASSESSMENT OF THE CURRENT PHYSICAL CONDITIONS, THEN
2 | WE WILL TAKE UP THE ISSUE OF WHETHER THEY ARE
3 | CURRENTLY OR WILL THEY BE ENSHRINED INTO DOC POLICY.
4 | BECAUSE IF WE ALL AGREE THAT, *OH, YEAH, ALL OF THESE*
5 | *ITEMS ARE NOW BEING OFFERED BY THE DOC,* IT KIND OF
6 | MAKES MY JOB A LITTLE EASIER.  THEN WE CAN
7 | IMMEDIATELY GO TO:  *OKAY, HOW ARE WE GOING TO MAKE*
8 | *SURE THAT THESE ITEMS ARE OFFERED TO THE INMATES*
9 | *FOREVER, I MEAN, NOT JUST -- BUT IN THE FUTURE.*
10 |          SO WHAT I'M HEARING, MR. BENJAMIN, IS
11 | THAT THERE IS -- THE STATE BELIEVES ADEQUATE SHADE
12 | PROVIDED.  I CERTAINLY AGREE THAT THERE IS A LOT MORE
13 | AREAS -- SHADE AREAS PROVIDED TODAY THAN THERE WERE A
14 | YEAR AGO.  AND DO YOU HAVE ANY INFORMATION
15 | SUGGESTING -- AND APPARENTLY YOU DO -- THAT SOME OF
16 | THE PPE IS NOT BEING PROVIDED?
17 |       **MR. BENJAMIN:**  WE DO, AND IT COMES IN PART
18 | FROM APRIL DECLARATIONS.  WELL, LET ME START BACK
19 | JUST AT THE SHADE STRUCTURES, IF I MIGHT.
20 |          THE DAY AFTER MR. TUTTS FELL ILL,
21 | MR. CARTER, ANOTHER HEAT-SENSITIVE INDIVIDUAL, FELL
22 | ILL.  THAT WAS ON APRIL 3RD, SO NOT FAR FROM WHERE WE
23 | ARE TODAY.  HE SAYS THAT THERE WAS A SHADE WAGON OUT
24 | THAT DAY.  BUT HE SAT ON THE EDGE -- NOW, YOU CAN
25 | MAYBE SEE IT IN THE PICTURE.  THIS SHELF THAT YOU

1 MENTIONED, THAT'S SORT OF OUTSIDE OF WHERE THE ROOF

2 COVERING IS.  AND DEPENDING ON THE TIME OF DAY, YOU

3 MIGHT BE IN FULL SUN.  IT'S A HOT BENCH.  SO YOU'RE

4 SORT OF SITTING THERE IN THE SUN ON A SHADE WAGON.

5           THE COURT:  IT WOULD PROBABLY HAVE MADE MORE

6 SENSE TO PLACE THE BENCHES IN THE MIDDLE OF THE WAGON

7 SO THAT --

8           MR. BENJAMIN:  YOU WOULD EXPECT THAT.  AND

9 YOU WOULD EXPECT THAT IF THEY WANTED TO PROVIDE THESE

10 SHADE WAGONS, THEY WOULD FIGURE OUT A WAY TO GET THEM

11 TO LINE 15B.  AND THERE IS NO DISPUTE, THE 30(B)(6)

12 WITNESSES AGREE THERE IS NO SHADE WAGON AVAILABLE TO

13 AT LEAST ONE FARM LINE.

14           MR. BLANCHFIELD:  YOUR HONOR --

15           THE COURT:  IS THAT CORRECT, MR.

16 BLANCHFIELD?

17           MR. BLANCHFIELD:  WELL, 15B, UNDERSTAND, IS

18 A GRASS-CUTTING CREW.  THEY MOVE NONSTOP.  THEY GET

19 ON A BUS, THEY GET TAKEN TO A SPOT THAT NEEDS GRASS

20 CUTTING, THEY GET OUT, THEY CUT, THEY GET BACK ON THE

21 BUS.  THEY'RE SHADED ON THE BUS.  THEY GET MOVED TO

22 THE NEXT SPOT.  THERE IS UNLIMITED WATER ON THE BUS,

23 GATORADE ON THE BUS.  WE CAN'T PUT A SHADE WAGON OUT

24 THERE AND FOLLOW THEM AROUND ALL DAY LONG.  IT'S MUCH

25 MORE EFFECTIVE, WE USE THE BUS.

1          THE COURT:  OKAY.  VERY GOOD.  WELL, LET'S

2    MOVE ON TO SOME OTHER ITEMS NOW.  AND YOU MAY BOTH

3    REMAIN WHERE YOU ARE, IF YOU'RE COMFORTABLE.

4               SO WE'VE TALKED ABOUT THE TENT AS I

5    THINK YOU DESCRIBED IT AS WHAT YOU WERE REQUESTING

6    IT.  BUT SHADE, A SHADE AREA.  RIGHT?

7               MR. BENJAMIN, DO YOU DISPUTE THAT THERE

8    ARE 15-MINUTE BREAKS EVERY HOUR OFFERED TO THE

9    WORKERS ON THE FARM LINE?

10          MR. BENJAMIN:  I DISPUTE THAT, YES, YOUR

11   HONOR.  YOU KNOW, IT'S VERY DIFFICULT TO TELL EXACTLY

12   WHAT'S HAPPENING READING SOME OF THEIR RESPONSES.

13   BUT THEY'LL HAVE AN EXCUSE FOR WHY 15B DOESN'T HAVE A

14   BREAK.  THERE WILL BE DAYS WHERE IT DOESN'T SEEM TO

15   INDICATE THAT THERE IS BREAKS ON THE DOC's --

16          THE COURT:  SO NOW WE'RE BLEEDING INTO THE

17   POLICY ITSELF.

18          MR. BENJAMIN:  WE ARE BLEEDING INTO THE

19   POLICY.  THERE NEEDS TO BE 15-MINUTE BREAKS IN THE

20   POLICY YEAR-ROUND.

21          THE COURT:  BUT DO YOU -- ARE ANY OF YOUR

22   CLIENTS REPORTING TO YOU THAT THEY DON'T GET

23   15-MINUTE BREAKS?  THAT YOU RECALL AT THIS TIME.

24          MR. BENJAMIN:  I DON'T RECALL OFFHAND RIGHT

25   THIS SECOND.

1    **THE COURT:** VERY GOOD.

2         AND, MR. BLANCHFIELD, I ASSUME THAT

3    IT'S THE DOC'S POSITION THAT, *YES, WE GIVE 15-MINUTE*

4    *BREAKS*?

5    **MR. BLANCHFIELD:** WE DO.

6    **THE COURT:** ALL RIGHT. PLACEMENT OF COOLERS

7    THROUGHOUT THE FIELD -- THAT'S SOMETHING ELSE YOU'RE

8    NOW REQUESTING, MR. BENJAMIN -- SO THAT THERE ARE ICE

9    AND WATER AVAILABLE. DO YOU HAVE ANY EVIDENCE TO

10   SUGGEST THAT THAT'S NOT BEING OFFERED NOW?

11   **MR. BENJAMIN:** YES, YOUR HONOR. WE WENT AND

12   VISITED LINE 15B. AND AS FAR AS THE EYE COULD SEE,

13   YOU DID NOT SEE A COOLER. AND THE BUS THAT THEY'RE

14   TALKING ABOUT WAS NOWHERE NEAR WHERE A NUMBER OF THE

15   MEN WERE WORKING.

16   **THE COURT:** AND THAT WAS IN OCTOBER OF 2024?

17   **MR. BENJAMIN:** THAT WAS IN OCTOBER.

18   **THE COURT:** MR. BLANCHFIELD?

19   **MR. BLANCHFIELD:** THE BUS IS RIGHT THERE,

20   JUDGE. THAT'S WHAT THEY USE TO MOVE THE INMATES.

21   YOU KNOW, YOU -- AND, YOU KNOW, THERE IS GOING TO BE

22   TESTIMONY -- AS OPPOSED TO TESTIMONY FROM MR.

23   BENJAMIN, THERE IS GOING TO BE TESTIMONY FROM PEOPLE

24   WHO ARE OUT THERE.

25   **THE COURT:** OFFERING ADDITIONAL CUPS TO

1  THOSE ON THE FARM LINE.  MR. BENJAMIN, ARE YOUR

2  CLIENTS REPORTING TO YOU THAT THAT IS -- THE POLICY

3  IS -- I WON'T USE THE WORD "POLICY," BUT THAT

4  PRACTICE IS NOT BEING IMPLEMENTED?

5          **MR. BENJAMIN:**  MR. TUTTS REPORTED THAT THERE

6  WERE NOT CUPS ON -- IN THE MORNING OF APRIL 2ND.

7          **THE COURT:**  AND THAT WAS MR. TUTTS, YOU

8  SAID?

9          **MR. BENJAMIN:**  YES, YOUR HONOR.

10          **THE COURT:**  AND MR. TUTTS' FIRST NAME?

11          **MR. BENJAMIN:**  EVANS, WITH AN "S" AT THE

12  END.

13          **THE COURT:**  DID YOU MAKE MR. BLANCHFIELD OR

14  COUNSEL FOR THE STATE AWARE OF THIS ALLEGATION?

15          **MR. BENJAMIN:**  WE DID.  WE FILED A --

16  THROUGH OUR FILING.  AND MR. BLANCHFIELD HAD

17  MENTIONED THAT THE DECLARATION THAT WAS FILED WAS

18  UNSIGNED.  WE HAVE THE SIGNED VERSION.  IT IS

19  DIFFICULT TO GET SIGNED VERSIONS OF PEOPLE WHO ARE

20  INCARCERATED.  WE DO HAVE THAT AND WE COULD

21  SUPPLEMENT THE RECORD IF THAT WOULD BE HELPFUL.

22          **THE COURT:**  ANY OTHER PROPOSED CLASS MEMBERS

23  REPORT THE SAME THING?

24          **MR. BENJAMIN:**  NOT SINCE THIS APRIL PERIOD.

25          **THE COURT:**  MR. BLANCHFIELD?

1          MR. BLANCHFIELD:  YOU KNOW, JUDGE, IF MR.

2    TUTTS LOST HIS CUP, HE CAN ASK FOR ANOTHER ONE.

3    WE'VE GOT ALL KINDS OF CUPS OUT THERE.

4          THE COURT:  AND SANITARY FACILITIES ARE

5    AVAILABLE.  YOU HAVE CONCERNS ABOUT THAT?

6          MR. BENJAMIN:  OUR UNDERSTANDING IS THE

7    SANITARY FACILITIES ARE AVAILABLE WHERE THE SHADE

8    WAGONS ARE AVAILABLE.  I'M NOT -- I DON'T KNOW WHERE

9    LINE 15B IS SUPPOSED TO USE FACILITIES.

10          THE COURT:  YOU ALSO REQUEST THAT THE COURT

11   IMPOSE AGE LIMITS ON THOSE MEN WHO ARE FORCED TO WORK

12   ON THE FARM LINE.  CORRECT?

13          MR. BENJAMIN:  THAT'S RIGHT, YOUR HONOR.

14   THERE IS A VERY CLEAR CORRELATION BETWEEN AGE AND

15   HEAT SENSITIVITY, AND SO WE BELIEVE THAT THAT WOULD

16   BE ENTIRELY APPROPRIATE.

17          THE COURT:  AND WHAT DO YOU BELIEVE THE

18   APPROPRIATE AGE LIMIT TO BE?

19          MR. BENJAMIN:  DR. VASSALLO HAD TESTIFIED IT

20   WAS SIXTY -- 60 OR 65.  I'LL NEED TO DOUBLE-CHECK

21   THAT.

22          THE COURT:  MR. BLANCHFIELD, IS THERE A

23   PRACTICE REGARDING THE AGE OF THE INMATES WHO ARE

24   FORCED TO WORK ON THE FARM LINE?

25          MR. BLANCHFIELD:  YOUR HONOR, WHEN SOMEONE

1  IS THAT ADVANCED AND UNHEALTHY, HE'S NOT GOING TO BE

2  PUT ON THE FARM LINE.  I'M 65.  I'LL WORK ON THAT

3  FARM LINE WITHOUT ANY TROUBLE AT ALL, BECAUSE I'M AS

4  HEALTHY AS A HORSE.

5       THE COURT:  IS THAT RIGHT?

6       MR. BLANCHFIELD:  DESPITE OPEN-HEART

7  SURGERY.  YEAH, I'M READY.  SO THERE IS NO REASON --

8  YOU KNOW, THERE ARE SOME 40-YEAR-OLDS THAT SHOULDN'T

9  BE OUT THERE BECAUSE THEY'RE UNHEALTHY.  BUT THERE

10 ARE SOME 65-YEAR-OLDS THAT ARE PLENTY HEALTHY TO BE

11 OUT THERE PICKING CUCUMBERS.

12      THE COURT:  WELL, I'M NOT 65 YET.  I'M NOT

13 SURE I'D WANT TO BE ON THE FARM LINE AT A HUNDRED AND

14 -- A 91-DEGREE OR EVEN 88-DEGREE TEMPERATURE, BUT I

15 APPRECIATE YOUR POINT.

16           FREE MEDICAL CARE.  MR. BENJAMIN, DO

17 YOU DISPUTE THAT THOSE MEN WORKING THE FARM LINE WHO

18 BELIEVE THEY NEED MEDICAL CARE ARE NOT GETTING

19 MEDICAL CARE?

20      MR. BENJAMIN:  WE DO DISPUTE THAT, FOR A

21 COUPLE OF REASONS.  ONE OF THE REASONS IS THAT THE

22 POLICY OF DOC -- AND IT'S FOLLOWED BY H -- BY LSP,

23 EXCUSE ME -- IS SET OUT IN -- I BELIEVE IT'S HEALTH

24 CARE -- HC 14.  THAT SETS OUT THAT THE INCARCERATED

25 PEOPLE PAY -- I BELIEVE IT'S A TWO-DOLLAR COPAY IN

1  SOME CIRCUMSTANCES AND A ONE-DOLLAR CIRCUMSTANCE IN

2  ANOTHER.  THE LSP COROLLARY POLICY SAYS WE'RE

3  FOLLOWING HC 14.

4            ONE OF THE ISSUES HERE IS THAT THEY

5  SEEM TO -- THEY SUGGEST THAT THERE IS GOING TO BE

6  SOME DETERMINATION MADE ABOUT WHETHER OR NOT HEALTH

7  CARE IS GOING TO BE WAIVED OR THE HEALTH CARE COPAY

8  IS GOING TO BE WAIVED.  ONE OF THE CRITICAL THINGS

9  HERE IS THERE SHOULD NOT BE A DISINCENTIVE TO CALL

10  FOR A HEALTH EMERGENCY.  AND THAT'S WHAT THIS DOES.

11  AND ONE DOLLAR AND TWO DOLLARS, IT MIGHT NOT SOUND

12  LIKE MUCH, BUT THESE INDIVIDUALS ARE MAKING BETWEEN

13  ZERO AND FOUR CENTS.

14        **THE COURT:**  PER HOUR.

15        **MR. BENJAMIN:**  PER HOUR.  AND NOT KNOWING

16  WHETHER OR NOT SOMEBODY IS GOING TO WAIVE A COPAY,

17  WHEN THERE IS A POLICY SAYING *HERE IS WHAT THE COPAY*

18  *IS*, IS DISINCENTIVIZING.  AND THAT SAME --

19        **THE COURT:**  HAVE YOU THOUGHT --

20        **MR. BENJAMIN:**  I'M SORRY.  GO AHEAD.

21        **THE COURT:**  GO AHEAD.  LET ME LET YOU

22  FINISH.

23        **MR. BENJAMIN:**  I WAS JUST GOING TO SAY I

24  BELIEVE ON THE BOTTOM OF THE SDE FORM THERE IS

25  ALSO -- IT REFERENCES THAT COPAY.  NOW, AGAIN, MAYBE

1  THEY'RE WAIVING IT IN SOME CIRCUMSTANCES.  BUT IF

2  THEY ARE COMMITTED TO WAIVING THIS AND NOT -- TO NOT

3  DISINCENTIVIZING, CALLING IN HEALTH EMERGENCIES WHEN

4  YOU'RE OUT IN THE FIELD, THAT LANGUAGE GOT TO GO.

5  AND THEY OUGHT TO ADOPT A POLICY THAT SAYS THAT IT

6  WILL BE WAIVED.

7          THE COURT:  YOU-ALL HAVE ENGAGED IN PRETTY

8  EXTENSIVE DISCOVERY AT THIS POINT.  HAVE YOU

9  DEVELOPED ANY DISCOVERY, ANY PATTERN, PRACTICE OF MEN

10 WORKING THE FARM LINE WHO ARE CHARGED FOR MEDICAL

11 SERVICES THAT THEY BELIEVE ARE RELATED TO THEIR

12 SERVICE ON THE FARM LINE?

13         MR. BENJAMIN:  DEFENDANTS' POSITION IN THIS

14 CASE HAS BEEN THAT THEY ARE WITHHOLDING MUCH OF THAT

15 DISCOVERY UNTIL -- OR PENDING THE DECISION ON CLASS

16 CERTIFICATION.

17         THE COURT:  BUT YOUR OWN CLIENTS WOULD HAVE

18 THE ABILITY TO PROVIDE SOME RECORDS OF THAT.

19 CORRECT?

20         MR. BENJAMIN:  THEY DON'T HAVE A RECORD OF

21 THEM CALLING IN FOR A SDE SINCE THIS NEW PRACTICE HAS

22 SUPPOSEDLY BEEN IMPLEMENTED.

23         THE COURT:  HAVE YOU THOUGHT ABOUT, TO THE

24 EXTENT -- AND I'M SURE MR. BLANCHFIELD WOULD ARGUE

25 THAT, *LISTEN, YOU KNOW, WE'VE GOT TO CREATE A POLICY*

1   *THAT WOULD DISINCENTIVIZE SOMEONE FROM ABUSING THE*
2   *PRIVILEGE*, AS IT WERE; THAT IS, FROM CLAIMING THAT
3   THEY HAVE A MEDICAL ISSUE WHILE WORKING THE FARM LINE
4   WHEN THEY REALLY DON'T HAVE A MEDICAL ISSUE AND THAT
5   WE SHOULD RELY ON THE EXPERTISE OF THE MEDICAL STAFF
6   AT ANGOLA TO MAKE THAT DETERMINATION OF WHETHER THERE
7   IS A CORRELATION BETWEEN THE ALLEGED MEDICAL ISSUE
8   AND SERVICE ON THE FARM LINE.
9          **MR. BENJAMIN:**  THAT MAY BE TRUE TO SOME
10  EXTENT.  BUT, YOUR HONOR, WHAT WE HAVE HERE IS -- YOU
11  COULD EASILY DO THAT.  YOU COULD MAKE A COPAY POLICY,
12  SAY, EQUAL TO ONE HOUR WORTH OF WAGE, TWO HOURS WORTH
13  OF WAGE.  WHAT YOU'RE TALKING ABOUT IS TENS AND TENS
14  AND TENS OF HOURS WORTH OF WAGE.
15          NOT ONLY THAT, YOU HAVE ANOTHER HEALTH
16  CARE POLICY -- I REFERENCED IT EARLIER -- APPARENTLY
17  A SELF-DECLARED EMERGENCY HAS TO BE RESPONDED TO
18  WITHIN THREE HOURS.  THAT'S A POLICY OF THE DO -- OF
19  LSP, APPARENTLY; THAT THEY DON'T HAVE TO COME OUT
20  INTO THE FIELD TO DEAL WITH A HEALTH EMERGENCY FOR
21  THREE HOURS.  THIS GOES TO NOT ONLY WHETHER OR NOT
22  PEOPLE ARE CALLING IN HEALTH CARE POLICIES RELATED TO
23  HEAT, THIS GOES INTO WHETHER OR NOT PEOPLE'S LIVES
24  AND SAFETY IS BEING RESPECTED IN THE FIRST PLACE.
25          **THE COURT:**  AND TO BE CLEAR, WE'RE TALKING

1 ABOUT A SELF-REPORT; IN OTHER WORDS, IF A

2 CORRECTIONAL OFFICER WITNESSES SOMEONE WHO HE OR SHE

3 BELIEVES ARE EXPERIENCING A MEDICAL EMERGENCY, THEY

4 MOST CERTAINLY CAN CALL IT IN.  AND I ASSUME THAT THE

5 MEDICAL RESPONSE WOULD BE FAIRLY RAPID.

6          **MR. BENJAMIN:**  I DON'T KNOW THAT THAT'S

7 TRUE.

8          **THE COURT:**  ALL RIGHT.  MR. BLANCHFIELD?

9          **MR. BLANCHFIELD:**  WELL, IT IS TRUE, JUDGE.

10 IF IT'S AN EMERGENCY -- IT'S CALLED MEDICAL 4 -- THEY

11 SEND AN AMBULANCE OUT THERE IMMEDIATELY.  THERE IS A

12 STATUTE IN TITLE 15 THAT REQUIRES US -- THIS IS NOT

13 OUR LAW.  THIS IS THE GUYS DOWNTOWN -- REQUIRES US TO

14 CHARGE A COPAY.  SO IF I HAVE SOMEONE WORKING OUT IN

15 THE FARM LINE AND THEY SAY THEY'VE GOT A TOOTHACHE,

16 *I'M GOING TO SELF-DECLARE AS AN EMERGENCY*, IT PUTS US

17 IN A TOUGH POSITION.  BECAUSE YOU KNOW WHAT?  YOU HAD

18 THE TOOTHACHE TWO DAYS AGO.  YOU COULD SEE SOMEONE ON

19 A REGULAR BASIS, BUT THEY CALL IT WHEN THEY GET OUT

20 THERE IN THE FIELD.  SO WE HAVE A TIGHTROPE TO WATCH.

21 IF IT'S A LEGITIMATE COMPLAINT, THEY'RE NOT --

22 THEY'RE GOING TO WAIVE THE COPAY.

23          **THE COURT:**  AND WHO DETERMINES WHAT THE

24 COPAY IS?

25          **MR. BLANCHFIELD:**  THE MEDICAL PROVIDER.

1  IT'S GENERALLY A TWO-DOLLAR COPAY, IF AT ALL.

2          **THE COURT:**  WELL, DO THEY -- WELL, LET ME

3  REPHRASE THE QUESTION.  WHO -- THE MEDICAL STAFF

4  DETERMINES IF THERE IS A COPAY APPLIED.  BUT WHO SETS

5  THE COPAY SCHEDULE, I GUESS IS WHAT I'M ASKING YOU.

6  IT'S -- I ASSUME IT IS DOC PERSONNEL HERE IN BATON

7  ROUGE --

8          **MR. BLANCHFIELD:**  IT IS --

9          **THE COURT:**  -- POLICYMAKERS WHO SET IT.

10         **MR. BLANCHFIELD:**  -- HEADQUARTERS, YOUR

11  HONOR.  AND IF THE INMATE DOES NOT HAVE $200 IN HIS

12  ACCOUNT OR LESS, HE'S NOT CHARGED ANYTHING.

13         **THE COURT:**  OKAY.

14         **MR. BENJAMIN:**  YOUR HONOR, THE REVISED

15  STATUTE THAT MR. BLANCHFIELD IS REFERENCING, IT SAYS

16  THAT THE SECRETARY SETS THE COPAY.

17         **THE COURT:**  EVENTUALLY IT WILL BE THE

18  SECRETARY OR A MEMBER OF THE SECRETARY STAFF.

19  CORRECT?

20         **MR. BENJAMIN:**  AND HE HAS SET IT AT TWO

21  DOLLARS AND ONE DOLLAR.  AND THEY HAVE MADE NO

22  ACCOMMODATION FOR PEOPLE OUT IN THE FIELD.

23         **THE COURT:**  HAS IT ALWAYS BEEN THAT SUM?

24         **MR. BENJAMIN:**  I DON'T KNOW IF IT'S ALWAYS

25  BEEN TWO DOLLARS AND ONE DOLLAR.

1      **THE COURT:**  IN OTHER WORDS, YOU'RE NOT

2   SUGGESTING THAT IT HAD BEEN RAISED RECENTLY IN

3   RESPONSE TO ANY LAWSUITS OR ANYTHING LIKE THAT?

4      **MR. BENJAMIN:**  I'M NOT SUGGESTING THAT.

5   WHAT I'M -- I MEAN, AS YOU'RE ASKING, IT IS THE CASE

6   THE INCENTIVE WAGE, THE ZERO TO FOUR CENTS AN HOUR,

7   THAT HASN'T BEEN RAISED SINCE THE 1950s.

8      **THE COURT:**  BUT THAT, OF COURSE, IS NOT AN

9   ISSUE IN THIS LITIGATION.  DO YOU AGREE?

10      **MR. BENJAMIN:**  I DON'T -- I THINK THAT THE

11   INCENTIVE PAY IS VERY MUCH AN ISSUE IN THIS

12   LITIGATION.

13      **THE COURT:**  IT MAY BE AN INDIRECT ISSUE.

14   BUT YOU'RE NOT SEEKING -- YOU'RE NOT PRAYING -- YOUR

15   REQUESTED RELIEF DOESN'T INCLUDE RAISING -- OR ASKING

16   THE COURT TO FORCE THE PAY TO BE RAISED?

17      **MR. BENJAMIN:**  THAT'S CORRECT.  OUR RELIEF

18   GOES THE OTHER WAY.  WE'RE SEEKING THAT IF DOC IS

19   SAYING THAT THEY'RE NOT GOING TO DISINCENTIVIZE

20   MEDICAL CARE, THEN THEY OUGHT TO REDUCE THE COPAY TO

21   SOMETHING THAT IS MORE CLOSELY ALIGNED WITH THE WAGE

22   THAT FOLKS EARN.

23      **THE COURT:**  ALL RIGHT.  ANYTHING ELSE WITH

24   RESPECT TO THE, WHAT I WOULD CALL, TANGIBLE OR

25   PHYSICAL REMEDIES THAT WE'VE DISCUSSED?  ANYBODY HAVE

1  ANYONE ELSE BEFORE WE MOVE ON TO A BRIEF DISCUSSION

2  OF THE POLICY?

3      **MR. BENJAMIN:**  I THINK YOU'VE GOT IT WITH

4  RESPECT TO THE PHYSICAL STRUCTURES.

5      **THE COURT:**  ALL RIGHT.  MR. BLANCHFIELD?

6      **MR. BLANCHFIELD:**  CAN I GO BACK TO MY

7  POWERPOINT?  IT KIND OF JUMPS INTO THAT.

8      **THE COURT:**  YES.  LET'S BE VERY, VERY QUICK

9  ABOUT THIS BECAUSE WE HAVE A WHOLE LOT TO COVER, AND

10  WE --

11      **MR. BLANCHFIELD:**  SO BACK TO THE POLICY,

12  YOUR HONOR.

13      **THE COURT:**  SO LET ME JUST -- SO NOW WE ARE

14  AT THE APPROPRIATE POINT, BECAUSE NOW I DO WANT TO

15  TALK ABOUT THE POLICIES.  SO THANK YOU FOR THAT

16  SEGUE, SO -- BECAUSE RIGHT NOW, BEFORE WE BEGIN, LET

17  ME GIVE YOU AN OPPORTUNITY, MR. BENJAMIN, TO TELL ME

18  WHY YOU THINK THE POLICY IS FLAWED, UNCONSTITUTIONAL,

19  OR THAT IT'S SIMPLY NOT BEING IMPLEMENTED BY THE

20  DEFENDANTS.  THE CURRENT POLICY.

21      **MR. BENJAMIN:**  SURE.  WE'VE COVERED THAT THE

22  POLICY SHOULD ADDRESS THOSE PHYSICAL STRUCTURES.  I'M

23  NOT GOING TO GO BACK INTO THAT.  THERE ARE A NUMBER

24  OF WAYS IN WHICH THE POLICY IS FLAWED.  IT IS

25  ARBITRARY, IT IS INADEQUATE, IT IS UNSUPPORTED AND

1   IT'S NOT FOLLOWED.

2            THERE IS A COUPLE OF THINGS RIGHT OFF

3   THE BAT.  FIRST OF ALL, THEY HAVE CONTINUED TO APPLY

4   THIS HEAT SEASON SO THAT THE HEAT PRECAUTIONS

5   MANDATED BY POLICY ARE ONLY AVAILABLE BETWEEN MAY 1ST

6   AND OCTOBER 31ST EACH YEAR.  NOW, THEY'VE DONE THAT

7   DESPITE KNOWING THAT THE FACTORS THAT CREATE HEAT

8   STRESS AND CAUSE HEAT-RELATED ILLNESS DON'T FOLLOW

9   THAT CALENDAR.

10           **THE COURT:**  WHAT WAS THE RELEVANT PERIOD?

11           **MR. BENJAMIN:**  MAY 1ST THROUGH OCTOBER 31ST

12   EACH YEAR.

13           NOW, IN NOVEMBER LAST YEAR, IN NOVEMBER

14   2024 -- SO AFTER THE HEAT SEASON EXPIRED OR PASSED --

15   THERE WERE SEVERAL DAYS WHEN THE HEAT INDEX MET OR

16   EXCEEDED BOTH 88 AND 91 DEGREES.  AND THEN I

17   MENTIONED IN APRIL -- SO BEFORE THE HEAT SEASON THIS

18   YEAR HAS BEGUN -- WE'VE HAD AT LEAST TWO PEOPLE WHO

19   ARE HEAT-SENSITIVE EXPERIENCE HEAT-RELATED ILLNESS.

20   THERE IS NO SCIENCE BEHIND SETTING A HEAT SEASON

21   AMONG AN ARBITRARY DATE RANGE.

22           **THE COURT:**  MR. BENJAMIN, I KNOW YOU'RE

23   VISITING US TODAY, BUT WERE YOU HERE IN BATON ROUGE

24   YESTERDAY?

25           **MR. BENJAMIN:**  I WAS HERE IN BATON ROUGE

1  YESTERDAY.

2       **THE COURT:**  DO YOU KNOW WHAT THE HIGH

3  TEMPERATURE WAS YESTERDAY?

4       **MR. BENJAMIN:**  I DON'T KNOW RIGHT OFFHAND.

5  BUT WHAT I AM SUGGESTING --

6       **THE COURT:**  I CAN TELL YOU WHAT IT WAS.  I

7  THINK WHAT THE METEOROLOGIST -- AT LEAST THE NETWORK

8  TV METEOROLOGIST TELLS US IT WAS 88 DEGREES, JUST THE

9  AMBIENT TEMPERATURE YESTERDAY, APRIL 21ST.

10           SO, MR. BLANCHFIELD, WE'VE GOT TO COME

11  BACK TO THAT, BECAUSE I'M GOING TO GIVE YOU AN

12  OPPORTUNITY TO BE HEARD ON THAT.  OKAY?  GO AHEAD.

13       **MR. BENJAMIN:**  THIS IS JUST -- IT'S SIMPLY

14  THE CASE THAT WHEN IT'S HOT, WHEN THE HEAT INDEX IS

15  HIGH, THAT'S WHEN HEAT PRECAUTION SHOULD APPLY.

16  THERE IS NO REFERENCE TO THE CALENDAR THAT IS

17  REQUIRED.

18       **THE COURT:**  SO, MR. BLANCHFIELD, WHAT'S YOUR

19  RESPONSE TO THAT?

20       **MR. BLANCHFIELD:**  JUDGE, WE HAVE USED THE

21  HEAT SEASON MAY 1 THROUGH OCTOBER 31ST.  IT'S WHAT

22  YOU USED IN YOUR *BALL* CASE.  RIGHT?  IT'S WHAT ALL

23  THE CASES -- *GATES V COOK*, THEY ALL USE THAT AS THE

24  HEAT SEASON.

25       **THE COURT:**  WE'RE NOT TALKING ABOUT *GATES*,

1  WE'RE NOT TALKING ABOUT *YATES*, WE'RE NOT TALKING

2  ABOUT *BALL*.  IF IT WAS AN ISSUE THAT CAME UP, WE

3  WOULD HAVE -- WHAT MR. BENJAMIN IS SAYING IS THAT BY

4  TRYING TO FIX AND -- LISTEN, YOU'VE GOT TO -- I DON'T

5  CARE HOW YOU FEEL ABOUT GLOBAL WARMING OR PEOPLE CALL

6  SO-CALLED GLOBAL WARMING.  I THINK THE SCIENTISTS --

7  THE CLIMATE SCIENTISTS AGREE THAT, YOU KNOW, THE

8  SUMMERS ARE A LITTLE EARLIER THAN USUAL, SOMETIMES A

9  LITTLE LATE BASED UPON THE DATA.

10            AND SO WHAT'S WRONG AND WHY SHOULDN'T

11  THE DOC RECONSIDER THAT POLICY?  THINGS CHANGE.

12  THINGS ALWAYS CHANGE.  I MEAN, THE SUPREME COURT HAS

13  RECOGNIZED THAT THERE IS -- AND I WON'T GET INTO IT.

14  BUT SUFFICE IT TO SAY THAT WHY SHOULD NOT I -- WHY

15  SHOULDN'T I CONCLUDE THAT, OKAY, IT IS WHAT IT IS

16  NOW, BUT IT'S ARBITRARY GIVEN WHAT WE KNOW NOW, GIVEN

17  THE SCIENCE THAT'S OUT THERE AND AVAILABLE TO US?

18       **MR. BLANCHFIELD:**  IT WAS FINE UNTIL ABOUT A

19  MONTH AGO, BECAUSE NO ONE EVER CONTESTED IT.  IN THE

20  FIRST ROUND OF THE TRO --

21       **THE COURT:**  THAT'S NOT THE ISSUE, MR.

22  BLANCHFIELD.  MR. BLANCHFIELD, I UNDERSTAND YOUR

23  POINT, LET ME ACKNOWLEDGE.  AND THAT WAS THE FIRST

24  THING I ASKED MR. BENJAMIN:  WHY THESE?  WHY NOW?

25  I'M NOT ASKING YOU THAT.  I UNDERSTAND YOUR ARGUMENT

1   ON THAT.  I'M ASKING TO YOU, SIR:  WHY IS -- WHY

2   DOESN'T THE DOC REVISE ITS POLICY, SIMPLY MOVE UP THE

3   DATE FROM MAY 1ST TO APRIL 15TH, APRIL -- I DON'T

4   CARE.  WHAT'S WRONG WITH THAT?  I DON'T NEED TO HEAR

5   WHAT THEY'VE ALWAYS DONE.  I DON'T NEED TO HEAR

6   *NOBODY'S EVER DONE THIS.*  I'M SIMPLY ASKING -- IF YOU

7   KNOW, IF YOU HAVE AN OPINION ON IT -- WHY SHOULDN'T

8   -- OR WHY WOULD IT BE UNREASONABLE FOR THE DOC TO

9   RECONSIDER THAT POLICY?

10        MR. BLANCHFIELD:  BECAUSE, YOUR HONOR, IF

11  YOU CAN SEEK OUT THOSE DAYS OUTSIDE OF THE HEAT

12  SEASON WHERE THE HEAT INDEX EXCEEDS 91, I GUARANTEE

13  IT'S NOT IN THE MORNING.  AND WE'RE TAKING THEM OUT

14  OF THE FIELD AT 11:00, 11:30.

15        THE COURT:  BUT WAIT.  MR. BLANCHFIELD,

16  WE'RE NOT TALKING ABOUT MORNING, NOON AND -- I'M

17  SIMPLY TALKING ABOUT DATES, SIR.

18        MR. BLANCHFIELD:  THERE IS NO REASON TO DO

19  IT, YOUR HONOR.

20        THE COURT:  OKAY.  THAT'S FINE.

21           ANYTHING ELSE?

22        MR. BENJAMIN:  THERE IS A REASON TO DO IT.

23  IF THE HEAT INDEX EXCEEDS THIS THRESHOLD, WHATEVER

24  THAT THRESHOLD IS -- AND I THINK THAT'S THE NEXT

25  ISSUE WE'RE GOING TO GET TO --

1          THE COURT:  SO YOUR POINT -- NOT TO CUT YOU

2     OFF BUT JUST TO SORT OF GET TO THE POINT.  YOUR POINT

3     IS THAT THE HEAT INDEX 30 YEARS AGO MAY HAVE -- MORE

4     COMMONLY WOULD HAVE ARISEN ON MAY 5TH.  NOW, 40 YEARS

5     LATER, THAT HEAT INDEX OF 88, 91, WHATEVER, IS NOW

6     OCCURRING EARLIER IN THE CALENDAR YEAR AND THAT

7     POLICYMAKERS SHOULD TAKE NOTE OF THAT.

8          MR. BENJAMIN:  I THINK MY POINT IS THAT THAT

9     MAKES IT ALL THE MORE IMPORTANT THAT WE GET RID OF

10    THE HEAT SEASON LIMITATION.  BUT MY REAL POINT IS

11    THAT ANYTIME THAT THERE IS THE RISK OF HEAT-RELATED

12    ILLNESS, THAT HEAT-RELATED PRECAUTIONS COME INTO

13    EFFECT.

14          THE COURT:  SO IN OTHER WORDS --

15          MR. BENJAMIN:  AND IN TERMS OF --

16          THE COURT:  -- YOU'RE ARGUING -- AGAIN, I

17    JUST WANT TO CUT TO IT.  WE DON'T HAVE A LOT OF TIME.

18    YOU'RE SAYING LET'S GET RID OF THE DATES.  THE DATE'S

19    ARBITRARY.  WE DON'T KNOW WHAT THEY ARE.  WE COULD

20    HAVE 88 DEGREES IN MARCH 20TH IN SOUTH LOUISIANA?

21          MR. BENJAMIN:  CORRECT.

22          THE COURT:  AND THAT'S ALL WE SHOULD BE

23    CONCERNED ABOUT TO TRIGGER ALL OF THESE PRECAUTIONS?

24          MR. BENJAMIN:  CORRECT.  AND JUST TO GO TO

25    THE POINT ABOUT WHY THIS IS COMING UP NOW, THE LAST

1  PRELIMINARY INJUNCTION APPLICATION HAPPENED IN MAY.

2  WE WERE ALREADY IN THE HEAT SEASON.  WE'RE GOING TO

3  CHALLENGE THE HEAT SEASON WHEN WE'RE IN THE HEAT

4  SEASON.  WE EXPECT IT TO BE -- WE EXPECTED IT TO

5  EXPIRE AND WE EXPECT IT TO GET TO TRIAL.

6          THE COURT:  MR. BLANCHFIELD, ANYTHING ELSE

7  ON THAT?

8          MR. BLANCHFIELD:  NO, YOUR HONOR.

9          THE COURT:  ALL RIGHT.

10          MR. BENJAMIN:  SO I THINK THE BIGGEST ISSUE

11  WE HAVE WITH THE REVISED POLICIES -- AND YOUR HONOR

12  HAS BEEN ASKING ABOUT HCP 8 AND WHAT DOC HAS DONE.  I

13  WANT TO BE VERY CLEAR, HCP 8 IS WHAT THEY DECIDED TO

14  REVISE FIRST.  OUR APPLICATION, AGAIN, IS ALL ABOUT

15  THE FARM LINE.  IT IS ABOUT WHAT LSP DOES WITH

16  RESPECT TO THAT.  BUT IT HAS BEEN CODIFIED.

17          THE COURT:  THE FARM LINE AT ANGOLA.

18          MR. BENJAMIN:  AT ANGOLA.  EXACTLY RIGHT.

19  AND THAT HAS -- I MEAN, TO THE EXTENT THERE IS ANY --

20  THERE ARE GOING TO BE ANY DIVERGENCE BETWEEN WHAT'S

21  GOING ON IN HCP 8 AND WHAT'S GOING ON IN THE NEWLY

22  ISSUED LSP 13.067, WE'LL FLAG THAT.

23          BUT HERE IS THE BIGGEST ISSUE AND THE

24  BIGGEST PROBLEM WE HAVE WITH WHAT DEFENDANTS ARE

25  PROPOSING, IS THAT SINCE BEING FOUND TO BE LIKELY

1  DELIBERATELY INDIFFERENT TO HEAT-RELATED RISKS, THEY

2  HAVE TAKEN THE EXTREME STEP OF ACTUALLY RAISING THE

3  THRESHOLD AT WHICH A HEAT ALERT IS CALLED.  IT USED

4  TO BE AT A HEAT INDEX OF 88.  THEY HAVE NOW MOVED IT

5  TO 91.  AND THIS IS INCREDIBLY SIGNIFICANT.

6        **THE COURT:**  WHY?

7        **MR. BENJAMIN:**  THE THRESHOLD FOR A HEAT

8  ALERT, A HEAT ALERT -- ONCE A HEAT ALERT IS

9  ANNOUNCED -- AND IT'S ANNOUNCED AT WHATEVER THRESHOLD

10 THEY'VE DECIDED -- THAT TRIGGERS ALL KINDS OF REALLY

11 IMPORTANT PROTECTIONS.  MAYBE THE MOST OBVIOUS ONE IS

12 THAT HEAT-SENSITIVE PEOPLE ARE TO BE BROUGHT OUT OF

13 THE FIELD AND TAKEN INSIDE BECAUSE THEY DON'T BELONG

14 OUT THERE.

15        THE SECOND -- BUT THERE IS ALSO ALL

16 KINDS OF OTHER PROTECTIONS THAT ARE SORT OF TRIGGERED

17 BY THIS ANNOUNCEMENT OF THE HEAT ALERT.  AND I WANT

18 TO JUST FOCUS IN ON WHY IT WAS 88 AND WHY 91 MAKES NO

19 SENSE AT ALL.  SO 88 WAS -- 88 HAS BEEN THE

20 THRESHOLD.  THE HEAT INDEX, THAT IS, NOT AN AMBIENT

21 TEMPERATURE -- HEAT INDEX OF 88 HAS BEEN THE

22 THRESHOLD THAT HAS BEEN ADVOCATED FOR BY DR. VASSALLO

23 THROUGHOUT THIS LITIGATION.  AND THE REASON SHE

24 ADVOCATED FOR IT IS THERE IS A TON OF SCIENCE

25 SUPPORTING THAT.  IN HER -- THAT SCIENCE HAS BEEN

1  PRESENTED IN ALL OF HER DECLARATIONS.  IT'S PRESENTED

2  NOW IN HER FOURTH DECLARATION.

3            IT IS WELL-FOUNDED -- AND DEFENDANTS

4  ARE GOING TO ARGUE, *WELL, THERE IS NOT SUCH A*

5  *DIFFERENCE BETWEEN 88 DEGREES AND 91.*  ACTUALLY,

6  THERE IS A HUGE DIFFERENCE.  AGAIN, YOU LOOK AT DR.

7  VASSALLO'S DECLARATION AND PARTICULARLY ECF 201-3 --

8  IT'S PARAGRAPH 15 -- THERE IS BOTH A FOOTNOTE THAT

9  DESCRIBES ALL -- YOU KNOW, A NUMBER OF ARTICLES THAT

10 ARE SUPPORTING THIS 88-DEGREE THRESHOLD.  THERE IS

11 ALSO A GRAPH.  IT'S A J-SHAPED CURVE.  AND WHAT THAT

12 J-SHAPED CURVE SHOWS IS THAT THE INCIDENCE OF

13 MORBIDITY -- THIS IS MORBIDITY, NOT EVEN HEAT-RELATED

14 ILLNESSES -- GOES UP ALMOST EXPONENTIALLY AS SOON AS

15 THAT HEAT INDEX INCREASES ABOVE 86 DEGREES.

16       **THE COURT:**  AND WHAT'S THE AUTHORITY FOR

17 THAT OTHER THAN DR. VASSALLO?

18       **MR. BENJAMIN:**  IT'S ALL CITED IN THE REPORT,

19 YOUR HONOR.  IT'S PARAGRAPH 15 OF DR. VASSALLO'S

20 REPORT.

21       **THE COURT:**  AND THAT WAS PROVIDED TO YOUR

22 OPPONENTS?

23       **MR. BENJAMIN:**  THAT IS CORRECT.

24            AND BEYOND THAT, IT HAS BEEN -- YOU

25 KNOW, MR. BLANCHFIELD WAS TALKING ABOUT WHAT COURTS

1   HAVE DONE.  COURTS HAVE REPEATEDLY AGREED AND ADOPTED

2   THE 88-DEGREE THRESHOLD, INCLUDING THIS COURT.  DOC

3   ITSELF HAS ADOPTED FOR YEARS AND YEARS THIS 88-DEGREE

4   THRESHOLD.

5          **THE COURT:**  AND I BELIEVE THE COURT IN *YATES*

6   *VERSUS COLLIER*, THAT TOO WAS 88 DEGREES.  THAT WAS

7   AFFIRMED BY THE FIFTH CIRCUIT.  CORRECT?

8          **MR. BENJAMIN:**  THAT'S CORRECT.  AND *BALL* WAS

9   THE SAME.

10          **THE COURT:**  SO, MR. BLANCHFIELD, AS I

11  UNDERSTAND IT, THE DOC HAS NOW DECIDED ARBITRARILY

12  AND UNILATERALLY -- AND I SAY ARBITRARILY ONLY

13  BECAUSE I HAVEN'T SEEN ANY REPORTS SUPPORTING THIS,

14  BUT UNILATERALLY -- THAT BECAUSE THE NATIONAL WEATHER

15  SERVICE HEAT INDEX, TABLE C -- IT'S ENTITLED "HEAT

16  INDEX-ASSOCIATED PROTECTIVE MEASURES FOR WORK SITES"

17  -- STARTS OFF WITH A TEMPERATURE OF 91 DEGREES

18  FAHRENHEIT.  AND YOU SHOWED IT JUST A MOMENT AGO ON

19  YOUR GRAPH -- ON YOUR POWERPOINT.  THAT ANYTHING LESS

20  THAN 91 DEGREES FAHRENHEIT IS A LOWER RISK -- BUT

21  STILL CAUTION, RIGHT? -- OF BASIC HEALTH AND SAFETY

22  PLANNING.  IS THAT THE BASIS ON WHICH THE DOC HAS

23  ELECTED TO RAISE THE STANDARD TO 91 DEGREES?

24          **MR. BLANCHFIELD:**  AND IF YOU LOOK AT NIOSH,

25  NIOSH HAS A MODERATE RISK LEVEL STARTING AT THE

1    LOWEST DEGREE HEAT INDEX OF 91.  THERE IS --

2            THE COURT:  OKAY.  BUT YOU -- AT LEAST YOU

3    DO AGREE THAT IN THE *BALL* CASE, IN THE *YATES* CASE

4    WHERE THE FIFTH CIRCUIT ITSELF HAS DETERMINED THE

5    APPLICABLE AND APPROPRIATE HEAT INDEX, 88 DEGREES IS

6    WHAT THE FIFTH CIRCUIT HAS FOUND TO BE THE

7    APPROPRIATE HEAT INDEX?

8            MR. BLANCHFIELD:  NO, I DON'T THINK SO,

9    JUDGE.

10           THE COURT:  WHY?

11           MR. BLANCHFIELD:  LOOK AT *YATES*.  IT'S NOT

12   IN --

13           THE COURT:  NO, NO, NO.  WHOA, WHOA, WHOA.

14           MR. BLANCHFIELD:  IT'S NOT IN *YATES*.

15           THE COURT:  IT'S NOT WHAT?

16           MR. BLANCHFIELD:  IT'S NOT IN *YATES*.

17           THE COURT:  IT'S NOT IN *YATES*?

18           MR. BLANCHFIELD:  NO.

19           THE COURT:  IT'S IN *BALL*.  WE'LL TAKE A LOOK

20   AT *YATES*.

21           MR. BLANCHFIELD:  BALL IS A CLASSIC HEAT

22   CASE.  THAT'S INSIDE.  THIS IS AN EXERTIONAL HEAT

23   CASE, JUDGE.  GOT NOTHING TO DO WITH *BALL*.  *BALL* IS

24   INSIDE.  88 -- WE HAD ASKED DR. VASSALLO "WHERE DID

25   88 COME FROM?"  SHE DIDN'T KNOW.  THE SCIENCE --

1  WELL, THE FACT OF THE MATTER IS -- I UNDERSTAND YOUR

2  POINT -- *YATES* INVOLVED -- FIRST ADDRESSED INTERIOR.

3  AND IN BOTH CASES -- IN *YATES* JUDGE ELLISON SAID,

4  "NO, 88 DEGREES," IS MY RECOLLECTION.  WE'LL GO BACK

5  AND LOOK AT IT NOW.  NOW, THAT'S THE AMBIENT

6  TEMPERATURE, 88 DEGREES, NOT THE HEAT INDEX.

7           SAME THING IN THE *BALL* CASE:  88

8  DEGREES AMBIENT TEMPERATURE.  THE FIFTH CIRCUIT:

9  "YEP, THAT'S THE APPROPRIATE STANDARD FOR INTERIOR."

10          NOW, I'LL ASK BOTH SIDES:  I MEAN,

11  DOES, YOU KNOW, SHADE, LACK OF SHADE -- IS THAT A

12  FACTOR?  WIND, LACK OF WIND, IS THAT A FACTOR?

13      **MR. BLANCHFIELD:**  YOUR HONOR, THE SCIENCE

14  SUGGESTS THAT THE NUMBER SHOULD BE 95.  AND THAT'S

15  WHAT OUR EXPERTS TOLD US TO USE.  WE DROPPED IT TO

16  91.  THERE IS -- DESPITE THE TESTIMONY FROM DR.

17  VASSALLO, YOU KNOW, THERE IS NOTHING TO SUPPORT 88

18  DEGREES AS A HEAT INDEX.

19      **THE COURT:**  ALL RIGHT.  MR. BENJAMIN?

20      **MR. BENJAMIN:**  YOUR HONOR, YOU LOCKED ONTO

21  IT EXACTLY.  YES, OUTDOOR MATTERS A LOT.  LET'S TALK

22  ABOUT WHAT NATIONAL WEATHER SERVICE SAYS, BECAUSE

23  THEY JUST THREW UP A CHART.  IF YOU LOOK AT THE

24  WEBSITE THAT THEY CITE IN THEIR OWN INTERROGATORIES

25  AS WHAT -- AS WHAT THEY RELIED ON FROM THE NATIONAL

1  WEATHER SERVICE -- THAT'S AT ECF 201-23 -- IT SAYS --

2  FIRST OF ALL, RIGHT BELOW THIS CHART THAT THEY JUST

3  SHOWED YOU, IT SAYS, QUOTE, IF YOU ARE EXPOSED TO

4  DIRECT SUNLIGHT, THE HEAT INDEX VALUE CAN BE

5  INCREASED BY UP TO 15 DEGREES FAHRENHEIT.  DEFENDANTS

6  DON'T ACCOUNT FOR THAT 15-DEGREE HEAT INDEX.  IN

7  FACT, I ASKED DR. LAVESPERE WHETHER THEY WOULD

8  ACCOUNT FOR IT NOW KNOWING THIS.  HE SAID IT DEPENDS

9  ON HOW THIS COURT CASE COMES OUT.

10          THE COURT:  AND THAT'S DR. LAVESPERE, WHO IS

11  THE MEDICAL DIRECTOR AT ANGOLA?

12          MR. BENJAMIN:  CORRECT.  AND ALSO THE

13  30(B)(6) WITNESS FOR DOC.

14              NWS -- THERE IS ANOTHER CHART THAT

15  THEY'RE ALSO NOT GOING TO SHOW.  AND IT SHOWS -- ON

16  THAT SAME WEBSITE, RIGHT BELOW IT, IT SAYS EXTREME

17  CAUTION IS REQUIRED AT A HEAT INDEX OF 90 DEGREES.

18  AND THAT'S ACCOUNTING, OF COURSE --

19          THE COURT:  EXTREME CAUTION?

20          MR. BENJAMIN:  EXTREME CAUTION.  AND THAT'S

21  ACCOUNTING, OF COURSE, FOR THE UP TO 15-DEGREE

22  INCREASE IN -- WHEN YOU'RE EXPOSED TO DIRECT HEAT.

23  THEY MENTION NIOSH --

24          THE COURT:  AND THAT'S FROM THE NATIONAL

25  WEATHER SERVICE?

1        MR. BENJAMIN:  THAT'S FROM THE NATIONAL

2  WEATHER SERVICE.  THEY MENTIONED NIOSH.  TO BE CLEAR

3  --

4        THE COURT:  WHAT IS NIOSH?  TELL US WHAT

5  THAT ACRONYM IS, FOR THOSE --

6        MR. BENJAMIN:  I'M SORRY.  THAT'S THE

7  NATIONAL INSTITUTE OF SAFETY AND HEALTH.  AND THAT'S

8  A PORTION OF THE CENTERS FOR DISEASE CONTROL.

9            FIRST OF ALL, NIOSH, OSHA, THE U.S.

10  ARMY, THEY DON'T USE THE HEAT INDEX.  OSHA, IN

11  FACT, WARNS THAT EMPLOYERS SHOULDN'T USE IT; THEY

12  SHOULD USE -- OR THEY SHOULDN'T SOLELY RELY ON THE

13  HEAT INDEX.  AND THEY SAY YOU SHOULD RELY ON THE WET

14  BULB GLOBE TEMPERATURE BECAUSE IT'S MORE ACCURATE AND

15  IT'S MORE FLEXIBLE.  YOU CAN TAKE INTO ACCOUNT THINGS

16  LIKE IF YOU'RE OUTSIDE AND YOU'RE IN A SUNNY PLACE,

17  YOU CAN FIND OUT EXACTLY HOW MUCH THAT RADIANT HEAT

18  FROM THE SUN IS AFFECTING THE HEAT INDEX THERE, SO --

19        THE COURT:  BEFORE WE GET TO THE WET BULB

20  ISSUE, LET ME GIVE MR. BLANCHFIELD AN OPPORTUNITY TO

21  RESPOND, IF HE WISHES, TO THE INFORMATION THAT MR.

22  BENJAMIN HAS CITED WITH RESPECT TO OUTDOOR

23  CONDITIONS.

24        MR. BENJAMIN:  CAN I JUST FINISH WITH NIOSH

25  AS WELL?  BECAUSE HE BROUGHT UP THAT.

1          **THE COURT:**  YES.

2          **MR. BENJAMIN:**  SO NIOSH LIKE OSHA, IT

3  RECOMMENDS THAT THE WET --

4          **THE REPORTER:**  THE WET WHAT?

5          **MR. BENJAMIN:**  WET BULB GLOBE TEMPERATURE.

6  WBGT.

7          **THE COURT:**  SOUNDS LIKE A TELEVISION

8  STATION.

9          **MR. BENJAMIN:**  BELIEVE ME, I WAS SWITCHING

10  THOSE G AND Bs ALL OVER THE PLACE UNTIL I FINALLY GOT

11  IT RIGHT.

12          BUT THEY SAY THAT THE WET BULB GLOBE

13  TEMPERATURE, QUOTE, IS THE INDEX MOST FREQUENTLY USED

14  AND RECOMMENDED FOR USE THROUGHOUT THE WORLD.  NIOSH

15  INSTRUCTS THAT A WET BULB GLOBE TEMPERATURE OF 82.4

16  DEGREES FAHRENHEIT IS, QUOTE, THE UPPER LIMIT FOR

17  MODERATE WORK, WHICH IS WHAT THE FARM LINE IS DOING.

18  BEYOND THAT, PERFORMANCE DETERIORATES AND ACCIDENTS

19  INCREASE.

20          AND THE OTHER THING, THE REFERENCE THAT

21  MR. BLANCHFIELD IS MENTIONING IN THE NIOSH GUIDANCE

22  TO 91, THAT AGAIN INSTRUCTS IF YOU'RE IN DIRECT SUN,

23  YOU HAVE TO ACCOUNT FOR THAT DIRECT SUN, WHICH CAN

24  INCREASE THE FELT -- YOU KNOW, THE ACTUAL OR THE FELT

25  HEAT INDEX BY UP TO 15 DEGREES.

1          **THE COURT:**  OKAY.  LET ME GIVE MR.

2  BLANCHFIELD AN OPPORTUNITY TO REPLY, IF YOU WISH, MR.

3  BLANCHFIELD.

4          **MR. BLANCHFIELD:**  YEAH.  HE REALLY COVERED A

5  LOT OF GROUND, YOUR HONOR.  I MEAN, START -- WE'LL

6  START AT THE END.  SO WHEN WE FIRST CAME BEFORE YOU,

7  YOU TOLD US, *HEY, Y'ALL GET TOGETHER AND FIGURE OUT*

8  *HOW WE'RE GOING TO MONITOR THE WEATHER AT LSP.*  THE

9  PLAINTIFFS SUGGESTED TO US -- AND CAN WE GO TO THE

10 PROCEDURES FOR MONITORING?

11         **THE COURT:**  I RECALL.  THERE WAS AN

12 AGREEMENT.

13         **MR. BLANCHFIELD:**  THERE WAS AN AGREEMENT.

14 THEY SAID TO US, *NATIONAL WEATHER SERVICE IS THE GOLD*

15 *STANDARD.  WE'RE GOING TO USE THE TEMPERATURE FROM*

16 *THE NEW ROADS AIRPORT.  THAT'S MONITORED.  THOSE ARE*

17 *THE ONES -- THAT'S THE, QUOTE, GOLD STANDARD.*  THAT'S

18 WHAT THEY PUT IN THEIR LETTER, *GOLD STANDARD.*  THEY

19 ASKED US TO AGREE TO IT:  "PARTIES BELIEVE THAT THE

20 NWS WEBSITE ADEQUATELY AND ACCURATELY CAPTURES

21 INFORMATION NEEDED FOR THE PARTIES AND THIS COURT TO

22 DETERMINE THE RELEVANT HEAT INDEX AT ANGOLA."

23         WELL, NOW IT'S NO GOOD ANYMORE.  AND

24 NOW ANGOLA AND THE -- ACCORDING TO WHAT I READ IN THE

25 LATEST DECLARATION FROM DR. VASSALLO, IT'S NOT 17

1  MILES APART, NOW IT'S 50 MILES APART, WHICH IS

2  ABSURD.  THAT'S WHAT WE AGREED TO, THAT'S WHAT WE

3  DID.  AND NOW, YOU KNOW --

4       **THE COURT:**  SPEAKING OF WHAT YOU AGREED TO,

5  YOU AGREED TO 88 DEGREES, AND NOW IT SEEMS TO ME THE

6  STATE IS RENEGING, WHICH PROBABLY PROMPTED THE

7  PLAINTIFFS TO SAY, *WAIT, NOW.  IF THE STATE IS GOING*

8  *TO RENEGE, WE'RE GOING TO ASK THE COURT FOR A*

9  *DIFFERENT MONITORING SYSTEM ALTOGETHER THAT IS*

10 *MORE -- THAT WILL PRODUCE MORE LOCALIZED RESULTS.*

11       SO I GUESS WHAT I'M ASKING, MR.

12 BLANCHFIELD:  WOULD WE EVEN BE HERE IF YOUR CLIENT

13 HAD NOT ARBITRARILY AND UNILATERALLY CHANGED THE

14 STANDARD ON ITS OWN WITHOUT EVEN CONFERRING WITH --

15 AND I REALIZE THERE IS NO OBLIGATION AT THIS POINT TO

16 CONFER WITH THE COURT BECAUSE THAT TRO IS EXPIRED --

17 BUT WITHOUT EVEN CONFERRING WITH YOUR OPPONENTS?

18 WOULD WE EVEN BE HERE DISCUSSING THIS ISSUE?

19       **MR. BLANCHFIELD:**  WE WOULD BE.  WE WOULD BE

20 HERE, JUDGE.  AND IT WAS NOT ARBITRARY AT ALL.  IT

21 WAS DONE AFTER HOURS AND HOURS OF WORK AND RESEARCH

22 AND CONSULTING OUR EXPERTS WHO TOLD US TO DO IT.

23       **THE COURT:**  WELL, I'M NOT GOING TO ARGUE

24 WITH YOU ABOUT WHAT -- "ARBITRARY" IS MY WORD.  I'M

25 NOT GOING TO ARGUE ABOUT THE WORDS I USE.  LET ME BE

1   CLEAR ABOUT THAT, MR. BLANCHFIELD.

2              BUT YOU WOULD AT LEAST AGREE THAT IT

3   WAS A UNILATERAL DECISION?

4         **MR. BLANCHFIELD:**  IT'S OUR DECISION, YOUR

5   HONOR, BASED ON OUR EXPERTS.

6         **THE COURT:**  MR. BLANCHFIELD, YOU KNOW,

7   SOMETIMES -- AND YOU'RE A GOOD LAWYER, MR.

8   BLANCHFIELD -- A SIMPLE "YES," "NO," A SIMPLE "YES,

9   JUDGE, BUT," THAT'S ALL I NEED.  I'M NOT HERE TO

10  ARGUE WITH YOU.  I'M HERE TO SIMPLY ASK THE QUESTION

11  SO THAT I FULLY UNDERSTAND WHAT THE FACTS ARE AND HOW

12  WE GOT TO WHERE WE ARE WHERE A SECOND TRO HAD TO BE

13  FILED.  THAT'S ALL I'M ASKING, SIR.

14        **MR. BLANCHFIELD:**  IT DIDN'T HAVE TO BE

15  FILED, YOUR HONOR.  AND --

16        **THE COURT:**  WELL, I'LL MAKE -- THAT'S --

17  LISTEN, LET'S MOVE ON.

18             OKAY.  ANYTHING ELSE WITH RESPECT TO

19  THE POLICY?

20        **MR. BENJAMIN:**  THERE ARE OTHER THINGS ABOUT

21  THE POLICY.  AND WE'VE HEARD A LOT OF IT IN THE

22  BRIEFS, SO I'M OKAY WITH --

23        **THE COURT:**  LET'S NOT ADDRESS THAT.  SO YOUR

24  CONCERN IS THAT THE DOC HAS NOW AMENDED ITS POLICIES

25  TO BECOME EVEN MORE RESTRICTIVE THAN IT PREVIOUSLY

1    WAS?

2              **MR. BENJAMIN:**  THAT'S CORRECT.  AND I JUST

3    WANTED -- JUST ONE POINT ON THAT GOLD STANDARD ISSUE.

4    YOUR HONOR MAY HAVE SUSPECTED THERE IS A LITTLE BIT

5    OF MISTRUST BETWEEN THE TWO PARTIES IN TERMS OF WHAT

6    IS ACTUALLY OCCURRING ON THE FARM LINE.  THE POSITIVE

7    THING ABOUT THE NATIONAL WEATHER SERVICE DATA:  IT IS

8    A USEFUL DATA POINT, BUT -- AND THE -- BUT THE MAIN

9    THING IS EVERYBODY CAN LOOK TO THE SAME PIECE OF DATA

10   AND SORT OF KNOW FROM AFAR WHAT'S GOING ON.  THE

11   PROBLEM IS IT'S NOT ACTUALLY MEASURING WHAT'S GOING

12   ON.  AND EVERYBODY AGREES TO THAT.  THEY'RE NOT

13   DISPUTING THAT THE WET BULB GLOBE TEMPERATURE IS MORE

14   ACCURATE.  THERE IS NO QUESTION ABOUT THAT.

15             **THE COURT:**  WELL, LET ME MAKE SURE.  MR.

16   BLANCHFIELD, DO YOU -- IS MR. BENJAMIN CORRECT;

17   YOU'RE NOT DISPUTING THAT THE WET BULB GLOBE

18   TEMPERATURE MONITOR WOULD BE MORE ACCURATE?  DO YOU

19   AGREE WITH THAT?

20             **MR. BLANCHFIELD:**  I THINK THE SCIENCE IS

21   THAT IT WOULD BE MORE ACCURATE.  BUT TO SUGGEST THAT

22   IT WOULD SHOW, YOU KNOW, HOTTER TEMPERATURES, THERE

23   IS NO --

24             **THE COURT:**  I UNDERSTAND THAT.

25             **MR. BLANCHFIELD:**  IT MAY BE COOLER.

1          **MR. BENJAMIN:**  I DON'T THINK THAT'S WHAT MR.

2    BENJAMIN IS SUGGESTING.

3          **MR. BLANCHFIELD:**  I DON'T KNOW WHETHER -- I

4    DON'T KNOW WHETHER IT WOULD BE HOTTER.

5          **THE COURT:**  JUST THAT IT'S A MORE ACCURATE

6    MEASURE OF ACTUAL HEAT AND HEAT INDEX AND THAT IT

7    WOULD CAPTURE, AS I UNDERSTAND IT, BOTH THE

8    TEMPERATURE -- THE AMBIENT AIR TEMPERATURE AS WELL AS

9    THE HUMIDITY THAT WOULD FACTOR INTO THE CALCULATION

10   OF THE HEAT INDEX?

11         **MR. BENJAMIN:**  AND THE RADIANT TEMPERATURE

12   OF THE SUNLIGHT, THE WIND, ALL OF THOSE ASPECTS.

13              YOU KNOW, THE OTHER ASPECT IS:

14   DISCOVERY HAS HAPPENED SINCE THEN.  DR. KELDIE CITES

15   A TON OF REPORTS.  THEY ALL SAY YOU SHOULD USE WET

16   BULB GLOBE TEMPERATURE.  THAT'S ONE THING.  ANOTHER

17   THING IS -- YOUR HONOR PROBABLY NOTICED THIS IN OUR

18   LETTERS.  WE WERE SENDING IN LETTERS, AND OVER AND

19   OVER AGAIN WE HAD TO REPORT THAT FALSE RIVER, THE

20   CLOSEST NATIONAL WEATHER SERVICE, WASN'T RECORDING

21   DATA.  SO YOU GO OVER A LITTLE BIT FURTHER AWAY TO

22   BATON ROUGE TO TRY TO FIND OUT DATA THERE.  NOW, NONE

23   OF THESE ARE IN THE FIELDS, BUT --

24         **THE COURT:**  LET'S BACK UP FOR A MOMENT, MR.

25   BENJAMIN.  DR. KELDIE IS THE DEFENSE PROPOSED EXPERT?

1          **MR. BENJAMIN:**  THAT'S CORRECT.

2          **THE COURT:**  AND IT'S YOUR ASSERTION THAT HE

3    HIMSELF BELIEVES OR HAS STATED OR AGREES -- I DON'T

4    WANT TO MISCHARACTERIZE -- THAT HE TOO AGREES THAT

5    THE GLOBAL WET BULB IS THE MORE ACCURATE MONITORING

6    SYSTEM?

7          **MR. BENJAMIN:**  I DON'T KNOW WHAT DR. KELDIE

8    BELIEVES.  I KNOW WHAT THE SOURCES THAT HE CITES SAY.

9    AND THEY -- OSHA, NIOSH, THE U.S. ARMY, THEY USE THE

10   WET BULB GLOBE TEMPERATURE.  THAT'S THE ONE THEY

11   RECOMMEND.

12         **THE COURT:**  SO LET'S NOW TALK ABOUT THAT.

13          MR. BLANCHFIELD, WHAT'S THE OBJECTION

14   TO MONITORING THAT?

15         **MR. BLANCHFIELD:**  JUDGE, THE POINT I WAS

16   TRYING TO MAKE, WE MADE THIS AGREEMENT AND WE'RE

17   ROLLING ALONG PROVIDING ALL THE INFORMATION THAT WE

18   AGREED TO PROVIDE ON A WEEKLY BASIS.  AND THEN WE GET

19   THIS SECOND TRO CLAIMING, *YOU SHOULD BE USING THE WET

20   BULB.  YOU'RE INDIFFERENT*.  AND HERE WE ARE.

21         **THE COURT:**  WELL, I UNDERSTAND THAT.  BUT MY

22   QUESTION TO YOU, SIR, IS -- AND IT'S MERELY

23   SPECULATION, I ADMIT.  I WONDER -- I SHOULDN'T HAVE

24   ASKED YOU FOR YOUR OPINION.  BUT I WONDER, FRANKLY,

25   IF WE WOULD BE HERE HAD YOUR CLIENT SIMPLY MAINTAINED

1   THE 88-DEGREE TEMPERATURE STANDARD THAT WAS FEATURED

2   IN *BALL*, THAT I BELIEVE WAS FEATURED IN OTHER CASES

3   IN THE FIFTH CIRCUIT THAT HAVE BEEN AFFIRMED BY THE

4   CIRCUIT.  NOW, I'LL HAVE TO DEAL WITH THAT MYSELF.

5           WHAT ELSE BEFORE WE WRAP UP THE TRO

6   HEARING?  BECAUSE I'VE GONE WAY OVER WHAT I INTENDED.

7   ANYTHING ELSE, MR. BENJAMIN?

8           **MR. BENJAMIN:**  ONLY THAT, YOUR HONOR, WE'RE

9   NOT SAYING THAT DOC NEEDS TO ADOPT THE WET BULB GLOBE

10  TEMPERATURE.  WE'RE ASKING -- PROBABLY TO ASSESS YOUR

11  CURIOSITY, CERTAINLY OUR CURIOSITY -- WHAT'S THE

12  TEMPERATURE -- WHAT IS THE ACTUAL HEAT INDEX WHERE

13  THE GUYS ARE WORKING ON THE FARM LINE.  THAT'S WHY

14  WE'RE ASKING FOR AN INDEPENDENT PERSON UNDER FRE 706

15  TO GO IN, USE THIS DEVICE -- IT'S A HAND-HELD

16  DEVICE -- TAKE A MEASUREMENT.  IT'S A NEUTRAL PERSON.

17  EVERYBODY CAN AGREE.  HE WAS ACTUALLY STANDING IN THE

18  SUN NEAR WHERE THE GUYS WERE WORKING THAT DAY.  AND

19  TO ALSO JUST ADVISE WHAT'S GOING ON WITH THIS SHADE

20  PAVILION THAT THEY HAVE ERECTED, WHAT IS GOING ON

21  WITH LINE 15B.  SOMEBODY WHO IS NEUTRAL TO COME IN

22  AND ADVISE THE COURT AS TO HOW IT SHOULD BE HANDLING

23  THESE VARIOUS DISPUTES.

24           **THE COURT:**  AND MY UNDERSTANDING, THAT

25  OSHA -- THAT IS, THE OCCUPATIONAL SAFETY AND HEALTH

1  ADMINISTRATION -- HAS ALSO ISSUED SOME GUIDANCE ON

2  THE USE OF THE WET BULB GLOBE DEVICE AS WELL.

3  CORRECT?

4          MR. BENJAMIN:  THAT IS CORRECT.

5          THE COURT:  AND THAT THEY, TOO, IN THEIR

6  GUIDANCE SUGGEST THAT IT BE PLACED AS CLOSE TO THE

7  WORK LOCATION AS POSSIBLE?

8          MR. BENJAMIN:  THAT IS CORRECT.

9          THE COURT:  MR. BLANCHFIELD, I'LL GIVE YOU

10 THE LAST WORD, SIR.

11         MR. BLANCHFIELD:  YOUR HONOR, I THINK IT'S

12 IMPORTANT THAT WE BE GIVEN YOU THE CHANCE TO SHOW

13 WHAT WE HAVE DONE WITH RESPECT TO THE MODIFICATIONS

14 TO HCP 8.  YOUR INITIAL RULING WAS ABOUT THE

15 MEDICATIONS ON THE LIST AND THE MEDICAL CONDITIONS ON

16 THE LIST ENTITLING SOMEONE TO A HEAT PRECAUTION DUTY

17 STATUS.  I CAN RUN THROUGH THIS IN JUST A COUPLE OF

18 MINUTES.

19         THE COURT:  SURE.  GO RIGHT AHEAD.

20         MR. BLANCHFIELD:  IF WE COULD GO TO THE

21 PRIOR VERSION OF HCP 8.  SO WHEN -- FOR YEARS, YOUR

22 HONOR, THIS WAS OUR HEAT PATHOLOGY MEDICATION LIST.

23 IT'S 22 MEDICINES.  THEY'RE BASICALLY -- NOT

24 BASICALLY -- EXCLUSIVELY ANTIPSYCHOTICS.  THEY ARE

25 WHAT ARE CALLED HIGHLY ANTICHOLINERGIC.  WHEN IT'S

1  HIGHLY ANTICHOLINERGIC, IT IMPEDES THE PRODUCTION OF

2  ACETYLCHOLINE, WHICH IS A NEUROTRANSMITTER WHICH

3  CONTROLS THE WAY THE BODY COOLS ITSELF,

4  HEART RATE AND THINGS LIKE THAT.  THAT'S WHAT WE HAD.

5            NOW, AFTER CONSULTING WITH OUR

6  EXPERTS -- SPECIFICALLY YOU'RE GOING TO HEAR FROM

7  DR. DELECA BARNES, WHO IS THE ONLY ONE YOU'LL HEAR

8  FROM WHO HAS A PHARM D.  THAT'S NOT A PH.D.  THAT'S A

9  PROFESSIONAL DEGREE.  SHE WILL TESTIFY THAT SHE

10  REVIEWED THIS LIST AND MADE RECOMMENDATIONS.

11            IF WE GO TO THE NEXT PAGE, WHAT SHE DID

12  IS SHE ESTABLISHED -- IN THE LITERATURE THERE IS AN

13  ANTICHOLINERGIC RISK SCALE, ZERO THROUGH THREE.  IF

14  IT'S A THREE, THAT'S THE HIGHEST RISK.  AND SHE

15  LOOKED AT ALL THESE MEDICINES.  AND YOU CAN SEE ON

16  THAT FIRST PAGE THE ACH RISK SCORE OF THREE.  IF IT

17  HAS A RISK SCORE OF THREE, IT'S ON THERE.  WE ADDED

18  ALL THOSE MEDICINES TO THE LIST.

19            THE COURT:  AND THAT'S BEEN SINCE THE START

20  OF THIS LITIGATION?

21            MR. BLANCHFIELD:  CORRECT.

22            THE COURT:  OKAY.  VERY GOOD.

23            MR. BLANCHFIELD:  CORRECT.  IF WE GO TO THE

24  NEXT PAGE, IT HAS -- AS IT GOES DOWN -- TWO AND THEN

25  ZERO TO ONE.  NOW, IT'S NOT JUST THE ANTICHOLINERGICS

1    THAT WERE ADDED, BECAUSE SOME MEDICINES ARE NOT

2    ANTICHOLINERGIC BUT THEY DO IMPACT THE ABILITY OF THE

3    BODY TO COOL ITSELF.  SHE ADDED THOSE.  75

4    MEDICATIONS WERE ADDED, RESULTING IN -- AND

5    UNDERSTAND WHAT WE ACCOMPLISHED.  AFTER GETTING THIS

6    LIST CREATED -- YOU'RE GOING TO HEAR FROM DR.

7    LAVESPERE WHO SPENT COUNTLESS DAYS GETTING THIS

8    TOGETHER.  WE THEN WENT OUT AND ISSUED HEAT

9    PRECAUTION DUTY STATUSES TO PEOPLE WHO WERE ON THESE

10   75 MEDICINES -- NEW MEDICINES PLUS THE 22 OLD ONES.

11   OVER 1500 INMATES NOW HAVE HEAT PRECAUTION DUTY

12   STATUSES BASED ON THAT ALONE.

13            WE THEN WENT TO THE MEDICAL CONDITIONS.

14   THIS WAS OUR POLICY BEFORE.  IT WAS IN HCP 8.  IT WAS

15   A PARAGRAPH THAT MENTIONED A FEW CHRONIC ILLNESSES.

16   WE LOOKED AT THAT.  DR. KELDIE LOOKED AT IT AND HE

17   SAID, "WE NEED TO MAKE SOME MODIFICATIONS."  SO WHAT

18   DID WE DO?  GO TO THE NEXT SLIDE.  HERE'S THE ONE.

19   33 CONDITIONS.  EXTENSIVE CONDITIONS.  IF YOU HAVE

20   ANY OF THESE CONDITIONS, YOU'RE ISSUED A HEAT

21   PRECAUTION DUTY STATUS.

22            NOT ONLY DID WE ACCOMPLISH THAT, BUT WE

23   WENT AND LOOKED AT EVERYONE, 4,000 INMATES, MINUS THE

24   1500 WHO ALREADY HAD A HEAT PRECAUTION DUTY STATUS.

25   WE LOOKED AT THEM ALL.  AND IF THEY HAD ANY OF THESE

1  CONDITIONS, THEY WERE GRANTED A HEAT PRECAUTION DUTY

2  STATUS.  YOU'RE GOING TO HEAR TESTIMONY THAT WAS

3  ANOTHER 300.  THAT'S WHAT THEY HAVE ACCOMPLISHED.

4           SO WHAT'S THE END RESULT?  HALF OF THE

5  PRISON POPULATION AT LSP NOW HAS HEAT PRECAUTION DUTY

6  STATUSES.  HALF.  ALMOST 2,000 INMATES HAVE IT DUE TO

7  THE WORK THAT WE DID ON HCP 8.

8           NOW, YOU'RE GOING TO HEAR DR. VASSALLO

9  TAKE ISSUE WITH A COUPLE SMALL THINGS.  BUT FIRST OF

10 ALL, SHE'S NOT A PHARM D.  SHE DOESN'T EVEN KNOW WHAT

11 THE ANTICHOLINERGIC SCALE WAS.  SHE WASN'T EVEN AWARE

12 OF THAT.  SHE'S NOT A PHARM D.  SHE TAKES SOME ISSUES

13 WITH MAYBE ONE OR TWO MORE MEDICAL CONDITIONS THAT

14 SHOULD BE ON THERE.  SHE MENTIONS DIABETES.  DR.

15 KELDIE SAYS, "LOOK, IF YOU'RE UNCONTROLLED DIABETIC,

16 YEAH, YOU DON'T BELONG OUT THERE IN THE FIELD.  BUT

17 IF YOU HAVE CONTROLLED DIABETES, IT'S GOOD FOR YOU TO

18 BE OUT THERE MOVING AROUND."  SO THE ISSUES THAT SHE

19 HAS WITH THIS I BELIEVE ARE VERY MINOR.

20           THIS COURT WELL KNOWS THE MOUNTAINOUS

21 BURDEN THAT THEY HAVE TO PREVAIL IN A PRELIMINARY

22 INJUNCTION.  YOU KNOW, THERE IS -- THE QUESTION OF

23 ALL THAT WE HAVE DONE FROM THE SHADE WAGONS TO THE

24 POLICIES TO THE MEDICAL CONDITIONS TO THE

25 MEDICATIONS, THE SHADE TRAILER, SHADE PAVILIONS, THE

1    PROTECTIONS THAT WE'RE OFFERING YEAR-ROUND, HOW CAN

2    THEY POSSIBLY CONTEND THAT WE'RE INDIFFERENT HERE?

3            **THE COURT:**  WELL, LET ME ASK YOU THIS, MR.

4    BLANCHFIELD.  LET ME, FIRST OF ALL, COMMEND THE DOC

5    FOR CONDUCTING WHAT APPEARS TO ME TO BE A QUITE

6    COMPREHENSIVE REEVALUATION OF THE PHARMACEUTICAL LIST

7    THAT SHOULD GUIDE ITS DECISIONS.  I COMMEND THE DOC

8    FOR CONDUCTING WHAT I ASSUME, BASED UPON YOUR

9    PRESENTATION, TO HAVE BEEN A COMPREHENSIVE

10   REEVALUATION OF THE MEDICAL HISTORIES OF INMATES AT

11   ANGOLA WHO MAY BE PLACED ON HEAT-RELATED

12   PRECAUTIONARY DUTY STATUS.

13            SO THE QUESTION IS:  HAVE -- HOW HAVE

14   THE POLICIES AT DOC ACTUALLY CHANGED OR BEEN MODIFIED

15   IN ANY WAY BECAUSE OF THE DECISION TO MAKE THESE

16   REEVALUATIONS?  IN OTHER WORDS, HAVE THEY BEEN --

17   WERE THESE REEVALUATIONS -- DID THEY OCCUR BASED UPON

18   A WRITTEN POLICY, AN AMENDED OR REVISED POLICY OF THE

19   DOC?

20            **MR. BLANCHFIELD:**  YES, YOUR HONOR.  SO THESE

21   -- THESE ARE ATTACHED TO HCP 8 AS EXHIBITS A AND B.

22   AND THE REASON THAT WE CHOSE ALL THESE MEDICINES WERE

23   BASED ON THE EXPERTS THAT WE RETAINED, THE SAME

24   EXPERTS -- WE DID WHAT THEY TOLD US WAS THE PRUDENT

25   THING TO DO WITH RESPECT TO THE MEDICATIONS, JUST

1  LIKE WE DID WITH THE HEAT INDEX.  YOU KNOW, I'M GOING

2  TO FOLLOW WHAT THEY SAY.  THEY TELL ME 95.  WE DID

3  91, YOU KNOW.  THAT'S -- IT'S WHAT WE DID.

4            THE COURT:  I UNDERSTAND.  I UNDERSTAND.

5            NOW, MR. BENJAMIN, I ASSUME -- I'M

6  GOING TO TAKE A GUESS, A WILD GUESS, THAT YOU DON'T

7  THINK THAT THAT'S -- THAT WHAT THE STATE HAS DONE IS

8  SUFFICIENT?

9            MR. BENJAMIN:  THAT'S CORRECT.  I'LL KEEP IT

10 BRIEF.

11           THE COURT:  PRETTY CLAIRVOYANT, AREN'T I?

12           MR. BENJAMIN:  I'LL KEEP IT BRIEF.  THERE IS

13 NO QUESTION THAT THE MEDICATIONS LIST HAS EXPANDED

14 AND IT CAPTURES MORE PEOPLE.  THE REASON IT DID IS

15 THEY SHOWED THEIR PRIOR MEDICATIONS LIST TO AN EXPERT

16 WHO TOOK ONE LOOK AT IT AND SHE SAID IT WAS OBVIOUS

17 THAT IT WAS DEFICIENT.  SO THEY HAVE EXPANDED THAT

18 LIST AND THERE ARE MORE PEOPLE THAT ARE GETTING

19 COVERED.  WE ACKNOWLEDGE THAT.

20           BUT I WANT -- BUT THERE ARE CATEGORIES

21 OF MEDICINES THAT ARE CLEARLY -- THAT CLEARLY AFFECT

22 THE ABILITY OF THE BODY TO COOL.  NOW, THIS CLAIM

23 REALLY COMES IN AS A VERY CORE COMPONENT OF OUR ADA

24 CLAIM.  AND I WANT TO BE VERY CLEAR, IT IS NOT A

25 COUPLE OF SMALL THINGS THAT WE TAKE ISSUE WITH.  IT'S

1   A LOT OF PEOPLE WHO ARE ON SSRIs OR WHO HAVE

2   CONDITIONS THAT MAKE THEM HEAT-SENSITIVE AND THEY'RE

3   BEING PUT IN HARM'S WAY.  AND ALL THEY ARE ASKING FOR

4   IS A REASONABLE ACCOMMODATION THAT THEY BE -- THAT

5   THEY BE AFFORDED THE PROTECTION, AS A DISABLED

6   PERSON, A HEAT-SENSITIVE PERSON UNDER THE ADA, AND

7   BROUGHT IN AT 88 DEGREES.

8           THE COURT:  AND AFFORDING THAT TYPE OF

9   RELIEF OR PROTECTION, ARE YOU ASKING THE STATE TO

10  CONDUCT A PHYSICAL EXAMINATION OF THE INMATES?

11          MR. BENJAMIN:  WELL, FOR THE MEDICATIONS,

12  THEY KNOW -- THEY KNOW AND THEY'RE PRESCRIBING THOSE

13  MEDICATIONS, SO I THINK THAT THAT'S QUITE EASY.  THEY

14  HAVE ALREADY DONE THE DIAGNOSES, AS WE UNDERSTAND, ON

15  PEOPLE'S PRIOR HISTORIES.  NOW, THE ACCURACY, I DON'T

16  KNOW.

17          THE COURT:  SO HOW -- ARE YOU PREPARED TO

18  SUBMIT TO THE COURT THE NAMES OF THOSE PERSONS WHO

19  YOU BELIEVE SHOULD BE INCLUDED ON THE LIST?  BEFORE

20  YOU ANSWER -- AND I APOLOGIZE TO YOU.  FIRST, ARE THE

21  PERSONS YOU'RE REFERRING TO NOW, ARE THEY NOT ON THE

22  LIST, IF YOU KNOW?

23          MR. BENJAMIN:  THERE ARE PERSONS THAT ARE

24  NOT ON THE LIST THAT ARE, SAY -- FOR EXAMPLE, IT'S

25  ACTUALLY NOT SUCH A HARD GROUP TO ASCERTAIN.  THERE

1   IS -- THERE ARE PEOPLE WHO ARE TAKING SSRIs AND WHO

2   ARE NOT TAKING SOME MEDICATION THAT IS ON THE LIST OR

3   DO NOT HAVE A CONDITION THAT IS ON THE OTHER LIST.

4            **THE COURT:**  AND HOW MANY PEOPLE ARE WE

5   TALKING ABOUT?

6            **MR. BENJAMIN:**  I DON'T KNOW THE NUMBER OF

7   PEOPLE.  BUT I SUSPECT IT IS A REASONABLE NUMBER OF

8   PEOPLE WHO ARE TAKING SSRIs THAT AFFECT THEIR ABILITY

9   TO COOL AND REALLY DON'T BELONG ON THE FARM LINE WHEN

10  IT EXCEEDS 88 DEGREES.

11           **THE COURT:**  HAVE YOU APPROACHED MR.

12  BLANCHFIELD AND PROVIDED HIM WITH THE NAMES OF THOSE

13  FOLKS THAT PERHAPS -- AND I DON'T KNOW, MR.

14  BLANCHFIELD.  I'M NOT TRYING TO HOLD YOUR HAND.  BUT

15  BOTH OF YOU ARE REASONABLE.  I THINK YOUR CLIENTS ARE

16  REASONABLE.

17           WHY SHOULDN'T I ORDER THAT BOTH SIDES

18  MEET AND CONFER AND TRY TO REACH AGREEMENT ON THOSE

19  INMATES WHO PERHAPS ARE NOT ON THE LIST BUT WHO YOU

20  BELIEVE -- IS IT -- SO AGAIN, IS IT A MATTER OF

21  SIMPLY IDENTIFYING THE INMATES WHO SHOULD BE ON THIS

22  LIST?

23           **MR. BLANCHFIELD:**  YOUR HONOR --

24           **THE COURT:**  THE PRECAUTIONARY DUTY STATUS

25  LIST?

1           **MR. BLANCHFIELD:**  SO SSRIs, SEROTONIN UPTAKE

2   -- SO THESE ARE THE LEXAPROs, THE FOLKS WHO NEED A

3   LITTLE MORE SEROTONIN TO KEEP THEM RIGHT.  THE

4   TESTIMONY --

5           **THE COURT:**  I LIKE YOUR DESCRIPTION OF THAT,

6   MR. BLANCHFIELD.

7           **MR. BLANCHFIELD:**  THE TESTIMONY AND THE

8   SCIENCE IS ABSOLUTELY CLEAR -- AND YOU'RE GOING TO

9   HEAR FROM THE ONLY QUALIFIED EXPERT IN THIS

10  COURTROOM, DELECA BARNES, WHO IS GOING TO SAY THERE

11  IS NO REASON TO PUT THEM ON THE LIST.

12          **THE COURT:**  SO LET ME ASK YOU:  DO YOU KNOW

13  HOW MANY PEOPLE WE'RE TALKING ABOUT, MR. BLANCHFIELD?

14          **MR. BLANCHFIELD:**  I DON'T.  I DON'T.

15          **THE COURT:**  THAT'S FINE.  I DIDN'T KNOW IF

16  IT WAS A SMALL NUMBER THAT PERHAPS YOU-ALL COULD

17  REACH SOME SORT OF NEGOTIATED SETTLEMENT OR AGREEMENT

18  ABOUT.  BUT IT SOUNDS LIKE THERE ARE FAR TOO MANY.

19          **MR. BENJAMIN:**  WE'D BE HAPPY -- IF THEY

20  WOULD EXCHANGE THE INFORMATION, WE WOULD BE HAPPY TO

21  MEET AND CONFER WITH THEM ABOUT THAT.

22          **THE COURT:**  WHAT WOULD YOU REQUIRE FROM THE

23  STATE?

24          **MR. BENJAMIN:**  I THINK THEY CAN EASILY

25  IDENTIFY THOSE PERSONS WHO ARE TAKING SSRIs AND ARE

1  NOT OTHERWISE COVERED ON THIS LIST.  THAT'S ONE

2  EXAMPLE.  I THINK THAT THE MEDICATIONS THAT WE HAVE

3  IDENTIFIED IN OUR BRIEF AND IN DR. VASSALLO'S

4  DECLARATION IS AN EASY LIST FOR THEM TO GENERATE.  I

5  UNDERSTAND THAT THE MEDIATIONS LIST WAS A MORE

6  DIFFICULT -- I'M SORRY -- THE MEDICAL CONDITIONS LIST

7  WAS A MORE DIFFICULT LIST TO GENERATE.

8          **THE COURT:**  HOW ABOUT THIS, MR. BLANCHFIELD?

9  IF I SET A DEADLINE FOR BOTH SIDES TO MEET AND CONFER

10  FIRST ABOUT WHETHER THE EXCHANGE OF SUCH INFORMATION

11  CAN BE PRODUCTIVE FOR BOTH SIDES -- AND I'M NOT

12  ASKING YOU RIGHT NOW TO COMMIT YOUR CLIENT.  BUT IS

13  IT YOUR SENSE THAT YOUR CLIENT WOULD BE WILLING TO

14  SIT DOWN WITH COUNSEL FOR THE PLAINTIFFS TO IDENTIFY

15  ANY SUCH PERSONS?

16          **MR. BLANCHFIELD:**  YOUR HONOR, WE COULD

17  IDENTIFY THOSE PEOPLE.  MR. BENJAMIN AND I HAD SOME

18  DISCUSSIONS EARLY ON ABOUT THIS PARTICULAR ISSUE, AND

19  I TOLD HIM SSRIs ARE A NONSTARTER.  AIN'T GOING TO

20  HAPPEN.

21          **THE COURT:**  AND WHY IS THAT?

22          **MR. BLANCHFIELD:**  BECAUSE THERE IS NOTHING

23  TO SUPPORT THAT.  THERE IS NO SCIENCE.  AND THE ONLY

24  EXPERT QUALIFIED TO TESTIFY ABOUT IT IS GOING TO SAY,

25  *YOUR HONOR, WE ADDED 75 MEDICATIONS.  THAT'S NOT ONE*

 1 | *OF THEM.  SHOULD NOT BE ONE OF THEM.*

 2 |         **THE COURT:**  THAT'S FINE.  OBVIOUSLY THE

 3 | COURT PREFERS FOR THE PARTIES TO WORK OUT THEIR

 4 | DISAGREEMENTS RATHER THAN THE COURT MANDATING A

 5 | SOLUTION, IF AT ALL POSSIBLE.  FROM WHAT I'M HEARING,

 6 | THAT'S SIMPLY NOT POSSIBLE.

 7 |         ALL RIGHT.  ANYTHING ELSE WE SHOULD

 8 | TAKE UP WITH THE TRO BEFORE WE WRAP THINGS UP AND

 9 | MOVE ON TO THE CLASS CERTIFICATION ISSUE?

10 |         **MR. BENJAMIN:**  WE UNDERSTAND THE BRIEFING TO

11 | COVER IT.  OF COURSE, IF THERE IS SOMETHING THAT THE

12 | COURT HAS QUESTIONS ABOUT, WE'RE READY TO ANSWER.

13 |         **THE COURT:**  I'LL DO THAT.

14 |         AND, MR. BLANCHFIELD, HAVE YOU ENTERED

15 | THE POWERPOINT PRESENTATION INTO THE RECORD?  OR

16 | WOULD YOU LIKE TO DO SO?

17 |         DO YOU HAVE ANY OBJECTION TO THE

18 | POWERPOINT PRESENTATION?  I CAN'T IMAGINE --

19 |         **MR. BENJAMIN:**  WE DO NOT.

20 |         **THE COURT:**  IT'S TECHNICALLY A DEMONSTRATIVE

21 | AID, BUT I'LL GO ON AND RECEIVE IT, AT LEAST FOR

22 | PURPOSES OF THE SECOND TRO, MR. BLANCHFIELD.  I'M

23 | GOING TO GO ON AND ENTER IT INTO THE RECORD BECAUSE I

24 | WANT TO TAKE A FULL OPPORTUNITY TO REVIEW IT BEFORE

25 | RENDERING A DECISION.

1         **MR. BLANCHFIELD:**  THANK YOU, YOUR HONOR.

2              AND JUST ONE BRIEF POINT.  ALL OF THIS

3    TALK ABOUT CODIFICATION OF THE WATER, ICE, SHADE,

4    SUNSCREEN, LOOK IN HCP 8.  IT'S IN THERE.

5         **THE COURT:**  OKAY.  GOOD.  SO WHAT I'LL DO IS

6    THIS, COUNSEL:  I WILL GIVE BOTH SIDES AN OPPORTUNITY

7    TO SUBMIT POST-HEARING BRIEFS.  I DON'T THINK THAT

8    THE CONDITIONS ARE SUCH AT THIS POINT WHERE A BRIEF

9    DELAY WILL BE INJURIOUS TO THE PLAINTIFFS, SO --

10   LET'S SEE.  AND I ASSUME THAT YOU BOTH WANT A

11   TRANSCRIPT OF THIS HEARING, I TAKE IT?

12        **MR. BLANCHFIELD:**  YES, YOUR HONOR.

13        **MR. BENJAMIN:**  YES, YOUR HONOR.

14        **THE COURT:**  NATALIE, CAN I SEE YOU?

15                 **(OFF THE RECORD)**

16        **THE COURT:**  LET ME SEE COUNSEL AT THE BENCH

17   VERY BRIEFLY.

18        **(WHEREUPON, AN OFF-THE-RECORD BENCH**

19   **DISCUSSION WAS HELD WITH COUNSEL.)**

20        **THE COURT:**  ALL RIGHT.  BACK ON THE RECORD.

21             WE'VE BEEN WORKING THROUGH SOME DATES

22   HERE.  AND SO WHAT WE WILL DO, THE COURT WILL PROCEED

23   TO PREPARE AN ORDER ON THE TRO AND I WILL TAKE THE

24   MATTER UNDER ADVISEMENT.

25             WITH RESPECT TO THE PRELIMINARY

1  INJUNCTION, THE TRANSCRIPT WILL BE PREPARED AND MADE

2  AVAILABLE TO YOU IN THE NEXT FEW DAYS.  AND I WOULD

3  ASK THAT BOTH SIDES BE PREPARED TO PROVIDE THE POST-

4  HEARING BRIEFS -- USUALLY I ORDER 30 DAYS OUT.  BUT,

5  OF COURSE, GIVEN THE NATURE OF THIS, WE'RE GOING TO

6  MAKE -- SORT OF TRUNCATE THAT.  SO I'M GOING TO ASK

7  YOU TO REPLY NO LATER THAN FRIDAY, MAY 16TH.  OKAY?

8  AND THE TRANSCRIPT OF THE PROCEEDINGS WILL BE

9  PREPARED AND MADE AVAILABLE TO YOU AS SOON AS THEY

10 ARE COMPLETE.  OKAY?

11         **MR. BLANCHFIELD:**  OKAY.

12         **THE COURT:**  ANYTHING ELSE ON THE TRO,

13 PRELIMINARY INJUNCTION, GENTLEMEN?

14         **MR. BENJAMIN:**  NO, YOUR HONOR.

15         **THE COURT:**  ALL RIGHT.  LET ME COMMEND BOTH

16 SIDES.  THIS HAS BEEN VERY HELPFUL.  AND AGAIN, WE'LL

17 MAKE SURE THAT WE ENTER THE POWERPOINT INTO THE

18 RECORD, MR. BLANCHFIELD.  SO I'LL TAKE A LOOK AT IT

19 BEFORE DRAFTING THE RULING.

20         **MR. BLANCHFIELD:**  THANK YOU, JUDGE.

21         **MR. BENJAMIN:**  ONE VERY SMALL HOUSEKEEPING

22 ITEM.  ARE WE ABLE TO SUBSTITUTE IN THE INK-SIGNED

23 DECLARATIONS FROM MR. TUTTS AND MR. CARTER?  WE COULD

24 ALSO FILE THEM SEPARATELY IF THAT'S PREFERABLE, BUT

25 WE DO HAVE THOSE TO ENTER.

1          THE COURT:  I WOULD PREFER THAT THEY BE

2    FILED.  NOW, YOU SAID -- HOW DO YOU PROPOSE TO FILE

3    THEM?

4          MR. BENJAMIN:  WE COULD EITHER TRY TO

5    SUBSTITUTE THEM IN FOR THE EXISTING ECF NUMBERS OR WE

6    COULD FILE THEM SEPARATELY.

7          THE COURT:  EITHER WAY.  IT DOESN'T REALLY

8    MATTER.  I MEAN, IT'S A PROCEDURAL ISSUE.  BUT, OF

9    COURSE, SUBSTANTIVELY WE KNOW WHAT THEY ARE, SO WHY

10   DON'T YOU JUST FILE THEM SEPARATELY SO THAT THEY GET

11   A SEPARATE EXHIBIT NUMBER, JUST TO BE SURE.  OKAY?

12         MR. BENJAMIN:  THANK YOU, YOUR HONOR.  WE'LL

13   DO THAT TODAY.

14         THE COURT:  AND THAT WAY, IF THE STATE

15   WISHES TO OBJECT TO ALL OR PORTIONS OF THEM, IT WILL

16   BE CLEARER TO THE COURT OF APPEALS WHAT DECLARATIONS

17   OR WHAT DOCUMENTS WE'RE TALKING ABOUT.  ALL RIGHT?

18         MR. BENJAMIN:  UNDERSTOOD.

19         THE COURT:  ALL RIGHT.  SO I UNDERSTAND THAT

20   BOTH SIDES ARE READY TO PROCEED WITH THE HEARING ON

21   CLASS CERTIFICATION, BUT WE HAVE SOME I.T. ISSUES

22   THAT WE HAVE TO ACCOUNT FOR.

23         BRANDON, THANK YOU FOR JOINING US.

24   WHAT WE'LL DO IS TAKE ABOUT A TEN-MINUTE BREAK AND

25   THEN WE'LL BE READY TO GO.

1                    JUST AS A REMINDER, I'LL GIVE EACH SIDE

2    A VERY BRIEF OPPORTUNITY TO OFFER AN OPENING

3    STATEMENT TOUCHING UPON THE ELEMENTS FOR THE CLASS

4    CERTIFICATION, AFTER WHICH WE'LL IMMEDIATELY GO INTO

5    THE PLAINTIFFS' -- FIRST OF THE PLAINTIFFS' EXPERT

6    WITNESSES WHO, AS I UNDERSTAND IT -- AND I DON'T KNOW

7    WHICH OF YOU WILL TAKE THE LEAD ON THAT, MR. BENJAMIN

8    OR WHOMEVER.  OKAY.  AND YOUR EXPERT WILL BE

9    TESTIFYING VIDEO ZOOM.  CORRECT?

10                   VERY WELL.  OKAY.  COURT IS IN RECESS.

11              **THE CLERK:**  ALL RISE.

12                   THE COURT IS NOW IN RECESS.

13          **(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)**

14               **C E R T I F I C A T E**

15          **I CERTIFY THAT THE FOREGOING IS A CORRECT**

16   **TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE**

17   **ABOVE-ENTITLED NUMBERED MATTER.**

18   **S:/NATALIE W. BREAUX**

19   **NATALIE W. BREAUX, RPR, CRR**

20   **OFFICIAL COURT REPORTER**

21

22

23

24

25