## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **VOICE OF THE EXPERIENCED**, a membership organization on behalf of itself and its members; and **MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY, KENDRICK STEVENSON, and ALVIN WILLIAMS**, on behalf of themselves and all others similarly situated, | Civil Action No.: 3:23-cv-1304-BAJ-EWD |
| *Plaintiffs*, | |
| v. | |
| **JAMES LEBLANC**, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; **TIMOTHY HOOPER**, in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**; and **PRISON ENTERPRISES, INC.** | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RENEWED INJUNCTIVE RELIEF

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

RELEVANT BACKGROUND .................................................................................................2

ARGUMENT ...........................................................................................................................7

I.     A Successive Injunction Granting Identical Relief is Procedurally and
       Jusrisdictionally Appropriate. ....................................................................................7

II.    Plaintiffs Continue to Satisfy the Requirements for Preliminary Injunctive Relief. ...........9

III.   The Requested Renewed Injunction Continues to Satisfy the PLRA's "Need,"
       "Narrowness," and "Intrusiveness" Requirements..........................................................12

       A.     The Requested Relief Remains Necessary. ......................................................12

       B.     The Requested Relief Remains Narrow............................................................14

       C.     The Requested Relief Remains the Least Intrusive Relief Necessary to
              Correct the Constitutional Harm. .........................................................15

CONCLUSION.......................................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alloway* v. *Hodge,*
    72 F. App'x 812 (10th Cir. 2003) ............................................................8

*Brown* v. *Plata,*
    563 U.S. 493 (2011).............................................................................14, 15

*Cole* v. *Collier,*
    2017 WL 3049540 (S.D. Tex. July 19, 2017)......................................7, 11

*Cole* v. *Collier,*
    2018 WL 2766028 (S.D. Tex. June 8, 2018) ..........................................13

*East* v. *Blue Cross & Blue Shield of La.,*
    2014 WL 8332136 (M.D. La. Feb. 24, 2014) ........................................12

*Edmo* v. *Corizon, Inc.,*
    935 F.3d 757 (9th Cir. 2019) ...................................................................9

*Jones* v. *Gusman,*
    296 F.R.D. 416 (E.D. La. 2013)..............................................................14

*Mayweathers* v. *Newland,*
    258 F.3d 930 (9th Cir.2001) .................................................................8, 9

*Melendez* v. *Sec'y, Fla. Dep't of Corr.,*
    2022 WL 1124753 (11th Cir. Apr. 15, 2022) ..........................................8

*Monroe* v. *Bowman,*
    122 F.4th 688 (7th Cir. 2024) ..................................................................8

*Robinson* v. *Labrador,*
    2024 WL 4953686 (D. Idaho Dec. 3, 2024) ...........................................7

*Ross* v. *Johnson,*
    2023 WL 3864995 (D. Nev. June 6, 2023).........................................7, 15

*Sierra Club, Lone Star Chapter* v. *Cedar Point Oil Co. Inc.,*
    73 F.3d 546 (5th Cir. 1996) .....................................................................8

*Smith* v. *Edwards,*
    88 F.4th 1119 (5th Cir. 2023) ...............................................................8, 9

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Vazquez Barrera* v. *Wolf*,
    455 F. Supp. 3d 330 (S.D. Tex. 2020) ...................................................................12

*Voice of the Experienced et al.* v. *Westcott et al.*,
    No. 24-30420 (5th Cir.) .......................................................................................14

*Voice of the Experienced et al.* v. *LeBlanc et al.*,
    No. 25-30322 (5th Cir.) ...................................................................................1, 6, 7

*Yates* v. *Collier*,
    677 F. App'x 915 (5th Cir. 2017) .......................................................................8, 9

**Statutes**

18 U.S.C. § 3626 (PLRA) ..................................................................... *passim*

42 U.S.C. § 12131 et seq. (ADA Title II) .............................................9, 10

29 U.S.C. § 794 (Rehabilitation Act of 1973, Section 504) ........................10

**Other Authorities**

U.S. Const. Amend. VIII ...................................................................5, 9, 14

Fed. R. Evid. 706 .................................................................................2, 10

Fed. R. Civ. P. 65 ...............................................................................7, 8, 9

Fed. R. Civ. P. 30(b)(6)............................................................................4

## INTRODUCTION

Plaintiffs move for renewed injunctive relief to begin on August 22, 2025 and to provide identical relief to that ordered by the Court pursuant to its May 23, 2025 Ruling and Order, *see* ECF No. 253 (the "TRO").[1]  Plaintiffs seek this renewed relief in order to prevent constitutional violations on the Farm Line after the TRO expires on August 21, 2025.

On May 23, 2025, this Court issued the TRO, which requires Defendants to take two actions with respect to the Farm Line:  (1) issue a Heat Alert when the heat index reaches 88°F; and (2) monitor the heat index every 30 minutes.  ECF No. 253 at 38.  That injunctive relief, the Court ruled, is necessary to protect and preserve the health and safety of the men assigned to the Farm Line.  *See id.* at 37.

By operation of law, the TRO will expire on August 21, 2025, 90 days after it was first entered.  *See* 18 USC § 3626(a)(2).  And yet, as that deadline approaches, none of the material facts underlying the TRO have changed; nor has the necessity of the relief ordered by the Court. Extreme heat is anticipated to persist well after August 21, posing severe risks of heat-related harm to the men forced to work on the Farm Line.  And, despite being put on notice by the TRO that their heat pathology policies likely violate the Eight Amendment, Defendants have not changed the relevant provisions of those policies.  To the contrary, Defendants continue to argue, in the face of all credible evidence, that their increased Heat Alert threshold and hourly heat index monitoring are sufficient to mitigate the substantial risk of serious harm from extreme heat on the Farm Line.  *See generally*, ECF No. 223; *VOTE et al.* v. *LeBlanc et al*, No. 25-30322, ECF Nos. 32, 76 (5th Cir.).

---

[1]    Unless otherwise indicated, capitalized terms have the meanings given to them in Plaintiffs' Motion for a Second Temporary Restraining Order and Preliminary Injunction, *see* ECF No. 201.

1

Should the injunctive relief be allowed to lapse when the TRO expires, Defendants will revert to policies that are likely unconstitutional and that place men on the Farm Line at grave risk. To prevent that from happening, the Court should issue an identical successive preliminary injunction, renewing the protections already deemed necessary and appropriate under the Eighth Amendment and Prison Litigation Reform Act (the "PLRA"), 18 USC § 3626.

## RELEVANT BACKGROUND[2]

On March 26, 2025, Plaintiffs moved for a temporary restraining order requiring Defendants to: (1) issue a Heat Alert on the Farm Line whenever the heat index meets or exceeds 88°F; and (2) monitor the heat index on the Farm Line every 30 minutes.[3] ECF No. 201.

Plaintiffs moved for this relief after Defendants modified their heat pathology policies, Health Care Policy 8 ("HCP8") and LSP Directive 13.067, to make them *less* protective by increasing the Heat Alert threshold in those policies from a heat index of 88°F to a heat index of 91°F. TRO at 3–5. Plaintiffs also sought a requirement that Defendants monitor the heat index every 30 minutes—more frequently than required by Defendants' policies[4]—in light of record

---

[2] In light of the Court's familiarity with the facts of this litigation, Plaintiffs include herein only the factual and procedural background most relevant to this motion. Plaintiffs incorporate by reference the facts and arguments set forth in Plaintiffs' opening and reply briefs in support of their Motion for a Second Temporary Restraining Order and Preliminary Injunction, ECF Nos. 201, 224, as supplemented by the April 22, 2025 oral argument on that motion and post-argument briefing, ECF Nos. 250, 250-2, as well as the testimony and evidence presented during the motions hearing on Plaintiffs' Motion for Class Certification, *see* ECF Nos. 257-2, 257-3, 257-4.

[3] Plaintiffs concurrently moved for a preliminary injunction seeking the same and additional relief, including: (1) an order prohibiting Defendants from assigning people with Heat Precaution Duty Status to the Farm Line when the heat index is projected to exceed 88°F, requiring Defendants to expand the list of medications and conditions qualifying people for Heat Precaution Duty Status, and requiring Defendants to lower the heat index threshold at which all work on the Farm Line ceases from 113°F to 103°F; and (2) the appointment of an expert pursuant to Federal Rule of Evidence 706 to consult the Court regarding Defendants' heat-related policies and record the Wet Bulb Globe Temperature at LSP. ECF No. 201. That motion remains pending.

[4] Revised LSP Directive 13.067, promulgated on April 8, 2025, after Plaintiffs' Motion for a Second Temporary Restraining Order and Preliminary Injunction was filed, requires LSP staff to monitor the heat index once every hour. *See* ECF No. 212-4 at 4. HCP8, last revised on October 20, 2024, still requires heat index monitoring once every two hours. *See* ECF No. 212-11 at 5.

evidence demonstrating that significant, dangerous increases in the heat index occur within short intervals.  TRO at 14, 23–24.

On May 23, 2025, following extensive briefing, the submission of nearly 70 supporting exhibits and declarations, oral argument, live testimony, and post-argument briefing, the Court granted the requested temporary restraining order in full.  TRO at 38.  The TRO credited and extensively relied upon testimony from Plaintiffs' expert, Dr. Susi Vassallo, including her explanation of the extensive scientific literature demonstrating that rates of heat-related illness and mortality increase sharply when the heat index reaches the mid to high-80s, such that the risk of serious harm and even death to all people, and particularly to heat sensitive people, at heat indices at or above 88°F is substantial.  TRO at 21–23; *see also* ECF No. 250-3 at 57:5–58:22 (Dr. Vassallo testifying that numerous studies show that mortality rates increase sharply above a heat index of 86°F); *id.* at 59:20–62:1 (Dr. Vassallo testifying that exposure to heat indices at or above 88°F significantly increases risk of heat-related injury and illness).  The Court also noted that other courts in the Fifth Circuit have accepted a heat index of 88°F as a meaningful threshold at which the risk of heat-related illness increases significantly.  TRO at 31–32.

By contrast, the Court found Defendants' expert, Dr. Carl Keldie, to be "wholly uncredible" for a myriad of reasons, including because the sources he purportedly relied upon in advising Defendants to raise the Heat Alert threshold did not support—or even "outright contradict[ed]"—that decision.  TRO at 25–28, 31.  The Court, for example, cited OSHA guidance purportedly relied on by Defendants, that "warns that '[o]utdoor workers have died of heat stroke when the day's maximum Heat Index was only 86 [degrees] Fahrenheit,'" TRO at 27, and NWS data that "is for 'shady locations' only" and that warns "if a person is exposed to direct sunlight, the heat index can be increased by up to 15 degrees Fahrenheit" and "indicates that 'extreme

caution' should be undertaken at 90 degrees Fahrenheit *in the shade*," *id.* at 29–30. Indeed, Dr. Vassallo testified that she is not aware of *any* studies or scientific evidence that would support raising the Heat Alert threshold from a heat index of 88°F to a heat index of 91°F. TRO at 26; *see also* ECF No. 250-3 at 59:5–19.

As to the need for more frequent heat monitoring on the Farm Line, the Court was presented with NWS records, culled from the "heat letters" that the parties jointly submit to the Court on a weekly basis, which show sharp increases in the heat index within short periods of time. TRO at 23–24. The Court cited one such example from August 6, 2024, a day on which the heat index was 85°F at 7:35 a.m., rose to 93°F at 8:35 a.m., and to 102°F by 9:55 a.m. *See* TRO at 23–24; ECF No. 201-9 at 11–12.

August 6 was not an outlier. The Court was also presented with ample evidence that demonstrates that the heat index regularly increases within an hour. For instance, on August 2, 2024, the heat index increased from 85°F at 7:55 a.m. to 93°F at 8:55 a.m., ECF No. 201-9 at 10; on July 15, 2024 the heat index was 87°F at 8:55 a.m. and 93°F by 9:55 a.m., *id.* at 7; and on July 2, 2024, the heat index was 86°F at 7:55 a.m. and 95°F by 8:55 a.m., *id.* at 4.

The same evidence demonstrates that rapid heat index increases can even occur within 30 minutes: on July 2, 2024, for example, the heat index climbed from 89°F at 8:15 a.m. to 95°F at 8:55 am., *id.* at 4; on July 15, 2024, the heat index rose from 88°F at 9:15 a.m. to 93°F at 9:55 a.m., *id.* at 7, and on August 6, 2024, the heat index increased from 90°F at 8:15 a.m. to 96°F at 8:55 a.m., *id.* at 12. All of this data was presented to Defendants during a Rule 30(b)(6) deposition, *see* ECF No. 201-6 at 147:13–152:6, months before they issued a revised LSP Directive 13.067 that still failed to address the dangerous heat index increases that can occur in less than an hour.

Based on the NWS data, the Court correctly determined that the evidence demonstrates that significant and dangerous increases in the heat index can and often do occur in less than one hour, showing the insufficiency of Defendants' heat monitoring policies. The Court also concluded, crediting Dr. Vassallo's opinion, that the infrequent heat monitoring pursuant to Defendants' heat pathology policies is inadequate and unsupported by the scientific literature. TRO at 23; *see also* ECF No. 201-3 ¶ 8.

The Court accordingly found that Defendants' deliberate indifference as to their Heat Alert and heat index monitoring practices was "demonstrated straightforwardly." TRO at 33. In particular, Defendants raised the Heat Alert threshold in HCP8 and LSP Directive 13.067 from 88°F to 91°F, without any legitimate scientific basis, shortly after being made aware—not only by Plaintiffs' filings, but by an order of the Court—of the health risks everyone forced to labor on the Farm Line faced when the heat index hits 88°F. TRO at 33–34. Defendants' decision to make their policies *less* protective by *raising* the Heat Alert threshold, despite being presented with "compelling medical findings" evidencing the attendant risks, demonstrated their deliberate indifference. TRO at 34–35. As to the blatant dangers of Defendants' heat monitoring practices, Defendants were deliberately indifferent to these risks, too, given that they were "well aware" of how sharply the heat index can increase over short periods of time. TRO at 34.

In light of this compelling evidence, the Court concluded that Plaintiffs had shown a substantial likelihood of success in proving that Defendants' Heat Alert and heat index monitoring policies and practices pose a substantial risk of serious harm to men on the Farm Line in violation of the Eighth Amendment. *See* TRO at 18–35. The Court likewise found that Plaintiffs had likely established that men on the Farm Line face immediate risk of irreparable injury, TRO at 19, 35–36, that the public interest favored an injunction, *id.* at 19, 36–37, and that the potential harms

5

suffered by Plaintiffs outweighed any purported harms to Defendants as a result of the injunctive relief, *id.* at 37. To prevent these likely constitutional violations, the Court required Defendants to return to their practice of issuing a Heat Alert when the heat index meets or exceeds 88°F and to monitor the heat index every 30 minutes.

Defendants immediately appealed the TRO. ECF No. 254. On appeal, Defendants challenge this Court's PLRA findings, and—notwithstanding the scientific and medical evidence, agency guidance, and expert testimony to the contrary—argue that their heat-related policies are adequate. Appellants' Br., *VOTE et al* v. *LeBlanc et al*, No. 25-30322, ECF No. 32 (5th Cir. June 4, 2025). Oral argument on Defendants' appeal of the TRO is scheduled for August 4, 2025. *VOTE et al.* v. *LeBlanc et al.*, No. 25-30322, ECF No. 56 (5th Cir. June 25, 2025).

Fourteen days after the TRO issued, Plaintiffs moved to extend its duration; the Court denied that motion as moot, clarifying that the TRO was issued pursuant to Section 3626(a)(2) of the PLRA, *see* ECF No. 267.[5] Accordingly, the TRO will expire on August 21, 2025, 90 days after it was issued. *See* 18 USC § 3626(a)(2) ("Preliminary injunctive relief shall automatically expire . . . 90 days after its entry.").

On July 17, 2025, Plaintiffs asked Defendants if they would stipulate to extending the TRO, and Defendants declined. Thus, after August 21, absent action by the Court, Defendants are free to revert to their likely unconstitutional Heat Alert and heat monitoring policies. To prevent such likely constitutional violations, Plaintiffs file the instant motion for renewed injunctive relief.

---

[5]    The Court's clarification order inadvertently referred to 18 U.S.C. § 3626(2), which does not exist, rather than 18 U.S.C. § 3626(a)(2), the provision of the PLRA addressing preliminary relief.

## ARGUMENT

Because the renewed injunctive relief Plaintiffs seek is procedurally and jurisdictionally proper and satisfies the requirements for preliminary injunctive relief set forth by both Rule 65 of the Federal Rules of Civil Procedure ("FRCP") and Section 3626(a)(2) of the PLRA, the Court should grant a new, successive injunction providing relief identical to that granted in the TRO.

## I.    A SUCCESSIVE INJUNCTION GRANTING IDENTICAL RELIEF IS PROCEDURALLY AND JUSRISDICTIONALLY APPROPRIATE.

As a threshold matter, the Court has authority and jurisdiction to renew the injunctive relief by granting a successive injunction providing the exact same relief encompassed by the TRO. Neither the PLRA's 90-day limit on preliminary injunctive relief, *see* 18 U.S.C. § 3626(a)(2), nor the pending interlocutory appeal on the TRO, *see Voice of the Experienced et al* v. *LeBlanc*, No. 25-30322 (5th Cir.), precludes the Court from reissuing the relief requested.

While a preliminary injunction automatically expires pursuant to the PLRA after 90 days, district courts regularly renew preliminary injunctive relief granted under the PLRA by issuing successive, identical preliminary injunctions like the one requested here. *See, e.g.*, Memorandum and Order, *Cole* v. *Collier*, No. 4:14-cv-01698 (S.D. Tex. Oct. 12, 2017), ECF No. 854 at 2 (granting motion to renew preliminary injunction because "[t]he evidence further shows that a Court order will be necessary to ensure that the same constitutional violations do not recur in 2018"); *Robinson* v. *Labrador*, 2024 WL 4953686, at *7 (D. Idaho Dec. 3, 2024) (granting a second preliminary injunction under the PLRA on the bases that the plaintiffs have "show[n] that such relief is still warranted" and complies with the PLRA's "needs-narrowness-intrusiveness requirement"); *Ross* v. *Johnson*, 2023 WL 3864995, at *2 (D. Nev. June 6, 2023) ("Because I find that the injunctive relief I previously ordered still comports with this Circuit's standards for the need, narrowness, and intrusiveness of injunctive relief under the PLRA, I hereby renew my prior

injunction."); *see also Alloway* v. *Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003) (affirming district court's renewal of preliminary injunction); *Mayweathers* v. *Newland*, 258 F.3d 930, 936 (9th Cir.2001) (finding that the district court did not violate the PLRA by reissuing an identical second injunction after the first injunction had expired).

The Fifth Circuit has implicitly blessed this procedure as not running afoul of the PLRA. *See Smith* v. *Edwards*, 88 F.4th 1119, 1127 (5th Cir. 2023) (contemplating possibility of preliminary injunctive relief extending beyond the initial 90-day grant under the PLRA); *Yates* v. *Collier*, 677 F. App'x 915, 918 (5th Cir. 2017) (same). And this Court itself has acknowledged that the PLRA permits successive orders for either preliminary or permanent injunctive relief, agreeing that any argument to the contrary "flies in the face of established precedent." TRO at 17–18 (citing *Mayweathers*, 258 F.3d at 936 ("Nothing in the [PLRA] limits the number of times a court may enter preliminary relief.")); *Melendez* v. *Sec'y, Fla. Dep't of Corr.*, 2022 WL 1124753, at *21 (11th Cir. Apr. 15, 2022) (affirming a second preliminary injunction after the first expired by operation of the PLRA)*; Monroe* v. *Bowman*, 122 F.4th 688, 697 (7th Cir. 2024) (holding that, under the PLRA, plaintiffs "may ask the district court for a new injunction, preliminary or permanent"). As discussed below, *infra* § II & III, given that the renewed relief Plaintiffs seek continues to satisfy FRCP 65(b) and the "NNI" (need, narrowness, and intrusiveness) requirements of the PLRA, the Court is empowered to renew the TRO in the form of an identical, successive injunction, notwithstanding the expiration of the initial grant of injunctive relief.

Moreover, this Court has jurisdiction to issue the requested renewal notwithstanding the pending appeal on the TRO. While a district court generally lacks jurisdiction to alter an injunction while an interlocutory appeal is pending, it may take actions to "maintain[] the status quo" during the pendency of that appeal. *See Sierra Club, Lone Star Chapter* v. *Cedar Point Oil Co. Inc.*, 73

F.3d 546, 578 (5th Cir. 1996). Renewing preliminary injunctive relief by issuing a successive petition for the same relief under the PLRA during the pendency of the appeal has therefore been upheld as within the district court's jurisdiction to maintain the status quo. *See Mayweathers*, 258 F.3d at 935–36 (holding that renewal of a preliminary injunction is appropriate under FRCP 62, even where appeal is pending on initial injunction); *Edmo* v. *Corizon*, *Inc*., 935 F.3d 757, 784 n.12 (9th Cir. 2019) (same); *cf. Smith*, 88 F.4th at 1125–26 (contemplating possibility of preliminary injunctive relief being extended beyond initial 90-day grant under PLRA while appeal is pending in order to avoid mootness); *Yates*, 677 Fed. App'x at 918 (same). That is precisely what Plaintiffs seek here. In sum, this Court faces no procedural or jurisdictional barriers to granting Plaintiffs' request for renewed injunctive relief, and doing so is necessary to prevent an imminent threat of harm to men forced to labor on the Farm Line.

## II.    PLAINTIFFS CONTINUE TO SATISFY THE REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF.

Under FRCP 65, preliminary injunctive relief is proper when the movant demonstrates (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent the injunction; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of the injunction will not disserve the public interest. TRO at 9 (citing *Janvey* v. *Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)). Just as the Court found each of these elements to be satisfied in the TRO, they remain satisfied now, given that none of the underlying key facts has changed.

As to the first element, Plaintiffs remain likely to succeed in proving that Defendants' Heat Alert and heat monitoring policies likely violate the Eighth Amendment, as well as the Americans

with Disabilities Act and Section 504 of the Rehabilitation Act.[6]  With respect to the Heat Alert

threshold, it remains a well-established, uncontroverted scientific fact, accepted by this Court and

by many others, that the risk of serious injury and death increases almost exponentially once the

heat index exceeds 88°F. *See* TRO at 21–25.  Similarly, the fact still remains that, as Dr. Vassallo

testified, monitoring the heat index with insufficient frequency fails to adequately protect the

health of men compelled to work on the Farm Line.  TRO at 23–24.  Also unchanged are the facts

that heat illness can arise very quickly and without warning, *see* TRO at 33–34 (citing ECF No.

70 at 40–42), and that the heat index at LSP continues to jump sharply in short intervals—in fact,

NWS heat index records submitted jointly by Plaintiffs and Defendants show that on July 14, 2025,

the heat index increased from 81°F at 7:53 a.m. to 92°F at 8:53 a.m., *see* ECF No. 279-1 at 6; *see*

*also* ECF No. 275-1 at 6 (NWS records showing that, on June 23, 2025, the heat index increased

from 83°F to 94°F within one hour); *id.* at 3 (NWS records showing that, on June 27, 2025, the

heat index increased from 85°F to 93°F within one hour); ECF No. 276-1 at 10 (NWS records

showing that on June 30, 2025, the heat index increased from 81°F to 95°F within one hour).[7]

Just as the science has not changed, the facts underlying the Court's finding of Defendants'

deliberate indifference have not changed.  As the Court explained, Defendants' choice to raise the

Heat Alert threshold in HCP8 and LSP Directive 13.067 from a heat index of 88°F to a heat index

of 91°F, despite having notice of the risks involved, evinces their deliberate indifference.  TRO at

---

[6]    Although not expressly referenced in the TRO, as Plaintiffs have established in their prior briefing, Defendants'
increased Heat Alert threshold and inadequate heat monitoring policies and practices have the effect of
discriminating against the Heat Sensitive Plaintiffs in violation of the ADA and Section 504.  ECF No. 201-1 at
21–24; ECF No. 224 at 11.

[7]    Given the widespread deficiencies in NWS reporting over the past few months, *see* ECF Nos. 268, 271, the full
extent of heat index increases is unknown and likely underrepresented by the data submitted to the Court in the
weekly heat letters.  Accordingly, Plaintiffs continue to urge the appointment of an expert pursuant to Federal
Rule of Evidence 706 to monitor the Wet Bulb Globe Temperature at LSP and to consult the Court regarding
Defendants' heat-related policies.  *See* ECF No. 201.

32–34 (citing *Cole* v. *Collier*, 2017 WL 3049540, at *40 (S.D. Tex. July 19, 2017); *Ball* v. *LeBlanc*, 792 F.3d 584, 594 (5th Cir. 2015); *Lewis* v. *Cain*, 701 F. Supp. 3d 361, 435–436 (M.D. La. 2023)). Indeed, over the course of these proceedings Defendants have continually been alerted to the dangerousness of their revised policies and their lack of scientific support. *See e.g.*, ECF No. 201-6 at 84:8–23, 87:1–88:2, 93:1–25, 148:3–151:6 (Defendants' 30(b)(6) designee, Dr. Lavespere, admitting that he is unable to identify anything in the agency guidance cited by Defendants that supports raising the Heat Alert threshold and agreeing that significant heat index increases can occur in short periods of time). And, yet Defendants' policies remain unchanged—as do their attitudes. Defendants have made clear that they will not adjust their Heat Alert threshold unless ordered by the Court to do so. *See* ECF No. 201-6 at 95:18–96:25 (Defendants' 30(b)(6) designee, Dr. Lavespere, testifying that the NWS chart upon which Defendants relied to increase the Heat Alert threshold does not account for the effect of direct sunlight and yet whether DOC would consider revising the Heat Alert threshold to account for direct sun would "depend[] on how this court case comes out.").

Likewise, Defendants remain on notice of the risks of infrequent heat index monitoring. In fact, Defendants have been jointly reporting dangerous, rapid increases in the heat index to the Court on a weekly basis but have refused to change their policy to account for that reality, showing that they remain deliberately indifferent to these known risks. TRO at 34; *see also Cole*, 2017 WL 3049540, at *40 ("[A] prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious.").

As to the remaining preliminary injunction factors, the facts relevant to this Court's analysis likewise have not changed, so the successive, identical relief sought remains proper. Men on the Farm Line will remain exposed to extreme heat indices when the TRO expires on August

21, and therefore will face irreparable harm to their health and safety if Defendants are permitted to revert to their Heat Alert and heat index monitoring policies. *See* TRO at 35–36; *see also Vazquez Barrera* v. *Wolf*, 455 F. Supp. 3d 330, 340 (S.D. Tex. 2020); *East* v. *Blue Cross & Blue Shield of La.*, 2014 WL 8332136, at *2 (M.D. La. Feb. 24, 2014)). Furthermore, the balance of interests still clearly favors Plaintiffs, in that "the public interest supports the protection of Eighth Amendment rights." TRO at 37 (quoting *Marlowe* v. *LeBlanc*, 2020 WL 1983915, at *2 (M.D. La. Apr. 27, 2020)). As the Court held, because "human health and safety is the most imperative interest"—above the "abstract injury" faced by the state in being denied the right to inflict life-threatening harm to incarcerated individuals without justification—the equities clearly favor issuance of the requested injunctive relief. TRO at 37.

### III. THE REQUESTED RENEWED INJUNCTION CONTINUES TO SATISFY THE PLRA'S "NEED," "NARROWNESS," AND "INTRUSIVENESS" REQUIREMENTS.

The injunctive relief granted in the TRO complied with the so-called NNI requirements of the PLRA. *See* 18 U.S.C. § 3626(a)(1)(A). Because Plaintiffs seek the exact same relief here, there is no doubt that the requested relief continues to comply with the NNI requirements.

### A. The Requested Relief Remains Necessary.

In the TRO, this Court held that Defendants' revised policy of issuing a Heat Alert only after the heat index exceeds 91°F is likely unconstitutional. TRO at 18–20. The gap between 88°F and 91°F, the Court concluded, was scientifically—and constitutionally—significant, because of the sharp, almost exponential increase in rates of heat-related illness, and even death, once the heat index hits 88°F and because other critical heat protections, such as bringing heat-sensitive people indoors and providing breaks at regular intervals, are mandatory only once a Heat Alert is called. TRO at 34–35; *see also* ECF No. 201-10 at 6. The Court therefore ordered injunctive relief requiring Defendants to issue a Heat Alert at the scientifically supported threshold of 88°F. TRO

at 38.  This relief was necessary to ensure that adequate mitigation measures are provided to men on the Farm Line once the heat index reaches the 88°F threshold that Dr. Vassallo and all of the credible evidence indicates is a critical threshold for human health.  *See supra* at 3–4.

Similarly, the Court concluded that Defendants' heat index monitoring policy is likely unconstitutional based on data showing sharp increases in the heat index over short periods and Defendants' admitted awareness of those "significant" swings.  TRO at 18–19.  To rectify that likely violation, the Court issued targeted injunctive relief, requiring Defendants to collect "more contemporaneous data" in "more frequent intervals" of every 30 minutes, because doing so was "necessary" to address the significant, rapid, and dangerous heat index increases and to ensure that Heat Alerts were called in a timely manner to allow them to have their intended effect.  TRO at 35.

Both of these elements of injunctive relief remain necessary today for the same reasons they were necessary when the TRO was issued.  *See Cole* v. *Collier,* 2018 WL 2766028, at *12 (S.D. Tex. June 8, 2018) (finding that the "relief afforded extends no further than necessary to correct the constitutional harms" where extreme heat conditions creating the substantial risk of serious injury or death "continue to exist").  It is necessary that Defendants be ordered to issue a Heat Alert when the heat index meets or exceeds 88°F in order to protect the health and safety of men on the Farm Line.  And it remains necessary to require Defendants to monitor the heat index on the Farm Line every 30 minutes because historical data evidences that heat indices at Angola will continue to jump from relatively safe levels to highly dangerous levels within a period of under an hour.  *See supra* at 10.  Just as the Court concluded that the relief granted in the TRO was necessary to remedy the identified harm, it remains necessary now.

13

### B.    The Requested Relief Remains Narrow.

The PLRA's narrowness requirement "requires a fit between the remedy's ends and the means chosen to accomplish those ends." *Brown* v. *Plata*, 563 U.S. 493, 531 (2011) (cleaned up). So long as relief is "proportional to the scope" of the constitutional violation, it is narrow under the PLRA, even if it has "collateral effects" or reaches far into the realm of prison operations. *Id.*; *see also Jones* v. *Gusman*, 296 F.R.D. 416, 429 (E.D. La. 2013).

The relief granted in the TRO was narrowly tailored because it is plainly proportional and limited to the likely constitutional violation—Defendants' Heat Alert and heat monitoring policies as applied to the Farm Line *only*. Indeed, in ruling on Defendants' motion to stay the preliminary injunctive relief that this Court granted Plaintiffs last summer, the Fifth Circuit confirmed that aspects of the injunction that were "targeted specifically to the Farm Line" satisfied the PLRA's NNI requirement for that reason. Ord. on Mot. for Stay at 6, *Voice of the Experienced et al* v. *Westcott et al*, No. 24-30420, ECF No. 41-1 (5th Cir. Jul. 12, 2024). So too, in the TRO, the constitutional findings and corresponding injunctive relief are limited to the Farm Line: the Court ordered Defendants to issue a Heat Alert "*on the Farm Line*" whenever the heat index meets or exceeds 88 degrees Fahrenheit and to monitor the heat index "*on the Farm Line*" every 30 minutes. TRO at 38 (emphasis added); *see also* TRO at 14 (emphasizing that relief granted applied only to the Farm Line). In this motion, Plaintiffs seek identical relief pertaining to the Farm Line only, specifically, an injunction requiring Defendants: (1) to issue a Heat Alert *on the Farm Line* when the heat index meets or exceeds 88°F; and (2) to monitor the heat index *on the Farm Line* every 30 minutes. This requested renewed relief is directly proportional to the likely violations of the Eighth Amendment identified by the Court, and, therefore, is sufficiently narrow in accordance with the PLRA.

14

### C.    The Requested Relief Remains the Least Intrusive Relief Necessary to Correct the Constitutional Harm.

While the PLRA requires injunctive relief to be the "least intrusive means necessary to correct [the] harm," courts recognize that even remedies that reach deeply into the operations of penal institutions are sometimes necessary to correct constitutional violations.  18 U.S.C. § 3626(a)(2); *Brown*, 563 U.S. at 545 (affirming order requiring California to reduce overcrowding in its prisons).  A district court, therefore, may "provide specific instructions to the [s]tate without running afoul of the PLRA."  *Ross* v. *Johnson*, 2023 WL 3864995, at *2 (D. Nev. June 6, 2023) (quoting *Armstrong* v. *Brown*, 768 F.3d 975, 986 (9th Cir. 2014)).

The TRO gave two simple directives, each of which applies only to the Farm Line: Defendants must (1) revert to their historic Heat Alert threshold of 88°F; and (2) increase monitoring of heat index data from once per hour to twice per hour.  Defendants presented no evidence that they would be unduly burdened by *reverting* to the 88°F Heat Alert threshold that was in place for over six years prior, nor by monitoring the heat index—which can be done in seconds by referencing a publicly available website—twice every hour when they are already doing so once each hour.  *See* ECF No. 257-4 at 179:20-181:14 (Dr. Lavespere testifying that LSP could change the Heat Alert and heat monitoring policies if they wanted to).  The limited, targeted relief encompassed by the TRO reflects the least intrusive means possible to address the likely unconstitutionality of Defendants' Heat Alert and heat monitoring policies.

For all the same reasons, the identical relief that Plaintiffs now seek is no more intrusive than necessary to correct the harm caused if Defendants are allowed to revert to their likely unconstitutional Heat Alert and heat monitoring policies.  The renewed relief will not impermissibly intrude or "micromanage" prison operations.  Far from it.  Requiring Defendants to issue a Heat Alert on the Farm Line at the 88°F threshold that they maintained for many years is

the least intrusive means to ensure compliance with the Constitution and is merely a return to the status quo. Nor does more frequent monitoring of the heat index on a publicly available website— which takes mere seconds and which Defendants are already doing—impose a particular burden on Defendants.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue renewed injunctive relief requiring Defendants, solely with respect to the Farm Line, to issue a Heat Alert whenever the heat index meets or exceeds 88°F and to monitor the heat index every 30 minutes.


Dated: July 28, 2025

**THE PROMISE OF JUSTICE INITIATIVE**

*/s/ Samantha Pourciau*
Samantha Pourciau, La. Bar No. 39808
Kara Crutcher (PHV) IL Bar No. 6337639
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
sbosalavage@defendla.org
kcrutcher@defendla.org

**RIGHTS BEHIND BARS**

*/s/ Lydia Wright*
Lydia Wright, La. Bar No. 37926416
Amaris Montes (PHV) MD Bar No. 2112150205
1800 M St. NW Fnt. 1 #33821
Washington, D.C. 20033

16

Tel: (202) 455-4399
lydia@rightsbehindbars.org
amaris@rightsbehindbars.org

**PAUL, WEISS, RIFKIND, WHARTON**
 **& GARRISON LLP**

*/s/ Jeremy A. Benjamin*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Michael McGregor (PHV) NY Bar No. 5510490
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo Sabater (PHV) NY Bar No. 5993217
Leah R. Weiser (PHV) NY Bar No. 6027601
Chizoba D. Wilkerson (PHV) NY Bar No. 5903943
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
mmcgregor@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
lweiser@paulweiss.com
cwilkerson@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*