IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **VOICE OF THE EXPERIENCED**, a membership organization on behalf of itself and its members; and **MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY, KENDRICK STEVENSON**, and **ALVIN WILLIAMS**, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**JAMES LEBLANC**, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; **TIMOTHY HOOPER**, in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**; and **PRISON ENTERPRISES, INC.**,<br><br>*Defendants*. | Civil Action No.: 3:23-cv-1304-BAJ-EWD |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR RENEWED INJUNCTIVE RELIEF**

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................................1

ARGUMENT ....................................................................................................................................2

I.      THE PLRA PERMITS SUCCESSIVE, RENEWED PRELIMINARY RELIEF. ...............2

          A.      The PLRA's Plain Language and the Weight of Precedent Allow Successive Injunctions. .........................................................................................2

          B.      *VOTE I* Does Not Address the Propriety of Successive Injunctions. ......................5

II.     THIS COURT RETAINS JURISDICTION TO MAINTAIN THE STATUS QUO. ..................................................................................................................................6

III.    PLAINTIFFS ARE ENTITLED TO RENEWED INJUNCTIVE RELIEF. .......................7

          A.      Plaintiffs Have Demonstrated Likelihood of Success on the Merits. .....................7

          B.      The Requested Relief Is Narrow, Necessary, and Minimally Intrusive. ...............10

CONCLUSION ................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alloway* v. *Hodge*,
   72 F. App'x 812 (10th Cir. 2003) ................................................................................3

*Banks* v. *Booth*,
   3 F.4th 445 (D.C. Cir. 2021) .......................................................................................4

*Barrett* v. *Maciol*,
   2022 WL 130878 (N.D.N.Y. Jan. 14, 2022) ...............................................................4

*Brown* v. *Plata*,
   563 U.S. 493 (2011) ....................................................................................................1

*Califano* v. *Yamasaki*,
   442 U.S. 682 (1979) ................................................................................................5, 7

*Cole* v. *Collier*,
   No. 4:14-cv-01698 (S.D. Tex. Oct. 12, 2017) .............................................................3

*Edmo* v. *Corizon, Inc.*,
   935 F.3d 757 (9th Cir. 2019) ......................................................................................3

*United States* v. *El-O-Pathic Pharmacy*,
   192 F.2d 62 (9th Cir. 1951) ........................................................................................7

*Farmer* v. *Brennan*,
   511 U.S. 825 (1994) ..................................................................................................10

*Gates* v. *Cook*,
   376 F.3d 323 (5th Cir. 2004) ......................................................................................3

*Georgia Advocacy Office* v. *Jackson*,
   4 F.4th 1200 (11th Cir. 2021) .....................................................................................5

*Hovey* v. *McDonald*,
   109 U.S. 150 (1883) ....................................................................................................7

*Martinez* v. *Reams*,
   2020 WL 8474726 (D. Colo. Dec. 4, 2020) ................................................................4

*Mayweathers* v. *Newland*
   258 F.3d 930 (9th Cir. 2001) ...........................................................................1, 3, 6, 7

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Melendez* v. *Sec'y, Fla. Dep't of Corr.*,
    2022 WL 1124753 (11th Cir. Apr. 15, 2022) ................................................................. 5, 6, 7

*Miller* v. *French*,
    530 U.S. 327 (2000) ..................................................................................................... 7

*Monroe* v. *Bowman*,
    122 F.4th 688, 697 (7th Cir. 2024) ............................................................................... 3

*Robinson* v. *Labrador*,
    2024 WL 4953686 (D. Idaho Dec. 3, 2024) ................................................................. 4

*Ross* v. *Johnson*,
    2023 WL 3864995 (D. Nev. June 6, 2023) ................................................................... 3

*Smith* v. *Edwards*,
    88 F.4th 1119 (5th Cir. 2023) ....................................................................................... 4

*Tucker* v. *Gaddis*,
    40 F.4th 289 (5th Cir. 2022) ......................................................................................... 10

*Voice of the Experienced* v. *Westcott*,
    2025 WL 2222990 (5th Cir. Aug. 5, 2025) ................................................................... 2, 6

*Yates* v. *Collier*,
    677 F. App'x 915 (5th Cir. 2017) ................................................................................. 4

**Statutes**

18 U.S.C. § 3626 ............................................................................................................. *passim*

**Other Authorities**

U.S. Const. Amend. VIII ................................................................................................. 1, 2, 3

Fed. R. Civ. P. 62 ............................................................................................................ 6, 7

**INTRODUCTION**

Defendants' erroneous reading of the PLRA's limitations on preliminary relief would facilitate a complete end run around the Constitution, depriving the Court of its equitable authority to prevent life-threatening Eighth Amendment violations from occurring after 90 days have passed. Defendants' playbook is simple: once a district court has identified an Eighth Amendment violation and issued preliminary relief, Defendants notice an appeal. That appeal, as Defendants tell it, strips the district court of jurisdiction to renew any preliminary relief once the PLRA's 90-day clock has run. Defendants offer no explanation as to how, under their logic, a district court would have jurisdiction to make relief "final" under Section 3626(a)(2) while lacking jurisdiction to take the more limited step of issuing a successive 90-day (or less) injunction to temporarily maintain the status quo. But in their view, Defendants are obligated to comply with the Constitution for only 90 days, and their right to appeal amounts to a unilateral power to strip this Court of its authority to maintain the status quo and prevent likely violations of the Eighth Amendment that threaten the health and lives of people who are incarcerated. Moreover, as the parties agree, the expiration of that initial injunction without renewal or extension would moot any pending appeal, leaving the litigants and this Court without substantive guidance from the appellate court. As a result, Plaintiffs would have no recourse but to seek a new preliminary injunction. The cycle of temporary relief, appeal, expiration, and mootness would never end.

Nothing in the PLRA requires that absurd, perverse, and wasteful result. In passing the PLRA, "Congress did not leave [incarcerated people] without a remedy for violations of their constitutional rights." *Brown* v. *Plata*, 563 U.S. 493, 526 (2011). As this Court has already recognized, the plain text of the statute does not limit the number of successive preliminary injunctions that may issue. ECF No. 253 at 17–18. And the Ninth Circuit, in its widely cited decision, *Mayweathers* v. *Newland*, has squarely held that renewed injunctions are permissible,

maintain the status quo on the ground pending appeal, and protect the appellate court's Article III jurisdiction. 258 F.3d 930, 936 (9th Cir. 2001). The Fifth Circuit's recent decision in *Voice of the Experienced* v. *Westcott*, No. 24-30420 ("*VOTE I*") does not alter the analysis, and Defendants' attempt to read into that decision a holding that the *VOTE I* panel did not make and that the appeal did not present is misleading at best. *VOTE I* concerned only whether the first preliminary injunction entered in this litigation was moot and should be vacated; it did not concern or address the statutory validity of successive injunctions nor the impact of an appeal on this Court's jurisdiction to grant such a renewal.

At bottom, the issue before this Court is simple: so long as the constitutional and statutory conditions for granting preliminary relief remain present, a renewed injunction is warranted. Those conditions are readily met here. As demonstrated by Defendants' challenge to the validity of the present injunction, nothing but this Court's TRO currently protects men assigned to Angola's Farm Line from being forced to labor in dangerous heat without constitutionally adequate protections. The preliminary relief Plaintiffs seek remains necessary to cure the Eighth Amendment violation, narrowly drawn, and no more intrusive than required to remedy the constitutional harm. *See* 18 U.S.C. § 3626(a)(2). Accordingly, Plaintiffs' motion to renew the preliminary relief and maintain the status quo should be granted, and a new injunction, to begin on August 22, 2025, entered.

## ARGUMENT

I. **THE PLRA PERMITS SUCCESSIVE, RENEWED PRELIMINARY RELIEF.**

   A. **The PLRA's Plain Language and the Weight of Precedent Allow Successive Injunctions.**

Defendants argue that the PLRA prohibits the relief Plaintiffs seek, but Section 3626(a)(2) contains no such prohibition. Indeed, as Defendants have conceded, ECF No. 264 at 2, this Court

2

has already ruled that the PLRA permits successive preliminary injunctions. ECF 253 at 17–18.

The Ninth and Seventh circuits have reached the same conclusion. Nearly a quarter-century ago, in *Mayweathers* v. *Newland*, the Ninth Circuit held that "[n]othing in the [PLRA] limits the number of times a court may enter preliminary relief. If anything, the provision simply imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted." 258 F.3d at 936; *see also Edmo* v. *Corizon, Inc.*, 935 F.3d 757, 783 n.12 (9th Cir. 2019) (affirming where the "district court, incorporating its previous findings, renewed the injunction" entered under the PLRA). Likewise, in *Monroe* v. *Bowman*, the Seventh Circuit confronted a collection of preliminary orders that had passed the 90-day limit. 122 F.4th 688, 697 (7th Cir. 2024). But as the court explained, its "enforcement" of that limit through dismissal of the appeal did not "mean that the case is over." *Id.* Rather, if "plaintiffs believe . . . that defendants have been continuing to violate their Eighth Amendment rights, they may ask the district court for a new injunction, preliminary or permanent." *Id.* (citing *Mayweathers*, 258 F.3d at 936); *see also Alloway* v. *Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003) (unpublished) (endorsing *Mayweathers'* approach).

Although the Fifth Circuit has not squarely addressed the question of successive temporary relief under the PLRA, both its precedents and the practice of district courts within the circuit compel the conclusion that such renewals are permissible. *See, e.g.*, *Gates* v. *Cook*, 376 F.3d 323, 344 (5th Cir. 2004) (affirming three injunctions); *see also* Mem. and Ord. at 2, *Cole* v. *Collier*, No. 4:14-cv-01698 (S.D. Tex. Oct. 12, 2017), ECF No. 854 (issuing identical, successive injunctive relief to reduce dangerously hot conditions in Texas prisons).

District courts nationwide have reached the same result. *See, e.g.*, *Ross* v. *Johnson*, 2023 WL 3864995, at *2 (D. Nev. June 6, 2023) ("Because I find that the injunctive relief I previously ordered still comports with this Circuit's standards for the need, narrowness, and intrusiveness of

3

injunctive relief under the PLRA, I hereby renew my prior injunction for another ninety days."); *Robinson* v. *Labrador*, 2024 WL 4953686, at *4, 7 (D. Idaho Dec. 3, 2024) ("[T]he Court finds that the PLRA does not preclude the issuance of multiple subsequent injunctions, each to last 90 days, if Plaintiffs can continue to prove that preliminary relief is warranted."); *Martinez* v. *Reams*, 2020 WL 8474726, at *1 (D. Colo. Dec. 4, 2020) (holding that renewing a "preliminary injunction is appropriate and consistent with the requirements of the PLRA" because the statute does not "limit[] the number of times a court may enter preliminary relief") (internal quotations omitted); *Barrett* v. *Maciol*, 2022 WL 130878, at *9 n.3 (N.D.N.Y. Jan. 14, 2022) (permitting Plaintiffs to move to renew a preliminary injunction for an additional 90 days or stipulate with defendants "to keep the preliminary injunction in place pending final resolution of this case").

Rather than contend with this great weight of precedent and practice, Defendants recast Plaintiffs' request for a new, successive injunction into a request for an "'extension' of the May 23 preliminary injunction order." Opp. at 2. And further staining credulity, they cite case law—inapplicable here—concerning "final" orders under the PLRA. *See, e.g.*, *Banks* v. *Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021) (discussing final orders, not successive preliminary injunctions entered under Section 3626(a)(2)).[1] But this is a strawman. Plaintiffs do not seek a "final" order or ask this Court "to complete or perfect" the May 23 order. *See* Opp. at 3 (quoting *Georgia Advocacy Office* v. *Jackson*, 4 F.4th 1200, 1212 (11th Cir. 2021), *vacated*, 33 F.4th 1325 (2022)). Rather, Plaintiffs seek a new, successive injunction because preliminary relief is still warranted. And because Plaintiffs do not seek to extend the current injunction beyond 90 days, this Court need not

---

[1] Defendants' attempt to contort *Smith* v. *Edwards*, 88 F.4th 1119, 1127 (5th Cir. 2023) and *Yates* v. *Collier*, 677 F. App'x 915, 918 (5th Cir. 2017) to support their interpretation of Section 3626(a)(2) falls flat. *See* Opp. at 5. In holding that the *Smith* and *Yates* plaintiffs could have taken actions to ensure that their respective preliminary injunctions did not expire and become moot—which is what Plaintiffs seek to do here—the Fifth Circuit in no way suggested that asking the district court to make the relief "final" was the only way to do so.

"make[] the findings required under subsection (a)(1) for the entry of prospective relief and make[] the order final."[2]  18 U.S.C. § 3626(a)(2).

Defendants' reliance on the Eleventh Circuit's vacated opinion in *Georgia Advocacy Office* v. *Jackson* is particularly misguided.  Opp. at 2–3.  There, the court considered whether an existing injunction had properly been made "final" under Section 3626(a)(2). *Jackson*, 4 F.4th at 1211.  In dicta, the court articulated a "belie[f]" that "the entry of a permanent injunction is necessary to prevent a preliminary injunction from expiring." *Id.*  But nothing in *Jackson* reaches the narrow issue presented here:  whether successive injunctions issued under Section 3626(a)(2) are permissible.  In any event, a panel of the Eleventh Circuit has subsequently affirmed an overlapping successive preliminary injunction entered under Section 3626(a)(2). *See Melendez* v. *Sec'y, Fla. Dep't of Corr.*, 2022 WL 1124753, at *21 (11th Cir. Apr. 15, 2022).

The PLRA simply does not permit the absurd reading that Defendants advance here. "Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano* v. *Yamasaki*, 442 U.S. 682, 705 (1979).  That the statute expressly permits extension of an existing injunction under certain circumstances, i.e., by making an injunction final, does not "clearly command" destruction of district courts' authority to issue separate, successive preliminary injunctions.

      B.     *VOTE I* **Does Not Address the Propriety of Successive Injunctions.**

Defendants next mischaracterize the *VOTE I* decision as somehow establishing that the Fifth Circuit has "squarely reject[ed]" the availability of successive injunctions. *See* Opp. at 4–5.

---

[2]  Defendants' surplusage argument, Opp. at 3, is misguided for the same reasons.  Because Plaintiffs do not seek to extend the current injunction beyond 90 days, this Court need not "make[] the findings required under subsection (a)(1) for the entry of prospective relief and make[] the order final."  18 U.S.C. § 3626(a)(2). Accordingly, whether that statutory directive can be read to require something less than a permanent injunction without rendering "final[ity]" redundant of "the findings required under subsection (a)(1)" is not at issue. *Id.*

5

There is no credible reading of *VOTE I* that reaches such a holding. *VOTE I* concerned two issues, neither of which are present here: (1) whether Defendants' appeal from the July 2024 injunction was moot, and (2) whether that injunction should be vacated. *See VOTE I*, 2025 WL 2222990, at *1 (5th Cir. Aug. 5, 2025). Answering both in the affirmative, the Fifth Circuit explained that Plaintiffs "allowed the July 2 preliminary injunction to expire and did not seek to make it permanent under 18 U.S.C. § 3626(a)(2)." *Id.* at *3. True—and Plaintiffs likewise do not seek to do so now. In concluding that vacatur was required, the panel reasoned that "defendants' appeal had been 'frustrated by the vagaries of circumstance' because of the preliminary injunction's automatic expiration where plaintiffs had not sought to make it permanent." *Id.* (quoting *Smith*, 88 F.4th at 1127). Nothing in *VOTE I* forecloses this new, successive injunction.

## II.    THIS COURT RETAINS JURISDICTION TO MAINTAIN THE STATUS QUO.

The pending appeal of the TRO in no way deprives this Court of jurisdiction to grant a new injunction. As Defendants concede, district courts may take actions to "maintain[] the status quo," even where an injunction is pending interlocutory appeal. Opp. at 6 (quoting *Sierra Club, Lone Star Chapter* v. *Cedar Point Oil Co. Inc.*, 73 F.3d 546, 578 (5th Cir. 1996)); *see also* Fed. R. Civ. P. 62(d) ("While an appeal is pending from an interlocutory order [that grants] an injunction, the court may suspend, modify, restore, or grant an injunction"). That is all that is contemplated here.

The PLRA does not change this basic principle. In fact, the procedural circumstances here are identical to *Mayweathers*, in which the Ninth Circuit held that the district court had jurisdiction to enter a second, identical preliminary injunction under the PLRA while the first was pending appeal. 258 F.3d at 935–36. Similarly, in *Melendez*, the Eleventh Circuit did not question the jurisdiction of the district court to grant a second, largely overlapping preliminary injunction while the first injunction was under appellate review. *See* 2022 WL 1124753, at *9–21. As in *Mayweathers* and *Melendez*, the renewed injunctive relief Plaintiffs seek here is necessary to

6

maintain the status quo, and the district court retains jurisdiction to grant it.[3]

Defendants' argument that the PLRA "displace[s] any inherent equitable powers (or authority under Rule 62(c)) that this Court might otherwise have to enter successive, identical preliminary injunctions" is meritless. Opp. at 6. *First*, Defendants' attempt to locate this Court's authority to maintain the status quo during the pendency of appeal as solely rooted in procedural rules is misguided, as Rule 62(d) merely codified a "long established right of the trial court," flowing from its inherent equitable powers. *See United States* v. *El-O-Pathic Pharmacy*, 192 F.2d 62, 79 (9th Cir. 1951); *Hovey* v. *McDonald*, 109 U.S. 150, 161 (1883). *Second*, "federal courts [only lose] their equitable power to issue injunctions in suits over which they have jurisdiction" where Congress provides "the clearest command." *Califano*, 442 U.S. at 705. Nothing in Section 3626(a)(2) provides any such "unmistakable" command. *Cf. Miller* v. *French*, 530 U.S. 327, 340–41 (2000); *see* 18 U.S.C. § 3626(a)(2) ("In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief.").

### III.    PLAINTIFFS ARE ENTITLED TO RENEWED INJUNCTIVE RELIEF.

#### A.    Plaintiffs Have Demonstrated Likelihood of Success on the Merits.

Where, as here, Plaintiffs face an impending risk of irreparable harm absent judicial intervention, renewal of an injunction is both permissible and appropriate. *Mayweathers*, 258 F.3d at 936 (acknowledging that the PLRA "imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted"). Defendants do not dispute that absent a renewed injunction, they

---

[3] Issuing the second injunction would only further streamline the proceedings in this case, as it would advance resolution of certain of Plaintiffs' claims by allowing for appellate review. In both *Mayweathers* and *Melendez*, Defendants appealed the renewed motions and the Ninth Circuit and Eleventh Circuits, respectively, consolidated the appeals, issued a single opinion addressing both orders, and were able to address the merits of Plaintiffs' claims. *Mayweathers*, 258 F.3d at 934; *Melendez*, 2022 WL 1124753, at *1, *7.

7

will revert to the inadequate Heat Alert and heat monitoring practices currently promulgated in LSP's policies. As demonstrated by copious, highly credible record evidence, those policies would expose men on the Farm Line to constitutionally unacceptable risk.

Defendants likewise have no answer for the global scientific consensus that the risk of morbidity and mortality from heat-related illness increases sharply at heat indices in the mid-80s and higher. *See* ECF No. 201-3 ¶¶ 14–15 nn.7–9 (citing Petitti, Basu, Skarha, Davis studies). They do not dispute that OSHA warns that heat-related deaths of outdoor workers have occurred at heat indices in the mid-80s. ECF No. 201-22 at 5. Defendants leave unaddressed that the NWS chart they purportedly relied upon is for shady locations only and recommends "extreme caution" be taken when the heat index reaches 90°F in the shade. ECF No. 201-23. And, Defendants make no attempt to rebut the NWS data showing that significant increases in the heat index occur in periods of less than one hour. *See* Br. at 4–5, 10. Thus, there is no genuine dispute that men on the Farm Line face a substantial risk of serious harm under Defendants' heat pathology policies.

Overwhelming record evidence demonstrates that Defendants have long known of and disregarded the risks of serious harm and even death at heat indices at or above 88°F:

- On May 13, 2024, Plaintiffs filed Dr. Susi Vassallo's first declaration explaining that "[s]tudies have shown that the incidence of heat-related deaths increases sharply starting at temperatures or heat index numbers in the mid to high 80s." ECF No. 201-5 ¶ 67.

- On July 2, 2024, this Court's first grant of injunctive relief discussed Dr. Vassallo's testimony regarding the sharp increase in the "risk for heat stroke and heat-related disorders" when the heat index exceeds 88°F, and NIOSH guidance stating that, at any heat index higher than 88°F, "extreme caution" is appropriate because "the risk of heat injury is high in this situation." ECF No. 70 at 40–41, 47.

- On September 20, 2024, the deposition of Defendants' expert Dr. Carl Keldie demonstrated that he was unqualified and unable to justify with any scientific evidence or other support the increased Heat Alert threshold. *See* ECF No. 120-19 at 225:22–228:24.

- On September 30, 2024, Plaintiffs filed a supplemental declaration of Dr. Vassallo in which she reiterated that men forced to work on the Farm Line "are at substantial risk of serious harm due to their prolonged exposure to heat indices above 88°F." ECF No. 120-61 at ¶ 1.

8

- On February 12, 2025, Defendants' 30(b)(6) witness, Dr. Randy Lavespere, could identify no evidence in support of the 91°F threshold, was not aware of *any* agency guidance Defendants had relied on other than a chart on the NWS website, and acknowledged that the chart is only applicable to shady locations, *see* ECF No. 201-6 at 74:19–76:12, 94:1–18; *see also* ECF No. 201-23 (NWS chart cited by Defendants).

- On March 26, 2025, Dr. Vassallo submitted another declaration citing the extensive body of scientific literature demonstrating that the risk of heat-related illness and death "increases sharply" in the mid-to-high 80s, and that any increase beyond 88°F poses an even higher risk. ECF No. 201-3 ¶¶ 14–15.

- On April 23, 2025, at the evidentiary hearing held before this Court, Dr. Vassallo again described multiple scientific studies demonstrating that rates of heat-related illness and death increase almost exponentially at heat indices at or above 88°F. ECF No. 250-3 at 57:5–58:22; 59:20–61:14. At the same hearing, Dr. Keldie again confirmed his lack of relevant expertise and credibility. ECF No. 257-5 at 90:22–93:17, 93:24–95:19.

- Finally, on May 23, 2025, the Court issued its Order granting the current injunction. *See* ECF No. 253. There, the Court described scientific studies and agency guidance that did not support or "outright contradict[ed]" Dr. Keldie's opinions and Defendants policy. *Id.* at 26–30.

Defendants are likewise deliberately indifferent to the risks of infrequent heat monitoring:

- At his 30(b)(6) deposition in February 2025, Plaintiffs identified for Dr. Lavespere, specific dates on which NWS data that the parties had jointly submitted to the Court, indicate rapid and dangerous increases in the heat index. ECF No. 201-6 at 146:8–150:11. That data show dangerous heat index increases can and do occur in the span of less than an hour.

- This summer too, Defendants have jointly submitted NWS data to the Court showing heat indices shifting from below the Heat Alert threshold to at or above that threshold in less than one hour.[4] *See, e.g.*, ECF Nos. 283; 283-1 at 9; ECF Nos. 285; 285-1 at 9. Defendants cannot claim subjective ignorance of data they themselves have provided the Court.

Despite the overwhelming risks associated with their Heat Alert and heat monitoring policies, Defendants have refused to revise those policies to protect men on the Farm Line.

Defendants' recourse to the purportedly "sweeping changes" voluntarily undertaken in response to this litigation is of no import. Opp. at 10. Although Defendants may "prov[e], during the litigation, that they [a]re no longer unreasonably disregarding an objectively intolerable risk of

---

[4] On July 27, 2025, for example, the heat index reported in the parties' joint letter jumped from 81°F to 92°F in only 40 minutes, from 8:15 a.m. to 8:55 a.m., with the heat index climbing even higher to 96°F another 20 minutes later at 9:15 a.m. *See* ECF No. 283-1 at 3.

9

harm," they must also show that "they would not revert to their obduracy upon cessation of the litigation." *Farmer* v. *Brennan*, 511 U.S. 825, 846 n.9 (1994); *Tucker* v. *Gaddis*, 40 F.4th 289, 291 (5th Cir. 2022) (prison's policy change did not moot plaintiff's claims, where not "absolutely clear that the allegedly wrongful behavior could not reasonable be expected to recur") (quoting *City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982)). Far from providing such assurance, Defendants continue to insist that their Heat Alert and heat monitoring policies pose no risk to health and safety. Without this Court's intervention, everyone, and particularly those people most at risk, will be subject to unacceptable and unconstitutional risk.[5]

### B. The Requested Relief Is Narrow, Necessary, and Minimally Intrusive.

In their opening brief, Plaintiffs argue in detail why the new, successive injunction required here satisfies Section 3626(a)(2)'s NNI requirements. *See* Br. at 12–16. Defendants fail to address, much less meaningfully contest, any of those arguments.[6] *See* Opp. at 7–10. That is because there is no credible argument that the requested relief does not comport with the PLRA.

### CONCLUSION

For the foregoing reasons and those set forth in their opening brief, Plaintiffs respectfully request that the Court grant their motion and enter new injunctive relief to begin on August 22, 2025.

Dated: August 13, 2025

                                          **THE PROMISE OF JUSTICE INITIATIVE**

                                          */s/ Samantha Pourciau*
                                          Samantha Pourciau, La. Bar No. 39808

---

[5] This is particularly true because Defendants are not purporting to voluntarily bring inside men with Heat Precaution Duty Statuses—the individuals that they themselves acknowledge are most at-risk—when the heat index crosses the 88°F threshold.

[6] Bewilderingly, Defendants continue to cite Section 3626(a)(1)(a) as providing the relevant statutory requirements for preliminary injunctive relief under the PLRA. *See* Opp. at 10. The requirements for "preliminary relief" are set out in Section 3626(a)(2). Such relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

10

Kara Crutcher (PHV) IL Bar No. 6337639
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
sbosalavage@defendla.org
kcrutcher@defendla.org

**RIGHTS BEHIND BARS**

*/s/ Lydia Wright*
Lydia Wright, La. Bar No. 37926416
Amaris Montes (PHV) MD Bar No. 2112150205
1800 M Street NW Fnt. 1 #33821
Washington, D.C. 20033
Tel: (202) 455-4399
lydia@rightsbehindbars.org
amaris@rightsbehindbars.org

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Jeremy A. Benjamin*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Michael McGregor (PHV) NY Bar No. 5510490
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo Sabater (PHV) NY Bar No. 5993217
Leah R. Weiser (PHV) NY Bar No. 6027601
Chizoba D. Wilkerson (PHV) NY Bar No. 5903943
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
mmcgregor@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
lweiser@paulweiss.com
cwilkerson@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*