UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **VOICE OF THE EXPERIENCED**, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**JAMES LEBLANC**, *et al.*,<br><br>*Defendants*. | Civil Action No. 3:23-cv-1304-BAJ-EWD |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE FROM TRIAL THE TESTIMONY OF DR. CARL KELDIE

Dr. Keldie's testimony is not admissible because Defendants cannot establish (1) that Dr. Keldie is a qualified expert; (2) that his proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; or (3) that his testimony is "sufficiently tied to the facts of the case" so that it "fit[s]" the dispute and will assist the trier of fact. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).

Defendants lodge no serious defense of their expert. Instead, they suggest that Dr. Keldie will surely do better next time. But even his latest affidavit—a threadbare, three-page document *again* parroting Defendants' position without a shred of required analysis, reasoning, explanation, application of scientific or medical principles, or articulation of any perceivable methodology—demonstrates that Dr. Keldie cannot provide admissible opinion testimony on any relevant issue.[1]

---

[1] *See* Exhibit A: Supplemental Affidavit (November 21, 2025).

1

For the reasons that follow and as set forth in Plaintiffs' Motion *in Limine*, ECF 336 (the "Motion"), Dr. Keldie should not be permitted to testify at trial.

**A. Dr. Keldie's latest affidavit only confirms the inadmissibility of his testimony.**

Under Federal Rule of Civil Procedure 26, an expert report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B). In particular, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998); *see also Denley v. Hartford Ins. Co. of Midwest*, No. CIV.A. 07-4015, 2008 WL 2951926, at *4-5 (E.D. La. July 29, 2008) (finding expert report "seriously flawed" in failing to explain the "how" and "why" for its conclusion); *Campbell v. McMillin*, 83 F. Supp. 2d 761, 764-65 (S.D. Miss. 2000) (expert reports must be detailed and complete). When an expert "fail[s] to provide sufficiently detailed information regarding the bases of [the expert's] opinion," the opinion testimony should be excluded. *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 482 (S.D.N.Y. 2000).

Dr. Keldie's latest affidavit is plainly deficient in violation of Rule 26(a)(2)(B). To start, Dr. Keldie states that he visited LSP on October 29, 2025 "to visualize the structures that had been or were currently being built to serve as rest areas" for the Farm Line. Ex. A ¶¶ 2-3.[2] While at LSP, Dr. Keldie "observed three completed structures," *id*. ¶ 4, and was told by "LSP employees" about plans to build additional units and add "retractable shade canopies," *id.* ¶ 5. Later, Dr. Keldie was "provided photographs of retractable shade canopies that were installed on the pavilions." *Id*. ¶ 6. Finally, Dr. Keldie avers that he "understand[s]" that "LSP is also implementing a weather

---

[2] Though Dr. Keldie does not acknowledge the weather that day, the National Weather Service reported overcast conditions and a heat index below 88°F. *See* ECF 333; ECF 331-1 at 4-5.

monitoring system from Perry Weather," and that "the system is currently being built and will be delivered and installed within the next month." *Id.* ¶ 8. Based on this recitation, Dr. Keldie concludes that LSP "continue[s] to abate any risk of harm." *Id.* at 3.

Here, as before, Dr. Keldie impermissibly recites Defendants' position (that LSP does nothing wrong) under the guise of expert opinion. And without any perceivable analysis or explanation, it is impossible to determine "how" or "why" he reached this conclusion. *See Denley*, 2008 WL 2951926, at *4-5. Compounding the problem, Dr. Keldie's opinion that LSP "employs adequate risk mitigation measures," Ex. A. ¶ 9, is based on LSP's purported "plans" to build structures, install canopies, and implement a "weather monitoring system" that he never bothers to define or explain. That opinion is untethered to any matter requiring scientific, technical, or specialized knowledge, let alone one within the scope of Dr. Keldie's limited expertise in correctional care medicine. *See* Fed. R. Evid.702(a); *see also* ECF 336-3 (Transcript) at 53:8-22.

The remainder of Dr. Keldie's latest affidavit fares no better. In six paragraphs spanning less than one page, Dr. Keldie claims he reviewed 84 "self-declared emergencies made by offenders in any of the out-camps from October 2024 and May through October 2025." Ex. A ¶¶ 11-16. Without explanation, analysis, reasoning, articulation of methodology, application of scientific principle, or even basic record citation, Dr. Keldie reaches the following conclusions:

- "The documentation [apparently, accompanying 84 SDEs] was more than adequate and provided a sound basis for clinical review," and "reflected a caring and protective approach." *Id.* ¶ 13.

- "There was no evidence of bias, priming or flippant behavior on the part of clinical staff." *Id.*

- "There was appropriate use of telephonic consultation and or [*sic*] referral to practitioners at the ATU." *Id.*

- "[T]here appeared to be appropriate responses by security staff and by nursing triage staff with appropriate disposition." *Id.* ¶ 14.

3

- "No event consistent with significant exertional heat illness (heat exhaustion, heat injury or heat stroke) was observed. There was not a single example of an elevated temperature in the 84 SDEs." *Id*.

- "[M]any offenders declare emergencies" for reasons "which are not emergent." *Id.* ¶ 15.

- "[M]edical personnel adequately responded to and triaged the complaints." *Id.*

- People incarcerated at LSP have the "ability to have nursing staff check their duty statuses through this process." *Id.* ¶ 16.

As Dr. Keldie's testimony and submissions have consistently demonstrated,[3] his bare recitation of Defendants' position offers nothing of value to the factfinder. *See Wright v. Honeywell Int'l Inc.*, No. CV 22-00928-BAJ-SDJ, 2024 WL 2963460, at *7 (M.D. La. June 12, 2024), *rev'd on other grounds*, 148 F.4th 779 (5th Cir. 2025) ("The purpose of an expert witness is to 'help the trier of fact to understand the evidence or to determine a fact in issue' based on the expert's specialized knowledge and application of reliable principles and methods, rather than to simply parrot [the party's] claims.") (internal citation omitted). Because his opinion fails to meet the requirements of the Federal Rules of Evidence and the Federal Rules of Civil Procedure, Dr. Keldie's opinion testimony should be excluded. *See* Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2)(B).[4]

**B. Defendants cannot establish that Dr. Keldie's testimony satisfies Rule 702.**

Defendants' belabored defense of Dr. Keldie's qualifications misses the mark. *See* ECF 348 at 7-14. They claim—for the first time—that Dr. Keldie is an expert in "correctional medical care,

---

[3] *See* ECF 201-20 (Affidavit); ECF 336-2 (Deposition); ECF 336-3 (Transcript of 4/24/2025 Hearing); ECF 336-4 (Second Affidavit); Ex. A (Third Affidavit).

[4] To the extent Defendants intend Dr. Keldie's latest affidavit to "fix" the myriad problems in his initial reports, that use is likewise impermissible. *See Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.").

4

heat pathology, and pharmacotherapy." ECF 348 at 14. Defendants never define "pharmacotherapy," explain its relevance to this litigation, or identify any way in which Dr. Keldie is qualified to provide expert testimony in that field.

As for "heat pathology," Defendants complain that Dr. Keldie was unable to "demonstrate his expertise" at the April 2025 hearing, because the Court imposed "time constraints" on expert testimony. *Id.* at 11. But Defendants identify no abuse of this Court's broad discretion to manage its docket and control the course of litigation. In any event, this Court has already considered Dr. Keldie's qualifications and determined that he lacks the requisite expertise to opine as to thermoregulation, heat-related illness, heat-related medical care, Angola's heat precaution protocol, or the appropriate heat index threshold for the Farm Line. *See* ECF 253 at 25; ECF 336-3 (Transcript) at 63:2-12. This was clear long before Dr. Keldie took the stand on April 24, 2025. *See* ECF 336-1 (Memorandum) at 2, 4-7 (describing Dr. Keldie's lack of education, skill, training, research, or experience in heat pathology); *id.* at 5 (discussing Dr. Keldie's admission that his purported "expertise in exertional heat illness" was developed during and due to his engagement in this litigation); *id.* at 6-7 (discussing Dr. Keldie's invented and unreliable methodology).

Nothing has changed. Certainly, Dr. Keldie's November 2025 conference presentation with Dr. Reynolds-Barnes about a topic within *her* field of expertise (pharmacy) does not establish *his* expertise to offer opinion testimony on a subject foreign to his clinical practice. *See Newton v. Roche Lab'ys, Inc.*, 243 F. Supp. 2d 672, 678-79 (W.D. Tex. 2002) (excluding testimony where purported expert's lack of qualifications, methodology, or independent research showed he was merely an "expert for hire" and thus unreliable); *see also* ECF 336-1 at 5 (discussing Dr. Keldie's admission that his purported "expertise in exertional heat illness" was developed during and due to his engagement in this litigation).

5

Defendants' remaining arguments are equally without merit. As Plaintiffs have discussed, Dr. Keldie's opinions are speculative, subjective, and without any indicia of reliability that would render them admissible under Rule 702. *See* ECF 336-1 at 7-13. Untethered to any cognizable methodology, analysis, explanation, or scientific principle, Dr. Keldie's opinion testimony cannot possibly help the Court assess any fact at issue. *Id.* at 14; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Finally, Plaintiffs' Motion is not untimely. This matter comes before the Court on a motion *in limine* filed 85 days before trial, *see* ECF 329 (scheduling order), and eleven days before Dr. Keldie issued his second supplemental affidavit. In any case, there are no deadlines in the operative scheduling order for this type of motion. *Id.*

## CONCLUSION

Defendants have had ample and fair opportunity to establish that Dr. Keldie's proposed opinion testimony is admissible. Having failed to do so, Dr. Keldie should not be permitted to testify at trial.

Respectfully submitted this 11th day of December, 2025.

**RIGHTS BEHIND BARS**

*/s/ Lydia Wright*
Lydia Wright, La. Bar No. 37926
Amaris Montes (PHV) MD Bar No. 2112150205
1800 M St. NW Fnt. 1 #33821
Washington, D.C. 20033
Tel: (202) 455-4399
lydia@rightsbehindbars.org
amaris@rightsbehindbars.org

6

**THE PROMISE OF JUSTICE INITIATIVE**

*/s/ Samantha Pourciau*
Samantha Pourciau, La. Bar No. 39808
Kara Crutcher (PHV) IL Bar No. 6337639
Michael Allen, La. Bar No. 41142
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
sbosalavage@defendla.org
kcrutcher@defendla.org
mallen@defendla.org


**PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP**

*/s/ Jeremy Benjamin*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo Sabater (PHV) NY Bar No. 5993217
Leah R. Weiser (PHV) NY Bar No. 6027601
Chizoba D. Wilkerson (PHV) NY Bar No. 5903943
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
lweiser@paulweiss.com
cwilkerson@paulweiss.com

*Attorneys for Plaintiffs and the Proposed Classes*