**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VOICE OF THE EXPERIENCED**, a membership organization on behalf of itself and its members; and **MYRON SMITH, DAMARIS JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH GUILLORY, KENDRICK STEVENSON**, and **ALVIN WILLIAMS**, on behalf of themselves and all others similarly situated,<br><br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>**JAMES LEBLANC**, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; **TIMOTHY HOOPER**, in his official capacity as Warden of Louisiana State Penitentiary; **MISTY STAGG**, in her official capacity as Director of Prison Enterprises, Inc.; the **LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**; and **PRISON ENTERPRISES, INC.**,<br><br>　　　　　*Defendants*. | Civil Action No. 3:23-cv-1304-BAJ-EWD |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
<u>RECONSIDERATION OF FINAL JUDGMENT AND ADDITIONAL FINDINGS</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND............................................................................................... 2

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.      *Parker* Does Not Upend Existing Standards For Deliberate Indifference and
        Disability Discrimination............................................................................................ 5

        A.      *Parker* Does Not Raise the Standard for Deliberate Indifference .......................... 7

        B.      *Parker* Warns Against Micromanagement But Does Not Alter the ADA
                Reasonable Accommodation Analysis ................................................................. 8

II.     Reconsideration of Plaintiffs' ADA and Rehabilitation Act Claims Is Warranted
        Based On the Court's Misapplication of *Parker*................................................... 9

III.    Reconsideration of Plaintiffs' Eighth Amendment Heat Claim Is Warranted Based
        On the Court's Misapplication of *Parker*. ......................................................... 13

IV.     Reconsideration of Plaintiffs' Eighth Amendment Dignitary Harm Claim Is
        Warranted Based On Manifest Errors of Fact and Law....................................... 19

        A.      The Court Committed Manifest Error of Fact By Disregarding Voluminous,
                Unrebutted Evidence Supporting the Dignitary Harm Theory ............................ 20

        B.      To the Extent the Order Deemed *Parker* to Bar Plaintiffs' Dignitary Harm
                Claim, It Exhibits Manifest Error of Law ........................................................... 22

V.      The Court Should Make Additional Findings, Including Those Required By the
        PLRA, and Issue Permanent Injunctive Relief. .................................................. 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aker Sols., Inc.* v. *Shamrock Energy Sols., LLC*,
  2019 WL 7288942 (E.D. La. Dec. 30, 2019), *aff'd sub nom. Aker Sols., Inc.* v.
  *Shamrock Energy Sols., LLC.*, 820 F. App'x 243 (5th Cir. 2020)...........................5

*Alexander* v. *Wells Fargo Bank, N.A.*,
  867 F.3d 593 (5th Cir. 2017) .........................................................................4

*Bell* v. *State Prison Offs.*,
  2024 WL 2863293 (5th Cir. June 6, 2024) (per curiam) ...............................9, 10, 12

*Bender Square Partners* v. *Factory Mut. Ins. Co.*,
  2012 WL 1952265 (S.D. Tex. May 30, 2012)...........................................4, 20

*Cadena* v. *El Paso Cnty.*,
  946 F.3d 717 (5th Cir. 2020) .........................................................................9, 12

*Carter ex rel. Carter* v. *City of Shreveport*,
  144 F.4th 809 (5th Cir. 2025) .........................................................................8, 12

*Counterman* v. *Colorado*,
  600 U.S. 66 (2023)............................................................................................7

*D.H.H. by Rob Anna H* v. *Kirbyville Consol. Indep. Sch. Dist.*,
  2020 WL 1644365 (E.D. Tex. Jan. 7, 2020)...........................................5

*Farmer* v. *Brennan*,
  511 U.S. 825 (1994)........................................................................ *passim*

*Flynn* v. *Dick Corp.*,
  565 F.Supp.2d 141 (D.D.C. 2008) ...........................................................13

*Hale* v. *Harrison Cnty. Bd. of Supervisors*,
  8 F.4th 399 (5th Cir. 2021) .........................................................................12

*United States* v. *Hinds Cnty. Bd. of Supervisors*,
  120 F.4th 1246 (5th Cir. 2024) .........................................................................7, 18

*United States* v. *Hinds Cnty. Bd. of Supervisors*,
  128 F.4th 616 (5th Cir. 2025) .........................................................................14, 23

*Kemp* v. *Holder*,
  610 F.3d 231 (5th Cir. 2010) .........................................................................10

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Luig* v. *N. Bay Enters., Inc.*,
817 F.3d 901 (5th Cir. 2016) ........................................................................20

*Luke* v. *Texas*,
46 F.4th 301 (5th Cir. 2022) .........................................................................10

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
2015 WL 4939602 (S.D.N.Y. Aug. 19, 2015) .........................................20, 22

*Nationwide Mut. Ins. Co.* v. *Mortensen*,
2009 WL 5066783 (D. Conn. Dec. 16, 2009) ................................................20

*Olmstead* v. *L.C. ex rel. Zimring*,
527 U.S. 581 (1999) ................................................................................8, 9, 12

*Parker* v. *Hooper*,
171 F.4th 736 (5th Cir. 2026) (en banc) ................................................ *passim*

*Rogers* v. *Nat'l Flood Insurance Prog.*,
2020 WL 6533214 (M.D. La. Nov. 5, 2020) (Jackson, J.) ..........................4, 22

*T.Z.* v. *City of New York*,
634 F.Supp.2d 263 (E.D.N.Y. 2009) ...............................................................4

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ...................................................................................4

Eighth Amendment .............................................................................. *passim*

Americans with Disabilities Act .......................................................... *passim*

Prison Litigation Reform Act ...............................................................1, 2, 4, 24

Rehabilitation Act ................................................................................ *passim*

**Other Authorities**

FED. R. CIV. P. 52(b) ......................................................................................1, 5, 24

FED. R. CIV. P. 59(e) ........................................................................... *passim*

Plaintiffs, on behalf of themselves and the certified classes, respectfully submit this memorandum of law in support of their motion for reconsideration of this Court's May 26, 2026 Ruling and Order, ECF No. 440 ( the "Order"), and for additional findings pursuant to Federal Rules of Civil Procedure 59(e) and 52(b).[1]

## PRELIMINARY STATEMENT

On May 26, 2026, this Court issued a Ruling and Order finding that Plaintiffs had satisfied their burden of demonstrating a constitutional violation under Supreme Court precedent, but also finding that Plaintiffs' claims under the Eighth Amendment, ADA, and Rehabilitation Act were foreclosed by what it understood to be the heightened standards applicable to such claims under the Fifth Circuit's ruling in *Parker* v. *Hooper*, 171 F.4th 736 (5th Cir. 2026) (en banc). Accordingly, the Court entered judgment in favor of Defendants.

The Order rests on two manifest errors. First, the Court misinterpreted *Parker* v. *Hooper*. Properly construed, *Parker* did not raise the standard for establishing deliberate indifference under the Eighth Amendment or discrimination under the ADA. Second, the Court failed to address Plaintiffs' Dignitary Harm claim—that the Farm Line subjects men to degradation by replicating conditions of chattel slavery—overlooking voluminous and largely unrebutted evidence including testimony spanning multiple days of trial.

Because the Order is premised on a misapplication of *Parker*—and in the case of Plaintiffs' Dignitary Harm theory, on wholesale disregard of credible evidence—Plaintiffs respectfully submit that the Court should reconsider its ruling, amend and make additional findings, including with respect to the Prison Litigation Reform Act's (PLRA) requirements for injunctive relief, enter

---

[1] Except as otherwise indicated, capitalized terms have the same meaning assigned in Plaintiffs' Proposed Findings of Fact and Conclusions of Law. ECF No. 432.

judgment in favor of Plaintiffs, and order injunctive relief necessary to protect men on the Farm Line.

<h1 style="text-align:center">FACTUAL BACKGROUND[2]</h1>

On March 30, 2026, the Fifth Circuit issued an en banc decision in *Parker* v. *Hooper*, a yearslong litigation over medical care at LSP with a complex and *sui generis* procedural history. 171 F.4th 736 (5th Cir. 2026) (en banc). In that March 30 decision, the Fifth Circuit reviewed and vacated a remedial order entered by the district court to address violations of the Eighth Amendment and ADA that the district court had identified approximately two years earlier. *Id.* The very next day, the parties in this case filed their post-trial Proposed Findings of Fact and Conclusions of Law. *See* ECF Nos. 431, 432.

On May 26, 2026, this Court issued a ruling on the merits in this case and entered judgment in favor of Defendants. The Order, one of the first decisions to interpret the implications of *Parker*, determined that *Parker* had raised the standards for demonstrating deliberate indifference under the Eighth Amendment, discrimination under the ADA, and entitlement to injunctive relief under the PLRA. Order ¶¶ 112, 150.

Aside from a passing reference to Plaintiffs' ADA claim, the Order focuses exclusively on Plaintiffs' claim that Defendants violate the Eighth Amendment by exposing class members to dangerous heat conditions on the Farm Line and deliberately disregarding the known heat-related risks (the "Heat Theory"). Citing the 113 degree heat index stop-work threshold as an example, the Order finds that Plaintiffs had "met the[ir] burden of showing an Eighth Amendment violation," including that Defendants' conduct during the course of this litigation, including post-

---

[2]    Plaintiffs recognize the Court's familiarity with the issues in this case, which are set forth in Plaintiffs' Proposed Findings of Fact and Conclusions of Law. *See* ECF No. 432. Plaintiffs recite here only those facts relevant to the arguments raised in this motion.

2

trial conduct, evinced deliberate indifference under the standards set forth in *Farmer* v. *Brennan,* 511 U .S. 825, 832 (1994).  *Id.* at ¶¶ 121, 123.

Despite finding a constitutional violation under Supreme Court precedent, the Order holds that the Court is constrained from finding liability under Fifth Circuit precedent.  *Id.* at ¶ 123 ("Before *Parker,* the Court would have found Defendants liable under the Eighth Amendment for acting with deliberate indifference to the health and safety of incarcerated persons under *Farmer*.").  The Order interprets *Parker* as having "raised the standard" for establishing deliberate indifference such that a defendant's implementation of *any* remedial measures—even measures that are knowingly insufficient to address the constitutional violation—"negates" a finding of subjective deliberate indifference.  *Id.* at ¶¶ 112–115, 119.  Specifically, the Order holds that "because Defendants have taken remedial measures to cure **some** of the risks incarcerated men face when working on the Farm Line, such measures, according to the Circuit, apparently 'negate' a finding of subjective indifference."  *Id.* at ¶ 120 (emphasis in original).  Reflecting the Court's understanding that *Parker* forecloses *all* relief where *some* remedial measures have been taken, the Order does not include an analysis of whether Defendants responded *reasonably* to the various known risks of heat exposure Plaintiffs presented at trial, including the specific risks faced by people with heightened heat sensitivity.  *See e.g.*, ECF No. 432 ¶¶ 453–56, 496–503, 763–773.

The Order likewise interprets *Parker* to have raised the standard for showing discrimination on the basis of a disability under the ADA and Rehabilitation Act, and concludes that Plaintiffs' claims under those statutes are similarly foreclosed by *Parker.*  Order ¶ 150 n.27.  The Order contains a single sentence analyzing Plaintiffs' ADA claim that appears in a footnote in the "Conclusion" section and appears to interpret *Parker* as having substantially altered the reasonable accommodations analysis in cases alleging disability discrimination.  *Id.*

The Order contains no mention at all of Plaintiffs' claim that the Farm Line violates the Eighth Amendment because it punishes by simulating conditions of chattel slavery in violation of basic standards of human dignity (the "Dignitary Harm Theory").  Indeed, the words "dignity" and "slavery" do not appear in the Order.  Also absent in the Order is any mention of the largely unrebutted evidence given by the three expert witnesses, seven class members, and various prison officials that supported Plaintiffs' Dignitary Harm Theory.

Finally, because the Order understands *Parker* to foreclose any relief, it does not analyze whether the specific injunctive relief Plaintiffs have requested meets the PLRA's needs, narrowness, and non-intrusiveness standards.  *See* 18 U.S.C. § 3626(a)(1)(A).

Plaintiffs respectfully submit that the Court's application of *Parker* and wholesale disregard of evidence supporting the Dignitary Harm Theory are manifest errors requiring reconsideration.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 59(e) governs motions to alter or amend a judgment and motions for reconsideration filed within 28 days of a court's order.  FED. R. CIV. P. 59(e); *Bender Square Partners* v. *Factory Mut. Ins. Co.,* 2012 WL 1952265, at \*2 (S.D. Tex. May 30, 2012).  A Rule 59(e) motion "calls into question the correctness of judgment" and is appropriate to correct a manifest error of law or fact.  *Id.*; *Alexander* v. *Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th Cir. 2017).  A manifest error of law or fact must demonstrate a "wholesale disregard, misapplication, or failure to recognize controlling precedent," *Rogers* v. *Nat'l Flood Insurance Prog.*, 2020 WL 6533214, at \*1 (M.D. La. Nov. 5, 2020) (Jackson, J.), or a "complete disregard of . . . the credible evidence in the record," *Bender Square*, 2012 WL 1952265, at \*3.  *See also T.Z.* v. *City of New York*, 634 F.Supp.2d 263, 272 (E.D.N.Y. 2009) (motion for reconsideration granted where the "[c]ourt's misapplication or misinterpretation of a case upon which it relied

4

significantly in rendering its previous decision . . . is a matter that might reasonably be expected to alter the conclusion reached in that decision").

Federal Rule of Civil Procedure 52(b) permits a party to move for amended or additional findings. FED. R. CIV. P. 52(b). "Courts apply the same standard to both Rule 52(b) and Rule 59 motions." *Aker Sols., Inc.* v. *Shamrock Energy Sols., LLC*, 2019 WL 7288942, at *2 (E.D. La. Dec. 30, 2019), *aff'd sub nom. Aker Sols., Inc.* v. *Shamrock Energy Sols., LLC.*, 820 F. App'x 243 (5th Cir. 2020). Accordingly, Rule 52(b) motions to amend or make additional findings are appropriate "to correct manifest errors of laws or, in some limited situations, to present newly discovered evidence not available at trial." *D.H.H. by Rob Anna H* v. *Kirbyville Consol. Indep. Sch. Dist.*, 2020 WL 1644365, at *2 (E.D. Tex. Jan. 7, 2020), report and recommendation adopted, 2020 WL 1638061 (E.D. Tex. Apr. 1, 2020).

## ARGUMENT

Reconsideration is warranted because the Order rests on manifest errors of law and fact. The Court committed a manifest error of law in its application of *Parker* to Plaintiffs' claims, and it committed a manifest error of fact by wholesale disregarding voluminous evidence supporting Plaintiffs' Dignitary Harm Theory. Each error independently warrants relief under Rule 59(e) and additional findings under Rule 52(b) as set forth below.

## I.    *PARKER* DOES NOT UPEND EXISTING STANDARDS FOR DELIBERATE INDIFFERENCE AND DISABILITY DISCRIMINATION

Because the Order makes clear that the decision to enter judgment in favor of Defendants was driven nearly entirely by the Court's understanding of the *Parker* ruling, Plaintiffs respectfully submit that a careful examination of what the Fifth Circuit in *Parker* actually held—and, equally important, did not hold—is warranted.

In *Parker*, the Fifth Circuit was evaluating the district court's remedial order, which found that LSP showed (i) deliberate indifference to a serious risk of harm in violation of the Eighth Amendment in its provision of medical care, and (ii) failed to reasonably accommodate people with disabilities in violation of the ADA and Rehabilitation Act. *See* 171 F.4th at 741. In that remedial order, the district court directed the defendants to take specific actions to address those previously identified harms and, in doing so, refused to consider evidence that LSP had, before entry of the remedial order, undertaken extensive changes in connection with the identified violations. *Id*. at 741–42, 757. Where the district court did acknowledge intervening changes, it asked only whether they were sufficient to "cure the violations"—a standard later found by the Fifth Circuit to be erroneous. *Id*. at 751.

In its decision issued on March 30, 2026, the en banc *Parker* court vacated that remedial order and made three clear holdings. *First*, a district court errs by refusing to consider evidence of changes in defendants' practices when assessing whether ongoing constitutional and statutory violations justify a court-mandated remedy. *Id.* at 757–58. *Second*, defendants are not deliberately indifferent "if they 'responded reasonably to the risk'" of serious harm and thereby demonstrated "concern and sincerity." *Id*. at 758 (quoting *Farmer*, 511 U.S. at 844). *Third*, in assessing reasonable accommodations and program administration under the ADA and Rehabilitation Act, a district court should not substitute its own "view of prison management for the statutory standard, which allows some institutional flexibility in providing for disabled prisoners' needs" and does not impose a standard of medical care. *Id.* at 760.

Compliance with those holdings requires district courts not only to acknowledge changes in defendants' practices and policies but also to subject those changes to substantive analysis.

6

## A.    *Parker* Does Not Raise the Standard for Deliberate Indifference

In restating the rule that efforts to address a known risk of harm need not *succeed* in order to defeat deliberate indifference, *see id.*at 756, the Fifth Circuit referenced and quoted familiar language from *Farmer*:    prison "officials are not deliberately indifferent if they responded reasonably to the risk of serious harm." *Id*. at 755 n.12 (quoting *Farmer*, 511 U.S. at 844).  *Parker* thus incorporates and applies that existing rule:    whether a defendant remains deliberately indifferent after making changes to policy or practice turns not on whether they took *any* action, but rather whether those actions were a *reasonable* response to the identified risk of serious harm. As *Parker* further explains, however, the deliberate indifference analysis, which asks whether the defendants subjectively knew of the risk but chose not to address it, is a "quasi-criminal standard" akin to criminal recklessness and "is not met for mere negligence."[3] *Id.* at 755–56 (citing *Williams* v. *Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc)).  As a result, evidence that defendants have demonstrated "concern and sincerity" by reasonably responding to an identified risk will "negate subjective indifference."  *Id*. at 758 (citing *Farmer*, 511 U.S. at 844, and *United States* v. *Hinds Cnty. Bd. of Supervisors*, 120 F.4th 1246, 1261 (5th Cir. 2024)).

Thus, under *Parker*, as under *Farmer*, courts must scrutinize whether a prison's remedial changes are *reasonable responses* to known risks, not whether defendants took any actions at all. Indeed, allowing defendants to evade a finding of deliberate indifference by undertaking an *unreasonable* response would run afoul of *Farmer*.  *See* 511 U.S. at 846 n.9 (defendants attempting to avoid liability by correcting misbehavior during litigation must satisfy the court that they will

---

[3]    As described by the Supreme Court, a person acts with criminal recklessness, "when he consciously disregards a substantial and unjustifiable risk that the conduct will cause harm to another.  That standard involves insufficient concern with risk, rather than awareness of impending harm.  But still, recklessness is morally culpable conduct, involving a deliberate decision to endanger another."  *Counterman* v. *Colorado*, 600 U.S. 66, 79 (2023) (cleaned up).

7

not "revert to their obduracy" once that litigation concludes). Accordingly, under controlling precedent, district courts considering evidence of defendants' changed practices and policies must closely analyze those changes to ensure that they amount to the "reasonable response" required to defeat a finding of deliberate indifference.

> **B.** *Parker* **Warns Against Micromanagement But Does Not Alter the ADA Reasonable Accommodation Analysis**

The en banc *Parker* court held that the district court erred in refusing to consider the changes that defendants had made to benefit disabled class members and instead ordering the prison to implement specific standards of medical care. The Fifth Circuit reiterated the well-settled rule that the ADA "does not set out a standard of care for medical treatment," and faulted the district court for having "substituted its view of prison management for the statutory standard, which allows some institutional flexibility in providing for disabled prisoners' needs." *Parker*, 171 F.4th at 760 (quoting *Carter ex rel. Carter* v. *City of Shreveport*, 144 F.4th 809, 815 (5th Cir. 2025)). None of this alters the analysis for disability discrimination under the ADA and Rehabilitation Act, and nothing in *Parker* forecloses the possibility that a defendant can be liable under the ADA and Rehabilitation Act even after making changes in policy or practice.

*Parker*'s warning that district courts should avoid micromanagement likewise does not represent a significant departure from existing precedent. *Parker* cites *Olmstead* v. *L.C. ex rel. Zimring*, 527 U.S. 581 (1999) for the proposition that the ADA does not "impose[] on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities." *Parker*, 171 F.4th at 760–61 (citing *Olmstead*, 527 U.S. at 603 n.14). But the Supreme Court in *Olmstead* makes equally clear that those limits only go so far. *Olmstead* expressly holds that the ADA *does* obligate state defendants to avoid discriminating against people with disabilities by providing reasonable

accommodations, which in turn requires the state to consider its available resources and the needs of the particular plaintiff.  *Olmstead*, 527 U.S. at 603–07; *see also Cadena* v. *El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) ("A plaintiff's requested accommodation must also be reasonable, meaning that it does not impose undue financial or administrative burdens or fundamentally alter the nature of the service, program, or activity.") (cleaned up).

Finally, *Parker* does not change the rule that discrimination under the ADA is based on a standard of mere knowledge—*not* the heightened standard of deliberate indifference.  *See Parker*, 171 F.4th at 760 (citing *Bell* v. *State Prison Offs.*, 2024 WL 2863293, at *6 (5th Cir. June 6, 2024) (per curiam)); *see also Cadena*, 946 F.3d at 724 (plaintiff needs to prove intentional discrimination only where damages are sought).  Accordingly, even where defendants have made *some* effort to accommodate people with disabilities, Supreme Court and Fifth Circuit precedent still require courts to substantively evaluate whether those changes amount to reasonable accommodations.

## II. RECONSIDERATION OF PLAINTIFFS' ADA AND REHABILITATION ACT CLAIMS IS WARRANTED BASED ON THE COURT'S MISAPPLICATION OF *PARKER*.

At bottom, Plaintiffs' claims under the ADA and Rehabilitation Act seek an accommodation and administrative changes that would prevent men who Defendants themselves have already identified as being particularly heat sensitive from being sent into the fields during shifts when the heat index is projected to exceed the very threshold that Defendants have already identified as dangerous for those men, precisely because of their heat sensitivities.[4]  The Order does not address that claim.  Rather, in a single sentence, it deems Plaintiffs' ADA and Rehabilitation Act claims foreclosed under *Parker*, apparently interpreting that ruling to mean that

---

[4]    Plaintiffs also sought an expansion of the Heat Pathology Medications List ("Attachment A") and the Medical Exclusion List ("Attachment B") to Defendants' heat pathology policies Health Care Policy No. HCP8 ("HCP8") and Directive No. 13.067 ("Directive 13.067") but are not, at this time, seeking this Court's reconsideration of its denial of that relief.

9

where state defendants took any steps affecting disabled class members, the district court is precluded from probing into whether the accommodation was reasonable or from ordering any ADA accommodation. *Parker* contains no such holdings. Plaintiffs respectfully submit that the Court's denial of relief under the ADA and Rehabilitation Act rests on a misapplication of *Parker* and a misapprehension of Plaintiffs' ADA claim—errors that, separately and together, warrant reconsideration.

To prevail on a claim for discrimination under the ADA and Rehabilitation Act, Plaintiffs must prove that: 1) they are "qualified individuals" with disabilities; who 2) are being excluded from or denied participation or the benefits of services, programs, or activities or are discriminated against by a public entity; and 3) that exclusion, denial, or discrimination is by reason of their disability.[5] *Luke* v. *Texas*, 46 F.4th 301, 305 (5th Cir. 2022). The third prong—discrimination by reason of disability—is satisfied where a plaintiff can show "that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations." *Bell*, 2024 WL 2863293, at *5 (quoting *Valentine* v. *Collier*, 993 F.3d 270, 290 (5th Cir. 2021)).

At trial, Plaintiffs established that members of the ADA Subclass—defined as men diagnosed with conditions or taking medications that impair their ability to thermoregulate—have a qualifying disability under the ADA. ECF No. 432 ¶¶ 833–857. Plaintiffs further demonstrated that Defendants knew of this disability and its consequential limitation, *see id.*, insofar as Defendants themselves had identified subclass members as heat sensitive, had granted them

---

[5]     Both of these discrimination statutes "are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp* v. *Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

HPDS, and had determined they should not be outside once the heat index reaches 88 degrees, *see* DX-062 at 5.

On this evidence, Plaintiffs sought concrete accommodations for members of the ADA Subclass. Plaintiffs ask that Defendants cease assigning ADA Subclass members to the Farm Line when the heat index is projected to reach or exceed 88 degrees. *See* ECF No. 432 ¶¶ 915, 929–931. And Plaintiffs established that this request was neither hypothetical nor onerous: Defendants briefly followed precisely this practice during summer of 2025, declining to send men with HPDS onto the Farm Line when the Heat Alert threshold was forecast early in the day—and evidence at trial established that this was the *only* period during which those men were adequately protected. ECF No. 419 at 257:21–258:4; ECF No. 424 at 33:6–37:6; *see* PX-245. Yet when LSP revised Directive 13.067 in January 2026 and again in March 2026, Defendants did not codify that protection, and Warden Vannoy would not commit to following that practice every summer. ECF No. 424 at 36:15–37:14; ECF No. 419 at 257:21–258:11; *see* DX-062. Defendants presented no evidence of administrative burdens or costs, or of any fundamental changes to the Farm Line that would flow from the requested accommodation.

Without evaluating whether the requested accommodation was reasonable, however, the Court determined it was constrained by *Parker* and denied Plaintiffs' ADA claim. But this finding misapprehends *Parker* and controlling precedent upon which *Parker* relies. Indeed, nothing in *Parker* requires that result. In fact, in *Parker* itself, the Fifth Circuit did not hold that the fact that the prison had made improvements to benefit disabled men necessarily meant those accommodations were reasonable; rather it remanded to the district court so that it could reconsider precisely that question.

11

As explained above, *Parker* reaffirms—but does not disturb—the established framework governing reasonable accommodation claims articulated in *Olmstead* v. *L.C. ex rel. Zimring*, 527 U.S. 581 (1999).  Under *Olmstead* (and *Parker*), once it is determined that an incarcerated person has a qualifying disability in prison, there is a burden on the state to make reasonable accommodations that is only excused if the state demonstrates that the accommodation is unreasonable or would fundamentally alter its program.  *Id.* at 603–07.  *Parker* does not alter that framework; nor does *Parker* alter that allocation.  It holds only that a court may not "substitute[] its view of prison management for the statutory standard," *Parker*, 171 F.4th at 760—not that the existence of some remedial activity discharges Defendants' accommodation obligations.  The question the Court was required to substantively analyze and answer is whether the requested accommodations would afford ADA Subclass members meaningful access to a safe work assignment—not whether Defendants did anything at all.  *See Cadena*, 946 F.3d at 725 (explaining that a jury could find that crutches were not a reasonable accommodation where they did not allow a prisoner to "safely ambulate within [a] facility").

*Parker*'s language that the ADA does not "set out a standard of care for medical treatment," *Parker*, 171 F.4th at 760, has no application here.  Plaintiffs do not ask the Court to prescribe a standard of medical care.  *Compare with Carter* v. *City of Shreveport*, 144 F.4th 809, 815 (5th Cir. 2025) (allegations challenging medical competence are "medical decisions [] not actionable under the ADA") and *Hale* v. *Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021) (allegations of inadequate medical care is not actionable under the ADA).  The ADA Subclass members instead seek reasonable accommodations for a work assignment that is directly tied by evidence in the record to the disability that Defendants know them to have.  *Compare with Bell*, 2024 WL 2863293, at *6 (5th Cir. June 6, 2024) (dismissing work assignment-based ADA claim

12

lacking "any allegations that the prison officials discriminated against him by declining to treat his limitations that they knew were as a result of his alleged disabilities.") To the extent the Order treated Plaintiffs' claim as an effort to impose a standard of medical care, it misapprehended the relief Plaintiffs actually seek. That misapprehension is itself is a manifest error warranting reconsideration. *See Flynn* v. *Dick Corp.*, 565 F.Supp.2d 141, 146–47 (D.D.C. 2008) (granting Rule 59(e) motion where court applied incorrect standard based on misapprehension of facts).

Accordingly, and on the substantial record of ongoing discrimination in violation of the ADA and Rehabilitation Act, Plaintiffs respectfully urge the Court to reconsider its ADA and Rehabilitation Act holdings, analyze the requested accommodations as required under controlling precedent, and enter the injunctive relief the record supports.

## III.    RECONSIDERATION OF PLAINTIFFS' EIGHTH AMENDMENT HEAT CLAIM IS WARRANTED BASED ON THE COURT'S MISAPPLICATION OF *PARKER*.

In the Order, this Court correctly concluded that "Plaintiffs have met the burden of showing an Eighth Amendment violation" pursuant to the Heat Theory, including proving "an objective risk of danger caused by the 113-degree Fahrenheit stop work threshold contained in Directive 13.067," "that prison officials are aware of the danger to incarcerated men laboring on the Farm Line at a heat index of 103 degrees Fahrenheit and above," and "that prison officials have shown subjective deliberate indifference to this danger by failing to revise Directive 13.067 to account for this danger, despite revising Directive 13.067 three separate times during the course of this litigation." Order ¶ 121. And unlike the district court in *Parker*, this Court correctly recognized that it was obligated to consider the most recent evidence of Defendants' actions. *See e.g.*, Order ¶ 146.

But the Order misapprehends *Parker* at the critical final juncture, holding that *Parker* "foreclose[s] relief" here solely because "the Defendants have implemented various remedial

measures"—even though, this Court found, "those measures do not cure the substantial risk of harm." Order ¶ 118. Under *Parker*, as under *Farmer* and *Hinds*, that is not enough. Deliberate indifference does not turn on the binary question of whether Defendants have or have not taken *any* action in response to Plaintiffs' claims. Instead, Supreme Court and Fifth Circuit precedent require the Court to analyze, as a matter of fact based on all of the evidence before it, whether the measures Defendants undertook were a "reasonable response" to the identified risk demonstrating "concern and sincerity" to remediate that risk. *Parker*, 171 F.4th at 758; *see also Farmer*, 511 U.S. at 842, 844 (holding prison officials "may be found free from liability if they responded reasonably to the risk"); *United States* v. *Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 630 (5th Cir. 2025) (holding that a "reasonable response to inadequate prison conditions is . . . sufficient to prevent a deliberate-indifference finding" but partial and unimplemented measures did not constitute reasonable steps). Yet that required analysis is entirely absent from the Order. The Court's apparent interpretation of *Parker* as foreclosing any relief merely because "Defendants have taken remedial measures to cure *some* of the risks incarcerated men face when working on the Farm Line" rather than after an analysis of the reasonableness of those actions was manifest error.[6] Order ¶ 120. Indeed, *Parker* expressly holds that where efforts to fix unconstitutional conditions are so lacking that they continue to reflect prison officials' deliberate indifference," injunctive relief remains appropriate. *Parker*, 171 F.4th at 754.

If the Court had undertaken the "reasonable response" analysis required by *Farmer* and *Parker*, the clear factual record here would have led to the conclusion that Defendants remain

---

[6]   In this regard, the Order expresses concern about the "absence of guidance regarding the elements or standards by which district courts should evaluate prison officials' 'concern and sincerity' in the implementation of remedial measures." Order ¶ 150. Plaintiffs respectfully submit that *Parker* did not need to provide this guidance because it was not implementing a new standard for deliberate indifference but simply maintaining the "reasonable response" requirement from *Farmer*.

deliberately indifferent with respect to the serious risk of harm posed by heat on the Farm Line because they have not responded reasonably to that risk in several ways.

The most egregious example is Defendants' policies and practices for men who Defendants themselves have identified as being particularly sensitive to heat-induced health risks and who, therefore, should not be on outdoor work assignments when the heat index reaches 88 degrees. At trial, using data from Defendants' own documents, Plaintiffs showed that Defendants systematically, repeatedly, and in multiple ways left men with known heat sensitivities outside in dangerously high heat well *after* the heat index reached the 88 degree threshold where *Defendants' own policies* require such men to be taken inside. In particular, data from the 2025 heat season— the most recent available—indicate:

- LSP failed to call a heat alert on several days despite the heat index reaching the requisite threshold; as a result, men with known heat sensitivities were left out on the Farm Line under conditions that Defendants' own policies recognize pose an increased risk to their health and safety. *See* PX-245 at 1.

- LSP regularly took 30 minutes or longer after the heat index hit 88 degrees before loading men with known heat sensitivities onto (unairconditioned) buses to be transported to their (unairconditioned) dorms, including several days where Defendants left 10 or more such men outside for over an hour after Defendants called a heat alert. *See* PX-245 at 2.

- LSP repeatedly failed to recognize that men with known heat sensitivities were working on the Farm Line after calling a heat alert; that failure resulted in those heat sensitive men being left to work in direct sun long after the 88 degree threshold had been knowingly reached. *See* PX-245 at 3.

- The only sustained period when LSP did not fail to protect men with known heat sensitivities from objectively unsafe heat conditions was during a brief period where, for administrative purposes, LSP decided not to assign such men to the fields because of anticipated high heat. ECF No. 424 at 33:6–37:4.

These facts are not contested. *See* PX-245 (citing underlying LSP records); ECF No. 424 at 33:6–34:1 (Warden Vannoy admitting accuracy of data).

15

Even though Defendants are undeniably *aware* that their policies and practices are inadequate to provide the protections they *concede* are necessary to protect men that they *know* are heat sensitive, they have not responded reasonably to them. In March 2026, *after* Plaintiffs had presented this evidence at trial, LSP again revised its primary heat pathology policy, LSP Directive 13.067—but that revision again did not include *any* changes designed to remediate the failures described above. *See* DX-062 at 3; PX-248 at 26:12–20, 32:22–33:25, 53:25–54:24 (Warden Vannoy admitting that none of the changes to LSP Directive 13.067 addressed LSP's failures to protect men with known heat sensitivities). Instead, in March 2026, Warden Vannoy issued a *memorandum*—not a policy—directing that men with HPDS had to be brought inside within 30 minutes of a Heat Alert. *See* DX-062 at 12–13. Defendants admitted that this new memorandum-based 30-minute time limit has no identifiable scientific basis, and was invented without consulting any experts or relevant evidence. *See* PX-248 at 17:16–18:4, 32:13–33:3. That, despite their being aware that Dr. Vassallo, the only expert in thermoregulation and heat related illness in this litigation, had credibly and repeatedly warned of the substantial dangers of subjecting heat sensitive people to heat indices of 88 degrees or above and about how serious heat related illness can come on suddenly. Indeed, at trial, Dr. Vassallo testified "that even relatively healthy people can suffer from heat stroke without warning and succumb within 20 minutes." *See* ECF No. 423 at 33:16–24.

Around the same time, Defendants flatly refused to provide Plaintiffs with any ongoing records documenting their operation of the Farm Line—the very same records that Plaintiffs had previously used to demonstrate the dangerous ineffectiveness of Defendants' policies and procedures purportedly designed to protect heat-sensitive men. *See* Ex. 1 at 1.

16

Under *Farmer* and *Parker*, this Court was required to consider *all* of this evidence to evaluate whether Defendants' response to the known risks for heat-sensitive men was "reasonable" such that it evinced "concern and sincerity." And the only plausible finding in light of these facts is that Defendants' response—issuing a *memo* purportedly requiring LSP to follow an unscientifically supported 30-minute time limit for bringing heat-sensitive men indoors after the danger zone had already been reached, while at the same time refusing to provide any documentation of whether such procedure was followed or effective—is pure pretext. At a minimum, it is not a reasonable response to a known, life-threatening risk.

Defendants' other remedial measures, such as building shade pavilions, *see* ECF No. 423 at 325:4–9, are similarly so ineffectual as to lack a reasonable relationship to the objective risk of harm. Defendants concede that the heat index is a measurement taken in the shade. So if, for example, the heat index at a given moment is 95 degrees, that means someone sitting under the shade pavilion is experiencing a heat index of 95 degrees. The shade does not lower the heat index. ECF No. 423 at 26:3–27:5; ECF No. 424 at 39:17–24. All it does, at most, is blunt the even higher (up to an additional 15 degrees) heat stress experienced when one is out in the direct sun, which can be measured using Wet Bulb Globe Temperature. Defendants know and concede all of this. ECF No. 424 at 39:5–40:11. Their response? Continue to send men they know to be particularly heat vulnerable out into heat indices they expect will exceed a safe level and refuse to use the capabilities of the equipment they have to measure Wet Bulb Globe Temperature. While *Farmer* and *Parker* do not require a defendant's actions to successfully address the risk of harm, actions that defendants *knew* to be ineffective cannot possibly constitute the requisite reasonable response or indicate "concern and sincerity."

The changes Defendants have made in this case are a world away from the remedies that the district court refused to consider in *Parker*. In that case, LSP made what the Fifth Circuit described as systematic changes "related directly to deficiencies that the [district] court found." *Parker*, 171 F.4th at 757. For example, the district court had concluded that LSP's medical records were "in shambles" even though that problem "was solved after the remedial hearing by electronic health records" and similarly "criticized the 'episodic treatment' of medical complaints" without acknowledging "the hiring of an additional nurse practitioner and adoption of a web-based medical service." *Id*. at 758. Similarly, the district court failed to recognize that "LSP completely over-hauled its sick-call procedures," including by making "nurse practitioners . . . available through telemedicine." *Id*. The district court dismissed those changes as "not optimal," an analysis that the en banc Fifth Circuit called "unmoored" from the standard set out in *Hinds County* and *Farmer*. *Id*. (citing *Hinds Cnty.*, 120 F.4th at 1261 (citing *Farmer*, 511 U.S. at 844–45)). Here, however, Defendants have not implemented any such extensive and cumulative reforms. Certain identified threats to health and safety remain completely unaddressed. For example, Defendants have never revised Directive 13.067 and HCP8 to lower the stop-work threshold below the unsafe level of 113 degrees. *See* DX-062 at 9–10, 12–13.

When viewed in their totality, Defendants' mercurial actions throughout the pendency of this litigation cast severe doubt on their "concern and sincerity" for the heat-related health risks experienced by men on the Farm Line. This Court has "noted Defendants' then apparent resistance towards proposing meaningful and constitutionally compliant changes to conditions on the Farm Line." Order ¶ 129. It has also recognized Defendants' shifting approach to the threshold at which a Heat Alert is called, which Defendants moved from 88 degrees to 91 degrees and then back to 88 degrees on the eve of trial. Order ¶ 138. Indeed, even when subject to court-ordered injunctions

18

mandating protections at heat indices of 88 degrees, Warden Vannoy acknowledged that Defendants had repeatedly chosen to violate those orders, putting men on the Farm Line at substantial risk of serious harm.  ECF No. 424 at 15:5–17:9.  Whether under *Farmer* or under *Parker*, that is deliberate indifference.

## IV.    RECONSIDERATION OF PLAINTIFFS' EIGHTH AMENDMENT DIGNITARY HARM CLAIM IS WARRANTED BASED ON MANIFEST ERRORS OF FACT AND LAW

In addition to the Eighth Amendment claim concerning extreme heat on the Farm Line, Plaintiffs advanced a separate and independent basis for Eighth Amendment liability—the Dignitary Harm Theory—as reflected in numerous filings, arguments before the Court, and the Court's own orders.[7]  This Court's Order apparently denies that claim without discussion or a single reference to it.  In doing so, the Court committed manifest errors of both fact and law:  it disregarded voluminous, credible, and largely unrebutted evidence and testimony from experts,

---

[7]    *See* ECF No. 120-1 at 16–17 (Plaintiffs' Memorandum of Law in Support of Motion for Class Certification) (arguing that the Dignitary Harm Theory warrants class certification); ECF No. 136 at 14–15, 21 (Defendants' Opposition to Plaintiffs' Motion for Class Certification) (listing Dignitary Harm Theory as basis for Plaintiffs' Eighth Amendment claim); ECF No. 173 at 1–2, 7, 14–15 (Plaintiffs' Opposition to Defendants' Motions in Limine and *Daubert* Motions to Exclude or Limit Testimony of Drs. Hammonds and Sbicca) (describing Dignitary Harm Theory); ECF No. 257-2 at 32:4–8, 34:7–35:8 (Feb. 19, 2025 Transcript of Oral Argument on Plaintiffs' Motion for Class Certification) (explaining the Dignitary Harm Theory to the Court); ECF No. 257-3 at 19:12–22 (Apr. 22, 2025 Transcript of Class Certification Hearing) (discussing how the dignitary harm experienced by class members satisfies commonality); ECF No. 257-5 at 125:8–20, 126:2–20 (Apr. 24, 2025 Transcript of Class Certification Hearing) (discussing Dr. Sbicca and Dr. Hammonds's testimony regarding dignitary harm); ECF No. 257 at 1–2, 34–35 (Plaintiffs' Post-Hearing Brief in Further Support of Motion for Class Certification) (expressly listing the Dignitary Harm Theory under its Eighth Amendment claim and emphasizing expert testimony supporting class certification under the Dignitary Harm Theory); ECF No. 258 at 2, 6–7, 14–15, 22 (Defendants' Post Trial Memorandum in Opposition to Plaintiffs' Motion for Class Certification) (arguing that Dignitary Harm Theory does not support class certification); ECF No. 349 at 2, 5, 9, 11 (Amended Joint Pre-Trial Order) (describing Dignitary Harm Theory) ECF No. 364 at 3, 16–17, 30–31 (Order Granting Plaintiffs' Motion for Class Certification) (restating Plaintiffs' Dignitary Harm Theory); ECF No. 419 at 14:22–15:4 (Feb. 3, 2026 Trial Transcript) (Plaintiffs' counsel emphasizing that trial will be focused on Dignitary Harm Theory); ECF No. 424 at 246:3–251:3 (Feb. 10, 2026 Trial Transcript) (Plaintiffs' counsel addressing Dignitary Harm Theory in closing remarks); ECF No. 424 at 251:5–253:16 (Feb. 10, 2026 Trial Transcript) (Court questioning Plaintiffs' counsel about scope of the Dignitary Harm Theory); ECF No. 431 at 30, 40–47, 53 (Defendants' Proposed Findings of Fact and Conclusions of Law) (addressing Plaintiffs' Dignitary Harm Theory); ECF No. 432 at 50–69, 164–171 (Plaintiffs' Proposed Findings of Fact and Conclusions of Law) (describing Dignitary Harm Theory).

prison officials, and incarcerated men, and, to the extent the Court read *Parker* as a bar to relief on Plaintiffs' Dignitary Harm claim, it misapplied that decision.    Reconsideration is therefore warranted.

A.    **The Court Committed Manifest Error of Fact By Disregarding Voluminous, Unrebutted Evidence Supporting the Dignitary Harm Theory**

A court commits a manifest error of fact warranting relief under Rule 59(e) when it demonstrates a "complete disregard of . . . credible evidence in the record." *Bender Square*, 2012 WL 1952265, at *5; *see also Luig* v. *N. Bay Enters., Inc.,* 817 F.3d 901, 907 (5th Cir. 2016) (Rule 59(e) serves "the need to render just decisions on the basis of *all* the facts.") (emphasis in original); *Nationwide Mut. Ins. Co.* v. *Mortensen*, 2009 WL 5066783, at *1 (D. Conn. Dec. 16, 2009) (granting motion for reconsideration where court overlooked evidence produced by defendants on a motion for summary judgment); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2015 WL 4939602, at *2 (S.D.N.Y. Aug. 19, 2015) (granting motion for reconsideration of motion for summary judgment where court acknowledged it overlooked and misconstrued certain evidence).    That is precisely the error here.    In denying relief under the Dignitary Harm theory, the Court overlooked evidence spanning multiple days of trial, including largely unrebutted testimony from qualified expert witnesses, incarcerated witnesses, and prison officials, all of which establishes the dignitary harm inflicted upon men assigned to the Farm Line.    The Order neither addresses that evidence nor makes any findings concerning the facts on which the Dignitary Harm Theory rests.

The trial record on dignitary harm was extensive.    Plaintiffs presented:

- Testimony from expert witnesses Drs. Hammonds and Sbicca—who the Court previously found qualified in their respective fields—about the Farm Line's resemblance to slavery and the consequent risk of dignitary harm faced by men compelled to labor there. *See generally* ECF No. 419 at 105:10–163:18 (trial testimony of Dr. Hammonds); ECF No. 422 at 108:16–188:16 (trial testimony of Dr. Sbicca); *see also* ECF No. 226 at 8 (denying Defendants' motions to exclude Drs. Hammonds and

20

Sbicca on the grounds that "both are qualified in their fields" based on the Court's "examination of [their] professional experience, education, training, and observations").

- Testimony from seven incarcerated men confirming that they experience degradation and dignitary harm as a result of their assignment to the Farm Line, including testimony that they experienced LSP officials using racial slurs while assigned to the Farm Line. *See generally* ECF No. 419 at 30:3–65:21 (trial testimony of Mr. Guillory); *id.* at 66:22–92:3 (trial testimony of Mr. Major); ECF No. 420 at 70:1–107:4 (trial testimony of Mr. Samuels); *id.* at 8:1–44:6 (trial testimony of Mr. Smith); ECF No. 422 at 85:3–104:16 (trial testimony of Mr. Morehead); ECF No. 245 at 147:21–171:14 (class certification testimony of Mr. Jones); *id.* at 121:17–147:6 (class certification testimony of Mr. Jackson).

- Testimony from LSP officials confirming that they are aware that men feel degraded on the Farm Line and liken their labor to slavery. ECF No. 419 at 103:2–3 (trial testimony of Dr. Toce); ECF No. 420 at 50:8–20 (trial testimony of Major Pidgeon); *id.* at 343:1–344:2 (trial testimony of Lieutenant Karisny); ECF No. 245 at 308:23–309:4 (class certification hearing testimony of Master Sergeant Scott); ECF No. 419 at 305:6–306:–7 (trial testimony of Warden Vannoy).

- Evidence of LSP's policy, confirmed by LSP's witnesses, that men are assigned to the Farm Line as their first job and are reassigned as a result of disciplinary action, and that reassignment to the Farm Line is viewed as "starting at the bottom" of the hierarchy at LSP. JX-032 at 11; ECF No. 349-1 (Statement of Undisputed Facts) at ¶¶ 54, 56, 58, 81; ECF No. 419 at 172:15–22 (trial testimony of Warden Vannoy); ECF No. 420 at 49:3–21 (trial testimony of Major Pidgeon); *id.* at 128:1–129:10 (trial testimony of Ms. Vittorio); ECF No. 423 at 246:12–247:6 (trial testimony of Colonel Davis); *id.* at 304:22–305:10, 334:23–335:5 (trial testimony of Warden Vannoy); ECF No. 424 at 61:16–62:4 (trial testimony of Warden Vannoy).

- Testimony from LSP officials that the Farm Line is not educational or rehabilitative. ECF No. 420 at 119:20–120:10 (trial testimony of Ms. Vittorio); ECF No. 423 at 303:4–20 (trial testimony of Warden Vannoy).

- Testimony from agricultural expert Ms. Green, who the Court found to be qualified in her field, that agricultural labor on the Farm Line is inefficient, and unnecessarily unsafe and arduous. *See generally* ECF No. 420 at 137:18–266:13 (trial testimony of Ms. Green).

Critically, this evidence stood largely undisputed. Defendants did not offer any expert to counter Dr. Hammonds, Dr. Sbicca, or Ms. Green, did not meaningfully challenge the credibility

21

of any of these witnesses, did not contest the evidence of LSP's policies, and offered nothing to rebut the testimony of the men assigned to the Farm Line.

Yet the Court overlooked all of it. The Order contains no findings on the credibility or weight of the testimony of Plaintiffs' experts or the incarcerated witnesses. It says nothing about the accounts of incarcerated witnesses who described, under oath, the degradation they endured. And it is silent on the evidence—drawn from LSP's policies and confirmed by prison officials—that the Farm Line is wielded as a disciplinary tool and serves no meaningful rehabilitative end.

In short, the Court's analysis of Plaintiffs' Eighth Amendment claim proceeds as though this evidence does not exist. The Dignitary Harm Theory provides an independent basis for Eighth Amendment liability, and the Order apparently disposes of it without any regard for substantial and largely unrebutted body of evidence. That is manifest error and reconsideration under Rule 59(e) is warranted. *In re MTBE*, 2015 WL 4939602, at *2 (granting motion to reconsider summary judgment on the grounds that court "overlooked" portions of expert opinion and other testimony from witnesses in summary judgment record).

### B. To the Extent the Order Deemed *Parker* to Bar Plaintiffs' Dignitary Harm Claim, It Exhibits Manifest Error of Law

Reconsideration is also appropriate because the Order reflects a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Rogers*, 2020 WL 6533214, at *1 (Jackson, J.). To the extent the Order denies the Dignitary Harm Theory in reliance on *Parker*, the Court committed a manifest error of law by misapplying that decision.

In denying Plaintiffs' Dignitary Harm Theory (without discussion), the Court may have implicitly read *Parker* to foreclose relief on that theory—signaling that Defendants' remedial measures, targeted exclusively at heat-related Eighth Amendment violations, are somehow sufficient to foreclose Eighth Amendment relief across the board. But *Parker* does not sweep so

22

broadly. As explained above, *Parker* holds that a defendant's remedial changes demonstrate "concern and sincerity" negating deliberate indifference only insofar as they "responded reasonably" to an identified risk of serious harm. *Parker*, 171 F.4th at 758 (quoting *Farmer*, 511 U.S. at 844). *Parker* does not stand for the proposition that measures aimed at one constitutional injury negate defendant's indifference for all constitutional injuries. The Court's (implied) contrary reading converts *Parker*'s analysis into a categorical rule that *any* remedial activity defeats *all* Eighth Amendment liability. Nothing in the text of *Parker* endorses that extraordinary position. *Parker* simply does not (and cannot) apply to Plaintiffs' Dignitary Harm Theory.

The Dignitary Harm Theory does not rest on the risk of heat-related illness. It rests on a separate and independent set of harms: the Farm Line's replication of the conditions of slavery, Defendants' operation of the Farm Line as a form of punishment, and the degradation that the men assigned to the Farm Line experience as a result. None of the measures the Court credited in denying the heat claim are reasonably related to or even directed at those harms. Because no remedial measures exist that are reasonably related to the dignitary harm at issue, *Parker* supplies no basis to deny that theory of liability.

In the alternative, to the extent the Court understood Defendants' proposed horticulture class as a basis for denying the Dignitary Harm Theory, the Order again misapplied *Parker*. *Parker* does not apply when no concrete steps have been taken to address the Eighth Amendment harm; it concerned changes actually implemented by the defendants. Nothing in *Parker* suggests that measures that a defendant has merely proposed but not enacted can defeat liability. To the contrary, the Fifth Circuit in *Hinds County*—which *Parker* cites approvingly—makes clear that steps planned but not yet taken do not cure an ongoing Eighth Amendment violation. *See* 128

23

F.4th 616, 630 (5th Cir. 2025) (finding subjective deliberate indifference met where county had not yet implemented planned salary increase that it claimed would mitigate violence in the jail).

To the extent the Order extended *Parker* to deny an independent claim to which its remedial-measures analysis has no application—and, in the alternative, treated unenacted measures as curative in contravention of *Parker* and *Hinds County*—the Court committed a manifest error of law, and reconsideration is warranted.

## V.    THE COURT SHOULD MAKE ADDITIONAL FINDINGS, INCLUDING THOSE REQUIRED BY THE PLRA, AND ISSUE PERMANENT INJUNCTIVE RELIEF.

As established above, reconsideration is warranted under Rule 59(e). *Parker* provides no basis for denying Plaintiffs' claims. Rather, for the reasons set forth in Plaintiffs' Proposed Findings of Fact and Conclusions of Law, the proof offered at trial demonstrates Defendants' violations of the Eighth Amendment, ADA, and Rehabilitation Act. It also demonstrates Plaintiffs' entitlement to the injunctive relief requested in Plaintiffs' Proposed Post-Trial Remedial Order. ECF No. 433. Accordingly, pursuant to Rule 52(b), the Court should issue additional findings that: (i) Defendants have demonstrated deliberate indifference to the basic human dignity of men on the Farm Line and to the heat related risks to which they are subject; (ii) Defendants discriminate against men with impaired thermoregulation in violation of the ADA and Rehabilitation Act by assigning them to the Farm Line during shifts where heat index is projected to exceed 88 degrees; (iii) Plaintiffs are entitled to permanent injunctive relief to cure these constitutional and statutory violations; and (iv) for the reasons set forth in Plaintiffs' Proposed Findings of Fact and Conclusions of Law, the requested relief complies with the requirements of the PLRA.

24

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its Final Judgment and issue an opinion with additional findings that corrects its misapplication of *Parker* with respect to Plaintiffs' ADA claim and Eighth Amendment Heat and Dignitary Harm Theories and that addresses the evidence supporting Plaintiffs' Eighth Amendment Dignitary Harm Theory.

Dated: June 23, 2026

**THE PROMISE OF JUSTICE INITIATIVE**

*/s/ Samantha Pourciau*
Cecelia Trenticosta Kappel, La. Bar No. 32736
Samantha Pourciau, La. Bar No. 39808
Michael Allen, La. Bar No. 41142
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
ctkappel@defendla.org
sbosalavage@defendla.org
mallen@defendla.org

**RIGHTS BEHIND BARS**

*/s/ Samuel Weiss*
Samuel Weiss
1800 M Street NW Fnt. 1, No. 33821
Washington, D.C. 20033
Tel: (202) 455-4399
sam@rightsbehindbars.org

**PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP**

*/s/ Jeremy A. Benjamin*
Joshua Hill Jr. (PHV) NY Bar No. 4297826
Jeremy A. Benjamin (PHV) NY Bar No. 4770277
Arielle B. McTootle (PHV) NY Bar No. 5993217
Ricardo Sabater (PHV) NY Bar No. 5993217
Leah R. Weiser (PHV) NY Bar No. 6027601
Chizoba D. Wilkerson (PHV) NY Bar No.  5903943
Erica Paul (PHV) NY Bar No. 615707

Janet Lee (PHV) NY Bar No. NY Bar No. 6182265
Christopher Bilicic (PHV) NY Bar No. 6233472
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
jhill@paulweiss.com
jbenjamin@paulweiss.com
amctootle@paulweiss.com
rsabater@paulweiss.com
lweiser@paulweiss.com
cwilkerson@paulweiss.com
epaul@paulweiss.com
jglee@paulweiss.com
cbilicic@paulweiss.com

*Attorneys for Plaintiffs and the Certified Classes*

26