**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

VOICE OF THE EXPERIENCED, a membership organization on behalf of itself and its members, et al.,

Plaintiffs,

v.

JAMES LEBLANC, et al.,

Defendants.

CIVIL ACTION NO: 23-cv-01304-BAJ-EWD

**BRIEF OF *AMICUS CURIAE* NATIONAL DISABILITY RIGHTS NETWORK**

The National Disability Rights Network ("NDRN") respectfully submits this brief as *amicus curiae* to aid the Court in evaluating Plaintiffs' disability rights claims under Title II of the ADA ("ADA") and Section 504 of the Rehabilitation Act ("RA") in conjunction with Plaintiffs' Motion for Reconsideration. These disability rights statutes impose an affirmative obligation on public entities like the Louisiana State Prison ("LSP") and require the Court to engage in a fact-specific analysis of the precise accommodations requested and discrimination claimed. Accordingly, Plaintiffs' disability rights claims are distinct from their Eighth Amendment claims.

The Fifth Circuit's *en banc* decision *Parker v. Hooper* did not change this standard and longstanding precedent surrounding the ADA and RA. 171 F.4th 736 (5th Cir. 2026). Rather, *Parker*'s ADA and RA analysis stands for the idea that these statutes do not provide a standard of care for claims involving medical issues. As Plaintiffs' claims in this case involve disability accommodations and discrimination stemming from labor conditions, *Parker* does not bar their claims.

## I. STATEMENT OF INTEREST OF *AMICUS CURIAE*

The National Disability Rights Network ("NDRN") is the non-profit membership association of the federally mandated Protection and Advocacy (P&A) agencies located in all 50 states, the District of Columbia, Puerto Rico, the U.S. territories (American Samoa, Guam, Northern Mariana Islands, and the US Virgin Islands), alongside a P&A affiliated with the Native American Consortium which includes the Hopi, Navajo and San Juan Southern Paiute Nations in the Four Corners region of the Southwest.

P&A agencies are authorized under federal statute to provide legal representation and advocacy services, and to investigate abuse and neglect of individuals with disabilities, in a range of settings (including correctional and detention facilities), making the P&A System the nation's largest provider of legally based advocacy for people with disabilities. Through this statutory access, P&As have developed particular insight into how incarcerated people with disabilities experience accommodation failures not only in medical care, but in core institutional functions such as work and program assignments — the precise context at issue in this case. Disability Rights Louisiana, the P&A for Louisiana and an NDRN member, along with P&As in other jurisdictions, has engaged in significant ADA litigation on behalf of incarcerated people with disabilities. NDRN and its members accordingly have a strong interest in ensuring that the ADA and RA's failure-to-accommodate framework is correctly applied in these contexts to the many programs and services prisons provide.

## II. ARGUMENT

### A. The ADA/RA Standard Is Distinct from the Eighth Amendment Standard.

The Eighth Amendment and federal disability anti-discrimination statutes like Title II of the ADA ("ADA") and Section 504 of the Rehabilitation Act ("RA") operate on distinct legal planes and utilize separate allocations of burden and mental state inquiries. The Eighth Amendment addresses unconstitutional punishment and conditions of confinement and therefore requires proof that a prison official subjectively knew of and disregarded a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In contrast, the ADA and RA impose an affirmative obligation on public entities, including state prisons like the Louisiana State Penitentiary ("LSP"), to provide reasonable accommodations necessary to afford individuals with meaningful access to governmental services, programs, and activities. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724-25 (5th Cir. 2020); *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

The Eighth Amendment imposes liability only where prison officials act with deliberate indifference to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. The standard contains both an objective and subjective component. *See e.g., Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). For the objective prong, there must be proof that the deprivation was viewed as sufficiently serious or extreme. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). For the subjective prong, there must be proof that a prison official's conduct demonstrates deliberate indifference to a prisoner's needs. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013).

The subjective prong is the defining feature of an Eighth Amendment deliberate indifference claim. An official is not liable merely because the risk should have been recognized

or because the official acted negligently. *Farmer*, 511 U.S. at 835. Rather, the official must be aware of facts indicating a substantial risk of serious harm, must draw the inference that such a risk exists, and then must disregard that risk. *Id*. at 837. As the Supreme Court explained in *Farmer*, an official who fails to address a risk that he "should have perceived but did not" cannot be found deliberately indifferent. *Id*. at 838.

The Fifth Circuit's *en banc* decision in *Parker v. Hooper* emphasized the demanding nature of the standard imposed by the Eighth Amendment. Deliberate indifference is "an extremely high standard to meet." *Parker v. Hooper*, 171 F.4th 736, 758 (5th Cir. 2026) (quoting *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009)) (citation modified). It is more than negligence, more than medical malpractice, and more than a disagreement regarding the proper course of treatment. *See Farmer*, 511 U.S. at 835-36; *Brewster*, 587 F.3d at 770. The Supreme Court has also recognized that prison officials who respond reasonably to a known risk cannot be found liable under the Eighth Amendment even if the harm was ultimately not averted. *Farmer*, 511 U.S. at 844. Furthermore, the Fifth Circuit in *Parker* has held that good-faith efforts to address a problem are often fatal to a deliberate indifference claim because they undermine the inference that the prison official acted with the requisite culpable state of mind. *Parker*, 171 F.4th at 758; *Farmer*, 511 U.S. at 844.

In contrast, to establish a *prima facie* case under the ADA or the RA, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in, denied the benefits of, or otherwise discriminated against with respect to a public entity's services, programs, or activities; and (3) such exclusion or discrimination occurred by reason of disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). The third factor may be met either by showing discrimination on the basis of disability or showing a failure to

accommodate. *See Windham v. Harris County,* 875 F3d. 229, 235 (5th Cir. 2017). Neither the ADA nor the RA incorporates the Eighth Amendment's requirement that a plaintiff prove a particular prison official subjectively appreciated and consciously disregarded a substantial risk of harm.

The Fifth Circuit has repeatedly explained that a public entity's obligation to accommodate arises when it has notice of a disability-related need. *Id.* at 237. Under the ADA and RA, the relevant question is whether the public entity knew of the plaintiff's disability related limitations and failed to provide a reasonable accommodation necessary to afford meaningful access to services, programs, and activities—not whether any individual officer acted with malice, animus, or conscious disregard. *See Cadena*, 946 F.3d at 724-26; *Windham*, 875 F.3d at 237.

The Fifth Circuit has expressly rejected attempts to import a constitutional deliberate-indifference requirement into ADA and RA liability. *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575 (5th Cir. 2002). In *Delano-Pyle*, the court unequivocally stated that "[t]here is no deliberate indifference standard applicable to public entities for purposes of the ADA or the RA." *Id.*[1]

The distinction between these statutory disability discrimination claims and the Eighth Amendment standard is illustrated by the Fifth Circuit's opinion in *Cadena*. There, the Fifth Circuit reversed summary judgement on a detainee's ADA accommodation claim while simultaneously affirming the dismissal of the Eighth Amendment deliberate indifference claim.

[1] Although later decisions have discussed deliberate indifference in the context of establishing intentional discrimination sufficient to recover compensatory damages, those cases do not transform deliberate indifference into an element of a failure-to-accommodate claim itself—and thus deliberate indifference is not relevant to claims for equitable relief like Plaintiffs' claims. *See J.W. v. Paley*, 81 F.4th 440, 450 (5th Cir. 2023); *Smith v. Harris Cnty.*, 956 F.3d 311, 319 (5th Cir. 2020); *see also T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021) ("Evidence of intentional discrimination is necessary to support a claim for monetary damages, but a plaintiff seeking only equitable relief may succeed on a disparate impact theory."). Other circuits have also recognized this distinction between Eighth Amendment claims and ADA and RA claims. *See, e.g.*, *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (recognizing that the Eighth Amendment deliberate indifference standard is a "higher standard" than showing intentional discrimination for compensatory damages under the ADA, "which does not require knowledge of a substantial risk of serious harm, but only that a federally protected right is substantially likely to be violated.")

*Cadena v. El Paso Cnty.*, 946 F.3d 717, 725-29 (5th Cir. 2020). The court concluded that the plaintiff had shown a material dispute as to whether the County denied her reasonable accommodations in violation of the ADA, even though the record did not establish the subjective culpability necessary to sustain an Eighth Amendment violation. *Id.* Indeed, the court found that plaintiff's Eighth Amendment claim "relie[d] on many of the same acts that form the basis of her ADA claim," but the claim failed "because the Eighth Amendment does not require that the County affirmatively accommodate Cadena with, here, mobility aids." *Id.* at 729. Had the ADA/RA and the Eighth Amendment standards been coextensive, the ADA claim necessarily would have failed alongside the constitutional claim. However, the Fifth Circuit held otherwise.

Moreover, as illustrated by *Cadena*'s analysis of each of plaintiffs' claimed reasonable accommodations, the ADA and RA claims require "a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of a possible modification in light of the nature of the disability in question." *Mealey v. Gautreaux*, No. CV 16-716-JWD-RLB, 2020 WL 515853, at *9 (M.D. La. Jan. 31, 2020) (citation modified) (quoting *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995) and citing *R.K. v. Bd. of Educ.*, 494 F. App'x 589, 597 (6th Cir. 2012); *see also Ariza v. Loomis Armored US, LLC*, 132 F. Supp. 3d 775, 787 (M.D. La. 2015).

Accordingly, evidence that prison officials acted in good faith, attempted remediation, or otherwise lacked the subjective deliberate indifference required under *Farmer* may defeat an Eighth Amendment claim while leaving intact a claim that the institution engaged in discrimination on the basis of disability or failed to provide reasonable accommodations required by the ADA or RA. The disability statutes ask whether prisoners with a disability have experienced discrimination or received meaningful access through reasonable accommodation; the Eighth Amendment asks whether officials consciously disregarded a known risk of serious harm. Those are distinct

questions, and the ADA and RA claims require a distinct, fact-specific analysis of the claimed discrimination and failure to accommodate.

### B. *Parker v. Hooper* Does Not Govern Plaintiffs' Disability Claim, As *Parker's* Holding Is Limited to Challenges to the Quality of Prison Medical Care.

In granting judgment for Defendants on Plaintiffs' ADA and RA claims, the Court relied exclusively on *Parker v. Hooper*, 171 F.4th 736 (5th Cir. 2026). But *Parker*'s holding does not govern the questions of liability or proper remedies on Plaintiffs' ADA and RA claims. After extensive analysis of deficiencies in the district court's remedial order relating to Eighth Amendment claims, *Parker* also reversed and remanded the order's findings on the ADA and RA by briefly citing to cases regarding disability claims relating to medical care. *Parker* did not address a claim, like the claim made by Plaintiffs in the instant case, that a prison violates the ADA and RA by assigning prisoners with disabilities to dangerous labor without making reasonable accommodations under the prison's work program. The Court has already found the relief Plaintiffs seek to be "well-founded," *Voice of the Experienced v. LeBlanc*, No. 23-01304-BAJ-EWD, 2026 WL 1472248, at *23 (M.D. La. May 26, 2026). In line with binding precedent outlined above, the Court must first evaluate Plaintiffs' specific claims of failure to accommodate and disability discrimination in determining whether Defendants' actions have precluded finding for Plaintiffs on these claims.

#### 1. *Parker*'s holding rests on the principle that the ADA and RA do not impose a judicial "standard of care" for prison medical treatment.

In reversing and remanding the remedial order, the Fifth Circuit expressly characterized the *Parker* plaintiffs' ADA and RA claims as encompassing medical care.[2] As the Fifth Circuit

[2] *Parker's* separate concurrence and dissent in part underscores the limited reach of the *Parker en banc* court's majority opinion. Judge Richman observed that the district court in *Parker* had *also* found that "LSP failed to accommodate inmates with regard to disciplinary procedures, *not medical care*," and emphasized that "[t]he en banc

explained, the *Parker* plaintiffs alleged that "the prison's medical care was constitutionally deficient" and that the defendants "failed to follow" the ADA and RA in providing "prisoner medical and disability care." *Parker*, 171 F.4th at 741, 748. The Fifth Circuit found that the district court's liability and remedial rulings addressed seven enumerated "areas of care"—"sick call, clinical care, specialty care, infirmary and in-patient care, emergency care, medical-records management, and medical management and administration." *Id.* at 742. And the *en banc* court's ADA and RA analysis was directed at precisely that subject matter—addressing the remedial order's findings and mandates regarding medical care. Indeed, in summarizing its finding on those claims, the Fifth Circuit stated: "In short, the district court created its own preferred standard of *medical care* for the prison." *Id.* at 760 (emphasis added).

The quotations and authorities on which the *en banc* court relied confirm the medical-treatment focus of its holding; each stands for the same narrow proposition that courts are not empowered to substitute their judgment on appropriate standards of medical care for the judgment of the prison authorities. *See id.* at 760-61 (*citing Carter ex rel. Carter v. City of Shreveport*, 144 F.4th 809, 815 (5th Cir. 2025); *Bell v. State Prison Officials*, No. 23-30339, 2024 WL 2863293, at *6 (5th Cir. June 6, 2024) (per curiam); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("The ADA [does not impose] on the States a 'standard of care' *for whatever medical services they render*." (emphasis added)). Read together, these authorities establish a single, carefully proscribed limit: a court may not use the ADA and RA to second-guess the quality of the medical treatment a prison provides.

In relying on these authorities without further elaboration, the Fifth Circuit did not modify longstanding precedent regarding evaluating claims of disability discrimination and failure to

---

court's majority opinion *does not address these conclusions*." *Parker*, 171 F.4th at 761–62 (Richman, J., concurring in part and dissenting in part) (emphasis added).

accommodate. Instead, two additional features of *Parker* confirm its narrow holding. First, *Parker* itself did not equate the ADA/RA statutory standard with the deliberate indifference standard applied to the Eighth Amendment claims, including applying the "current attitudes and conduct" inquiry that shaped *Parker*'s Eighth Amendment analysis. *Parker*, 171 F.4th at 756. Second, in describing the need for "some institutional flexibility in providing for disabled prisoners' needs," *id.* at 760, the Fifth Circuit seemed to incorporate aspects of the typical standard applied to reasonable accommodations. *See Cadena*, 946 F.3d at 724 (requested accommodations must be "reasonable," meaning they do "not impose undue financial or administrative burdens or fundamentally alter the nature of the service, program, or activity" (citing 28 C.F.R. § 35.130(b)(7)).

**2. Plaintiffs' Claims Do Not Concern Medical Care, and therefore *Parker* Does Not Preclude Plaintiffs' Claims.**

Here, Plaintiffs' disability claim presents an entirely different question from the remedial order addressing the quality of medical care provided by the prison presented by *Parker*. The ADA Subclass is defined not by any course of medical treatment, but by their disabilities and work assignments: the subclass comprises "all persons incarcerated at LSP who have disabilities that substantially limit one or more of their major life activities and who currently are, or may in the future be, assigned to the Farm Line." *Voice of the Experienced v. LeBlanc*, 2026 WL 1472248, at *4 (May 26, 2026). Plaintiffs argued that Defendants failed to accommodate ADA subclass members by requiring them to labor when the heat index is anticipated to meet or exceed 88°F, and that Defendants discriminated against ADA subclass members by failing to account for their disabilities when assigning fieldwork on these hot days. ECF 432, Plaintiffs' Proposed Findings of Fact and Conclusions of Law, ¶¶ 863, 869. Additionally, they argued that Defendants discriminated by failing to identify several categories of people with impaired ability to

thermoregulate and thus deny them heat protective status. *Id.* ¶ 871. The relief Plaintiffs requested confirms the point: they asked the Court to cease assigning prisoners with Heat Precaution Duty Status to the Farm Line during dangerous heat, and to expand eligibility for that status to prisoners with qualifying conditions and prescriptions. *Voice of the Experienced*, 2026 WL 1472248, at *22–*23 (¶ 149(e)–(f), (j)). Thus, Plaintiffs merely request to modify a work-assignment program to accommodate recognized disabilities as required by the ADA and RA—not to prescribe a standard of medical care.

Plaintiffs' claim lies at the core of the ADA and RA. As explained above, these statutes prohibit Defendants from discriminating against the ADA subclass or denying them reasonable accommodations. The Supreme Court has held that Title II of the ADA applies to state prisons and the recreational, medical, educational, and vocational programs they provide. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also United States v. Georgia*, 546 U.S. 151, 157 (2006) (recognizing a disabled state prisoner's Title II ADA claims premised on the failure to accommodate his disability). Claims that prisoners with disabilities are assigned to hazardous labor without accommodation, required to labor in dangerous conditions, and, for some individuals, excluded from heat-protected status even though they have a qualifying disability are thus a conventional claims of the kind *Yeskey* and *Georgia* recognize and distinct in character from the failure-to-treat theory addressed in *Parker*.

In sum, *Parker*'s holding is expressly limited to challenges regarding the quality of prison medical care, and that limit is dispositive here. Plaintiffs' claim does not ask the Court to prescribe a standard of medical treatment; it asks the Court to decide questions of disability discrimination and accommodation regarding dangerous conditions of labor for disabled individuals. That question warrants the program-specific analysis required under the ADA and RA, and *Parker* did

not change that analysis here. The Court should grant a rehearing to consider Plaintiffs' disability claims under that longstanding precedent.

Dated: June 24, 2026

Respectfully submitted,

*/s/ Melanie A. Bray*
Melanie A. Bray, La. Bar No. 37049
Disability Rights Louisiana
8325 Oak Street, New Orleans, LA 70118
504-208-4151; 504-272-2531 (fax)
mbray@disabilityrightsla.org

*/s/ Sara Zampierin*
Sara Zampierin*†
Civil Rights Clinic, Texas A&M School of Law‡
1515 Commerce St.
Fort Worth, TX 76102
T: (817) 212-4123
E: sara.zampierin@law.tamu.edu

*Attorneys for Amicus Curiae National Disability Rights Network*

* Motion to Appear *Pro Hac Vice* filed concurrently

† Law students Kerry Holihan, Samuel Marcrum, and Isabela Malo also contributed to drafting this brief.

‡ *Amicus Curiae* in this case are represented by a clinic operated by Texas A&M University School of Law, but this document does not purport to present the school's institutional views, if any.